D. GILL SPERLEIN (SBN 172887)
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, California 94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

Attorney for Plaintiff DataTech Enterprises, LLC,

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



| | |
|---|---|
| DATATECH ENTERPRISES, LLC, a Nevada Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> FF MAGNAT LIMITED d/b/a ORON.COM, STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a ROMAN ROMANOV (an alias); and <br><br> Defendants. | Case No.: **CV 12 4500** <br><br> **PLAINTIF DATATECH ENTERPRISES, LLC'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

Pursuant to 17 U.S.C. §§502, 15 U.S.C. §1116(d)(1)(A) and Fed. R. Civ. P. 65, Plaintiff DataTech Enterprises, LLC ("DataTech") moves this Court *ex parte* for a temporary restraining order to stop the Defendant FF Magnat Limited d/b/a Oron.com and their agents ("Oron") from fraudulently transferring assets out of the United States. The Plaintiff seeks an Order unwinding the fraudulent transfers that have already occurred, freezing Defendants' accounts containing profits from the Defendants' illegal enterprise, and returning matters to the state they were in before the dissipation and fraudulent transfers began. Because of the serious and immediate nature of Defendants' acts, Plaintiffs request an emergency hearing or an expedited ruling on the papers.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ iii

I. STATEMENT OF FACTS ........................................................................................................ 1

II: PLAINTIFF SHOULD BE GRANTED AN *EX PARTE* TEMPORARY RESTRAINING ORDER ......................................................................... 4

A. The Legal Standard for the Requested Relief Has Been Met .............................................. 5

B. Plaintiff DataTech, LLC Has a Substantial Likelihood of Prevailing on the Merits of Its Copyright Claims ............................................................................................................ 5

C. Plaintiff Will Suffer Irreparable Harm in the Absence of the Requested Relief ............... 6

D. The Balance of Equities Favors the Issuance of the Requested Injunctive Relief ............ 8

E. The Requested Relief is in the Public Interest ..................................................................... 9

F. *Ex Parte* Relief is Essential ..................................................................................................... 9

III. PLAINTIFF WILL PROVIDE ADEQUATE SECURITY IF HARDSHIP IS PROVEN ................................................................................................ 12

IV. DEFENDANTS SHOULD BE ORDERED TO SHOW CAUSE REGARDING THE ISSUANCE OF A PRELIMINARY INJUNCTION ........................ 13

VI. CONCLUSION .................................................................................................................... 13

The Law Office of D. Gill Sperlein
345 Grove Street San Francisco, CA 94102
Tel: 415-404-6615 Fax: 415-404-6616

# TABLE OF AUTHORITIES

## CASES

*Albert E. Price, Inc. v. Metzner, et al.*, 574 F. Supp. 281 (E.D. Pa. 1983) ......... - 8 -

*Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ......... - 5 -

*American Can Company v. Mansukhani*, 742 F.2d 314 (7th Cir. 1984) ......... - 10 -

*Apple Computer, Inc. v. Franklin Computer Corporation*, 714 F.2d 1240 (3d Cir. 1983) ......... - 8 -

*Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476 (10th Cir. 1993) ......... - 9 -

*Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999) ......... - 6 -

*Century Home Entertainment, Inc. v. Laser Beat, Inc.*, 859 F.Supp. 636 (E.D.N.Y. 1994) ......... - 10 -

*Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d. 878 (9th Cir. 2003) - 12 -

*Cosmetics Exchange, Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242 (11th Cir. 2002) ......... - 5 -

*Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280 (10th Cir. 1996) ......... - 7 -

*Educational Testing Servs. V. Katzman*, 793 F.2d 533 (3d Cir. 1977) ......... - 5 -, - 6 -, - 8 -

*Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 (7th Cir. 1994) ......... - 8 -

*F.W. Woolworth, Company v. Contemporary Arts, Inc.*, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed.2d 276 (1952) ......... - 4 -

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340 (1991) ......... - 5 -, - 6 -

*Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. Appx. 180 (11th Cir. 2006) ......... - 5 -

*Fimab-Finanziaria MaglificioBiellese Fratelli Fila S.P.A. v. Kitchen*, 548 F. Supp. 2487 (S.D. Fla. 1982) ......... - 10 -, - 11 -

*First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641 (6th Cir. 1998) ......... - 11 -

*FTC v. U.S. Oil and Gas Corp.*, 748 F. 2d. 1431 (11th Cir. 1984) ......... - 3 -

