**KENNETH E. KELLER** (71450) kkeller@kksrr.com
**STAN G. ROMAN** (87652) sroman@kksrr.com
**MICHAEL D. LISI** (196974) mlisi@kksrr.com
**KRIEG, KELLER, SLOAN, ROMAN & HOLLAND LLP**
555 Montgomery Street, 17th Floor
San Francisco, CA  94111
Tel:     (415) 249-8330
Fax:    (415) 249-8333

Attorneys for Defendant FF MAGNAT LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATATECH ENTERPRISES, LLC, a Nevada Limited Liability Company,<br><br>Plaintiff<br><br>vs.<br><br>FF MAGNAT LIMITED d/b/a/ ORON.COM; STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a/ ROMAN ROMANOV (an alias).<br><br>Defendants. | Case No. C-12-4500 CRB<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT FF MAGNAT LIMITED FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER**<br><br>Hearing:       None Set\*\*<br>Judge:          Hon. Charles R. Breyer<br>Courtroom:  Courtroom 6 - 17th Floor<br><br>\*\* An Administrative Motion for Order Shortening Time to Hear This Motion is Filed Herewith |

**NOTICE**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that _____, 2012 at 10:00 a.m., or as soon thereafter as counsel may be heard in the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, 94102, defendant FF Magnat Limited d/b/a/ Oron.com ("Oron") will and hereby does move for an order granting Oron partial relief from the temporary restraining order issued on

1

1  August 28, 2012 in the above-captioned matter.

2      This motion is made pursuant to Fed.R.Civ.P. 65 and is based upon this Notice of Motion;

3  the accompanying Memorandum of Points and Authorities; the accompanying Declaration of

4  Stevan Lieberman; the pleadings and papers on file herein; and upon such other matters as may be

5  presented to the Court at the time of the hearing.

6  Dated: August 30, 2012                                         Krieg, Keller, Sloan, Roman & Holland LLP

                                                        By:       /s/
                                                                 Stan G. Roman
                                                                 Attorneys for Defendant FF Magnat Limited

**TABLE OF CONTENTS**

Page No(s).

I.   INTRODUCTION ................................................................................................................ 1

II.  BACKGROUND ................................................................................................................. 3

    A.   Factual Background ................................................................................................ 3

    B.   Procedural History .................................................................................................. 4

III. ARGUMENT ....................................................................................................................... 7

    A.   The Court Should Modify the Temporary Restraining Order to Allow Defendant Access to Funds In Order to Pay the Legal Fees and Costs Associated With Its Defense of This and an Earlier Lawsuit ..................................... 7

        1.   Ninth Circuit Precedent Supports Oron's Request ......................................... 7

        2.   The Request Is Reasonable Because The Complaint Raises Numerous Complex Issues and Thus Preparation of Oron's Defense Will Require Significant Legal Expense .......................................... 9

            a)   Jurisdiction ..................................................................................... 9

            b)   No Basis for Preliminary Injunction ............................................. 10

            c)   Copyright Infringement Issues ....................................................... 12

            d)   Balance of hardships ..................................................................... 14

            e)   Lack of Irreparable Harm .............................................................. 14

            f)   Inadequacy of Bond ....................................................................... 14

IV. CONCLUSION .................................................................................................................. 15

**TABLE OF AUTHORITIES**

Page No(s).

**Cases**

*Allstate Insurance Co. v. Baglioni*, No. CV 11–06704 (DDP),
  2011 WL 5402487, *2 (C.D. Cal., November 8, 2011) .................................................................. 11

*Bear Stearns Cos. Inc. v. Lavalle*,
  2000 WL 34339833 at *2 (N.D. Tex.) ......................................................................................... 1

*Cf. Bautista-Perez v. Mukasey*,
  2008 WL 314486 (N.D. Cal. 2008) ............................................................................................. 1

*Commodity Futures Trading Commission v. Noble Metals International, Inc.*,
  67 F.3d 766 (9th Cir. 1995) ......................................................................................................... 8

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ................................................................................................................... 14

*Federal Savings & Loan Insurance Corp. v. Dixon*,
  835 F.2d 554 (5th Cir. 1987) ....................................................................................................... 8

*Federal Trade Commission v. QT, Inc.*,
  467 F.Supp.2d 863 (N.D. Ill. 2006) ............................................................................................. 8

*Fidelity National Title Insurance Company v. Castle*,
  2011 WL 5882878 (N.D. Cal., Nov. 23, 2011 ) ........................................................................... 8

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) ............................................................................................................ 10, 11

*Hendricks v. Bank of America, N.A.*,
  408 F.3d 1127 (9th Cir. 2005) ..................................................................................................... 1

