1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KENNETH E. KELLER** (71450) kkeller@kksrr.com
**STAN G. ROMAN** (87652) sroman@kksrr.com
**MICHAEL D. LISI** (196974) mlisi@kksrr.com
**KRIEG, KELLER, SLOAN, ROMAN & HOLLAND LLP**
555 Montgomery Street, 17th Floor
San Francisco, CA  94111
Tel:     (415) 249-8330
Fax:    (415) 249-8333

Attorneys for Defendant FF MAGNAT LIMITED

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DATATECH ENTERPRISES, LLC,  a
Nevada Limited Liability Company,

             Plaintiff

      vs.

FF MAGNAT LIMITED d/b/a/ ORON.COM;
STANISLAV DAVIDOGLOV, and JOHN
DOE a/k/a/ ROMAN ROMANOV (an alias).

           Defendants.

Case No. C-12-4500 CRB

**DEFENDANT FF MAGNAT LIMITED'S
RESPONSE TO ORDER TO SHOW
CAUSE RE PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION**

Hearing:        September 11. 2012
Time:            10:00 a.m.
Judge:          Hon. Charles R. Breyer
Courtroom:   Courtroom 6 - 17th Floor

# TABLE OF CONTENTS

**PAGE(S)**

SUMMARY OF ARGUMENT ................................................................................................ S1-S3

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.      BACKGROUND ............................................................................................................. 1

        A.      Factual Background ............................................................................................ 1

                1.      The Parties ............................................................................................... 1

                2.      The Oron.com Website and Oron's Efforts to Stop Infringement ................... 1

        B.      Procedural History ............................................................................................. 3

II.     ARGUMENT ................................................................................................................... 4

        A.      A Preliminary Injunction Would Be Improper Here ...................................... 4

        B.      This Court Lacks Personal Jurisdiction Over Defendant .............................. 6

        C.      Plaintiff Cannot Show a Likelihood of Success on Its Copyright Claims ................ 9

                1.      Oron Is Entitled to the Safe Harbor Protection of the DMCA ...................... 9

                2.      Plaintiff Cannot Establish its Direct Copyright Infringement Claim ............ 12

                3.      Plaintiff Cannot Establish its Contributory Copyright (Inducement)
                        Infringement Claim ............................................................................... 13

                4.      Plaintiff Cannot Establish its Vicarious Liability Claim ............................ 13

        D.      Plaintiff Will Not Be "Irreparably Harmed" Absent the Requested Relief ............. 14

        E.      The Balance of the Equities Favors Denial of Plaintiff's Motion ........................... 14

        F.      Plaintiff Has Not Shown that an Injunction Is in the Public Interest ...................... 14

        G.      Even if the Court Finds that Preliminary Relief Is Warranted, the Proposed
                Injunction Should Be Modified ....................................................................... 15

        H.      If the Court Grants Plaintiff's Motion and Enters a Preliminary Injunction,
                Plaintiff's Bond Should Be Increased Significantly ..................................... 15

III.    CONCLUSION ............................................................................................................... 15

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ...................................................................... 14

*Allstate Insurance Co. v. Baglioni*,
   2011 WL 5402487 (C.D. Cal., November 8, 2011) ........................................ 5

*Bancroft & Masters, Inc. v. Augusta National, Inc.*,
   223 F.3d 1082 (9th Cir. 2000) .................................................................... 7, 8

*Be2LLC v. Ivanov*,
   642 F.3d 555 (7th Cir. 2011) .......................................................................... 8

*Bear Stearns Cos. Inc. v. Lavalle*,
   2000 WL 34339833 at *2 (N.D. Tex.) ............................................................ 1

*Burger King v. Rudzewicz*,
   471 U.S. 462 (1985) ........................................................................................ 9

*Calder v. Jones*,
   465 U.S. 783 (1984) ........................................................................................ 8

*Cf. Bautista-Perez v. Mukasey*,
   2008 WL 314486 (N.D. Cal. 2008) ................................................................ 1

*CoStar Group, Inc. v. LoopNet, Inc.*,|
   373 F.3d 544 (4th Cir. 2004) ........................................................................ 12

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) .......................................................................... 6

*Graduate Mgmt. Admission Council v. Raju*,
   241 F. Supp. 2d 589 (E.D. Va. 2003 ............................................................. 7

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999) ............................................................................... 1, 4, 5

*Hendricks v. Bank of America, N.A.*,
   408 F.3d 1127 (9th Cir. 2005) ........................................................................ 1

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
   174 F.3d 411 (4th Cir. 1999) ........................................................................ 15

*In re USA Commercial Mortgage Co.*,
   397 Fed. Appx. 300 (9th Cir. 2010) ........................................................... 1, 5

*Kerr Corp. v. North America Dental Wholesalers*,
   2011 WL 2269991 (C.D. Cal. 2011) ............................................................ 14

*Liberty Media Holdings LLC v. Serge Letyagin d/b/a Sunporno.com*,
   Case No. 11-62107-CV-WILLIAMS (S.D. Fla. 2011) .................................. 8

*Life Alert Emergency Response, Inc. v. LifeAlert Security, Inc.*,
   2008 WL 5412431 (C.D. Cal. Dec. 29, 2008) ............................................... 9

*Los Angeles Mem'l Coliseum v. Nat'l Football League*,
   634 F.2d 1197 (9th Cir. 2001) ...................................................................... 14

*Mavrix Photo, Inc., v. Brand Technologies, Inc.*,
   2011 WL 3437047, *6 (9th Cir. 2011) ....................................................... 1, 7

ii

*McDermott v. Amersand Pub.*, LLC,
 593 F.3d 950 (9th Cir. 2010) ............................................................ 14

*Mead Johnson & Co. v. Abbot Lab.*,
 201 F.3d 883 (7th Cir. 2000) ............................................................ 15

*MGM Studios Inc. v. Grokster, Ltd.*,
 545 U.S. 913 (2005) ................................................................... 2, 13

*NuboNau Inc. v. NB Labs, Inc.*,
 2012 WL 843503 (S.D. Cal. Mar. 9, 2012) ........................................ 9

*Pebble Beach Co. v. Caddy*,
 453 F.3d 1151 (9th Cir. 2006) ............................................................ 6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
 508 F.3d 1146 (9th Cir. 2007) .................................................... passim

