**KENNETH E. KELLER** (CA Bar No. 71450)
**STAN G. ROMAN** (CA Bar. No. 87652)
**MICHAEL D. LISI** (CA Bar No. 196974)
**KRIEG, KELLER, SLOAN, ROMAN & HOLLAND LLP**
555 Montgomery Street, 17th Floor
San Francisco, CA  94111
 (415) 249-8330; FAX (415) 249-8333
kkeller@kksrr.com
sroman@kksrr.com
mlisi@kksrr.com

Attorneys for Defendant FF MAGNAT LIMITED

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATATECH ENTERPRISES, LLC,  a Nevada Limited Liability Company,<br><br>          Plaintiff<br><br>      vs.<br><br>FF MAGNAT LIMITED d/b/a/ ORON.COM; STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a/ ROMAN ROMANOV (an alias) and<br><br>        Defendants. | Case No. CV 12-4500 CRB<br><br>**DECLARATION OF DAVIDOGLOV STANISLAV IN SUPPPORT OF ORON'S RESPONSE TO ORDER TO SHOW CAUSE RE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Hearing:**    **September 11, 2012**<br>**Time:**       **10:00 a.m.**<br>**Judge:**      **Hon. Charles R. Breyer**<br>**Courtroom:**  **Courtroom 6 - 17th Floor** |

I, Davidoglov Stanislav, declare and state as follows:

1.      I am the owner of defendant FF Magnat Limited d/b/a/ Oron.com ("Oron").  I make this declaration in support of Oron's Response to Order to Show Cause re Plaintiff's Motion for Preliminary Injunction.  If called as a witness, I could and would so competently testify.

2.      Oron is a file storage company located in Hong Kong that, until recently, provided data storage on the internet to individuals worldwide. Oron owns the domain name, Oron.com, which was registered in 2001.  Oron offered its users the ability to upload and store large amounts of data on remote and secure servers, similar to other "cloud services" offered by such companies as Apple ("iCloud" and apple.me), Amazon, Google, Hewlett Packard and DropBox.  Oron's users, not Oron, had complete control over their stored data and to decide whether to share their data with others.

3.      Oron.com is simply a file sharing system.  Oron provided those services through a variety of servers maintained by various hosting providers, such as LeaseWeb.  However, as a result of an asset freeze issued in a nearly identical lawsuit in Nevada filed in late June 2012 by another pornography producer, Liberty Media Holdings LLC, Oron could not access funds to pay its hosting providers, and its website was shut down due to non-payment on August 1, 2012.   Oron is now no longer in operation due to the asset freeze.  Because the servers were shut down Oron's customers no longer have access any of their data or files.

4.      In addition to that Nevada lawsuit, Liberty Media also instituted legal proceedings against Oron in Hong Kong.  In that action, Liberty Media obtained a temporary restraining order freezing up to three million United States dollars of Oron's funds.   While the Hong Kong Order expressly allowed Oron to pay legal fees and business expenses, Oron's bank in Hong Kong nevertheless refused Oron access to its funds for as long as the Nevada TRO is in place.  Due to Oron's bank's uncertainty to the effect of the Hong Kong court's order, it has refused to disgorge any funds under any circumstances, thus leaving Oron without access to any funds in any country of any sort.

1

DECLARATION OF DAVIDOGLOV STANISLAV IN SUPPPORT OF ORON'S RESPONSE
TO ORDER TO SHOW CAUSE RE PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. CV 12-4500 CRB

5.      When Oron's business was operational, it allowed free storage and access to data on its website but charged a flat fee for its premium service.  That premium service allowed faster uploading and downloading and longer storage.  That is how Oron made its money, not through the infringement of anyone's copyrights, much less Plaintiff's.

6.      Oron offered its storage services to users throughout the world.  Publicly available information, such as WHOIS domain tools, demonstrates that less than 12% of visitors to Oron's website came from the United States.  (*See* Site Profile on http://whois.domaintools.com/oron.com). The majority of Oron's users were from Europe, Asia and Russia, and the overwhelming percentage of its revenue was derived from users outside of the United States.

7.      Plaintiff's files comprised a miniscule percentage of the data stored on Oron's website.   When in operation, Oron had hundreds of millions of files on more than 70 high end servers with terabytes of hard drive space.

8.      To use Oron's file sharing services, a customer would upload material to the oron.com website, where it was stored on servers that Oron leased.  Oron created a unique URL ("www.[address]") which allowed that subscriber to access and download the material.  A subscriber could choose to share the URL with others so that they could access the material, but Oron was not involved in such decisions.  Oron did not operate a "peer to peer" system like Napster or Grokster, which have been held to run afoul of the copyright laws.  Oron played no active role in the uploading or sharing of material on its website and did not publish anything.

9.      Oron strictly maintained the privacy of its users.  It did not index the materials on its website or maintain any catalogue or search function.  Given the massive amount of data stored on its servers, it was impossible for Oron to continually search its users' private data for infringing material (other than through the use of MD5 hash algorithms provided to it by the copyright owner). Oron would not know whether any particular material was, in fact, infringing, unless a copyright holder reported the abuse.  For example, a subscriber might have legally purchased a movie and uploaded it to the site so that he could later watch it while traveling.  Although the material might

2

DECLARATION OF DAVIDOGLOV STANISLAV IN SUPPPORT OF ORON'S RESPONSE TO ORDER TO SHOW CAUSE RE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. CV 12-4500 CRB

have been protected by copyright, the subscriber would have done nothing illegal.

