**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11   DATATECH ENTERPRISES LLC,                    No. C 12-04500 CRB

12              Plaintiff,
                                                 **MEMORANDUM AND ORDER**
13      v.

14   FF MAGNAT LIMITED ET AL.,

15              Defendants.
                                        /
16

17   **I.     BACKGROUND**

18          Plaintiff Datatech Enterprises LLC ("Datatech"), a United States company and

19   producer of pornography, sued FF Magnat Ltd. ("Magnat"), a Hong Kong company and

20   operator of a file-sharing website, alleging copyright infringement.  Dkt 1.  The gist of

21   Datatech's complaint is that Magnat's website ("Oron.com") encouraged users to infringe

22   Datatech's copyrights by uploading and distributing copies of Datatech's work through

23   Oron.com without licenses.  According to Datatech, Magnat paid file uploaders either (1) a

24   percentage of subscription fees that other users paid to access those files, or (2) a flat rate on

25   a per-download basis, knowing that copyrighted files were what attracted subscribers and

26   downloads.  Magnat counters that it is a legitimate cloud-based file storage service that made

27   good faith efforts to combat the alleged illegal activities of a few of its users.

28          Datatech applied for *ex parte*, and the Court already granted, a temporary restraining

     order freezing Magnat's assets.  Dkt. 9.  Datatech argued that in a prior suit functionally

1 identical to this one, <u>Liberty Media Holdings, LLC v. FF Magnat, Ltd.</u>, No. 12-CV-01057-

2 GMN-RJJ (D. Nev. filed June 20, 2012), Magnat moved its domain name registration and a

3 substantial amount of money overseas shortly after being served with the complaint,

4 suggesting an attempt to dissipate its assets and limit the ability of a United States court to

5 afford the plaintiff meaningful relief. The court in the Nevada case granted a similar asset

6 freeze injunction, which expired the day before Datatech sought relief in this Court.

7 Magnat subsequently argued that the transfers were routine, legitimate business

8 transactions, and moved for limited relief from the TRO to access funds necessary to pay

9 legal fees in connection with this suit. The Court granted Magnat's request, and released

10 $125,000 to a trust account to be used only in connection with defending this lawsuit. <u>See</u>

11 Order (dkt. 24). Datatech now seeks a preliminary injunction extending the terms of the

12 asset-freeze TRO through trial.

13 **II.    LEGAL STANDARD**

14 **A. Preliminary Injunction**

15 To prevail on its motion for a preliminary injunction, Datatech must establish that (1)

16 it is likely to succeed on the merits; (2) it faces irreparable harm in the absence of

17 preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the

18 public interest. <u>See</u> <u>Winter v. N.R.D.C.</u>, 129 S. Ct. 365, 374 (2008).

19 The Ninth Circuit uses a "sliding scale" approach, such that "the elements of the

20 preliminary injunction test are balanced, so that a stronger showing of one element may

21 offset a weaker showing of another." <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d

22 1127, 1131, 1134 (9th Cir. 2011). Under the so-called "serious questions" test, an injunction

23 "is appropriate when a plaintiff demonstrates that serious questions going to the merits were

24 raised and the balance of hardships tips sharply in the plaintiff's favor," so long as the

25 plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in

26 the public interest. <u>Id.</u> at 1134-35. Preliminary injunctions "should not be granted unless the

27 movant, by a clear showing, carries the burden of persuasion." <u>Towery v. Brewer</u>, 672 F.3d

28 650, 657 (9th Cir. 2012).

**United States District Court**
For the Northern District of California

1  **III.    DISCUSSION**

2           **A. Likelihood of Success on the Merits**

3                1. Personal jurisdiction

4           As a threshold matter, "[w]here a challenge to jurisdiction is interposed on an

5   application for a preliminary injunction, the plaintiff is required to adequately establish that

6   there is at least a reasonable probability of success upon the question of [personal]

7   jurisdiction when the action is tried on the merits." Zango, Inc. v. PC Tools Pty Ltd., 494 F.

8   Supp. 2d 1189, 1194 (E.D. Wash. 2007) (quoting Enter. Int'l, Inc. v. Corporacion Estatal

9   Petrolera Ecuatoriana, 762 F.2d 464, 471 (5th Cir. 1985).

10          Datatech argues jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2),

11  which provides jurisdiction where (1) the claim against the defendant arises under federal

12  law, (2) the defendant is not subject to the personal jurisdiction of any state court of general

13  jurisdiction, and (3) the federal court's exercise of jurisdiction comports with due process.

