**KENNETH E. KELLER** (71450) kkeller@kksrr.com
**STAN G. ROMAN** (87652) sroman@kksrr.com
**MICHAEL D. LISI** (196974) mlisi@kksrr.com
**KRIEG, KELLER, SLOAN, ROMAN & HOLLAND LLP**
555 Montgomery Street, 17th Floor
San Francisco, CA  94111
Tel:    (415) 249-8330
Fax:    (415) 249-8333

**EVAN FRAY-WITZER**  Evan@CFWLegal.com (*Pro Hac Vice* pending)
**CIAMPA FRAY-WITZER, LLP**
20 Park Plaza, Suite 505
Boston, MA 02116
Tel:    (617) 426-0000
Fax:    (617) 507-8043 (facsimile)

Attorneys for Defendant FF MAGNAT LIMITED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATATECH ENTERPRISES, LLC, a Nevada Limited Liability Company,<br><br>Plaintiff<br><br>vs.<br><br>FF MAGNAT LIMITED d/b/a/ ORON.COM; STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a/ ROMAN ROMANOV (an alias).<br><br>Defendants. | Case No. C-12-4500 CRB<br><br>**DEFENDANT FF MAGNAT LIMITED'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**<br><br>Judge:       Hon. Charles R. Breyer<br>Courtroom:  Courtroom 6 - 17th Floor |

# I.  INTRODUCTION

Without intending to waive (and specifically reserving) any defenses it has based on lack of personal jurisdiction, venue or improper service of the summons and complaint, Defendant FF Magnat Limited dba Oron.com hereby requests leave to file a Motion for Reconsideration of the Court's Preliminary Injunction Order in this matter.[1]

On September 14, 2012, this Court issued a Memorandum and Order (the "Court's Order") allowing Plaintiff's Motion for an asset-freeze injunction against all of FF Magnat Limited's ("Magnat") United States based assets.  That Order, however, was based in large part on a fundamental error of law, namely that the Court incorrectly concluded that the relief sought by the Plaintiff was equitable in nature (and thereby an appropriate subject for injunctive relief). Controlling United States Supreme Court precedent, however, is directly to the contrary. Additionally, the Court found insufficient a sworn affidavit proffered by Magnat (despite the fact that the Plaintiff had failed to offer any contradictory evidence), believing that the affidavit should be supplemented with additional documentary evidence.  And, although Magnat believes that the Plaintiff failed to meet its burden in the first instance, it has responded to the Court's concern, providing the additional documentation with this submission.  Finally, the Court's holding that personal jurisdiction van be had over the defendants under Rule 4(k)(2) adopts a reading of that rule not in accord with Ninth Circuit precedent.  For all these reasons, Magnat respectfully requests that the Court reconsider its allowance of the Plaintiff's Motion.

---

[1] Defendant Oron is specially appearing to seek reconsideration of the preliminary injunction.  Oron does not intend to submit to this Court's jurisdiction or to waive any right to challenge jurisdiction and/or improper service.  To the contrary, Oron intends to challenge jurisdiction in opposition to plaintiff's motion for preliminary injunction and by way of a motion to dismiss the complaint.  The law provides that an appearance in circumstances such as those present here does not constitute a waiver of defenses to jurisdiction or service.  *See, e.g., Hendricks v. Bank of America, N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (finding that the defendant had not waived its venue and personal jurisdictional defenses because it had raised them "in its first responsive pleading," which was its response to plaintiff's preliminary injunction motion); *Bear Stearns Cos. Inc. v. Lavalle*, 2000 WL 34339833 at *2 (N.D. Tex.) (same).  *Cf. Bautista-Perez v. Mukasey*, 2008 WL 314486 (N.D. Cal. 2008) (citing *Hendricks* and finding waiver of venue objection because defendant did not raise it in its preliminary injunction opposition).

