**KENNETH E. KELLER** (71450) kkeller@kksrr.com
**STAN F. ROMAN** (87652) sroman@kksrr.com
**MICHAEL D. LISI** (196974) mlisi@kksrr.com
**KRIEG, KELLER, SLOAN, ROMAN & HOLLAND LLP**
555 Montgomery Street, 17th Floor
San Francisco, CA 94111
Tel: (415) 249-8330
Fax: (415) 249-8333

**EVAN FRAY-WITZER** evan@CFWLegal.com
**CIAMPA FRAY-WITZER, LLP**
20 Park Plaza, Suite 505
Boston, MA 02116
Tel: (617) 426-0000
Fax: (617) 507-8043
*Admitted Pro Hac Vice*

**VALENTIN GURVITS** vgurvits@bostonlawgroup.com
**BOSTON LAW GROUP, PC**
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Tel: (617) 928-1804
Fax: (617) 928-1802
*Admitted Pro Hac Vice*

Attorneys for Defendant FF MAGNAT LIMITED

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DATATECH ENTERPRISES, LLC, a Nevada Limited Liability Company,

Plaintiff

vs.

FF MAGNAT LIMITED d/b/a ORON.COM; STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a ROMAN ROMANOV (an alias).

Defendants.

Case No. C-12-4500 CRB

**NOTICE OF MOTION AND MOTION OF DEFENDANT FF MAGNAT LIMITED FOR PARTIAL RELIEF FROM PRELIMINARY INJUNCTION**

Hearing: None Set**
Judge: Hon. Charles R. Breyer
Courtroon: Courtroom 6 – 17th Floor

** An Administrative Motion for Order Shortening Time to Hear This Motion is Filed Herewith

**NOTICE**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on _______________, 2012 at 10:00 a.m., or as soon thereafter as counsel may be heard in the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, 94102, defendant FF Magnat Limited d/b/a Oron.com ("Oron") will and hereby does move for an order granting Oron partial relief from the preliminary injunction issued on September 14, 2012 in the above-captioned matter.

This motion is made pursuant to Fed.R.Civ.P. 65 and is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; the accompanying Declaration of Valentin Gurvits; the pleadings and papers on file herein; and upon such other matters as may be presented to the Court at the time of the hearing.

Date: November 5, 2012 **BOSTON LAW GROUP, PC**

By: /s/ Valentin Gurvits
VALENTIN GURVITS
Attorneys for Defendant FF MAGNAT LIMITED

## TABLE OF CONTENTS

Page No.

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Factual Background ..... 2

B. Procedural History ..... 5

III. ARGUMENT ..... 7

A. The Court Should Modify the Preliminary Injunction to Allow Defendant Access to Funds In Order to Pay the Legal Fees and Costs Associated With Its Defense of This Lawsuit and the Interlocutory Appeal ..... 7

1. Ninth Circuit Precedent Supports Oron's Request ..... 8

2. The Request Is Reasonable Because The Complaint Raises Numerous Complex Issues and The Defendant Has Filed For an Interlocutory Appeal and Thus Oron's Legal Expenses Will Be Significant ..... 10

a. Jurisdiction ..... 11

b. Interlocutory Appeal ..... 11

c. Copyright Infringement Issues ..... 12

IV. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

Page No(s).

**Cases**

*Commodity Futures Trading Commission v. Noble Metals International, Inc.*, 67 F.3d 766 (9th Cir. 1995)........................................................................................ 9

*Federal Savings & Loan Insurance Corp. v. Dixon*, 835 F.2d 554 (5th Cir.1987)........................................................................................ 9

*Federal Trade Commission v. QT, Inc.*, 467 F. Supp.2d 863 (N.D. Ill. 2006).............................................................................. 9

*Fidelity National Title Insurance Company v. Castle*, 2011 WL 5882878 (N.D. Cal., Nov. 23, 2011)................................................................. 8

*Johnson v. Couturier*, 572 F. 3d 1067 (9th Cir. 2009)................................................................................... 8, 9