*Granny Goose Foods, Inc., et al. v. Brotherhood of Teamsters*, 415 U.S. 423 (1974) ......... - 9 -

*Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127 (9th Cir. 2005) ......... - 4 -

*In re Estate of Ferdinand Marcos, Human Rights Litigation*, 25 F.3d 1467 (9th Cir. 1994) ......... passim

*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) ......... - 2 -

*Lakedreams v. Taylor*, 932 F.2d 1103 (5th Cir. 1991) ......... - 7 -

*Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224 (11th Cir. 2010) ......... - 5 -, - 6 -

*Levi Strauss & Co., v. Sunrise Int'l Trading*, 51 F. 3d 982 (11th Cir. 1995) .......................... - 3 -, - 5 -

*Liberty Media Holdings, LLC v. EE Magnet, Ltd*, 12-cv-01057-GMN-RJJ, D.C.N ................... passim

*Miller v. Universal City Studios, Inc.*, 650 F.2d 1365 (5th Cir. 1981) ................................................. - 3 -

*NBA Properties v. Various John Does*, 113 F.3d 1246 (10th Cir. 1997).......................................... - 9 -

*Office Depot, Inc. v. Zuccarini*, 596 F.3d 696, (9th Cir. 2010) ........................................................ - 2 -

*Palacio Del Mar HOA., Inc. v. McMahon*, 174 Cal. App. 4th 1386 (Cal. App. Div. 2009) .............. - 2 -

*Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77 (2d Cir. 1996)................................................... - 4 -

*Perfect 10, Inc. v. Cybernet Venutres, Inc.*, 213 F.Supp.2d 1146 (C.D. Ca. 2002) .......................... - 9 -

*Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543 (N.D. Tex. 1997) ........................ - 4 -

*Reebok International, Inc. v. Marnatech Enterterprises, Inc.*, 970 F.2d 522 (9th Cir. 1992) ........ - 11 -

*Sid & Marty Kroft Television Prods. Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir 1977)....... - 5 -

*Signal Capital Corp. v. Frank*, 895 F. Supp. 62 (S.D.N.Y. 1995) .................................................... - 7 -

*Speaks v. Kruse*, 445 F.3d 396 (5th Cir. 2006) .............................................................................. - 12 -

*The Walt Disney Company, v. Jim Garofalo*, 9:02-CV-5314 (E.D.N.Y. Nov. 12, 1992) ................ - 11 -

*Universal City Studios, Inc. v. Ronnie Lorizzo*, 9:03-CV-5182(SJ) (E.D.N.Y. Nov. 17, 1993)....... - 11 -

*Vector Research v. Howard & Howard Attorneys, P.C.*, 1996 U.S. App. LEXIS 7492 (6th Cir. 1996) - 11 -

*Vuitton v. White*, 945 F.2d 569 (3d Cir. 1991)............................................................ - 9 -, - 10 -, - 11 -

*Vuitton v. White*, F.2d 569, 571-72 (3d Cir. 1991) ................................................................ - 9 -, - 11 -

*Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222 (3d Cir. 1986) ............. - 6 -

**STATUTES**

15 U.S.C. §1116(d)(1)(A).........................................................................................................................i

17 U.S.C. § 106 .................................................................................................................................. - 5 -

17 U.S.C. § 502 ................................................................................................................... i, - 4 -, - 7 -

17 U.S.C. § 504 ........................................................................................................ - 1 -, - 3 -, - 4 -, - 7 -

17 U.S.C. §§ 502-505 ...................................................................................................................... - 10 -

17 U.S.C. §512................................................................................................................................... - 6 -

Fed. R. Civ. Proc. 65........................................................................................................................i, - 9 -

## I. STATEMENT OF FACTS

Defendants have engaged in copyright infringement of works produced by Plaintiff and multiple other film producers. The assets Defendants hold (or held) in the United States are the domain name registrations for the Oron.com website, other domain names, as well as profits from their illegal scheme.