*In re USA Commercial Mortgage Co.*,
  397 Fed. Appx. 300 (9th Cir. 2010) ........................................................................................... 11

*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) ................................................................................................ 7, 8

*McDermott v. Amersand Pub.*, LLC,
  593 F.3d 950 (9th Cir. 2010) ..................................................................................................... 14

*Metro-Goldwyn-Mayer Studios, Inc. v. Groskster, Ltd.*,
  545 U.S. 913 (2005) ................................................................................................................... 13

*Perfect 10 Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ................................................................................................... 13

*Perfect 10, Inc. v. Google, Inc.*,
  653 F.3d 976 (9th Cir. 2011) ..................................................................................................... 14

*Perfect 10, Inc. v. Visa Int'l Service, Assoc.*,
  494 F.3d 788 (9th Cir. 2007) .................................................................................................. 13

*Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
  944 F.2d 597 (9th Cir. 1991) .................................................................................................. 14

*Republic of the Philippines v. Marcos*,
  862 F.2d 1355 (9th Cir. 1988) .................................................................................................. 7

*Securities and Exchange Commission v. Dodwell*,
  2002 WL 236687 (W.D. Va. 2002) .......................................................................................... 9

*Securities and Exchange Commission v. Hickey*,
  322 F.3d 1123 (9th Cir. 2003) .................................................................................................. 8

*Skinvisible Pharmaceuticals, Inc. v. Sunless Beauty*, Ltd.,
  2012 WL 1032549, * 2-3 (D. Nev. March 27, 2012) ............................................................. 14

*United States v. Brown*,
  988 F. 2d 658 (6th Cir. 1993) ................................................................................................... 8

**Statutes**

17 U.S.C. § 512 ............................................................................................................................. 12

17 U.S.C. §§ 512 (c)(3) ................................................................................................................. 13

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Without intending to waive any defenses it may have based on lack of personal jurisdiction, venue or improper service of the summons and complaint, Defendant FF Magnat Limited dba Oron.com ("Oron") brings this motion for partial relief from the Temporary Restraining Order entered by the Court on August 28, 2012.[1]

Specifically, Oron requests that the Court amend the Temporary Restraining Order on a limited basis to allow Oron to pay for its defense in this case, and to pay unpaid fees that were incurred in the defense of a nearly identical previously-filed action. Oron requests that the Court allow it to withdraw $ 310,000 from its PayPal account to pay $160,000 in unpaid legal fees and costs from the prior case that were about to be paid when this Court entered a TRO, and to have available $150,000 for fees and costs Oron expects to incur in defending this case through the hearing on Plaintiff's Motion for Preliminary Injunction.[2] The funds withdrawn would be transferred to the trust account of Oron's outside counsel, Greenberg & Lieberman, LLC of Washington, D.C, and used solely to pay Oron's legal fees and costs.

### **I.   INTRODUCTION**

Oron is a Hong Kong company that operates a "cloud" based data storage business. Plaintiff is apparently a producer of pornographic video material, some of which third persons allegedly

---

[1] Defendant Oron is specially appearing at this juncture to address a specific concern regarding the Temporary Restraining Order freezing its assets that was entered on an *ex parte* basis on August 28, 2012. By making this request, Oron does not intend to submit to this Court's jurisdiction or to waive any right to challenge jurisdiction and/or improper service. To the contrary, Oron intends to challenge jurisdiction in opposition to plaintiff's motion for preliminary injunction and by way of a motion to dismiss the complaint. The law provides that an opposition to a motion for preliminary injunctive relief in circumstances such as those present here does not constitute a waiver of defenses to jurisdiction or service. *See, e.g., Hendricks v. Bank of America, N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (finding that the defendant had not waived its venue and personal jurisdictional defenses because it had raised them "in its first responsive pleading," which was its response to plaintiff's preliminary injunction motion); *Bear Stearns Cos. Inc. v. Lavalle*, 2000 WL 34339833 at *2 (N.D. Tex.) (same). *Cf. Bautista-Perez v. Mukasey*, 2008 WL 314486 (N.D. Cal. 2008) (citing *Hendricks* and finding waiver of venue objection because defendant did not raise it in its preliminary injunction opposition).

[2] If the motion for preliminary injunction is denied, there will not be any issue of Oron having access to funds to defend itself. If the motion is granted, Oron will make a supplemental request for access to additional funds to defend itself on the merits.

stored on Oron's computer servers. Very little of Oron's business comes from the United States and Plaintiff's videos comprise an infinitesimal portion of the data that was stored by users on Oron's servers. Oron contends that the Plaintiff's suit lacks merit on a number of grounds, and is confident that it will establish that as this case proceeds.