*Perfect 10, Inc. v. CCBill LLC*,
 488 F.3d 1102 (9th Cir. 2007) ................................................... 2, 11

*Perfect 10, Inc. v. Visa Int'l Serv. Assoc.*,
 494 F.3d 788 (9th Cir. 2007) ..................................................... 2, 13

*Porche v. Pilot & Associates, Inc.*,
 2009 WL 688988 (9th Cir. 2009) ........................................................ 6

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
 907 F.Supp. 1361 (N.D. Cal. 1995) ............................................ 2, 12

*Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
 944 F.2d 597 (9th Cir. 1991) ..................................................... 3, 14

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) ................................................... 1, 7, 8

*Stormans v. Selecky*,
 568 F.3d 1109 (9th Cir. 2009) ......................................................... 15

*UMG Recordings, Inc. v. Shelter Capital Partners, LLC*,
 667 F.3d 1022 (9th Cir. 2011) .............................................. 2, 9, 10

*Viacom Int'l, Inc. v. YouTube, Inc.*,
 676 F.3d 19 (2nd Cir. 2012) ............................................................. 10

*Weinstein v. Norman M. Morris Corp.*,
 432 F.Supp. 337 (E.D. Mich. 1977) .................................................. 6

*Yakus v. U.S.*,
 321 U.S. 414 (1944) ........................................................................ 14

**Statutes**

17 U.S.C. § 201(d) ................................................................................. 12

17 U.S.C. § 204(a) ................................................................................. 12

17 U.S.C. § 512(c) ................................................................................. 10

17 U.S.C. § 512(c)(1) ........................................................................... 2, 9

17 U.S.C. § 512(c)(1)(A) .......................................................................... 9

17 U.S.C. § 512(c)(1)(B) ..................................................................... 9, 10

17 U.S.C. § 512(c)(1)(C) ........................................................................... 9

17 U.S.C. § 512(c)(2) ............................................................................. 12

iii

17 U.S.C. § 512(c)(3) ........................................................................................................... 9

17 U.S.C. § 512(i)(A) ........................................................................................................... 11

17 U.S.C. § 512(i)(B) ........................................................................................................... 11

Fed.R.Civ.P. 65(c) ................................................................................................................ 15

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. C-12-4500 CRB

Without intending to waive any defenses it has based on lack of personal jurisdiction, venue or improper service of the summons and complaint, Defendant FF Magnat Limited dba Oron.com ("Oron") responds to the Court's Order to Show Cause and opposes Plaintiff DataTech Enterprises, LLC's ("Plaintiff's") motion for preliminary injunction.[1]

### SUMMARY OF ARGUMENT

The preliminary injunction sought by Plaintiff should be denied for a number of reasons.

1. <u>The proposed injunction would be improper.</u>  The U.S. Supreme Court has made it clear that asset-freezing injunctions are not available to ensure that assets remain in place to satisfy a plaintiff's monetary damage claim. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), *In re USA Commercial Mortgage Co.*, 397 Fed. Appx. 300, 306 (9th Cir. 2010).  They are only available in limited circumstances to keep in place particular assets that may become the subject of equitable relief if the plaintiff prevails.  The injunction covers all of Oron's assets.  Plaintiff has provided no evidence that such assets bear any relationship to the minimal equitable relief to which Plaintiff could conceivably be entitled here.  Thus, an injunction freezing all of Oron's assets would be improper.

2. <u>The Court does not have personal jurisdiction over Oron.</u>  Oron is a Hong Kong company and Plaintiff has not alleged sufficient facts to demonstrate minimum contacts that Oron has had with the State of California.  *Mavrix Photo, Inc., v. Brand Technologies, Inc.*, 2011 WL 3437047, *6 (9th Cir. 2011),  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  Oron operated a website that could be accessed from anywhere in the world.  When

---

[1] Defendant Oron is specially appearing to address the possibility that its assets will be frozen by preliminary injunction.  Oron does not intend to submit to this Court's jurisdiction or to waive any right to challenge jurisdiction and/or improper service.  To the contrary, Oron intends to challenge jurisdiction in opposition to plaintiff's motion for preliminary injunction and by way of a motion to dismiss the complaint.  The law provides that an appearance in circumstances such as those present here does not constitute a waiver of defenses to jurisdiction or service.  *See, e.g., Hendricks v. Bank of America, N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (finding that the defendant had not waived its venue and personal jurisdictional defenses because it had raised them "in its first responsive pleading," which was its response to plaintiff's preliminary injunction motion); *Bear Stearns Cos. Inc. v. Lavalle*, 2000 WL 34339833 at *2 (N.D. Tex.) (same).  *Cf. Bautista-Perez v. Mukasey*, 2008 WL 314486 (N.D. Cal. 2008) (citing *Hendricks* and finding waiver of venue objection because defendant did not raise it in its preliminary injunction opposition).

Oron's website was in operation, less than 12 % of Oron's business was with users in the United States.  Under such circumstances, case law makes clear that this Court does not have personal jurisdiction over Oron.  Thus, Plaintiff has not demonstrated that it is likely to prevail in establishing jurisdiction.

       3.    <u>Plaintiff is not likely to prevail on its copyright claims</u>.  Congress has enacted specific legislation to provide a safe harbor for internet hosts like Oron on whose sites third parties post infringing materials.  The Digital Millennium Copyright Act ("DMCA") provides that if an internet host promptly removes infringing material when it becomes aware of it, the host is not liable for the infringement.  That is what happened here. Since Oron's inception it had a detailed program to deal with the removal of allegedly infringing content, and it is entitled to the safe harbor protection afforded by the DMCA.  17 U.S.C. § 512(c)(1); *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 667 F.3d 1022, 1037 (9th Cir. 2011).

Even if Oron did not qualify for the DMCA safe harbor (which it does), Plaintiff has failed to allege facts demonstrating it will likely prevail in establishing that Oron has violated the copyright laws. As a threshold issue, Plaintiff has not established that it is the owner of the copyrights at issue. Without ownership of an exclusive copyright, Plaintiff lacks standing to sue.  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1117 (9th Cir. 2007).  Moreover, Plaintiff has failed to establish that Oron acted with volition.  Without a finding of intentional conduct, Oron cannot be held directly liable for copyright infringement.  *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F.Supp. 1361, 1369-70 (N.D. Cal. 1995).