10.     Oron was diligent in establishing safeguards to deal with potential copyright infringement.  Since  Oron's inception it had a program under the DMCA by which a copyright owner could report infringement.   There was a "report abuse" link on the first page of Oron's website.  Offending material was deleted.  True and correct copies of the front page of the oron.com website and the report abuse document (before it was shut down) are attached hereto as **Exhibits A and B.**

11.     In addition, Oron's Terms of Service, also on the front page of the website, expressly told how to report infringement and provided an additional link to report abuse.  A true and correct copy of Oron's Terms of Service (before the website was shut down) is attached hereto as **Exhibit C.**

12.     On June 15, 2011, Oron registered a specified agent with the United States Copyright Office pursuant to the DMCA.  The addition of the agent's physical address, insertion of a choice of law/venue provision and a limitation of liability clause have been the only substantive change to the Terms of Service since its inception.  A true and correct copy of that registration is attached hereto as **Exhibit D**.

13.     Since its inception, Oron has removed infringing material pursuant to the DMCA whenever it received notice of abuse.

14.     In addition to its policy of responding to DMCA take down notices, Oron has also assisted others, including Plaintiff, with their efforts to monitor infringement.

15.     Oron granted Porn Guardian a removal tool that enabled it to directly take down infringing material from Oron's website.   Upon information and belief, Porn Guardian used this tool and access for all of its clients.

16.     Prior to allowing final deletion of any material taken down by Porn Guardian, Oron had automated the running of MD5 Hash algorithms on all such material thus blocking any such material from ever being uploadable again on Oron's servers.  The latter two technical means

3

1    effectively blocked third parties from uploading repeat infringing content to Oron's servers.

2         17.   As stated in Oron's Terms of Service, ¶ 8.4.3, Oron has had a strict "termination of

3    repeat infringer" policy in place since its inception.  On many occasions, Oron has terminated

4    subscribers due to repeated illegal activities of which Oron became aware.

5         18.   In addition, Oron had a process whereby a copyright holder can provide Oron with an

6    MD5-Hash identifier (a unique identification of copyrighted material, similar to fingerprint) and

7    Oron would search its system to see if any such material has been uploaded, and if so, would block

8    it.

9         19.   Oron gave Porn Guardian unfettered access to its servers to take down allegedly

10   infringing material on behalf of Plaintiff.  In doing so, Porn Guardian took down allegedly infringing

11   materials from Oron's website.  Porn Guardian often did not advise Oron of the alleged infringer's

12   identity. Therefore, in many instances Oron did not and could not know if an alleged infringer was a

13   repeat infringer unless specifically advised.  In addition, Porn Guardian directly issued take down

14   notices to customers who posted infringing material, and did so repeatedly for any one infringing

15   work.

16        20.   In its Motion, Plaintiff claims that Oron was transferring cash from its Pay Pal bank

17   account to Hong Kong.  That claim is misleading at best.  PayPal is one of Oron's payment

18   processors.  As stated above, Oron is a Hong Kong business, and it maintains its bank accounts in

19   Hong Kong.  Transfers of funds from PayPal to Oron's Hong Kong banks are part of the company's

20   ordinary course of business.  The funds in the PayPal account that were transferred to Hong Kong –

21   which Plaintiff suggests were "fraudulent" - convert to only US $109,890.  That was a normal

22   business transaction and a not particularly large one considering the income the company had at the

23   time.  I did not give anyone outside the company access to this email.  It is unclear how Liberty

24   Media could have obtained that information unless it hacked Oron's email.

25        21.   Plaintiff also alleges that Oron converted its money into gold.  That is false.  Attached

26   is a true and correct copy of a letter from Oron's bank, HSBC, confirming that all references to

27

28

DECLARATION OF DAVIDOGLOV STANISLAV IN SUPPPORT OF ORON'S RESPONSE
TO ORDER TO SHOW CAUSE RE PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. CV 12-4500 CRB

"Gold/Exchange Debit" on Oron's bank statements are to foreign currency transactions; Oron has not bought or sold any gold through HSBC.  A true and correct copy of that letter is attached hereto as **Exhibit E.**

22.     None of Oron's employees, officers, directors or owners is a United States resident.

23.     The website oron.com is not registered with any registrar within California.  Rather, it is registered outside of the United States.

24.     Oron has not entered into any contracts with vendors in California (other than PayPal though through its Singapore branch and Payment Wall which specifically operates, among other places, in South East Asia), does not have a registered agent to accept service of process in California or the United States, does not advertise or solicit its business in California or the United States, and is not incorporated in California or the United States.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of September, 2012, at Chisinau, Moldova.

_____
DAVIDOGLOV STANISLAV

5

DECLARATION OF DAVIDOGLOV STANISLAV IN SUPPPORT OF ORON'S RESPONSE
TO ORDER TO SHOW CAUSE RE PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. CV 12-4500 CRB