14  Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 461 (9th Cir. 2007).  The first

15  requirement is met in a copyright infringement case, and where, as here, the defendant does

16  not identify a different state where suit would be proper, the second requirement is also met.

17  Id.  Under Rule 4(k)(2), the third element asks whether Magnat's contacts with the United

18  Sates as a whole—not just California—would satisfy due process. Holland Am. Line Inc.,

19  485 F.3d at 462.

20          Due process requires that the defendant have minimum contacts with the forum such

21  that exercise of personal jurisdiction would not offend traditional notions of fair play and

22  substantial justice. E.g., Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th

23  Cir. 2004).  Whether a party has minimum contacts with a forum sufficient to warrant the

24  exercise of specific personal jurisdiction turns on a three-prong test: (1) the non-resident

25  defendant must purposefully direct his activities or consummate some transaction with the

26  forum or resident thereof; or perform some act by which he purposefully avails himself of the

27  privilege of conducting activities in the forum, thereby invoking the benefits and protections

28  of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-

1   related activities; and (3) the exercise of jurisdiction must be reasonable.  Brayton Purcell

2   LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010).

3          Copyright infringement suits are "often characterized as a tort" best suited to analysis

4   under the "purposeful direction" prong of the first element.  Brayton Purcell, 606 F.3d at

5   1128.  Purposeful direction, in turn, involves a separate three-pronged test: the defendant

6   must have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3)

7   caused harm that the defendant knows is likely to be suffered in the forum state.  Id. (citing

8   Calder v. Jones, 465 U.S. 783 (1984)).

9          The intentional act element is broadly construed, and can be met by the mere

10  operation of a website, id., which Magnat has done here.   The third element is also met here,

11  as Magnat was repeatedly notified by a U.S. company that users were uploading and

12  distributing materials protected by U.S. copyrights.  Stanislav Decl. ¶ 12 and Ex. B; Phinney

13  Decl. ¶¶ 7-12.

14         The conceptually cloudier "express aiming" element is meant to require "something

15  more than mere foreseeability" of contact with the forum.  See Brayton Purcell, 606 F.3d at

16  1129.  For example, the Ninth Circuit found express aiming where a website actually or

17  constructively knew that it received "a substantial number of hits" from a forum; the

18  website's revenue was tied to the frequency of hits; and the content of the website had a

19  relationship with the forum.   See Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218,

20  1230 (9th Cir. 2011).  The court explained that to hold otherwise "would allow corporations

21  whose websites exploit a national market to defeat jurisdiction in states where those websites

22  generate substantial profits from local consumers."  Id. at 1231.

23         In Datatech's view, Magnat had abundant U.S. contacts:

24

25         •      About 12%[1] of Magnat's website traffic came from the United States, and
              according to a website that analyzes web traffic, the United States was the
26            country with the largest share of Magnat's traffic, Sperlein Decl. ¶ 2
          •      Magnat registered a copyright agent with the U.S. Copyright Office, Stanislav
27

28         [1]Datatech also offered evidence that Magnat's website had at least 260,000 daily visitors,
    meaning that the absolute volume of U.S. daily traffic exceeded 30,000 hits.  See Phinney Decl. ¶ 6.

United States District Court
For the Northern District of California

Decl. ¶ 12
- Magnat's "Terms of Service" on its website referred to U.S. Law, Ex. B to Stanislav Decl.
- Magnat used PayPal, a U.S. company providing web-payment services, to process transactions with customers, Phinney Decl. ¶ 2
- Magnat permitted Porn Guardian, a U.S. company, to have some access its servers to protect U.S. copyright holders from illegal uses of Magnat's website, and Porn Guardian notified Magnat over 40,000 times of files that violated Datatech's copyrights,  Phinney Decl. ¶¶ 7-12; Stanislav Decl. ¶ 15
- Magnat registered its domain name with a U.S. domain registrar for some time, Sperlein Decl. ¶ 3