## II. LEGAL STANDARD

Rule 54(b) of the Federal Rules of Civil Procedure provides that an interlocutory "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." In addition, Fed. R. Civ. P. 59(e) provides for motions to alter or amend a judgment and has been held applicable when there is a "need to correct a clear error or prevent manifest injustice." *Joyce v. Silveri Tile Company, L.C.,* 66 F. Supp. 2d 1, 2 (D.D.C. 1999), citing *Firestone v. Firestone*, 76 F. 3d 1205, 1208 (D.C. Cir. 1996).

Before a party may file a motion for reconsideration, Civil Local Rule 7-9 requires a party to file a motion for leave to file a motion for reconsideration. The motion for leave must specifically show:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party must also show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts…occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

N.D. Cal. Local Rule 7-9(b).

## III. ARGUMENT

A. The Court Erred As A Matter of Law In Finding That Damages Under Section 504(b) Were Equitable In Nature.

As this Court properly noted, "an asset-freeze injunction is improper if used solely to preserve assets for use in satisfying a claim for money damages." Court's Order, p. 6, *citing Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 330-33 (1999)). *See also Amylin Pharms., Inc. v. Eli Lilly & Co.,* 456 Fed. Appx. 676, 678 (9th Cir. 2011) ("...profits due to lost sales generally constitutes the type of harm that is fully compensable through money damages and therefore does not support injunctive relief. ...Amylin, as the party seeking injunctive relief, has

the burden of making a clear showing that it is entitled to injunctive relief, which includes demonstrating a likelihood of irreparable harm")(citations omitted); *Dateline Exps., Inc. v. Basic Constr., Inc.,* 306 F.3d 912, 914 (9th Cir. 2002)("In *Grupo Mexicano*, the Supreme Court held that a district court does not have the authority to issue a preliminary injunction preventing a party from disposing of assets pending adjudication of a claim for money damages. ...The Court noted that 'before judgment (or its equivalent) an unsecured creditor has no rights at law or in equity in the property of his debtor.' ...The Court held that a creditor with no rights to the property of a debtor could not seek to restrain the debtor's use of its property")(citations omitted).

Nevertheless, this Court allowed the Plaintiff's request for an asset-freeze injunction, reasoning that a disgorgement of profits under Section 504(b) was equitable in nature and, therefore, could be the subject of injunctive relief.  Court's Order, p. 7.  In so holding, the Court relied on *Chauffeurs Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990), a case brought under the Labor Relations Act in which the plaintiff sought back pay and benefits, which the plaintiff attempted to characterize as "restitutionary," and therefore "equitable" in nature, an argument the Court there rejected.  The Court also cited *Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 700 (S.D. Tex. 2002), an insider trading case brought under the Exchange Act, for the proposition that an equitable remedy is not necessarily stripped of its equitable nature by virtue of being provided for by statute, and *Tull v. United States*, 481 U.S. 412, 425 (1987), a case in which the federal government attempted (unsuccessfully) to analogize an action for civil penalties under the Clean Water Act to an action for disgorgement of profits.  None of these cases, however, addressed the specific statute at issue in this case, Section 504(b) of the Copyright Act.

The Court appears, however, to have overlooked United States Supreme Court precedent which is precisely on point.  In *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998), the Supreme Court specifically held that the damages available under Section 504(b) are legal and

*not* equitable. *Id.* at 346 ("the Copyright Act does not use the term 'court' in the subsection addressing awards of actual damages and profits, see §504(b), which generally are thought to constitute legal relief")(multiple citations omitted). *See also Joe Hand Promotions v. Lukito*, 2010 U.S. Dist. LEXIS 76279 (N.D. Cal. 2010)(citing the *Feltner* decision as one which explains "that monetary relief is legal... and an award of statutory damages may serve purposes traditionally associated with legal relief, such as compensation and punishment"); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477 (1962)("We find it unnecessary to resolve this ambiguity in the respondents' complaint because we think it plain that their claim for a money judgment is a claim wholly legal in its nature however the complaint is construed. As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character.  And as an action for damages based upon a charge of trademark infringement, it would be no less subject to cognizance by a court of law"); *Duquette Law Review,* P. Gavin Eastgate, 37 Duq. L. Rev. 127, 142 (Fall, 1998)("Since the inception of copyright actions, juries in courts of law have consistently and appropriately determined damage awards and, thanks to the Court's decision in *Feltner*, the Seventh Amendment continues to protect this right."); *Berkeley Technology Law Review,* Karen M. Calloway, 14 Berkeley Tech. L.J. 23, 27 (1999)(noting that the *Feltner* court contrasted the wording of Section 504(c), which provided for certain damages to be determined by the "court," with the language of Section 504(b), which provided for "traditional legal relief.")