*Metro-Goldwyn-Mayer Studios, Inc. v. Groskster, Ltd.*, 545 U.S. 913 (2005)............................................................................................... 13

*Perfect 10 Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007)........................................................................ 13

*Perfect 10, Inc. v. Visa Int'l Service, Assoc.*, 494 F. 3d 788 (9th Cir. 2007).................................................................................... 13

*Republic of the Philippines v. Marcos*, 862 F. 2d 1355 (9th Cir. 1988)....................................................................................... 8

*Securities and Exchange Commission v. Dodwell*, 2002 WL 236687 (W.D. Va. 2002)........................................................................... 10

*Securities and Exchange Commission v. Hickey*, 322 F. 3d 1123 (9th Cir. 2003)....................................................................................... 9

*United States v. Brown*, 988 F. 2d 658 (6th Cir. 1993)......................................................................................... 9

**Statutes**

17 U.S.C. § 512................................................................................................................. 12

F.R.C.P. 4(k)(2)......................................................................................................... 10, 11, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

Without intending to waive any defenses it may have based on lack of personal jurisdiction, venue or improper service of the summons and complaint, Defendant FF Magnat Limited d/b/a Oron.com ("Oron") brings this motion for partial relief from the Order entered by the Court on September 14, 2012 (Docket No. 35).[1]

Specifically, Oron requests that the Court amend the Preliminary Injunction on a limited basis to allow Oron to pay for its defense in this case and the interlocutory appeal for which Oron has filed a notice (Docket No. 46). Oron requests that the Court allow it to withdraw $300,000 from its PayPal account to pay for these legal fees and costs Oron expects to incur in the defense of this action and pursuing the interlocutory appeal. The funds withdrawn would be transferred to the trust account of Oron's outside counsel, Boston Law Group, PC of Newton Centre, MA, and used solely to pay Oron's legal fees and costs in relation to this action and the interlocutory appeal.

## I. INTRODUCTION

Defendant Oron is a Hong Kong company that operates a "cloud" based data storage business. Plaintiff Datatech is apparently a producer of pornographic video material, some of which third persons allegedly stored on Oron's computer servers. At all times relevant to the above-captioned action, Oron complied with the Digital Millennium Copyright Act ("DMCA")

[1] Defendant Oron is specially appearing at this juncture to address a specific concern regarding the preliminary injunction freezing its assets that was entered on August 28, 2012. By making this request, Oron does not intend to submit to this Court's jurisdiction or to waive any right to challenge jurisdiction and/or improper service. To the contrary, Oron intends to challenge jurisdiction by way of a motion to dismiss the complaint. The law provides that a motion for injunctive relief in the circumstances such as those present here does not constitute a waiver of defenses to jurisdiction or service when venue and personal jurisdiction defenses are raised in the first responsive pleading, as has been done in this action.

and qualifies for "safe-harbor" from the above-captioned action. Very little of Oron's business comes from the United States and Plaintiff's videos comprise an infinitesimal portion of the data that was stored by users on Oron's servers. Oron contends that the Plaintiff's suit lacks merit on a number of grounds, and is confident that it will establish that as this case proceeds.

Nevertheless, Plaintiff obtained an Order ("Order") freezing all of Oron's assets (Docket No. 35). If unmodified, the Order threatens to prevent Oron from paying its legal bills, defending itself in this action, and pursuing the interlocutory appeal to this action.

This Court has previously ordered $125,000 of Oron's funds to be released for the payment of accrued and on-going legal fees related to this action. As of the date hereof these funds have been depleted.[2]

Under this Court's present Order, Oron is blocked from paying the counsel who represent it in this action for services rendered and Oron will not have access to funds to pay for its further representation in this case and for the pending interlocutory appeal. Oron simply seeks the ability to pay its lawyers. Not only is this request reasonable in scope, it is supported by case law holding that a defendant faced with an asset freezing injunction should, except in exceptional circumstances not present here, be permitted access to funds in order to defend itself.