Defendants are currently engaged in another action in this District in which the relevant facts that are identical to the facts in this case. *See*, *Liberty Media Holdings, LLC v. FF Magnet, Ltd*, 12-cv-01057-GMN-RJJ, D.C.N. In *Liberty*, the Court found that the Plaintiff established a likelihood of success on the merits sufficient to issue a limited Temporary Restraining Order. *Id*. at ECF No. 10.; *See also*, Request for Judicial Notice (Hereinafter Req. for Jud. Not.), Exhibits B and C. The Court also found that Liberty established irreparable harm because of the substantial chance that upon final resolution it could not be made whole and that Defendants were engaged in allegedly fraudulent transfers that might impinge the Court's ability to issue effective equitable relief. *Id.*, citing, *In re Estate of Ferdinand Marcos, Human Rights Litigation*, 25 F.3d 1467 (9th Cir. 1994) (proper to issue an injunction to keep assets from being dissipated overseas, especially where defendant had engaged in a pattern of such activity). A judge in Hong Kong found determined that FF Magnat, Ltd. has been rapidly moving its money out of the United States into another jurisdiction where it invests in gold. If that is not a prima facia case of dissipation, I'm not sure what is." Sperlein Declaration in Support of Plaintiff's Application for Temporary Restraining Order (Sperlein Decl.) at ¶¶2-4; Ex. A at p2:A-C; Ex B at p. 13.

On August 27, 2012, The District Court of Nevada Ordered the U.S. funds released because Defendants entered a settlement agreement with Plaintiff in that matter. *Liberty* at ECF No.110, Req. for Jud. Not. at Ex. E.

There is no substantial difference in the facts alleged *Liberty* and the facts in this action. If anything, Defendants have shown further evidence that they would take efforts to move illicitly obtained profits from the United States. Moreover, Defendants have at less temporarily ceased their infringing operations which means they have no additional source of revenue. Also, there now are

- 1 -

*EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

less funds available to satisfy the equitable relief provided for at 17 U.S.C. § 504 (i.e. the transfer of illicit profits to the copyright holder) which could easily reach millions of dollars.

While pretending to engage in good-faith negotiations to resolve earlier claims against them the Defendants actually used the time to move all assets to locations out of the reach of United States courts. Liberty provided evidence to the Court that while ostensibly engaging in settlement negotiations, Defendants were transferring domain name registrations and cash out of the United States beyond the reach of Plaintiffs. *See, Liberty*, at ECF 2-2 to 2-5, Reg. for Jud. Not. Ex. A. Later, Defendants attempted to repudiate a settlement agreement even though they had agreed to fundamental terms. The District Court of Nevada ordered Defendant FF Magnet, Ltd. to honor the agreement they struck and to pay the Plaintiff from the funds the Court had ordered frozen. *Liberty Media Holdings, LLC v. EE Magnet, Ltd*, 12-cv-01057-GMN-RJJ, D.C.N. at EFC No. 85 Order. The Court ordered that the assets remain frozen, but only for the purpose of satisfying the judgment and any fee award. *Id*. at 8:3-8:5. Defendant FF Magnet, Ltd. continues to try to secure these funds for transfer abroad, even while it appeals the Court's Order enforcing the settlement agreement and awarding fees. *Id*. at ECF No. 90, 2:5-10. On August 27, 2012, the Nevada District Court unfroze the remaining funds, thereby leaving Defendants free to transfer these assets out of the United States. *Id*. at ECF No. 102.

Without the intervention of this Court, those funds may become available to Defendants, in which case there can be no doubt Defendants will recommence their fraudulent transfers and continue their efforts to move the funds beyond the reach of United States copyright holders who are entitled to the illicitly gained funds.

It is proper to issue injunctive relief to prevent further fraudulent transfers and to preserve the Court's ability to issue effective equitable relief. See *In re Estate of Ferdinand Marcos, Human Rights Litigation*, 25 F.3d 1467 (9th Cir. 1994) (proper to issue an injunction to keep assets from being dissipated overseas, especially where defendant had engaged in a pattern of such activity). Domain names are property and are properly the object of a seizure under a court's equitable powers just as much as the money that the Oron website takes in through its illegal enterprise. *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003); *Novak v. Benn*, 896 So. 2d 513 (Ala. App. 2004)