Nevertheless, without notice to Oron and without giving Oron an opportunity to be heard, Plaintiff obtained a Temporary Restraining Order ("TRO") freezing all of Oron's assets. If unmodified, the TRO threatens to prevent Oron from paying its outstanding legal bills, defending itself in this action, or filing a notice of appeal in the Nevada action.

To be clear, Oron believes there are ample grounds to deny Plaintiff's request for a preliminary injunction freezing its assets, and intends to fully address those grounds in its answer to the Court's Order to Show Cause. Among the defenses to a preliminary injunction are (a) the fact that this Court lacks personal jurisdiction over Oron; (b) the lack of irreparable harm justifying preliminary injunctive relief (indeed the Oron.com website has been down for some time); (c) the fact that asset-freezing injunctions are not proper to secure money damage recovery, and freezing all of Oron's assets is not reasonably related to any equitable remedies to which Plaintiff might be entitled if it prevails; (d) the fact that Oron has not fraudulently transferred any assets as Plaintiff alleges, it has merely transferred funds from its payment processor to its own bank account in Hong Kong, where Oron resides; and (d) the unlikelihood that Plaintiff will prevail on the merits of its copyright infringement claims (including the applicability of the safe harbor provisions of the Digital Millennium Copyright Act).

The instant motion, however, seeks only very narrow relief. Under this Court's present TRO, Oron has been blocked from paying the counsel who will represent it in this action for services already rendered in a related action, and under the TRO Oron does not have access to funds to pay for its representation in this case. Oron simply seeks the ability to pay its lawyers, at least until this Court rules on the preliminary injunction motion. Not only is that request reasonable in scope, it is supported by case law holding that a defendant faced with an asset freezing injunction should, except in exceptional circumstances not present here, be permitted access to funds in order to defend itself.

## II.     BACKGROUND

While Oron will resist the temptations to address all of the numerous inaccuracies and misstatements contained in the allegations of the Plaintiff's pleadings, a brief statement of factual background is appropriate here.

### A.     Factual Background

Defendant FF Magnat Limited ("Oron") is a legitimate business located in Hong Kong, which owns the domain name, Oron.com. Until recently, Oron provided file sharing and data storage services throughout the world via its website, Oron.com.  Like well-known "cloud services" offered by such companies as Apple ("iCloud"), Amazon, Google, Hewlett Packard and DropBox, Oron offered its users the ability to upload and store large amounts of data on remote and secure servers. Oron assigned a unique URL web address to the user's data for access purposes.  However, the user had complete control over his or her documents and files and made the decision whether to share those documents and files with others.  That is the business model Plaintiff is attacking in this action. Yet that attack, including Datatech's false and disparaging allegations of "piracy", "theft" and "conspiracy," is based on little more than Plaintiff's misstatement of the relevant facts.

Datatech alleges that it "produces, markets and distributes adult entertainment products, including Internet website content, videos, DVDs, photographs, etc. under various brands." (Compl., ¶ 4.) Datatech says that third persons have stored some of its content on Oron's servers without Datatech's permission.

As noted, Oron.com was simply a file sharing system.  Oron provided those services through a variety of servers maintained by various hosting providers.  However, as a result of an asset freeze issued in a nearly identical lawsuit filed in late June 2012 by another pornography producer,[3] Liberty Media Holdings LLC, Oron could not access funds to pay its hosting providers and was forced to shut down its website last month. As a result, the vast amount of legitimate data that Oron's

---

[3] On June 20, 2012, Liberty Media filed a complaint in the United States District Court for the District of Nevada alleging that Oron had violated federal copyright laws by reproducing or distributing Liberty Media's copyrighted works via its website, Oron.com, and seeking monetary and injunctive relief.  *See Liberty Media v. FF Magnat Ltd.,* Case No. CV 2:12-cv-01057 GMN.

3

DEFENDANT FF MAGNAT LIMITED'S MOTION FOR PARTIAL RELIEF
FROM TEMPORARY RESTRAINING ORDER
CASE NO. C-12-4500 CRB

customers had stored on Oron's service was irretrievably lost.

When in operation, Oron's file storage system allowed anyone to upload and store files. Oron strictly maintained the privacy of its customers. It did not index the materials which were uploaded and it maintained no catalogue or search function within the website. For the storage services that it offered, Oron charged its customers a monthly fee if they chose to use its premium services of faster uploading/downloading and more and longer storage. Visitors to Oron.com, whether for free or as paying premium customers, did not have access to other users' materials. The individual who initially uploaded and stored his or her material had the sole control over the material which they uploaded and stored and decided whether to share any of that material with anyone else. Oron was not involved in any decision by its customers to share anything with anyone else. Notably, this was not a "peer to peer" system like Napster or Grokster, which have been held to run afoul of the copyright laws. Oron played no active role in the uploading and sharing of material between its customers and it did not "publish" anything, contrary to the allegations of the Complaint.