Plaintiff has also failed to establish Oron is contributorily liable for infringement or induced infringement.  Oron had no actual knowledge of any specific alleged infringement, and did not contribute to or induce the alleged infringement.  *Perfect 10, Inc. v. Visa Int'l Serv. Assoc.*, 494 F.3d 788, 795 (9th Cir. 2007); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007); *MGM Studios v. Grokster*, 545 U.S. 913 (2005).  The opposite is true.  Oron gave Plaintiff, through its agent, Porn Guardian, unfettered access to search for and take down allegedly infringing material.

Plaintiff also cannot establish that Oron is vicariously liable. *Grokster*, 545 U.S. at 930, n 9 Oron does not directly profit from the allegedly infringing activity, and it has no ability to control or

S-2

supervise the allegedly infringing activity of third party users.  *Perfect 10, Inc*, 508 F.3d at 1173.

4.   <u>Plaintiff has not demonstrated irreparable harm</u>.  The Oron.com website was shut down before this case was filed.  Thus, Plaintiff's claim is simply for money damages for past infringement – no injunction is appropriate for that.  *Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc*., 944 F.2d 597, 603 (9th Cir. 1991).   Plaintiff nevertheless maintains that it will be irreparably harmed by Oron "hiding" its assets so that Plaintiff will not be able to recover its damages if it prevails.  That theory fails both factually and legally.  Legally, it fails because it is improper to freeze assets solely to secure collection of money damages.  Factually, the Court should scrutinize the "evidence" that Plaintiff proffers to show the alleged hiding of funds.  First, Plaintiff relies on a single unauthenticated email, provided by an unidentified "third party," showing a transfer of funds from Oron's PayPal account in the United States to Oron's bank in Hong Kong. (Plaintiff's Request for Judicial Notice ("RJN"), Ex. A). PayPal was one of Oron's payment processors.  Oron is a Hong Kong business and maintains its bank accounts there, and thus the transfer of funds from PayPal to Oron's Hong Kong banks is part of the company's ordinary course of business.  (Stanislav Decl. filed herewith, ¶ 20).   Plaintiff also relies on a statement of a Hong Kong court that, based on certain HSBC bank records, it appeared to the court that Oron was converting its funds to gold.  However, as Oron's bank subsequently made clear, the Hong Kong Court misread Oron's bank records and there was no purchase of gold.  (*Id.*, ¶ 21, Ex. E).

5.   <u>The balance of hardships does not and cannot favor Plaintiff</u>.  At most, Plaintiff has a very limited damage claim for some past infringement of its pornographic films if it can establish that Oron knew of the infringement.  By contrast, if this injunction is granted, Oron's already crippled multimillion dollar business will be completely destroyed.

For all of these reasons, it is respectfully submitted that a preliminary injunction should not issue.  If for some reason the Court is inclined to order injunctive relief, it should be limited to assets of Oron to which Plaintiff might ultimately be found entitled on equitable grounds (not damages), should be fashioned in a way that will allow Oron to continue to conduct its business and defend itself until proven to have done something wrong, and should be conditioned upon the posting of a bond sufficient to compensate Oron for the losses it will have suffered if Plaintiff does not prevail.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.       BACKGROUND

### A.       Factual Background

#### 1.       The Parties

Oron was a file storage company located in Hong Kong that, until recently, provided data storage on the internet to individuals worldwide.   Oron owns the domain name, Oron.com. (Stanislav Decl., ¶ 2).  Like "cloud services" offered by such companies as Apple ("iCloud" and apple.me), Amazon, Google, Hewlett Packard and DropBox, Oron offered users the ability to upload and store large amounts of data on secure, remote servers.  The users, not Oron, had complete control over their stored data and decided whether to share their data with others.  (*Id.*).

Plaintiff is a producer, marketer and distributor of pornographic material, some of which third persons allegedly stored on Oron's servers without Plaintiff's permission.  Plaintiff claims to own the rights to various works produced by studios such as Raging Stallion, Falcon, Mustang and Jocks.  Plaintiff has not, however, produced any admissible evidence that it is the owner of the copyrights at issue.

#### 2.       The Oron.com Website and Oron's Efforts to Stop Infringement

Until it shut down prior to this lawsuit as a result of another asset freezing injunction described below, Oron allowed free storage and access to data on its website but charged a flat fee for its premium service, which allowed faster uploading and downloading and longer storage. (Stanislav Decl., ¶ 5).  Publicly available information, such as WHOIS domain tools, demonstrates that less than 12% of visitors to Oron's website came from the United States.  (*See* Site Profile, http://whois.domaintools.com/oron.com).  Thus, the overwhelming percentage of Oron's revenue, came from users outside of the U.S.  (*Id.* ¶ 6).

The files that Plaintiff claims were infringing were a miniscule percentage of Oron's website. When in operation, Oron had hundreds of millions of files on more than 70 high end servers with terabytes of hard drive space.   (*Id.* ¶ 7).  To use Oron's file sharing services, a customer would upload material to the oron.com website, where it was stored on servers that Oron leased.  Oron

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. C-12-4500 CRB

created a unique URL ("www.[address]") which allowed that subscriber to access and download the material.  A subscriber could choose to share the URL with others so that they could access the material, but Oron was not involved in such decisions.  Oron did not operate a "peer to peer" system like Napster or Grokster, which have been held to run afoul of the copyright laws.  Oron played no active role in uploading or sharing material on its website and did not publish anything.   (*Id*. ¶ 8).

Oron strictly maintained the privacy of its users.  It did not index the materials on its website or maintain any catalogue or search function.  Given the massive amount of data stored on its servers, it was impossible for Oron to continually search its users' private data for infringing material.  Oron would not have known whether material was infringing unless a copyright holder or someone else reported the abuse.  For example, a customer might have legally purchased a movie and uploaded it so that he could later watch it.  Although the material was protected by copyright, the subscriber did nothing illegal.  (*Id*. ¶ 9).