The maintenance of a website accessible to U.S. visitors, and the use of U.S.-based web services like PayPal, may not themselves provide contacts sufficient to satisfy due process.  Here, however, Magnat received a "substantial number of hits" from the United States and directly profited from those hits in the form of subscription fees from U.S. users.  See Hare Decl. ¶¶ 2-6.  In addition, several features of the website's operation and Terms of Service demonstrated an awareness that the website exploited (and threatened) U.S. copyright interests, and this suit arises out of the activities from the U.S. web traffic.  There is "at least a reasonable probability" that it would not violate due process to hold Magnat answerable in the United States for the contents of a website whose economic value turned, in significant measure, on its appeal to United States users generating over 30,000 daily hits, and the receipt of subscriptions from users infringing copyrighted U.S. materials.

2. Copyright claims

Magnat says Datatech cannot show a likelihood of success on its copyright claims because (1) Magnat complied with the Digital Millenium Copyright Act's ("DMCA") safe-harbor provisions, and (2) Datatech's allegations do not make out a claim for direct, contributory, or vicarious infringement.

Though the parties debate whether any of the elements of a DMCA safe-harbor defense have been met, the Court need address only two.  First, it is undisputed that Magnat had not, prior to June 15, 2011, designated through the Copyright Office an agent to receive notice of violations.  Stanislav Decl. ¶ 12.  Magnat cites no cases suggesting that the defense is available for the alleged infringing uses prior to that date, nor does the language of the statute permit such a defense.  See 17 U.S.C. § 512(c)(2) ("The limitations on liability

5

1    established in this subsection apply to a service provider <u>only if</u> the service provider has

2    designated an agent . . . .") (emphasis added). Thus, as to some 12,000+ alleged violations

3    prior to that date, <u>see</u> Phinney Decl. ¶ 11 (dkt. 29-7), Datatech's likelihood of overcoming a

4    DMCA safe-harbor defense is quite high.

5         Second, Datatech has made an adequate showing–notwithstanding Magnat's

6    conclusory claims of formal policy to the contrary–that in practice Magnat failed to enforce a

7    "repeat infringer" policy as required for the safe harbor defense to apply under 17 U.S.C.

8    § 512(i). <u>See</u> Phinney Decl. ¶¶ 13-19 (dkt. 29-7).

9         As for stating a copyright claim, Datatech has established a likelihood of proving the

10   threshold requirement of ownership of the relevant copyrights. <u>See</u> Blundell Decl. (dkt. 29-

11   18). While interesting questions of law surround Datatech's direct copying theory, its

12   allegations that Magnat

- •    had notice of a substantial amount of infringing user activity, Phinney Decl. ¶ 7 (dkt. 29-7); Ward Decl. ¶ 10 ("the majority of materials available for download . . . were copies of adult films");
- •    created financial incentives for users to upload those infringing materials on to Magnat's servers, <u>see</u> Phinney Decl. ¶¶ 8-13 (dkt. 4); and
- •    demonstrated lackluster efforts to address the problem, <u>see</u> Phinney Decl. ¶¶ 13-32 (dkt. 29-7)

17   together establish a likelihood of succeeding on a claim of contributory or vicarious liability.

18   <u>See</u> <u>Perfect 10, Inc. v. Visa Int'l Serv. Ass'n</u>, 494 F.3d 788, 794-804 (9th Cir. 2007)

19   (contributory infringement where defendant (1) has knowledge of third-party infringing

20   activity, and (2) induces, causes, or materially contributes to the infringing conduct).

21        **B. Irreparable Harm**

22        An asset-freeze injunction is improper if used solely to preserve assets for use in

23   satisfying a claim for money damages. <u>See</u> <u>Grupo Mexicano de Desarrollo, S.A. v. Alliance</u>

24   <u>Bond Fund, Inc.</u>, 527 U.S. 308, 330-33 (1999). However, where an equitable remedy is

25   available, the district court "has the power to issue a preliminary injunction to preserve the

26   status quo in order to protect the possibility of that equitable remedy." <u>F.T.C. v. H.N. Singer,</u>

27   <u>Inc.</u>, 668 F.2d 1107, 1112 (9th Cir. 1982); <u>see also</u> <u>Conn. Gen. Life Ins. Co. v. New Images</u>

28   <u>of Beverly Hills</u>, 321 F.3d 878, 882 n.4 (9th Cir. 2003); <u>Ellipso, Inc. v. Mann</u>, 480 F.3d

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1   1153, 1160 (D.C. Cir. 2007).