Given that this Court's decision - that the Plaintiff had sufficiently demonstrated that it would suffer irreparable harm in the absence of injunctive relief – hinged on the Court's erroneous belief that such damages were equitable in nature, the Court's finding cannot stand and the preliminary injunction should be dissolved.

B.     The Court's Findings Concerning Possible Dissipation of Assets Were Erroneous And Without Proper Basis.

Although the Court need not go any further in its reconsideration than a finding that

4
DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. C-12-4500 CRB

injunctive relief was improperly entered based on the Court's belief that the plaintiff's action was equitable in nature, it's subsequent finding of a likelihood that Magnat would dissipate assets in the absence of an injunction was equally flawed.  In support of its supposition that Magnat would dissipate assets, the Plaintiff provided the Court with an apparently stolen (or hacked) email showing a transfer of funds from Magnat's PayPal account to its bank account in Hong Kong.[2]  Magnat offered no evidence that this transfer was out of the ordinary in any fashion.  It represents only a Hong Kong company's routine transfer of monies to its Hong Kong bank, a fact supported by the sworn testimony of Davidoglov Stanislav.  (Docket No. 21-1).  Although the Plaintiff provided nothing but speculation as to a nefarious motive, the Court seemingly shifted the burden of proof to Magnat, despite its submission of sworn testimony.  Such a shifting of burdens has allowed the Plaintiff to obtain injunctive relief based on nothing more than conjecture and innuendo.

In order to address the Court's stated concern, however, that Magnat had not provided documentary evidence to support Mr. Stanislav's sworn statement, Magnat submits with this Motion the Supplemental Declaration of Davidoglov Stanislav, and the bank account statements of Oron, attached thereto.  As the Court will see, there are literally dozens of deposits from Oron's PayPal account into Oron's Hong Kong bank account, demonstrating conclusively that the transaction identified by the Plaintiff as "proof" of dissipation of assets was nothing of the sort.

As this Court has noted in the past, "[I]njunctive relieve [is] an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *OG Int'l, Ltd. v. Ubisoft Entm't*, 2011 U.S. Dist. LEXIS 124020 (N.D. Cal. 2011).  The speculation proffered by the Plaintiff did not meet the necessary "clear showing" of an entitlement to relief and certainly

---

[2] As the United States Supreme Court stated *in Precision Instrument Mfg., Co. v. Automotive Maintenance Machinery Co.*, "He who comes into equity must come with clean hands.  This maxim is far more than a mere banality.  It is a self-imposed ordinance that closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." 324 U.S. 806, 814 (1945).

cannot stand in light of Mr. Stanislav's supplemental declaration.

Additionally, the Court appears to have accepted the Plaintiff's argument that there was a likelihood of dissipation based on the fact that Oron.com is not currently operational. Acceptance of this argument, however, is nothing less than perverse. Oron.com is not currently operational *because* its assets have been frozen, which prevented it from paying the server costs necessary to keep the website running. For the plaintiff to now point to the damage that it (and its conspirator, Liberty Media) have wrought as proof that Magnat is attempting to dissipate assets is Kafkaesque.

Because the Court improperly held that the Plaintiff had presented sufficient evidence to indicate a "likelihood" that Magnat would dissipate its assets, the Court's finding cannot stand and the preliminary injunction should be dissolved.

    C.    The Court Erred, As A Matter of Law, In Finding That There Was A Likelihood That Personal Jurisdiction Could be Found Over FF Magnat Under 4(k)(2).