## II. BACKGROUND

### A. Factual Background

Defendant FF Magnat Limited ("Oron") is a legitimate business located in Hong Kong, which owns the domain name, Oron.com. Until recently, Oron provided file sharing and data storage services throughout the world via its website, Oron.com. Like well-known "cloud

[2] Indeed, more than $93,000 of the $125,000 released by this court was consumed by fees incurred before the undersigned counsel ever entered an appearance in this case. (Gurvits Decl., ¶ 2).

services" offered by such companies as Apple ("iCloud"), Amazon, Google, Hewlett Packard and DropBox, Oron offered its users the ability to upload and store large amounts of data on remote and secure servers. Oron assigned a unique URL web address to the user's data for access purposes. However, the user had complete control over his or her documents and files and made the decision whether to share those documents and files with others. That is the business model Plaintiff is attacking in this action. (Well-known sites such as Dropbox now offer a similar ability to share files through a unique URL we address.)

At all times relevant to the above-captioned action, Oron complied with the Digital Millennium Copyright Act ("DMCA") and therefore qualifies for "safe-harbor" from actions arising out of the activities of its users such as the above-captioned action.

Plaintiff's attack, including Datatech's false and disparaging allegations of "piracy", "theft" and "conspiracy," is based on little more than Plaintiff's misstatement of the relevant facts. Datatech alleges that it "produces, markets, and distributes adult entertainment products, including Internet website content, videos, DVDs, photographs, etc. under various brands." (Compl., ¶ 4). Datatech says that third persons have stored some of its content on Oron's servers without Datatech's permission.

As noted, Oron.com was simply a file sharing system subject to DMCA safe-harbor protections. Oron provided those services through a variety of servers maintained by various hosting providers. However, as a result of an asset freeze issued in a nearly identical lawsuit filed in late June 2012 by another pornography producer,[3] Liberty Media Holdings LLC, Oron could not access funds to pay its hosting providers and was forced to shut down its website in

[3] On June 20, 2012, Liberty Media filed a complaint in the United States District Court for the District of Nevada alleging that Oron had violated federal copyright laws by reproducing or distributing Liberty Media's copyrighted works via its website, Oron.com, and seeking monetary and injunctive relief. *See Liberty Media v. FF Magnat Ltd.*, Case No. CV 2:12-cv-01057 GMN.

July of 2012. As a result, the vast amount of legitimate data that Oron's customers had stored on Oron's service was irretrievably lost.

When in operation, Oron's file storage system allowed anyone to upload and store files. Oron strictly maintained the privacy of its customers. It did not index the materials that were uploaded and it maintained no catalogue or search function within the website. For the storage services that it offered, Oron charged its customers a monthly fee if they chose to use its premium services for faster uploading/downloading and more and longer storage. Visitors to Oron.com, whether for free or as paying premium customers, did not have access to other users' materials. The individual who initially uploaded and stored his or her material had the sole control over the material that they uploaded and stored and decided whether to share any of that material with anyone else. Oron was not involved in any decision by its customers to share anything with anyone else. Notably, this was not a "peer to peer" system like Napster or Grokster, which have been held to run afoul of the copyright laws. Oron played no active role in the uploading and sharing of material between its customers and it did not "publish" anything, contrary to the allegations of the Complaint.

Oron offered its file storage services to individuals throughout the world. The vast majority of its users were not from the United States. In fact, it can be determined from publicly available information, such as WHOIS domain tools (*see* Site Profile on http://whois.domaintools.com/oron.com), that only 13.4% of Oron's visitors to its website came from the United States. The majority of its visitors came from Europe and Asia. Moreover, the extent to which Plaintiff's files were stored on Oron's servers was extremely small. Oron estimates that Plaintiff's files constituted less than one-tenth of one percent of all the data stored on Oron.com.