- 2 -

*Ex Parte* Application For Temporary Restraining Order

(recognizing domain names as property that can be seized under a court order); *Palacio Del Mar Homeowners Assn., Inc. v. McMahon*, 174 Cal. App. 4th 1386, 1391 (Cal. App. Div. 2009); *Office Depot, Inc. v. Zuccarini*, 596 F.3d 696, 701-02 (9th Cir. 2010). This Court may freeze funds and exercise quasi *in rem* jurisdiction over the domain names to prevent their dissipation, disgorgement, or other changes thereto so that they may be subject to equitable actions such as shutting down the Defendants' websites if they are not purged of pirated content. *See, Zuccarini*, 596 F.3d at 702-03 (VeriSign is located in the United States and subject to the court's jurisdiction; court was entitled to exercise quasi *in rem* control over the domain names). The Court can preserve these assets by requiring U.S.-based companies (PayPal, Inc.) to continue to freeze further transfer of funds and domain names and by requesting assurance that any foreign banks with U.S. branches heed this Court's order, or place their U.S. branches and assets in jeopardy. As the Defendants have already shown that they will make fraudulent transfers, this move would be reasonable and proper.

The Defendants accepted credit cards on their piracy websites, and thus American Express, MasterCard, and Visa can be ordered to cease clearing their funds, and to hold them in escrow or deposit them with the Court until the outcome of this case is determined. Furthermore, the Defendants utilize American companies, including CCBill and PayPal to process credit cards and other payments. Given Defendants' previous behavior, it is eminently proper to issue injunctive relief, which would render these assets frozen in the United States until a judgment has been entered and all equitable relief satisfied. *In re Estate of Ferdinand Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994).

Defendants accept funds from U.S. sources. Given their actions to date, it is clear that they will dissipate their ill-gotten profits as well, if they have not done so already. Therefore, Plaintiff requests an emergency temporary restraining order, restraining the Defendants (or anyone acting in conjunction with them) from removing funds from U.S. accounts is an appropriate remedy. Given that the Plaintiff is entitled to the equitable remedy of receiving the Defendants' profits from copyright infringement under 17 U.S.C. § 504, this asset and property freeze is appropriate. See *Levi Strauss & Co., v. Sunrise Int'l Trading*, 51 F. 3d 982, 987 (11th Cir. 1995); *FTC v. U.S. Oil and Gas Corp.*, 748 F. 2d. 1431, 1433-34 (11th Cir. 1984).

## II: PLAINTIFF SHOULD BE GRANTED AN *EX PARTE* TEMPORARY RESTRAINING ORDER

The purpose of the penalty provisions of the Copyright Act is to "discourage wrongful infringement as well as to compensate the copyright owner." *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1376 (5th Cir. 1981) (citing *F.W. Woolworth, Company v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed.2d 276 (1952)). Both purposes will be frustrated if the Court fails to issue this order. "Copyright infringement must not be allowed to serve as the cornerstone of a profitable business." *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997), *affirmed without opinion*, 168 F.3d 486 (5th Cir. 1999). If the Defendants can simply shift all of their assets and proceeds from copyright infringement over to offshore entities and offshore banks, in accounts held by shell corporations, they will most certainly enjoy a profitable business while the wheels of justice slowly grind. If all overseas intellectual property thieves must do is spirit their ill-gotten gains to coffers outside the reach of American courts, while they continue to reap the benefits of their theft, then what law could discourage this kind of activity?

Under the Copyright Act, the Plaintiff is entitled to, *inter alia*, the equitable relief of seizure of the Defendants' profits, 17 U.S.C. § 504; injunctive relief deemed reasonable to prevent or restrain infringement, 17 U.S.C. § 502. In this case, such equity will never be realized if the Defendants are permitted to move property and profits out of the United States and if they are permitted to continue earning money in the United States, from U.S. citizens, only to spirit the funds to offshore locations where this Court's equitable powers lack potency.

Courts routinely issue preliminary injunctions freezing defendants' assets in circumstances like this one. See, e.g., *Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 86-87 (2d Cir. 1996); *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1141 (9th Cir. 2005) ("district court did not abuse its discretion by concluding that the Hendricks would face a significant threat of irreparable injury if a preliminary injunction did not issue to prevent the Bank from honoring Mutual's draw"). They are further so issued when equity will be frustrated in the assurance of the order. *In re Estate of Ferdinand Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994); *See also, Liberty* at EFC No. 11, Order and No. 13 Amended Order; Req. for Jud. Not. Exs. B and C..

### A. The Legal Standard for the Requested Relief Has Been Met

A court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest). *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. Appx. 180, 186 (11th Cir. 2006); *Int'l Cosmetics Exchange, Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002)(quoting *Levi Strauss & Co*, 51 F.3d at 985); *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).