Oron offered its file storage services to individuals throughout the world. The vast majority of its users were not from the United States. In fact, it can be determined from publicly available information, such as WHOIS domain tools (*see* Site Profile on http://whois.domaintools.com/oron.com), that only 13.4% of Oron's visitors to its website came from the United States. The majority of its visitors came from Europe and Asia. Moreover, the extent to which Plaintiff's files were stored on Oron's servers was extremely small. It is estimated that Plaintiff's files constituted less than one-tenth of one percent of all the data stored on Oron.com.

**B.     Procedural History**

On June 20, 2012, Liberty Media Holdings LLC ("Liberty Media"), filed a complaint in the United States District Court for the District of Nevada alleging that Oron had violated federal copyright laws by reproducing or distributing Liberty Media's copyrighted works via its website. *See Liberty Media v. FF Magnat Ltd.,* Case No. CV 2:12-cv-01057 GMN (D. Nev.), the Hon. Gloria Navarro presiding. That same day, Liberty Media brought an ex parte motion for a TRO, alleging that that Oron had "already taken affirmative steps to move assets beyond the court's reach in order

to frustrate any order the court may issue." However, Liberty Media presented the court with no admissible evidence to support its request for injunctive relief, nor any evidence that Oron had done anything improper whatsoever with its own assets. Instead, Liberty Media relied solely upon a declaration of its litigation counsel, which was based upon information and belief rather than personal knowledge. The only "evidence" that Liberty Media presented was an unauthenticated and heavily-redacted email obtained from an unspecified third party of a single legitimate and routine transfer of Oron's funds in the amount of HKD 852,278.58, from its PayPal account to its bank in Hong Kong. It is, of course, normal for an internet business to transfer funds from its payment processors to its bank account.

Nevertheless, without affording Oron notice or an opportunity to be heard, on June 21, 2012, Judge Navarro entered a TRO freezing all of Oron's assets pending the hearing on Liberty Media's request for a preliminary injunction. That hearing, however, never occurred. Instead, Judge Navarro entered judgment enforcing a settlement agreement that the parties were negotiating, and dismissed the case. On August 27, 2012, she entered an order "unfreezing" Oron's assets (save and except for a specific reserve of $200,000 to be available for any attorneys' fees she might award in the case).[4]

Undoubtedly not by coincidence, the very next day, Datatech filed its complaint in this action, which is nearly identical to the complaint filed in the *Liberty Media* action. It alleges that Oron has violated federal copyright laws by reproducing or distributing Plaintiff's copyrighted works via its website, Oron.com, and seeks monetary and injunctive relief. Also on August 28, Datatech filed its Ex Parte Application for Temporary Restraining Order ("Motion"), without notice to Oron or defendant Stanislav Davidoglov (collectively, where appropriate, "Defendants"). In that

---

[4] Liberty Media also instituted legal proceedings against Oron in Hong Kong and, by falsely alleging that Oron was moving assets from the United States to Hong Kong and converting those assets to gold bullion, secured the extension of a *Mareva* injunction freezing "up to US $3,000,000" of Oron's assets in Hong Kong, excepting amounts to be used for legal fees and ordinary business expenses. However, Oron subsequently obtained a letter from its bank, HSBC, confirming that all references to "Gold/Exchange Debit" on Oron's bank statements were to foreign currency transactions, and that Oron had not bought or sold any gold through HSBC. (Lieberman Decl., ¶ 4, Ex. A.) Thus, there was nothing mysterious about the funds being transferred to Hong Kong – which is where Oron and its bank are located – and there was no conversion of assets to gold at all.

motion, Datatech argued that a TRO was appropriate because Judge Navarro had issued one in the *Liberty Media* action, and because the judge in Hong Kong had concluded that Oron had transferred funds from the United States to Hong Kong and had converted them to "gold." (Motion for TRO at 1:6-19). Significantly, in its papers, Datatech did not advise this Court that:

- Oron had raised serious issues with respect to the propriety of the TRO issued in the *Liberty Media* action, including legal arguments against an injunction merely to secure a potential monetary recover and factual arguments that the sole piece of evidence presented in support of the TRO (an email showing a single, routine transfer of funds from PayPal to Oron's bank in Hong Kong) was insufficient to show any intent to "dissipate" assets; or

- HBSC had issued a letter conclusively stating that Oron had not converted any assets to gold.