Oron was diligent in establishing safeguards to deal with potential copyright infringement.  Since Oron's inception, it had a program under the DMCA by which a copyright owner could report infringement, which material was promptly removed.   There was a "report abuse" link on the first page of Oron's website.  Offending material was deleted.  (*Id*., ¶ 10 & Exs. A, B; ¶ 13).  In addition, Oron's Terms of Service, also on the front page of the website, expressly told how to report infringement and provided an additional link to report abuse.  (*Id*., ¶ 11 & Ex. C, at ¶ 8.4.2 (16)).[2]

In addition to facilitating and responding to DMCA take-down notices, Oron assisted others, including Plaintiff, with their efforts to monitor for infringement.  Plaintiff appointed the organization Porn Guardian to submit take down notices on its behalf. (*Id*. ¶ 14, Bundell Decl.-TRO, ¶ 13).  Oron granted Porn Guardian a removal tool that enabled it to directly take down infringing material from Oron's website. (Stanislav Decl., ¶ 15).  Further, Oron blocked such material from

---

[2] On June 15, 2011, more than a year before this suit was filed, Oron registered an agent with the United States Copyright Office pursuant to the DMCA.  (*Id*., ¶ 12, Ex. D).  Plaintiff argues that this is evidence that Oron did not have a DMCA program in place prior to 2011.  However, since 2001, Oron removed infringing material pursuant to the DMCA whenever it received notice of abuse.  (*Id*. ¶ 13). As discussed below, what Oron did was sufficient to give it a safe harbor.

1   ever being uploadable again on Oron's servers.  (*Id.*, ¶ 16).[3]

2          Oron also had a strict "termination of repeat infringer" policy since its inception, and

3   terminated subscribers for repeated illegal activities of which Oron became aware.  (*Id.*, ¶ 17, Ex. C,

4   at ¶ 8.4.3).  Oron also had a process whereby a copyright holder could provide Oron with an MD5-

5   Hash identifier (a unique identification of copyrighted material, similar to a fingerprint) and Oron

6   would search its system to see if any such material had been uploaded and block it.[4]  (*Id.*, ¶ 18).

7          **B.     Procedural History**

8          On June 20, 2012, another pornography producer, Liberty Media Holdings LLC ("Liberty

9   Media"), filed a complaint in the United States District Court for the District of Nevada alleging that

10  Oron had distributed Liberty Media's copyrighted works on its website.  As here, Liberty Media

11  made an ex parte motion for a TRO alleging that that Oron had "already taken affirmative steps to

12  move assets beyond the court's reach in order to frustrate any order the court may issue."

13         Without affording Oron notice or an opportunity to be heard, on June 21, 2012, District

14  Judge Navarro entered a TRO freezing all of Oron's assets pending the hearing of a request for a

15  preliminary injunction.  That hearing, however, never occurred.  Instead, Judge Navarro entered

16  judgment enforcing a settlement agreement between Oron and Liberty Media and dismissed the case.

17  On August 27, 2012, she entered an order "unfreezing" Oron's assets (save and except for a specific

18  reserve of $200,000 to be available for any attorneys' fees she might award).

19         The day after Judge Navarro unfroze Oron's assets, DataTech filed its complaint in this case.

20  Also on August 28, DataTech filed its Ex Parte Application for Temporary Restraining Order

21  without notice to Oron.  Plaintiff argued that a TRO was appropriate because Judge Navarro had

22

23  [3] Plaintiff has conceded that Porn Guardian sent "takedown notices" on its behalf to Oron, and
    "removed" infringing material.  (Blundell Decl., ¶ 13; *See* Phinney Decl.-TRO, ¶¶ 1-3).  Plaintiff
24  cannot claim that Oron did not have a DMCA program in place.  Its agent, Porn Guardian, was *part
    of* Oron's DMCA program.   Moreover, Porn Guardian directly issues take down notices to
25  customers who post infringing material, and does so repeatedly for an infringing work.

26  [4] Porn Guardian did not always advise Oron when it directly removed infringing material for its
    clients such as Plaintiff. (Stanislav Decl. ¶ 19).  Thus, the declaration of Peter Phinney submitted by
    Plaintiff, which identifies over 1600 infringements by a user, is irrelevant without showing that Oron
27  knew of these acts of infringement on its massive website.  Moreover, Porn Guardian directly issued
    take down notices to customers who posted infringing material, and does so repeatedly for any one
28  infringing work. (*Id.)* The number of Plaintiff's alleged take down notices is necessarily duplicative.

3

issued one in the *Liberty Media* action, and because a judge in Hong Kong said it appeared that Oron had transferred funds from the United States to Hong Kong and had converted them to gold. (Motion for TRO at 1:6-19).[5]  In its TRO papers, Plaintiff did not advise this Court:

- that Oron had raised serious issues with respect to the propriety of the TRO issued in the *Liberty Media* action, including legal arguments against an injunction and factual arguments that the sole evidence  in support of the TRO (an email showing a routine transfer of funds from PayPal to Oron's bank in Hong Kong) was insufficient to show any intent to "dissipate" assets; or

- that Oron's bank had confirmed in writing that Oron had not converted any assets to gold.

On August 28, 2012, this Court issued a TRO (ECF No. 9, the "Order") freezing all of Defendants' assets pending the hearing on Plaintiff's request for a preliminary injunction.  The Court further enjoined Defendants "from disgorging or dissipating any funds, property, domain names, or other assets until further notice."  *Id.* at 2-3.  The broad language that Defendants may not disgorge or dissipate any funds, read literally, prevents Defendants from spending money for any legitimate purpose, including paying its attorneys to defend this action.

## II.     ARGUMENT

### A.     A Preliminary Injunction Would Be Improper Here

A district court may, in appropriate cases, use its equitable power to issue a preliminary injunction to maintain the status quo when necessary to allow a permanent injunction or equitable relief to be enforced.  However, the United States Supreme Court held in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) that a district court has no authority to issue a preliminary injunction freezing a defendant's assets in connection with a claim for money damages, which is what Plaintiff seeks here.  The *Grupo Mexicano* Court explained:

> The remedy [of a preliminary injunction freezing assets] sought here could render Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance.  Why go through the trouble of complying with local attachment and garnishment statutes when this all-purpose prejudgment injunction is available?

---

[5]  Liberty Media also instituted legal proceedings against Oron in Hong Kong and, by falsely alleging that Oron was moving assets from the United States to Hong Kong and converting those assets to gold, secured the extension of a *Mareva* injunction freezing "up to US $3,000,000" of Oron's assets in Hong Kong, except amounts to be used for legal fees and business expenses.

4

1    *Id.* at 330-331.  The Court warned against allowing creditors to race to the courthouse to freeze

2    assets in a way that could prove "financially fatal" to debtors.  *Id*. at 331.