2        A plaintiff suing for copyright infringement may seek disgorgement of profits

3   attributable to the infringement, see 17 U.S.C. § 504(b), which is a classic equitable remedy,

4   e.g., Chauffeurs Local No. 391 v. Terry, 494 U.S. 558, 570 (1990).  That the statute

5   explicitly  provides for such a remedy does not strip it of its equitable character.  See Newby

6   v. Enron Corp., 188 F. Supp. 2d 684, 700 (S.D. Tex. 2002); cf. Tull v. United States, 481

7   U.S. 412, 425 (1987).

8        Asset-freeze injunctions require a showing by the Plaintiff of "a likelihood of

9   dissipation of the claimed assets, or other inability to recover monetary damages, if relief is

10  not granted." Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009).

11       Datatech's dissipation argument rests on filings from the Liberty Media Holdings

12  litigation indicating that, shortly after receiving a draft copy of the complaint, Magnat

13  transferred its domain name registration overseas and moved over $100,000 from its PayPal

14  account to a Hong Kong bank, where money was converted into foreign currencies.  See Ex.

15  A to Datatech Request for Judicial Notice (dkt. 2-1); Sperlein Decl. ¶¶ 2, 4 (dkt. 3).  Also, a

16  user of Magnat's website says that in January 2012 Magnat switched its payment processing

17  services from PayPal, a U.S. company, to Alertpay, which (according to Datatech's counsel)

18  is a Canadian company.  See Hare Decl. ¶ 7 (dkt. 29-1).  Finally, Datatech argues that

19  because Magnat's website has ceased operating after the Liberty Media Holdings litigation,

20  Stanislav Decl. ¶ 3, once funds are moved it is unlikely they will be replenished.

21       Magnat, through a declaration of its owner Stanislav, does not deny any of these

22  allegations; rather, he says they were routine business transactions, see Stanislav Decl. ¶ 20

23  (dkt 21-1). But Neither he nor Magnat has offered any supporting documentation showing,

24  for example, that transfers of that amount and timing were normal.  Without such a showing,

25  Magnat's efforts to move its instrumentalities and profits overseas shortly after learning of

26  impending copyright litigation establishes a likelihood of asset dissipation and irreparable

27  harm.

28       Magnat separately argues that even if Datatech is entitled to freeze some amount of

**United States District Court**
For the Northern District of California

1  money that might ultimately be subject to disgorgement, the requested injunction effectively

2  freezes all of Magnat's assets, which Magnat implies exceeds what Datatech could possibly

3  be entitled to recover.

4        Once a plaintiff has made a showing of profits attributable to infringement earned by

5  the defendant, the burden shifts to the defendant to show what, if any, portion of the

6  defendant's gross revenue is attributable to factors other than infringement. See 17 U.S.C.

7  § 504(b). At trial the plaintiff has the burden of establishing the defendant's total revenue,

8  but at this early stage in the litigation it would be impossible for the plaintiff to make such a

9  showing. Accordingly, the Court will not reduce the scope of the asset freeze until Magnat

10 makes some showing regarding what, if any, portion of the frozen assets could not ultimately

11 be subject to the equitable relief sought by Datatech.

12       **C. Balance of Hardships & Public Interest**

13       That Magnat can no longer operate its allegedly infringing website or access funds

14 allegedly derived from illegal activities weighs little, if at all, in the balance of equities. See,

15 e.g., Cadence Design Sys. v. Avant! Corp., 125 F.3d at 824, 829-30 (9th Cir. 1997).

16 Upholding copyright protections is in the public interest. E.g., Apple Computer, Inc. v.

17 Franklin Computer Corp., 714 F.2d 1240, 1255 (3d Cir. 1983). Absent the requested

18 equitable relief, Datatech may well be entirely denied effective remedy for Magnat's alleged

19 infringements.

20 **III.    CONCLUSION**

21       Accordingly, the Court GRANTS the preliminary injunction.

22       **IT IS SO ORDERED.**

23

24 Dated: September 14, 2012           CHARLES R. BREYER
                                 UNITED STATES DISTRICT JUDGE

25

26

27

28