The Ninth Circuit has recognized that it is a rare occurrence indeed for the Court to find jurisdiction under Rule 4(k)(2). Indeed, in *Holland America Line, Inc. v. Windstar Sail Cruises, Ltd.,* 485 F.3d 450 (9th Cir. 2007), the Court specifically noted that "in the fourteen years since Rule 4(k)(2) was enacted, none of our cases has countenanced jurisdiction under the rule." *Id*. at 462. Five years later (for a total of 19), the Ninth Circuit is still waiting for a case in which it finds jurisdiction to be proper under Rule 4(k)(2).

In *Holland America Line*, for example, the Court found that the plaintiff could not demonstrate sufficient contacts with the United States, despite having alleged: (a) that an alleged agent of the defendant agreed to a forum selection clause specifying the United States (which the defendants denied); (b) that the Defendants "sold products or sponsored web marketing for products that ended up in Washington"; (c) that marketing representatives and trainers visited the United States; (d) that the Defendants maintained a marketing website and advertised in various marine publications; and (e) that the Defendants made a presentation at a cruise ship leadership forum in Miami, Florida, where the Defendants sponsored a reception and dinner tables. *Holland America* at 459-460.

Similarly, in *Glencore Grain Rotterdam B.V.*, the Court found insufficient the fact that the defendant, a rice exporter located in India had sent a total of 22 shipments of rice from India to ports on the West and East Coasts of the United States as part of its commercial contracts. *See Glencore Grain* at 1127. Finally, in *Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001), the Ninth Circuit found insufficient the fact that the defendant corporation's stock was listed on U.S. Stock exchanges and the fact that it had promoted the sale of its stock in the United States. *Id.* at 922. *See also Liberty Media Holdings v. Letyagin,* Case No. 11-62107, Docket No. 47. (S.D. Fla. 2011) (discussing plaintiffs' Rule 4(k)(2) argument: "Plaintiff has not shown that Defendant's conduct can, in line with the Constitution, subject it to jurisdiction in this forum. Plaintiff contends that Defendant has 'considerable' web traffic originating from the United States and has presented an exhibit showing that fifteen percent of the visitors to its website are from the United States. ...Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there; those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit. ... Here, Plaintiff has alleged that Defendant's website receives traffic and business from United States customers but has not met its burden of showing that Defendant did anything to target customers from the United States or even that anyone from the United States made a purchase on Defendant's website.")

The Court's appears to have relied on the Declaration of Robert Hare to support a finding that "Magnat received a substantial number of hits from the United States and that it directly profited from those hits in the form of subscription fees from U.S. users." Putting aside the fact that mere "hits" from the United States would be an insufficient basis for a finding of jurisdiction under 4(k)(2), Mr. Hare's Declaration cannot support the weight that the Court appears to have placed on it. Mr. Hare does not state that any of the individuals for him he was paid a percentage of a subscription fee were located in the United States, nor does he state that any individual had to subscribe to view the content which he himself posted. To the contrary, he states only that users paid a fee if they wanted to download the content over a faster connection. As such, his affidavit does nothing to suggest that Magnat directly profited from the posting of infringing

content and it certainly says nothing about such content being accessed by users within the United States.

Because the Ninth Circuit has strictly limited the application of Rule 4(k)(2) as a means to assert personal jurisdiction over a foreign defendant – and because Datatech should bear a particular burden of showing that jurisdiction is proper, given the grave Constitutional concerns at issue, the Court's finding that there is a likelihood of success on the jurisdictional issue is in error. As such, the Court should reverse its decision and dissolve the injunction.

## IV.    CONCLUSION

For the foregoing reasons, Oron respectfully requests that the Court grant Magnat leave to file a Motion for Reconsideration of the Court's Preliminary Injunction Order.

Dated: September 24, 2012              Krieg, Keller, Sloan, Roman & Holland LLP

By: _____/s/Kenneth E. Keller_____
    KENNETH E. KELLER
    Attorneys for Defendant FF MAGNAT LIMITED