**B. Procedural History**

On August 28, 2012, Datatech filed its complaint in this action, alleging that Oron has violated federal copyright laws by reproducing or distributing Plaintiff's copyrighted works via its website, Oron.com. The complaint in this action was almost a carbon copy of a lawsuit filed on June 20, 2012 by Liberty Media Holdings LLC ("Liberty Media") in the United States District Court for the District of Nevada. *See Liberty Media v. FF Magnat Ltd.*, Case No. CV 2:12-cv-01057 GMN (D. Nev.). Also on August 28, Datatech filed its Ex Parte Application for Temporary Restraining Order ("Application"), without notice to Oron or defendant Stanislav Davidoglov (collectively, where appropriate, "Defendants"). In that Application, Datatech argued that a TRO was appropriate because the Hon. Gloria Navarro, presiding over the *Liberty Media* action, had issued a similar TRO in that action. However, on August 27, Judge Navarro entered an order "unfreezing" Oron's assets.[4]

Datatech also attempted to rely on the conclusion of a Hong Kong judge in another legal proceeding instituted there by Liberty Media that Oron had transferred funds from the United States to Hong Kong and had converted them to "gold." (Motion for TRO at 1:6-19). Significantly, in its papers, Datetech did not advise this Court that:

- Oron had raised serious issues with respect to the propriety of the TRO issued in the *Liberty Media* action, including legal arguments against an injunction merely to secure a potential monetary recovery and factual arguments that the sole piece of evidence presented in support of the *Liberty Media* TRO (an email showing a single, routine transfer of funds from PayPal to Oron's bank in Hong Kong, HSBC) was insufficient to show any intent to "dissipate" assets; or

[4] Save and except for a specific reserve of $200,000 to be available for any attorneys' fees she might award in that case.

- HSBC had issued a letter conclusively stating that Oron had not converted any assets to gold.

Having been given only a limited and one-sided presentation of facts, on August 28, 2012, this Court issued a temporary restraining order (Docket No. 9, the "TRO") freezing all of Defendants' assets pending the hearing on Plaintiff's request for a preliminary injunction, including all assets in an U.S. bank or financial institution, and any funds held for Oron by PayPal, Inc., CCBill, LLC, and AlertPay. The Court further enjoined Defendants "from disgorging or dissipating any fund, property, domain names, or other assets until further notice."[5] *Id.* at 2-3.

On August 30, 2012, Oron filed a Motion for Partial Relief From Temporary Restraining Order (Docket No. 12, the "First Motion") in which Oron requested that this Court amend the TRO to allow Oron to transfer $310,000 from its PayPal account to pay for the legal fees associated with its defense in this action and in the *Liberty Media* action (for which Oron had already incurred in excess of $290,000 in attorneys' fees and costs, $160,000 of which remained unpaid). *See* First Motion at 15; Declaration of Stevan Lieberman, ECF 12-1, ¶ 2. On September 4, 2012, this Court granted partial relief from the TRO and permitted PayPal to transfer $125,000 to Oron's counsel for use only to pay the legal fees and costs associated with Oron's defense of this action. (Docket No. 23).

On September 14, 2012, after considering the pleadings, evidence and arguments presented at a hearing, this Court granted Datatech's motion for a preliminary injunction in the Order, freezing all the funds in Oron's banking and financial institutions (Docket No. 35).

---

[5] The Court stated that the Order "does nothing more than prohibit Defendants from fraudulent transfers and compels that they unwind those in which they have already engaged." However, the broad language that Defendants may not dissipate any funds, read literally, goes further and prevents Defendants from spending any money for any legitimate purpose.

Pursuant to the Order, Oron has been unable to withdraw any funds from its bank account or its accounts with its payment processors PayPal, CCBill and AlertPay. Without access to these accounts, Oron has had zero access to any funds to pay for its defense in this action except for the funds that were released pursuant to the partial relief ordered on September 4, which are now depleted.