This remedy is appropriate to ensure that the Defendants are not able to reconstitute their bad faith fraudulent transfer scheme now that they have satisfied the Liberty judgment and the Nevada District Court has rereleased their remaining funds. The Defendants have engaged in extreme conduct, involving millions of dollars in damages. If the Copyright Act is to mean anything, it should mean that such schemes do not provide a source of profit for the cyber criminals who engage in them. The Defendants see the writing on the wall: the Defendants infringed upon copyrighted works for profit and have been caught. The elements of copyright infringement have been shown, and no affirmative defenses are likely to prevail.

### B. Plaintiff DataTech, LLC Has a Substantial Likelihood of Prevailing on the Merits of Its Copyright Claims

To show a substantial likelihood of prevailing on the merits of a copyright infringement claim, Plaintiff Liberty must show that: (1) it owns the copyright to which its infringement claims relate; and, (2) Defendants violated one of the Plaintiff's exclusive rights in the works. *See, Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232-33 (11th Cir. 2010); *Sid & Marty Kroft Television Prods. Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir 1977); *Educational Testing Servs. V. Katzman*, 793 F.2d 533, 538 (3d Cir. 1977).

DataTech owns the copyrights to the infringed works. Declaration of Lance Blundell in Support of Plaintiff's Motion for Temporary Restraining Order (Blundell Decl.) at ¶¶3-5 and Ex. A.

- 5 -

Section §410(c) of U.S. Code Title 17 specifies that the Certificate of Registration constitutes *prima facie* evidence of the validity and ownership of the copyrights. Ownership is therefore established.

After establishing ownership, Plaintiffs must show unauthorized copying or distribution of its works. 17 U.S.C. § 106. The evidence of unauthorized copying and distribution is clear and indisputable: The infringing works are exact digital copies of the Plaintiff's copyrighted materials. Plaintiff did not authorize Defendants to make such copies or to distribute them. Plaintiffs have supplied the Court with a partial list of movies previously located on oron.com. Blundell Decl. at Ex. A. Plaintiff has described the nature of the infringement in its Complaint and in the Supporting Declaration of Peter Phinney and provided examples of links to copies of these movies on oron.com. Declaration of Peter Phinney in Support of Plaintiff's Application for Temporary Restraining Order (Hereinafter Phinney Decl.) at ¶12 and Exhibits A-C. Defendants cannot deny the manner in which they reproduced, sold, and distributed Plaintiff's works. Plaintiff has therefore established a *prima facie* case of copyright infringement. See *Feist Publ'ns, Inc.*, 499 U.S. at 361; *Latimer*, 601 F.3d at 1232-33; *Sid & Marty Krofft*, 562 F.2d at 1162; *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986); *Educational Testing,* 793 F.2d at 538. Because of the incontrovertible evidence of Plaintiff's copyright ownership and Defendants' unauthorized copying, Plaintiff has shown a clear likelihood that it will prevail in its claims.

The extent of infringement that can be proven is extensive. While the Defendants have removed the infringing website in light of the overwhelming evidence presented in the Liberty case, Plaintiff DataTech has evidence of over forty thousand separate acts of infringement prior to the closing of the website. Phinney Decl. at ¶3.)

Defendants may seek the safe harbors set forth at 17 U.S.C. §512, but because they had no registered agent for receiving notices of infringement during much of the time of the infringement, and because they had not effective repeat infringer policy they are ineligible for those safe harbors. 17 U.S.C. § 512; Phinney Decl. at ¶¶4 and 13; Ex. D.

**C.    Plaintiff Will Suffer Irreparable Harm in the Absence of the Requested Relief**

Irreparable harm exists where in the absence of equitable relief, there is a substantial chance that upon final resolution, the movant cannot be made whole. *See, Brenntag Int'l Chems., Inc. v.*

- 6 -

*Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). "[A] district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *Marcos*, 25 F.3d at 1480. If a party is likely to take actions that will frustrate a judgment, then the movant's irreparable harm is shown. *See, Signal Capital Corp. v. Frank*, 895 F. Supp. 62, 64 (S.D.N.Y. 1995). While monetary damages might be available at law in copyright cases, equity compels an impoundment of the instrumentalities of and the proceeds from infringing activities. 17 U.S.C. § 504.