Having been given only a limited and one-sided presentation of facts, on August 28, 2012, Your Honor issued a TRO (ECF Docket 9, the "Order") freezing all of Defendants' assets pending the hearing on Plaintiff's request for a preliminary injunction, including all assets in any U.S. bank or financial institution, and any funds held for Oron by PayPal, Inc., CCBill, LLC, and AlertPay. The Court further enjoined Defendants "from disgorging or dissipating any fund, property, domain names, or other assets until further notice."[5] *Id*. at 2-3. Finally, the Court ordered Plaintiff to immediately serve its complaint, motion papers, and the Court's Order, and set a September 11, 2012 hearing on the request for a preliminary injunction. Defendants are currently required to file their answering papers by 5:00 PM on September 4, 2012. Oron is requesting partial relief from the TRO to permit it to do so.

/ / /

/ / /

---

[5] The Court stated that the Order "does nothing more than prohibit Defendants from fraudulent transfers and compels that they unwind those in which they have already engaged." However, the broad language that Defendants may not dissipate any funds, read literally, goes further and prevents Defendants from spending any money for any legitimate purpose.

### III.   ARGUMENT

**A.   The Court Should Modify the Temporary Restraining Order to Allow Defendant Access to Funds In Order to Pay the Legal Fees and Costs Associated With Its Defense of This and an Earlier Lawsuit**

As written, the Court's Order prevents Oron from being able to access the funds in its accounts with various banks and payment services, including PayPal.  Not only does that Order require those financial institutions and payments services to "freeze" any assets in Oron's accounts, but it also enjoins Oron from "disgorging or dissipating any funds, property, domain names, or other assets until further notice." (Order at 3:12-13.)  Read literally, the Order prohibits Oron from paying attorneys' fees or legal costs to defend itself in this or any other action, even were it able to have access to funds.

Moreover, under the terms of the Order, Oron is not permitted to withdraw the funds necessary to pay its counsel for work already performed in the *Liberty Media* case, even though the district court judge in that case issued an order releasing all of Oron's funds in excess of $200,000 to cover any potential attorneys' fee award in that case.

It is respectfully submitted that the Court should modify the Order to permit Oron to transfer funds from its PayPal account to the trust account of Oron's outside counsel, Greenberg & Lieberman, LLC, and to permit Oron to use those funds to pay the legal fees incurred in the defense of this action as well as pay fees incurred in the defense of the *Liberty Media* action.

### 1.   Ninth Circuit Precedent Supports Oron's Request

The law in the Ninth Circuit and elsewhere addressing asset-freezing injunctions supports Oron's request.  For example, in *Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988), the Ninth Circuit upheld a preliminary injunction enjoining the Marcoses from disposing of their assets.  In balancing the relative hardships to determine the propriety of the injunction, the Court relied upon the fact that the district court had provided that the Marcoses could use their assets "to cover normal living expenses and legal fees." *Id*. at 1362.

The Ninth Circuit followed that holding more recently in *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009).  The *Johnson* court upheld a challenge to a district court's asset freezing

injunction because the injunction was limited to the assets in the defendant's possession in which the plaintiffs had an equitable interest, and because the injunction expressly allowed assets to be used for "normal living expenses and legal fees." *Id*. at 1085-1086; *see also Fidelity National Title Insurance Company v. Castle*, 2011 WL 5882878 (N.D. Cal., Nov. 23, 2011 ) (relying on *Johnson v. Courtier* to fashion asset freezing injunction that allowed defendant to use personal funds to cover living expenses).

Similarly, in *Federal Savings & Loan Insurance Corp. v. Dixon*, 835 F.2d 554 (5th Cir. 1987), the Fifth Circuit held that an asset-freezing injunction that allowed individual defendants only $3,500 per month for living expenses and legal fees was improper because it did not allow enough money for an adequate defense. As the Fifth Circuit explained:

> This suit was brought to establish the defendants' wrongdoing; the court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves. The basis of our adversary system is threatened when one party gains control of the other party's defense as appears to have happened here. Thus we conclude that some kind of allowance must be made to permit each defendant to pay reasonable attorneys' fees if he is able to show that he cannot pay them from new or exempt [i.e., unfrozen] assets . . . ."