3           The preliminary injunction sought here is not limited to funds or property that will be subject

4    to permanent equitable relief if Plaintiff ultimately prevails.  Rather, Plaintiff seeks a preliminary

5    injunction to freeze all of Oron's assets, with no evidence that such assets are in any way involved in

6    this case, and with no showing whatsoever that a complete asset freeze is reasonably related to

7    ensure whatever disgorgement of profits Plaintiff may recover for infringement of its pornographic

8    material.  A miniscule percentage of the data stored on Oron's servers could possibly have been

9    Plaintiff's materials.  Plaintiff's motion provides no evidence of how much profit Oron could have

10   made from infringement of Plaintiff's material.  The Ninth Circuit has made clear that a district court

11   "cannot issue a preliminary injunction to freeze assets of a defendant that are unrelated to the case to

12   ensure the defendant will have money to pay a future judgment."  *In re USA Commercial Mortgage*

13   *Co.*, 397 Fed. Appx. 300, 306 (9th Cir. 2010) (citing *Grupo Mexicano*, 527 U.S. at 333).

14          Even in cases where a preliminary injunction to freeze assets might be proper so that the

15   court can afford final injunctive relief, the barrier to obtaining such an injunction is a high one that

16   has not been met here:

17          Even under the more lenient standard for claims seeking equitable relief…[the
            plaintiff] would have to show a 'likelihood of dissipation of the claimed assets,
18          or other inability to recover monetary damages, if relief is not granted.  Courts
            have construed this standard narrowly, only exercising their inherent authority
19          to freeze assets where there is considerable evidence of likely asset dissipation. .
            . . Certainly, every creditor would like to freeze its alleged debtor's assets before
20          proving its claims, increasing leverage in settlement negotiations and the
            chances of collecting any judgment.  In the typical case, however, such an
21          imposition on the alleged debtor and the courts is not justified.

22   *Allstate Insurance Co. v. Baglioni*, 2011 WL 5402487, *2 (C.D. Cal., November 8, 2011) (citations

23   omitted).  The *Allstate* court denied a preliminary injunction even though there was a transfer of

24   property that was "quite possibly fraudulent."  *Id*.

25          Here, on the other hand, Plaintiff presents only two pieces of "evidence" to support its claim

26   that Oron is fraudulently "dissipating" its assets.  The first is a copy of an unauthenticated and

27   heavily redacted email, reportedly obtained by unidentified means by a "third party," that reflects a

28   transfer of funds from PayPal to Hong Kong – where Oron is domiciled.  (*See* Plaintiff's RJN, Ex.

5

A). There is no evidence that this transfer, if it occurred, was anything other than a transfer made in the ordinary course of Oron's business.  It certainly does not justify the extraordinary relief of freezing all of Oron's assets.  (*See* Stanislav Decl., ¶ 20).

The second piece of "evidence" is a bank statement from HBSC, Oron's bank in Hong Kong, which Plaintiff's attorney conclusory states "clearly shows that FF Magnat transfers its assets into gold." (Sperlein Decl., ¶ 4 & Ex. B.)  However, as Plaintiff knows – but failed to disclose to this Court – HSBC has confirmed that references in that bank statement to "Gold/Exchange Debit" are to foreign currency transactions; Oron has not bought or sold any gold through HSBC.  (Stanislav Decl., ¶ 21, Ex. E).

Plaintiff has failed to meet the high burden for any asset freezing injunction, much less one to freeze all of Oron's assets merely to protect funds to satisfy Plaintiff's minimal claims.

### B.    This Court Lacks Personal Jurisdiction Over Defendant

To show it is likely to succeed, Plaintiff must establish as a threshold matter that the court has jurisdiction over Oron.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  Plaintiff asserts Federal Rule of Civil Procedure 4(k)(2), under which Plaintiff must establish that 1) the claim arises under federal law; 2)  Oron is not subject to jurisdiction of any state's court of general jurisdiction; and 3) the court's exercise of jurisdiction comports with due process.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006).[6]

Here, Plaintiff cannot establish either general or specific jurisdiction over Oron because the exercise of jurisdiction over Oron in California would not comport with due process.  This Court does not have general jurisdiction over Oron, a Hong Kong corporation that primarily does business with internet users from Europe, Asia and Russia.  (Stanislav Decl. ¶ 4).  "The standard for establishing general jurisdiction is 'fairly high," … and requires that the defendant's contacts be of the sort that approximate physical presence….Factors to be taken into consideration are whether the

---

[6] Plaintiff also alleges that "[a]s a foreign defendant, Oron is subject to jurisdiction in any district." Complaint, ¶ 22 (citing 28 U.S.C. § 1391).  That statute, however, is a venue provision, and does not in any way create personal jurisdiction over Oron.  *See, e.g., Weinstein v. Norman M. Morris Corp.*, 432 F.Supp. 337, 339 (E.D. Mich. 1977) ("Section 1391(d), as its title indicates, is a venue statute and not a statute creating personal jurisdiction in federal district courts.").

6

defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters, Inc. v. Augusta National, Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000). Less than 12% of Oron's online traffic came from the United States at the time the website was forced to shut down, and the contacts Plaintiff alleges Oron has with California are insufficient to establish jurisdiction. (Stanislav Decl., ¶¶ 6, 22-24). None of Oron's employees, officers, directors or owners is a U.S resident.  (*Id*., ¶ 22). The website oron.com is not registered with any registrar within California and in fact, its current registrar (before being shut down) was located outside of the U.S.[7] (*Id*., ¶ 23).

Plaintiff suggests that because the www.oron.com website was accessible to residents of California and because Oron is alleged to have entered into contracts with businesses such as PayPal, minimum contacts are established. However, it has been held that a website that permits California residents, among all others in the world, to purchase products on-line is not sufficient to subject Oron to general jurisdiction. *See, e.g., Mavrix Photo, Inc., v. Brand Technologies, Inc*., 2011 WL 3437047, *6 (9th Cir. 2011) (defendants' "operation of an interactive website – even a 'highly interactive' website – does not confer general jurisdiction."). Likewise, having a relationship with an internet business such as PayPal falls far short of the exacting standard of general jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (defendant's contacts with forum, including use of California importers, California consulting company and California-based marketing company, and maintenance of website accessible in California, fell "well short of the 'continuous and systematic' contacts necessary to confer general jurisdiction).[8]

Second, this Court does not have specific jurisdiction over Oron. Oron has not conducted any business or had contacts in California that are sufficient to establish specific jurisdiction, and even if Oron had some insignificant contacts with California, Plaintiff's claims do not "arise out of" those forum related contacts. *Bancroft & Masters*, 223 F.3d at 1086. Courts have been careful "in

---

[7] In any event, registering a domain name with a U.S. company is insufficient to support personal jurisdiction over a website operator. *See Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 590 (E.D. Va. 2003).