Defendants have already incurred over $125,000 in legal fees in defending this action, completely consuming all the funds the Court released in its grant of relief from the TRO. Due to the complex and contentious nature of this action, Defendants will certainly incur many hundreds of thousands of dollars in further legal fees. Defendants are pursuing an interlocutory appeal of the preliminary injunction and intend to soon file a motion to dismiss for lack of jurisdiction. Both of these will require extensive research, briefing and oral argument. Defendants are also addressing (and will be required to continue to address) Datatech's discovery requests, which Datatech has already served pursuant to the Order and which Datatech will certainly continue to serve. In addition, Oron's counsel may need to respond to the Complaint, file counter-claims, and conduct its own discovery (depending on this Court's rulings on Oron's forthcoming motion to dismiss). Oron is requesting partial relief from the preliminary injunction to permit it to fully defend itself, a right to which it is entitled as a matter of Due Process.

## III. ARGUMENT

### A. The Court Should Modify the Preliminary Injunction to Allow Defendant Access to Funds In Order to Pay the Legal Fees and Costs Associated With Its Defense of This Lawsuit and the Interlocutory Appeal

As written, the Court's Order prevents Oron from being able to access the funds in its accounts with various banks and payment services, including PayPal. Not only does the Order

require those financial institutions and payment services to "freeze" any assets in Oron's accounts, but it also enjoins Oron from "disgorging or dissipating any funds, property, domain names, or other assets until further notice." (Order at 2:3-4). Read literally, the Order prohibits Oron from paying attorneys' fees or legal costs to defend itself in this action or to proceed with its interlocutory appeal to the preliminary injunction, even if it did have access to funds.

It is respectfully submitted that the Court should modify the Order to permit Oron to transfer funds from its PayPal account to the trust account of Oron's outside counsel, Boston Law Group, PC, and to permit Oron to use those funds to pay the legal fees incurred in the defense of this action as well as to pay fees incurred in the pursuit of the interlocutory appeal.

**1. Ninth Circuit Precedent Supports Oron's Request**

The law in the Ninth Circuit and elsewhere addressing asset-freezing injunctions supports Oron's request. For example, in *Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988), the Ninth Circuit upheld a preliminary injunction enjoining the Marcoses from disposing of their assets. In balancing the relative hardships to determine the propriety of the injunction, the Court relied upon the fact that the district court had provided that the Marcoses could use their assets "to cover normal living expenses and legal fees." *Id.* at 1362.

The Ninth Circuit followed that holding more recently in *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009). The *Johnson* court upheld a challenge to a district court's asset freezing injunction because the injunction was limited to the assets in the defendant's possession in which the plaintiffs had an equitable interest, and because the injunction expressly allowed assets to be used for "normal living expenses and legal fees." *Id.* at 1085-1086; *see also Fidelity National Title Insurance Company v. Castle*, 2011 WL 5882878 (N.D. Cal., Nov. 23, 2011) (relying on

*Johnson v. Courtier* to fashion asset freezing injunction that allowed defendant to use personal funds to cover living expenses).

Similarly, in *Federal Savings & Loan Insurance Corp. v. Dixon*, 835 F.2d 554 (5th Cir. 1987), the Fifth Circuit held that an asset-freezing injunction that allowed individual defendants only $3,500 per month for living expenses and legal fees was improper because it did not allow enough money for an adequate defense. As the Fifth Circuit explained:

> This suit was brought to establish the defendants' wrongdoing; the court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves. The basis of our adversary system is threatened when one party gains control of the other party's defense as appears to have happened here. Thus we conclude that some kind of allowance must be made to permit each defendant to pay reasonable attorneys' fees if he is able to show that he cannot pay them from new or exempt [i.e., unfrozen] assets . . . ."