The imminent insolvency of Defendants is clear. Understanding that U.S. copyright holders are now aware of their infringing scheme, Defendants have ceased operating oron.com at least temporarily. All Defendants' income apparently came from the illegal operation of this website, and if illicit funds collected in the past are not maintained here in the United States, there is not likely to be any new source of funds to replace the illicitly obtained funds if Defendants are given the opportunity to move those funds out of the United States. Defendants have twice before, approached the Court in the *Liberty* action and testified under oath that they have no funds beyond those that were frozen. *See, Liberty Media Holdings, LLC v. EE Magnet, Ltd*, 12-cv-01057-GMN-RJJ, D.C.N. at EFC No. 15, Defendant FF Magnet Limited's Emergency Motion for Partial Relief from Temporary Restraining Order, and ECF No. 20, Oron's Emergency Motion for Disbursement of Additional Funds.

A judge of the High Court of the Hong Kong Special Administrative Region Court of First Instance found evidence that once FF Magnat, Ltd. transfers its funds from PayPal to its Hong Kong back, it converts those funds to gold. Sperlein Declaration in Support of Plaintiff's Application for Temporary Restraining Order (Sperlein Decl.) at ¶¶2-4; Exs. A and B. The Judge stated on the record, "[T]he only inference I can draw is that there is a bank statement which shows a **company which is rapidly moving its money out of the United States into another jurisdiction where it invests in gold. If that is not a prima facia case of dissipation, I'm not sure what is.**" *Id*. Ex. A at p2:A-C; Ex B at p. 13.

*EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

The "financial impact of copyright infringement is hard to measure and often involves intangible qualities such as customer goodwill." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288-89 (10th Cir. 1996). When irreparable economic damages are difficult to calculate, a finding of irreparable harm is appropriate. *See, Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991). The language of 17 U.S.C. § 502 and § 504 combined with the presumed irreparable harm in copyright cases permits the Court to focus solely on the plaintiff's likelihood of prevailing at trial when fashioning preliminary injunctive relief. *See, Albert E. Price, Inc. v. Metzner, et al.*, 574 F. Supp. 281, 286 (E.D. Pa. 1983); *see also Educational Testing*, 793 F.2d at 544; *and see* 3 Nimmer on Copyright at §14.06[A].

The Plaintiffs have demonstrated a substantial likelihood of prevailing on the merits of their claims and have established the element of irreparable harm. *See, Apple Computer, Inc. v. Franklin Computer Corporation*, 714 F.2d 1240, 1254 (3d Cir. 1983); *see also Educational Testing, cited supra*, 793 F.2d at 543-544. The Court should issue injunctive relief.

If the requested relief is not granted, Defendants will move their illegal business instrumentalities and profits offshore, will transfer any funds in any U.S. accounts to foreign bank accounts, a thus render the impact of this litigation to be nil, and frustrating any efforts to seize their illegal profits.

**D.     The Balance of Equities Favors the Issuance of the Requested Injunctive Relief**

The requested temporary restraining order is limited in scope. It does nothing more than prohibit Defendants from fraudulent transfers. An injunction that simply restores things to their rightful place is neither extreme nor controversial.

Additionally, the preliminary injunction sought restrains Defendants from making further unauthorized copies of Plaintiffs' works and distributing pirated materials. Injunctive relief seeks nothing more than requiring Defendants comply with the Copyright Act, to preserve the *status quo* of Defendants' location of their ill-gotten gains. The imposition on Defendants' legitimate business activities is minimal as there are apparently none. In light of the Court's order in *Liberty* enjoying Defendants from engaging infringement, they closed the oron.com website apparently recognizing that without infringement the site had no value at all. The Plaintiffs' injury outweighs any possible

- 8 -

damage caused to Defendants. Moreover, Defendants have already engaged counsel to defend them in a similar matter, including counsel in San Francisco. As soon as the assets are frozen, Defendants can be notified and a hearing can be held at the first opportunity suitable for the Court and Defendants.

### E. The Requested Relief is in the Public Interest

The public has a genuine interest in upholding copyright protections. *See, Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1066 (7th Cir. 1994) (quoting *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("It is virtually axiomatic that the public interest can only be served by upholding copyright protections ...")). Defendants' illegal infringements flout the public policy underlying federal copyright law. The copyright laws further the public's interest in protecting business investment, intellectual property, and enforcing federal law. *See, Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993). See also 3 Nimmer on Copyright, §14.06[A]; *Perfect 10, Inc. v. Cybernet Venutres, Inc.*, 213 F.Supp.2d 1146 (C.D. Ca. 2002). The public interest favors issuance of the requested relief.