*Id*. at p. 565 (citation omitted).[6]

Cases in the Ninth Circuit and elsewhere have also held it appropriate to allow a business entity defendant to pay necessary business expenses out of frozen assets. *See, e.g., Securities and Exchange Commission v. Hickey,* 322 F.3d 1123, 1131 (9th Cir. 2003) (injunction upheld where "under the terms of the freeze order, legitimate corporate business expenses may be paid from frozen assets…"); *United States v. Brown,* 988 F. 2d 658 (6th Cir. 1993) (district court allowed defendant to use frozen funds for business expenses; Sixth Circuit accepted that but remanded for district court to ensure only funds that plaintiff might ultimately recover were frozen); *Federal Trade Commission v. QT, Inc.,* 467 F.Supp.2d 863 (N.D. Ill. 2006) (defendants allowed to pay out of frozen assets

---

[6] While there is some authority that, in appropriate cases, a district court has discretion to forbid or limit payment of attorneys' fees out of frozen assets, *see, e.g., Commodity Futures Trading Commission v. Noble Metals International, Inc*., 67 F.3d 766 (9th Cir. 1995), the cases so holding have involved circumstances going far beyond those presented in this case, and are thus inapposite.

necessary business expenses and legal fees); *Securities and Exchange Commission v. Dodwell,* 2002 WL 236687 (W.D. Va. 2002) (court grants request to modify freeze order to allow for payment of ordinary business expenses).

### 2. The Request Is Reasonable Because The Complaint Raises Numerous Complex Issues and Thus Preparation of Oron's Defense Will Require Significant Legal Expense

Oron's request should also be granted because it is reasonable in scope, and seeks only the release of sufficient funds to permit Oron to pay its counsel for past services performed and to respond to Plaintiff's request for a preliminary injunction in this action. That will be no small task. In order to prevail on its request for a preliminary injunction, Plaintiff is obligated to demonstrate, *inter alia*, a likelihood of success on the merits of its claims. Yet as described below, the complaint in this action raises a host of complex legal issues, each of which impacts Plaintiff's ability to make such a showing. Consequently, in order to prepare an answer to the Court's Order to Show Cause on Plaintiff's request for a preliminary injunction, Oron's counsel will be required to conduct extensive factual and legal research into each of the following issues in order to prepare Oron's answering brief.[7] Based on the amount of attorneys' fees expended in defending the *Liberty Media* action up through the filing of its opposition to plaintiff's motion for preliminary injunction, Oron anticipates that it will need to expend approximately $150,000 to oppose and argue a similar motion here.[8] (Lieberman Decl., ¶ 3.)

#### a) Jurisdiction

As noted above, Oron is specially appearing for purposes of this motion and intends to fully contest whether this Court has jurisdiction to enter any order concerning Oron or its assets. The complaint contends that Oron is subject to personal jurisdiction under the California long arm statute, and that Oron has sufficient contacts with the United States for this Court to find personal

---

[7] Oron intends to address each of these issues in greater detail in its answer to the Court's Order to Show Cause. In addition, Oron reserves the right to address additional issues in that answer.

[8] Although Oron filed an opposition to Liberty Media's motion for preliminary injunction, the case was dismissed before Liberty Media's reply brief was due. There was no need in that case to review the plaintiff's reply brief, conduct additional research, or to prepare for and attend a preliminary injunction hearing.

jurisdiction exists. Oron, however, is a Hong Kong corporation, which receives the majority of its income from customers in Europe, Asia and Russia. Contrary to the allegations of the complaint, less than 14% of Oron's online traffic is from the United States. Moreover, none of Oron's employees or officers is a United States resident. Given these and other facts, the issue of personal jurisdiction will need to be analyzed in detail in Oron's opposition to the motion for preliminary injunction.

### b)   No Basis for Preliminary Injunction

Oron also needs to pay legal fees to address the legal basis for an asset freeze. There are two ways a federal court can freeze a defendant's assets in a civil case. First, under Federal Rule of Civil Procedure 64, the court can use remedies such as attachment that are available under the law of the state where the court is located. The plaintiff has not requested such relief.

Second, the court in appropriate cases can use its equitable power to issue a preliminary injunction to maintain the status quo. However, the circumstances which such injunctions are appropriate are very limited. The legal issues in this area will require careful examination in the opposition to the motion for preliminary injunction. For example, the United States Supreme Court held in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), that a district court has no authority to issue a preliminary injunction freezing a defendant's assets in connection with a claim for money damages. The Court stressed the historical principle that an unsecured creditor has no prejudgment rights – at law or in equity – in the property of a debtor. 527 U.S. at 328-330. As the Supreme Court explained:

> The remedy [of a preliminary injunction freezing assets] sought here could render Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance. Why go through the trouble of complying with local attachment and garnishment statutes when this all-purpose prejudgment injunction is available?

*Id*. at 330-331. The Court warned of allowing a situation of creditors racing to the courthouse to freeze assets in a way that could prove "financially fatal" to debtors. *Id*. at 331.