[8] Moreover, Oron's relationship with PayPal is through its Singapore branch.  (Stanislav Decl., ¶ 24.)

resolving questions of personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *Be2LLC v. Ivanov*, 642 F.3d 555, 558-559 (7th Cir. 2011).  Moreover, the fact that Oron operated a website accessible by California residents does not establish specific jurisdiction because Plaintiff's claims do not arise out of that activity – there are no allegations that allegedly infringing material was loaded onto Oron.com by a resident of California.[9]

Finally, Plaintiff cannot establish specific jurisdiction over Oron by relying on the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984).  The express aiming requirement necessary for the "effects test" is satisfied when defendant is alleged to have engaged in wrongful conduct individually targeted at a plaintiff whom the defendant knows to be a resident of the forum state. *See Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d at 1087.  There is no evidence here that Oron had actual knowledge that infringing material had been uploaded onto its website, or that the party claiming to have exclusive rights to the copyrighted material was a resident of California. And without individual targeting, mere knowledge that a plaintiff resides in the forum state is not necessarily sufficient to confer jurisdiction, even if harm occurs in the forum state.  *Schwarzenegger,* 374 F.3d at 807.  In addition, the use of internet services based in California, such as PayPal, is not sufficient to demonstrate "express aiming" at California.   As one court has noted, "if the use of Google Analytics or the Google.com search engine . . . were sufficient to subject [defendant] to the jurisdiction of a California court for a dispute that is unrelated to Google, the limits on specific jurisdiction would be meaningless and California courts would be overwhelmed."  *Life Alert Emergency Response, Inc. v. LifeAlert Security, Inc.,* 2008 WL 5412431, n.2 (C.D. Cal. Dec. 29,

---

[9] A similar jurisdictional argument against another file sharing company, SunPorno, was recently rejected.  In *Liberty Media Holdings LLC v. Serge Letyagin d/b/a Sunporno.com*, Case No. 11-62107-CV-WILLIAMS (S.D. Fla. 2011), the plaintiff initially sought a TRO to freeze assets and prevent the transfer of defendant's domain names to a third party, although at the hearing it sought only an injunction concerning the domain names.  (*See* Request for Judicial Notice, filed herewith, Ex. A, at 2).  The allegations against SunPorno were very similar to the allegations that Plaintiff makes here.  (*Id.*, Ex. A at 1-2).  The district court denied the injunction, in part because the Plaintiff had not shown that SunPorno's conduct could, "in line with the Constitution, subject it to jurisdiction."  The court rejected the Plaintiff's argument that SunPorno's "considerable" web traffic originating from the United States (at that time, 15%) was sufficient to establish jurisdiction.  There was also no showing that SunPorno's website directly targeted users in Florida.  (*Id.*, Ex. A at 7-10).

2008).   These limited uses of highly popular internet services – services used by most modern retail businesses – do not establish specific jurisdiction in California.  *See NuboNau Inc. v. NB Labs, Inc.*, 2012 WL 843503 at *4 (S.D. Cal. Mar. 9, 2012) ("[T]he Court doesn't find that merely engaging Twitter and Facebook to promote one's business constitutes purposeful direction at California"); *see also Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

C.     **Plaintiff Cannot Show a Likelihood of Success on Its Copyright Claims**

1.     **Oron Is Entitled to the Safe Harbor Protection of the DMCA**

a)     **Oron Has Met the Conditions of Section 512(c)(1)**

Oron falls under the safe harbor provision of the DMCA, which limits liability copyright infringement "by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider…."  17 U.S.C. § 512(c)(1).  This safe harbor provision limits liability for both direct and secondary copyright infringement.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (9th Cir. 2007).[10]

To qualify for safe harbor protection of the DMCA, a service provider must meet three requirements.  First, it must not have actual knowledge of or be aware of the infringement, or if it does, it must quickly disable the material.  Second, it cannot receive a financial benefit directly attributable to the infringing activity in a case in which it has the right and ability to control the activity. Third, upon notification of a claimed infringement, it must expeditiously remove or disable the allegedly infringing material. 17 U.S.C. §§ 512(c)(1)(A), (B), (C).

Oron meets all three conditions.  First, the Ninth Circuit has made clear that knowledge of the infringement must be specific and actual, because the copyright holder, rather than the service provider, is in a better position to know whether material is infringing.  *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 667 F.3d 1022, 1037 (9th Cir. 2011).  Plaintiff has presented no

[10]  Plaintiff alleges that Oron is not eligible for DMCA protection because Oron had no registered agent for receiving notices of infringement and because it had no "effective repeat infringer policy". (Mot. At 6:21-24; Complaint, ¶ 34-36).  As discussed herein, Oron is entitled to DMCA protection.

9

1    evidence of Oron's actual knowledge or awareness of any infringement of Plaintiff's copyrighted

2    material other than that which was reported to Oron and which Oron (or Porn Guardian) removed.

3        The fact that Oron's users are able to upload copyrighted material is not enough to impute

4    knowledge to Oron.  As the Ninth Circuit has held, "if merely hosting [potentially protected]

5    material . . . with the general knowledge that one's services could be used to share unauthorized

6    copies of copyrighted material, was sufficient to impute knowledge to service providers, the § 512(c)

7    safe harbor would be rendered a dead letter: § 512(c) applies only to claims of copyright

8    infringement, yet the fact that a service provider's website contained copyrightable material would

9    remove the service provider from § 512(c) eligibility."  *UMG*, 667 F.3d at 1036-37.  Knowledge or

10   awareness alone does not disqualify the service provider from DMCA protection, so long as the

11   provider expeditiously removes or disables the material  *Viacom Int'l v. YouTube*, 676 F.3d 19, 30

12   (2nd Cir. 2012).  Plaintiff offers no evidence that Oron did not expeditiously remove such infringed

13   materials once given notice.  In fact, Plaintiff concedes that the materials were taken town either by