*Id.* at 565 (citation omitted).[6]

Cases in the Ninth Circuit and elsewhere have also held it appropriate to allow a business entity defendant to pay necessary business expenses out of frozen assets. *See, e.g.*, *Securities and Exchange Commission v. Hickey*, 322 F.3d 1123, 1131 (9th Cir. 2003) (injunction upheld where "under the terms of the freeze order, legitimate corporate business expenses may be paid from frozen assets…"); *United States v. Brown*, 988 F. 2d 658 (6th Cir. 1993) (district court allowed defendant to use frozen funds for business expenses; Sixth Circuit accepted that but remanded for district court to ensure only funds that plaintiff might ultimately recover were frozen); *Federal Trade Commission v. QT, Inc.*, 467 F. Supp.2d 863 (N.D. Ill. 2006) (defendants

[6] While there is some authority that, in appropriate cases, a district court has discretion to forbid or limit payment of attorneys' fees out of frozen assets, *see, e.g., Commodity Futures Trading Commission v. Noble Metals International, Inc*., 67 F.3d 766 (9th Cir. 1995), the cases so holding have involved circumstances going far beyond those presented in this case, and are thus inapposite.

allowed to pay out of frozen assets necessary business expenses and legal fees); *Securities and Exchange Commission v. Dodwell*, 2002 WL 236687 (W.D. Va. 2002) (court grants request to modify freeze order to allow for payment of ordinary business expenses).

**2. The Request Is Reasonable Because The Complaint Raises Numerous Complex Issues and The Defendant Has Filed For an Interlocutory Appeal and Thus Oron's Legal Expenses Will Be Significant**

Oron's request should also be granted because it is reasonable in scope, and seeks only the release of sufficient funds to permit Oron to pay its counsel for the defense in this action and the interlocutory appeal arising out of this action. These will be no small tasks. Oron's motion to dismiss will involve complex issues including the interplay of F.R.C.P. 4(k)(2) – under which, incidentally, the Ninth Circuit has *never* found jurisdiction proper since the enactment of that rule – and the Defendant's operation of a website accessible anywhere where the internet can be accessed. And, Oron's appeal of this Court's preliminary injunction order will involve, as this Court noted, constitutional issues of first impression.

Moreover, the complaint in this action raises a host of complex legal issues, many of which are related to the still developing law on personal jurisdiction of internet based businesses, the DMCA and secondary infringement of copyrighted materials on the internet. Consequently, in order to prepare a motion to dismiss for lack of jurisdiction, to pursue to the interlocutory appeal of the preliminary injunction and to address the Plaintiff's discovery requests, Oron's counsel will be required to conduct extensive factual and legal research into each of the following issues and to expend significant time and resources briefing them and presenting them at oral arguments.[7] In addition, Oron's counsel may need to respond to the Complaint, file

[7] Oron intends to address each of these issues in greater detail in its motion to dismiss and its filings with the Court of Appeals. In addition, Oron reserves the right to address additional issues in its later filings.

counter-claims and conduct discovery. Based on the amount of attorneys' fees expended in this action to date, and the expected costs of the future course of the action, Oron anticipates that it will need to expend at least $300,000. (Gurvits Decl., ¶ 3).

**a. Jurisdiction**

As noted above, Oron is specially appearing and intends to fully contest whether this Court has personal jurisdiction over Oron or its assets. The complaint contends that Oron is subject to personal jurisdiction over the California long arm statute and that Oron has sufficient contacts with the United States for this Court to find personal jurisdiction exists. Oron, however, is a Hong Kong corporation, which receives the majority of its income from customers in Europe, Asia and Russia. Contrary to the allegations of the complaint, less than 14% of Oron's online traffic is form the United States. Moreover, none of Oron's employees or officers is a United States resident. Nevertheless, the Plaintiff has sought to base its assertion of personal jurisdiction on the federal long-arm statute, Rule 4(k)(2) which, as is noted above, the Ninth Circuit has yet to find applicable in a single case. Given these and other facts, the issue of personal jurisdiction will need to be analyzed in detail in Oron's motion to dismiss for lack of personal jurisdiction.