Plaintiffs will succeed on their copyright and other claims. Clear, immediate, and irreparable harm is present. The balance of hardships weighs in favor of protecting the Plaintiffs' copyrights. The TRO will further the public interest in enforcing federal law and protecting copyrights from piracy, and keeping scofflaws from evading responsibility for their actions.

### F. *Ex Parte* Relief is Essential

Fed. R. Civ. Proc. 65 permits issuance of a temporary restraining order without prior notice to Defendants. By its very terms, Rule 65 allows for the issuance of an *ex parte* order.

A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required.

- 9 -

An *ex parte* order preserves the *status quo* and prevents irreparable harm. *See, Granny Goose Foods, Inc., et al. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). Courts grant a temporary restraining order when: (1) immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition; and, (2) the applicant sufficiently demonstrates the reason notice should not be required. Numerous courts recognized the need for *ex parte* temporary restraining orders in intellectual property cases. *See, Vuitton v. White*, 945 F.2d 569 (3d Cir. 1991); *See also, NBA Properties v. Various John Does*, 113 F.3d 1246 (10th Cir. 1997), *dec'n without published opinion, reported in full at* 1997 U.S. App. LEXIS 11946 (10th Cir. 1997); *See, American Can Company v. Mansukhani*, 742 F.2d 314, 321 (7th Cir. 1984) (holding Rule 65 "expressly contemplates the issuance of *ex parte* temporary restraining orders").

Regarding the issuance of temporary restraining orders, the Second Circuit Court of Appeals issued a writ of mandamus ordering the district court grant *ex parte* relief:

> The ex parte temporary restraining order is indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief. Immediate action is vital when imminent destruction of the disputed property, its removal beyond the confines of the state, or its sale to an innocent third party is threatened. In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all. *Id.* at 4, quoting *Developments In The Law – Injunctions*, 78 Harv. L. Rev. 994, 1060 (199965); See also, *Fimab-Finanziaria MaglificioBiellese Fratelli Fila S.P.A. v. Kitchen*, 548 F. Supp. 2487, 249-250 (S.D. Fla. 1982) (recognizing the need for *ex parte* restraining orders in infringement cases and citing numerous unpublished orders granting such relief).

*Vuitton Et Fils S.A.*, 606 F.2d 1 (2d Cir. 1991). The Court further explained:

> [a]ssuming that all of the other requirements of Rule 65 are met, the rule by its very terms allows for the issuance of an *ex parte* temporary restraining order when (1) the failure to issue it would result in "immediate and irreparable injury, loss, or damage" and (2) the applicant sufficiently demonstrates the reason that notice "should not be required." In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1) . . .

*Id.* at 3 (citations omitted.)

To obtain *ex parte* relief, a "Plaintiff need not show that a particular Defendant would not adhere to a temporary restraining order, but rather only that someone like the defendant would be

- 10 -

*EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

likely to hide or destroy the evidence of his infringing activity." *Century Home Entertainment, Inc. v. Laser Beat, Inc.*, 859 F.Supp. 636, 638 (E.D.N.Y. 1994) (citing *In The Matter Of: Vuitton, cited supra*). In this case, U.S. based assets *are* being spirited offshore; Defendants have *already* engaged in fraudulent transfers. See, *Liberty*, ECF 2-1 to 2-5; Req. for Jud. Not. Ex A; Sperlein Decl. at ¶¶2-4 and Exs. A and B..

Plaintiff has substantial equitable remedies awaiting them. 17 U.S.C. §§ 502-505. However, remedial and legal relief is unavailable if Defendants remove all property and funds subject to Plaintiff's recovery beyond the reach of the Court. Prior notice would "render fruitless further prosecution of the action." *Vuitton, cited supra*, 606 F.2d at 5.

Courts grant Rule 65(b) *ex parte* injunctive relief in two situations: (1) a showing that notice is impossible because plaintiff in unaware of the defendant's identity or location; or, (2) a showing that proceeding *ex parte* is the only method by which the court can fashion effective final relief. See *In The Matter Of: Vuitton*, 606 F.2d at 4. To justify *ex parte* proceedings under situation (2) above, the movant must show: (1) the adverse party historically disposes of evidence or violates court orders; **or,** (2) that persons similar to the adverse party have such a history. *See, First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 651 (6th Cir. 1998); *Vector Research v. Howard & Howard Attorneys, P.C.*, 1996 U.S. App. LEXIS 7492 (6th Cir. 1996).