Another issue that will be addressed is that the preliminary injunction sought here is not limited to funds or property that the Plaintiff contends should be turned over to Plaintiff if it prevails.

Rather, Plaintiff seeks a preliminary injunction to freeze all of Oron's assets, whatever they may be and wherever they may be located, with no evidence that the assets should belong to the Plaintiff or are in any way involved in this case. As indicated above, it is estimated that less than one-tenth of one percent of the files stored on Oron's servers are Datatech's materials. The remaining 99.9% of Oron's business involves users whose files have nothing to do with Datatech and for whom no allegations of copyright infringement have or can be made. The Ninth Circuit has made clear that a district court "cannot issue a preliminary injunction to freeze assets of a defendant that are unrelated to the case to ensure the defendant will have money to pay a future judgment." *In re USA Commercial Mortgage Co.*, 397 Fed. Appx. 300, 306 (9th Cir. 2010) (citing *Grupo Mexicano*, 527 U.S. at 333).

Moreover, even in cases where a preliminary injunction to freeze assets might be proper in order to maintain the status quo so that the court can afford final injunctive relief, the barrier to obtaining such an injunction is a high one.

> Even under the more lenient standard for claims seeking equitable relief…[the plaintiff] would have to show a 'likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted. Courts have construed this standard narrowly, only exercising their inherent authority to freeze assets where there is considerable evidence of likely asset dissipation. . . . Certainly, every creditor would like to freeze its alleged debtor's assets before proving its claims, increasing leverage in settlement negotiations and the chances of collecting any judgment. In the typical case, however, such an imposition on the alleged debtor and the courts is not justified.

*Allstate Insurance Co. v. Baglioni*, No. CV 11–06704 (DDP), 2011 WL 5402487, *2 (C.D. Cal., November 8, 2011) (citations omitted). The *Allstate* court denied a preliminary injunction even though there was evidence of a transfer of property that was "quite possibly fraudulent." *Id*. Here, on the other hand, Plaintiff presents only two pieces of "evidence" to support its claim that Oron is fraudulently "dissipating" its assets. The first is a copy of a heavily redacted email, reportedly obtained by unidentified means by a "third party" and then given to an attorney in another case, that reflects a transfer of funds from Pay Pal to Hong Kong – where Oron is domiciled. (*See* Pl.'s Request for Judicial Notice, Declaration of Marc J. Randazza, ¶ 4 & Ex. C). There is no evidence

that this transfer, if it occurred, was anything other than a transfer made in the ordinary course of Oron's business, and it certainly does not justify the extraordinary relief of freezing all of Oron's assets. Again, this issue will require extensive legal and factual analysis for purposes of Oron's response to Plaintiff's motion for preliminary injunction.

The second piece of "evidence" is a bank statement from HBSC, Oron's bank in Hong Kong, which Datatech's attorney conclusorily states "clearly shows that FF Magnat transfers its assets into gold." (Sperlein Decl., ¶ 4 & Ex. B.) However, as previously discussed, that is incorrect. In fact, as a representative of HSBC has confirmed, all references to "Gold/Exchange Debit" on Oron's bank statements are to foreign currency transactions; Oron has not bought or sold any gold through HSBC. (Lieberman Decl., ¶ 4, Ex. A.)[9]

### c)   Copyright Infringement Issues

The crux of this action is Plaintiff's claim that Defendants have infringed its copyrighted materials. Yet that claim raises numerous issues regarding whether Plaintiff can establish a likelihood of success on merits, all of which Oron needs the time and legal fees to present to the Court.

For example, there are serious questions whether one or more of the defendants can be held liable for copyright infringement (whether directly or indirectly) because the evidence will establish that they fall under the safe harbor provision of the Digital Millennium Copyright Act ("DMCA"). 17 U.S.C. § 512. Section 512(c) of the DMCA limits liability for "infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider" so long as the service provider meets various conditions described in sections 512(c) and (i). The evidence here – as compared to Plaintiff's unsupported accusations – will establish that Oron satisfies each of those conditions, and thus is

---

[9] Oron explained this fact and provided a copy of the HSBC letter to the *Liberty Media* court in connection with its Reply In Support of Emergency Motion for Disbursement of Additional Funds. Datatech's counsel has obviously scoured the record in the *Liberty Media* action and relied on pleadings, declarations and orders from that action in support of its motion for a TRO. It is therefore disturbing that the HBSC letter, which demonstrates that the Hong Kong court misconstrued Oron's bank statement, was not brought to this Court's attention in the course of the *ex parte* proceedings.

protected under the DMCA safe harbor provision. Indeed, the Complaint itself concedes that Oron has complied with the DMCA by registering a DMCA agent more than one year ago. At the same time, there are significant questions as to whether Plaintiff's alleged DMCA notices were sufficient to trigger the statutes take-down provisions. *See* 17 U.S.C. §§ 512 (c)(3).