14   Oron or by Porn Guardian, which had direct access to Oron's servers.  (*See* Phinney Decl., ¶ 3).

15       Oron meets the second element.  There is nothing in this system that gives Oron the right and

16   ability to control the allegedly infringing conduct.  When a subscriber uploads material to the

17   website, Oron creates a unique URL which allows the subscriber, not Oron, to provide access to the

18   uploaded material.  (*See* Stanislav Decl., ¶ 8).  There is no index of materials, and the database is not

19   readily searchable.  (*Id*., ¶ 9).   It would be essentially impossible to "search" video files for

20   allegedly infringing content without actually viewing them.  Even if it could, Oron would not know

21   whether any uploaded material was being used without the copyright holder's permission.  Only the

22   subscribers control whether they infringe copyrights by sharing their URL so that others have access

23   to copyrighted material.  (*Id*.)  As such, Oron does not possess the "needed powers" to exercise the

24   type of "restraining domination" that § 512(c)(1)(B) requires for denying safe harbor eligibility.

25   *UMG Recordings, Inc*., 667 F.3d at 1041.   "A service provider's general right and ability to remove

26   materials from its services is, alone, insufficient."  *Id*. at 1043.

27       Nor has Plaintiff demonstrated that Oron directly benefitted financially from the allegedly

28   infringing activity.  That requires the service provider to derive "a direct financial benefit from the

infringement and have the right and ability to supervise the infringing activity." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1117 (9th Cir. 2007).  Hosting a website, sometimes for a fee – as Oron did here – is insufficient to show that the infringing activity was a "draw" for subscribers, and not just an added benefit, as is required.  *Id.* at 1117-1118.

Oron also satisfies the third safe harbor condition of Section 512(c)(1).  Once a DMCA notice was submitted to Oron, the infringing material was taken down.  (*See* Stanislav Decl., ¶¶ 10-13).  Plaintiff's agent, Porn Guardian also took down Plaintiff's material.  Plaintiff's motion provides no evidence that Oron knowingly ignored infringement of Plaintiff's material.  (*See* Stanislav Decl., ¶¶ 14-19; *see also* Phinney Decl., ¶ 3).

### b)    Oron Has Met the Conditions of Section 512(i)

To qualify under the safe harbor provision a service provider must also meet the requirements of section 512(i), namely, adopting a termination policy for repeat infringers, and not interfering with "standard technical measures."  17 U.S.C. § 512(i)(A), (B).

Oron satisfied both requirements.  First, Oron adopted a strict termination policy against repeat infringers.  (Stanislav Decl., ¶¶ 17-18, Ex. C, ¶ 8.4.3).   The terms of Oron's service agreement (which subscribers agreed to before entering the site) provided that:  "We have a policy of terminating, without notice and without recourse, accounts of subscribers or account holders who are repeat infringers of copyright based upon a suspicion on our part or a notice we receive regardless of any proof of infringement."  Oron rigorously implemented this policy.  Accounts of repeat infringers were blocked and terminated.  (*Id.*).[11] Second, Oron accommodated and did not interfere with standard technical measures.  To the contrary, Oron gave Plaintiff (though its agent Porn Guardian) direct access to Oron's servers to search for and take down infringing material.  (*Id.*, ¶ 14-16).

### c)    Oron Has Met the Conditions of Section 512(c)(2)

Under the DMCA, a service provider is also supposed to designate an agent to receive

---

[11] When Porn Guardian took down allegedly infringing materials from Oron's website, it did not always advise Oron of the alleged infringer's identity.  Therefore, in many instances Oron did not know of a repeat infringer. (*Id.*, ¶ 19). Thus, Plaintiff's claim that one alleged infringer uploaded infringing material over 1600 times is irrelevant, since Oron was never made aware of it.

1 notifications of claimed infringement.  The contact information is to be made available to the public

2 on its website, and provided to the U.S. Copyright Office. 17 U.S.C. § 512(c)(2).

3   Here, Oron had a DMCA program in place since its inception, and the "report abuse" and

4 "terms of service" links on the first page of the website clearly identified how and to whom to report

5 incidents of copyright infringement.  (*See* Stanislav Decl., ¶¶ 10-13, Exs. A, B).  While Oron did not

6 formally designate an agent with the Copyright Office until June 15, 2011 (*id.*, ¶ 12, Ex. D), the

7 absence of a registered agent prior to that time did not impede Plaintiff's ability to send DMCA

8 notices to Oron, and Oron gave Plaintiff's agent Porn Guardian authority to send "takedown notices"

9 to Oron on its behalf and to access to Oron's servers and directly remove infringing material.  (*Id.*,

10 ¶¶ 14-16; Phinney Decl. ¶ 3; Blundell Decl., ¶ 13).

11   Because Oron is entitled to the DMCA safe harbor protection, Plaintiff has not shown it will

12 likely prevail.

13    **2.**  **Plaintiff Cannot Establish its Direct Copyright Infringement Claim**

14   Even if the DMCA safe harbor provision did not apply, Plaintiff has not demonstrated that it

15 will succeed on the merits of its various copyright infringement claims. To establish a case of direct

16 copyright infringement, a plaintiff must show that 1) it owns the copyright for the allegedly

17 infringing material, and 2) that defendant violated at least one of the exclusive rights of the copyright

18 holder.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1159.  In addition, a "plaintiff must also

19 show volitional conduct on the part of the defendant in order to support a finding of direct copyright

20 infringement."  *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F.Supp. 1361,

21 1369-70 (N.D. Cal. 1995).  Plaintiff has established neither.

22   Here, Plaintiff has not shown that it is the owner of the copyrights at issue.  Plaintiff alleges

23 that it is the "current owner" of the copyrights based upon an alleged series of assignments and/or

24 purchases.  (Blundell Decl., ¶¶3-17; Exh A thereto).   Plaintiff has provided no evidence establishing

25 that it did in fact purchase the various companies that originally obtained the registrations, or that

26 any of the copyrights were ever assigned or exclusively licensed to it.    Transfers of exclusive rights

27 must be in writing.  Plaintiff has not proffered any such writing.  Without a valid assignment or

28 transfer of an exclusive right, Plaintiff has no standing to sue. 17 U.S.C. §§ 201(d), 204(a).

Nor can Plaintiff establish that Oron acted with the volition required for direct infringement liability.  There is no evidence that Oron chose or personally posted any of the infringing material, and Oron does not index or organize to allow users to find infringing materials.