**b. Interlocutory Appeal**

Oron has filed a notice of interlocutory appeal in this action. (Docket No. 46). Oron has appealed to the Ninth Circuit Court of Appeals from the Findings, Rulings and Order of the Court dated September 14, 2012 granting the preliminary injunction (Docket Nos. 34 and 35) and the Findings, Rulings, and Order of the Court dated October 4, 2012 (Docket No. 43), denying Oron's Motion for reconsideration of the same. Oron will be required to argue before the Court of Appeals that damages under Section 504(b) of the Copyright Act are not equitable

in nature, that the Plaintiff's complain seeking money damages does not give rise to a risk of irreparable harm, that a proper basis was lacking for this Court's finding concerning a possible dissipation of assets, and that there is no likelihood that personal jurisdiction could be found over Oron under Rule 4(k)(2). Each of these tasks will require extensive research, briefing and arguments before the Court of Appeals.

**c. Copyright Infringement Issues**

The crux of this action is Plaintiff's claim that Defendants have infringed copyrighted materials. Yet that claim raises numerous issues regarding whether Plaintiff can establish a likelihood of success on merits, all of which Oron needs the time and legal fees to present to the Court.

For example, there are serious questions whether one or more of the defendants can be held liable for copyright infringement (whether directly or indirectly) because the evidence will establish that they fall under the safe harbor provision of the Digital Millennium Copyright Act ("DMCA"). 17 U.S.C. § 512. Section 512(c) of the DMCA limits liability for "infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider" so long as the service provider meets various conditions described in sections 512(c) and (i). The evidence here – as compared to Plaintiff's unsupported accusations – will establish that Oron satisfies each of those conditions, and thus is protected under the DMCA safe harbor provision. Indeed, the Complaint itself concedes that Oron has complied with the DMCA by registering a DMCA agent more than one year ago. At the same time, there are significant questions as to whether Plaintiff's alleged DMCA notices were sufficient to trigger the statute's take-down provisions. *See* 17 U.S.C. § 512(c)(3).

Plaintiff's claims for contributory and vicarious infringement are similarly flawed. For example, Plaintiff has provided no admissible evidence that Oron had actual knowledge of any of the allegedly infringing activity, and thus cannot be liable for contributory infringement. *See e.g., Perfect 10 Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007). To the contrary, per the strict terms of service between Oron and its customers, Oron maintains the privacy of its clients' content. Nor has Plaintiff offered any admissible evidence that Oron exercised the requisite control over the alleged direct infringer and/or that Oron derived a financial benefit from the direct infringement. *Id*. at 1173 (a defendant "exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so") (citing to *Metro-Goldwyn-Mayer Studios, Inc. v. Groskster, Ltd.*, 545 U.S. 913, 930 (2005)).

Likewise, Plaintiff's claim for inducement of copyright infringement will fail. Plaintiff has not established that Defendants provided a service "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." *Grokster,* 545 U.S. at 936-37. "[M]ere knowledge of infringing potential or actual infringing uses would not be enough here to subject [a defendant] to liability." *Id*. at 937. To "establish inducement liability, it is crucial to establish that the distributors 'communicated an inducing message to their . . . users,' the classic example of which is an 'advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations.'" *Perfect 10, Inc. v. Visa Int'l Service, Assoc.*, 494 F.3d 788 (9th Cir. 2007) (citing *Grokster*, 545 U.S. at 936-37). Here the evidence will establish that Defendants do not actively promote their service to commit copyright infringement, or that the service has no other legitimate use. To the contrary, the evidence will establish that the vast majority of its service is for proper purposes.

## IV. CONCLUSION

For the foregoing reasons, Oron respectfully requests that the Court amend its preliminary injunction to allow Oron to transfer $300,000 from its PayPal account to the trust account of Oron's outside counsel, Boston Law Group, PC and to use those funds to pay the legal fees associated with its defense in this action and the interlocutory appeal arising from this action.

Dated: November 5, 2012 **BOSTON LAW GROUP, PC**

By: /s/ Valentin Gurvits
VALENTIN GURVITS
Attorneys for Defendant FF MAGNAT LIMITED