When giving notice to the defendants will result in the dumping of goods or other nefarious deeds, it is appropriate to issue *ex parte* orders without notice. *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F.Supp. 248, 249 (S.D. Fla. 1982); *see also Vuitton*, 606 F.2d at 2-3. *Ex parte* relief is sometimes the only effective tool for combating intellectual property theft when the defendants are overseas acting dishonestly. *See, e.g. Reebok International, Inc. v. Marnatech Enterterprises, Inc.*, 970 F.2d 522 (9th Cir. 1992); *Vuitton v. White*, F.2d 569, 571-72 (3d Cir. 1991). That is exactly what will happen here. Plaintiffs are entitled to issuance of an *ex parte* temporary restraining order. It is the only method of preserving the status quo because Defendants have already taken affirmative steps to move assets beyond the Court's reach in order to frustrate any order the court may issue.

A TRO is appropriate. Defendants' willful infringements and fraudulent transfers of assets make it critical that the Court order seizure before Defendants completely dissipate their funds and completely transfer their assets. Additionally, where danger of destruction or hiding evidence exists, the federal rules permit issuance of *ex parte* seizure and impoundment orders, and this is the kind of situation that the rule was intended to address. *See, Universal City Studios, Inc. v. Ronnie Lorizzo*, 9:03-CV-5182(SJ) (E.D.N.Y. Nov. 17, 1993); *See also, The Walt Disney Company, v. Jim Garofalo*, 9:02-CV-5314 (E.D.N.Y. Nov. 12, 1992).

Once funds Defendants illicit profits are frozen and therefore the Court is assured it can provide the equitable disgorgement relief allowed under the copyright Act, Defendants can be located through the counsel they engaged in the *Liberty* matter and a full hearing on the issues may be scheduled, but to provide notice in advance is to invite Defendants to move their remaining funds off shore and shut the door to any possible relief at all.

### III. PLAINTIFF WILL PROVIDE ADEQUATE SECURITY IF HARDSHIP IS PROVEN

In the event that the Defendants **prove hardship**, they may propose a bond. However, they bear the burden of proving hardship. *See, Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d. 878, 882 (9th Cir. 2003) (in an asset freeze injunction, "the bond amount may be zero if there is no evidence the party will suffer damages from the injunction"). The likelihood of harm to the Defendants is nil. The only thing that a failure to grant the requested relief would do would be to allow the Defendants to continue their illegal enterprise and to continue to move to frustrate any order this Court may issue. The entry of the requested injunctive relief would be no different than an injunction against a thief commanding him to stop fencing his stolen goods. A bond is neither necessary, nor proper. However, if the Court is inclined to entertain a request for a bond, then it should hold an evidentiary hearing at which the Defendants should be required to meet their evidentiary burden to prove hardship. A mere request for one, without sworn testimony specifically articulating the alleged harm and an opportunity to cross-examine witnesses, should not be entertained.

- 12 -

*EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

## IV. DEFENDANTS SHOULD BE ORDERED TO SHOW CAUSE REGARDING THE ISSUANCE OF A PRELIMINARY INJUNCTION

The standard for issuance of preliminary injunction is equal to the standard for issuance of a temporary restraining order. *See*, *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006). Plaintiffs have overcome the burden to meet these standards. This Court should issue a show-cause order requiring Defendants demonstrate any countervailing argument the Court should not issue a preliminary injunction continuing the relief granted in the temporary restraining order.

## VI. CONCLUSION

Defendants illegally reproduced, sold, and distributed unauthorized copies of the Plaintiff's copyrighted materials for profit. Defendants' conduct is patently indefensible. It immediately and irreparably harms Plaintiff. The Court should grant Plaintiff's motions for a temporary restraining order, order for seizure, order for expedited discovery, and order to show cause. The Court should grant these requests *ex parte* and without advance notice to Defendants to preserve the *status quo* and permit the Court to fashion effective relief at trial.

Dated: 8/28/2012

Respectfully submitted,

D. GILL SPERLEIN
THE LAW OFFICE OF D. GILL SPERLEIN

Attorney for Plaintiff DataTech Enterprises, LLC,

- 13 -