Plaintiff's claims for contributory and vicarious infringement are similarly flawed. For example, Plaintiff has provided no admissible evidence that Oron had actual knowledge of any of the allegedly infringing activity, and thus cannot be liable for contributory infringement. *See e.g., Perfect 10 Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007). To the contrary, per the strict terms of service between Oron and its customers, Oron maintains the privacy of its clients' content. Nor has Plaintiff offered any admissible evidence that Oron exercised the requisite control over the alleged direct infringer and/or that Oron derived a financial benefit from the direct infringement. *Id*. at 1173 (a defendant "exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.") (citing to *Metro-Goldwyn-Mayer Studios, Inc. v. Groskster, Ltd.*, 545 U.S. 913, 930 (2005)).

Likewise, Plaintiff's claim for inducement of copyright infringement will fail. Plaintiff has not established that Defendants provided a service "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." *Grokster*, 545 U.S. at 936-937. "[M]ere knowledge of infringing potential or actual infringing uses would not be enough here to subject [a defendant] to liability." *Id*. at 937. To "establish inducement liability, it is crucial to establish that the distributors 'communicated an inducing message to their ... users,' the classic example of which is an 'advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations.'" *Perfect 10, Inc. v. Visa Int'l Service, Assoc.*, 494 F.3d 788 (9th Cir. 2007) (citing *Grokster*, 545 U.S. at 936-937). Here the evidence will establish that Defendants do not actively promote their service to commit copyright infringement, or that the service has no other legitimate use. To the contrary, the evidence will establish that the vast majority of its service is for proper purposes.

### d) Balance of hardships

Another factor to be considered in connection with the proposed preliminary injunction is the balance of the hardships that would be imposed should the preliminary injunction be entered. As described in detail above, an injunction would significantly prejudice Oron due to the limitations it would impose on Oron's ability to fund its legal defense, all without any finding of infringement on Oron's part.

### e) Lack of Irreparable Harm

In addition, there are also serious issues whether Plaintiff can establish irreparable harm. Although Plaintiff suggests that irreparable harm in copyright cases is presumed, *see* Motion at 6, that is not the law in this circuit. To the contrary, the Ninth Circuit has confirmed that irreparable harm is no longer presumed in copyright infringement cases. *See e.g., Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006)); *see also Skinvisible Pharmaceuticals, Inc. v. Sunless Beauty*, Ltd., 2012 WL 1032549, * 2-3 (D. Nev. March 27, 2012) (confirming same).

At the same time, Plaintiff has not presented any evidence to support its claim of irreparable harm. Plaintiff has not established by any admissible evidence that it has and/or will suffer any damages other than a monetary loss. Without more, that is not enough to establish irreparable injury. *See e.g., Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc*., 944 F.2d 597, 603 (9th Cir. 1991) (finding that "economic injury alone does not support a finding of irreparable harm, because such injury can be remedies by a damage award"). Moreover, Plaintiff waited years to bring suit and did so at a time when Oron and the alleged infringing files, are no longer accessible. Such a long delay undercuts Plaintiff's ability to prove irreparable harm. *See e.g., McDermott v. Amersand Pub.*, LLC, 593 F.3d 950, 964-65 (9th Cir. 2010) (no irreparable harm found given long delay in seeking injunction).

### f) Inadequacy of Bond

Finally, the Court's Order required Plaintiff to post a bond in the amount of $1,000. Yet at the same time, the Order freezes all of Oron's assets before any infringement has been proven.

Consequently, Oron will need to analyze and address the appropriateness of that bond should a preliminary injunction issue.

In light of the complexity of the legal issues that need to be addressed, and the reasonableness of Oron's limited request for access to funds to pay legal fees and costs, Oron respectfully requests that the TRO be modified to allow it to transfer funds to its counsel's trust account and to use those funds to pay legal fees and costs as requested herein.

## IV. CONCLUSION

For the foregoing reasons, Oron respectfully requests that the Court amend its Temporary Restraining Order to allow Oron to transfer $ 310,000 from its PayPal account to the trust account of Oron's outside counsel, Greenberg & Lieberman, LLC and to use those funds to pay the legal fees associated with its defense of this action and the *Liberty Media* action.

Dated:   August 30, 2012                         KRIEG, KELLER, SLOAN, ROMAN & HOLLAND LLP

By:   /s/
STAN G. ROMAN
Attorneys for Defendant FF MAGNAT LIMITED