### 3.    Plaintiff Cannot Establish its Contributory Copyright (Inducement) Infringement Claim

Plaintiff's effort to establish a claim for contributory infringement is equally unavailing.  A defendant "is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and 2) 'induces, causes, or materially contributes to the infringing conduct.'"  *Perfect 10, Inc. v. Visa Int'l Serv. Assoc.*, 494 F.3d 788, 795 (9th Cir. 2007).  In an Internet context, a computer system operator can be held contributorily liable if it had "*actual* knowledge" of "*specific* infringing material" and could, but did not, take simple steps to prevent further damage.  *Perfect 10, Inc. v. Amazon.com,* 508 F.3d at 1172 (italics in original) (citations omitted).

To establish a claim for inducement, Plaintiff must establish that Oron has taken affirmative steps to foster infringement, such as "advertising an infringing use.…"  *MGM Studios v. Grokster*, 545 U.S. 913, 936-937 (2005).  Mere knowledge is not enough.  "The inducement rule, instead, premises liability on purposeful, culpable, expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise."  *Id*.  Plaintiff provides no evidence that Oron actively promoted its service to commit copyright infringement.

### 4.    Plaintiff Cannot Establish its Vicarious Liability Claim

To establish a claim for vicarious copyright liability, a plaintiff must establish that the "defendant profits directly from the infringement and has a right and ability to supervise the direct infringer even if the defendant initially lacks knowledge of the infringement."  *Grokster*, 545 U.S. at 930, n 9.  A "defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so."  *Perfect 10, Inc*, 508 F.3d at 1173.  Here, Oron did not have the right or ability to supervise the direct infringement of Plaintiff's material.  Rather, it was the subscribers who uploaded material and controlled access to it. Nothing in that system gave Oron the right or ability to supervise allegedly infringing conduct.

Second, as discussed, Plaintiff has failed to establish that Oron profited directly from the

infringement.  Oron allowed free use or charged a fixed fee – it did not charge for specific uploads.

### D.   Plaintiff Will Not Be "Irreparably Harmed" Absent the Requested Relief

"[P]laintiffs may not obtain a preliminary injunction unless they can show that irreparable harm is likely to result in the absence of the injunction."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  Irreparable harm requires an inadequacy of legal remedies. *Los Angeles Mem'l Coliseum v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 2001).  Thus, the threat of lost revenue or lost sales, alone, will not warrant the issuance of a preliminary injunction.  *Id.*; *Kerr Corp. v. N. Am. Dental Wholesalers*, 2011 WL 2269991, *4 (C.D. Cal. 2011).

Plaintiff states that irreparable harm in copyright cases is presumed. (Motion at 8:5-6).  That is not the law in this circuit.  Irreparable harm is no longer presumed in copyright infringement cases.  *See e.g., Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011).   Plaintiff has not established by any admissible evidence that it has suffered any damages other than a monetary loss from alleged past copyright infringement.  That is not enough.  *See e.g., Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (finding that "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award").  Moreover, Plaintiff waited more than a year after the alleged infringement to bring suit.  Such a long delay undercuts Plaintiff's ability to prove irreparable harm. *See McDermott v. Amersand Pub.*, LLC, 593 F.3d 950, 964-65 (9th Cir. 2010) (no irreparable harm found given long delay in seeking injunction).

### E.   The Balance of the Equities Favors Denial of Plaintiff's Motion

Plaintiff cannot obtain a preliminary injunction unless it can establish that the balance of equities is in its favor.  *Winter*, 555 U.S. at 20.  Balancing the equities requires consideration of the relative hardship to the parties resulting from a decision to grant or deny injunctive relief.  *Yakus v. U.S.*, 321 U.S. 414, 440 (1944).  Here, as noted, there is no evidence that Plaintiff faces "irreparable harm" if the injunction is not entered.  By contrast, the potential harm to Oron – losing access to all of its funds for all purposes, including paying to defend this action– would be significant.

### F.   Plaintiff Has Not Shown that an Injunction Is in the Public Interest

This case involves a commercial dispute between private parties, and is not one in which a

14

1   public interest is prominent.  *Stormans v. Selecky*, 568 F.3d 1109, 1139 (9th Cir. 2009).  The public

2   interest is not served by permitting a plaintiff to freeze all of Defendants' assets based on nothing

3   more than the unproven allegations of a complaint.

4   **G.     Even if the Court Finds that Preliminary Relief Is Warranted, the Proposed**
        **Injunction Should Be Modified**

5

6       As discussed more fully in Oron's Motion for Partial Relief from Temporary Restraining

7   Order (ECF No.12), even if the Court were to find that Plaintiff is entitled to a preliminary

8   injunction, it should not enter an injunction in the form requested.  Rather, following the law in the

9   Ninth Circuit and elsewhere, any injunction should be modified to be limited to the specific

10  equitable relief that Plaintiff might be entitled to in this case, and should allow Oron access to its

11  funds for legal fees to defend itself.

12  **H.     If the Court Grants Plaintiff's Motion and Enters a Preliminary Injunction,**
        **Plaintiff's Bond Should Be Increased Significantly**

13      No "restraining order or preliminary injunction shall issue except upon the giving of security

14  by the applicant …."  Fed.R.Civ.P. 65(c); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d

15  411, 421 (4th Cir. 1999) (failure to require a bond upon issuing injunctive relief is reversible error).

16  "When setting the amount of security, district courts should err on the high side . . . [A]n error in the

17  other direction produced irreparable injury, because the damages for an erroneous preliminary

18  injunction cannot exceed the amount of the bond."  *Mead Johnson & Co. v. Abbot Lab.*, 201 F.3d

19  883, 888 (7th Cir. 2000).  Given the scope of the requested injunction, if the Court were to grant

20  order a preliminary injunction, Plaintiff should be required to post a bond of at least $3,000,000.

21                              **III.     CONCLUSION**

22      For the foregoing reasons, Oron respectfully requests that the Court deny Plaintiff's motion

23  for entry of a preliminary injunction.

24  Dated:  September 4, 2012                    Krieg, Keller, Sloan, Roman & Holland LLP

25

26                              By:  _____/s/Kenneth E. Keller_____
                                     KENNETH E. KELLER

27                                   Attorneys for Defendant FF MAGNAT LIMITED

28

---

15