1  **KENNETH E. KELLER** (71450) kkeller@kksrr.com
   **STAN F. ROMAN** (87652) sroman@kksrr.com
2  **MICHAEL D. LISI** (196974) mlisi@kksrr.com
   **KRIEG, KELLER, SLOAN, ROMAN & HOLLAND LLP**
3  555 Montgomery Street, 17th Floor
   San Francisco, CA 94111
4  Tel:    (415) 249-8330
   Fax:    (415) 249-8333
5

   **EVAN FRAY-WITZER** evan@CFWLegal.com
6  **CIAMPA FRAY-WITZER, LLP**
   20 Park Plaza, Suite 505
7  Boston, MA 02116
   Tel:    (617) 426-0000
8  Fax:    (617) 507-8043
   *Admitted Pro Hac Vice*
9

   **VALENTIN GURVITS** vgurvits@bostonlawgroup.com
10 **BOSTON LAW GROUP, PC**
   825 Beacon Street, Suite 20
11 Newton Centre, MA 02459
   Tel:    (617) 928-1804
12 Fax:    (617) 928-1802
   *Admitted Pro Hac Vice*
13

   Attorneys for Defendant FF MAGNAT LIMITED and STANISLAV DAVIDOGLOV

14

15             **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**

16 | DATATECH ENTERPRISES, LLC, a | Case No. C-12-4500 CRB |
   | Nevada Limited Liability Company, | |
17 | | **DEFENDANTS FF MAGNAT** |
   | Plaintiff | **LIMITED AND STANISLAV** |
18 | | **DAVIDOGLAV'S NOTICE OF** |
   | vs. | **MOTION AND MOTION TO DISMISS** |
19 | | **FOR LACK OF PERSONAL** |
   | FF MAGNAT LIMITED d/b/a ORON.COM; | **JURISDICTION** |
20 | STANISLAV DAVIDOGLOV, and JOHN | |
   | DOE a/k/a ROMAN ROMANOV (an alias). | Hearing:    January 11, 2013 |
21 | | Judge:      Hon. Charles R. Breyer |
   | Defendants. | Courtroom:  Courtroom 6 – 17th Floor |
22

# NOTICE

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 11, 2013 at 10:00 a.m., or as soon thereafter as counsel may be heard in the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, 94102, defendants FF Magnat Limited d/b/a Oron.com and Stanislav Davidoglov will and hereby do move to dismiss the above-captioned matter.

This motion is made pursuant to Fed.R.Civ.P. 12(b)(2) and is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; the pleadings and papers on file herein; and upon such other matters as may be presented to the Court at the time of the hearing.

Date:   December 7, 2012                **BOSTON LAW GROUP, PC**


By:   /s/ Valentin Gurvits
      VALENTIN GURVITS
      Attorneys for Defendants FF MAGNAT LIMITED
      and STANISLAV DAVIDOGLOV

**TABLE OF CONTENTS**

Page No.

I. INTRODUCTION...................................................................................................... 1

II. FACTUAL BACKGROUND.................................................................................... 1

    A. Oron Has No Contacts with the United States and Has Not Directed Any Activities at the United States.............................................................................. **Error! Bookmark not defined.**

    B. Mr. Davidoglov Has No Contacts with the United States and Has Not Directed Any Activities at the United States........................................................... 4

III. ARGUMENT............................................................................................................. 4

    A. Purposeful Direction........................................................................................... 5

        1. Standard.......................................................................................................... 5

        2. Defendants Do Not Purposefully Direct Their Activities Towards the United States................................................................................................... 9

    B. Exercise of Jurisdiction is Unreasonable............................................................ 12

        1. Standard.......................................................................................................... 12

        2. Exercise of Personal Jurisdiction Over the Defendants Would Be Unreasonable................................................................................................. 13

IV. CONCLUSION.......................................................................................................... 15

iii

DEFENDANTS FF MAGNAT LIMITED AND STANISLAV DAVIDOGLOV'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. C-12-4500 CRB

# TABLE OF AUTHORITIES

Page No(s).

**Cases**

*Bancroft & Masters, Inc. v. Augusta National Inc.*,
 223 F.3d 1092 (9th Cir. 2000)................................................................................ 5, 6

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985)................................................................................................ 13

*Calder v. Jones*,
 465 U.S. 783 (1984)................................................................................................. 6

*Core-Vent Corp. v. Nobel Indus. AB*,
 11 F.3d 1482 (9th Cir. 1993)................................................................................... 12

*Doe v. Unocal Corp.*,
 248 F.3d 915 (9th Cir. 2001)................................................................................ 7, 8

*Fraserside IP L.L.C. v. Hammy Media, LTD*,
 2012 U.S. Dist. LEXIS 5359 (N.D. Iowa Jan. 17, 2012)........................................ 8

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain, Co.*,
 284 F.3d 1114 (9th Cir. 2002)................................................................................. 7

*Holland America Lines, Inc. v. Wartsila North America, Inc.*,
 485 F.3d 450 (9th Cir. 2008)............................................................................... 4, 7

*International Shoe Co. v. Washington*,
 326 U.S. 310 (1945)................................................................................................. 5

*Liberty Media Holdings v. Letyagin*,
 Case No. 11-62107, Docket No. 47. (S.D. Fla. 2011)................................... 8, 10, 11

*Panavision Int'l, L.P. v. Toeppan*,
 141 F.3d 1316 (9th Cir. 1998)............................................................................ 12, 13

*Pebble Beach Co. v. Caddy*,
 453 F.3d 1141 (9th Cir. 2006)........................................................................ 5, 6, 7, 10

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004)................................................................................... 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendant FF Magnat Limited d/b/a Oron.com ("Oron") is a Hong Kong company that all times relevant hereto operated a "cloud" based data storage business.  Defendant Stanislav Davidoglov is a resident of the Republic of Moldova and the sole shareholder of Oron ("Mr. Davidoglov," and together with Oron, the "Defendants").  *See* Declaration of Stanislav Davidoglov, ¶¶ 1-2, attached hereto as Exhibit 1 ("Third Davidoglov Decl.").  Plaintiff Datatech Enterprises, LLC ("Datatech") is apparently a producer of pornographic video material, some of which, Datatech alleges, third persons stored on Oron's computer servers.  The Defendants lack any substantial ties to the United States.  Very little of Oron's business comes from the United States and Datatech's videos, if as alleged, comprised an infinitesimal portion of the data that was stored by users on Oron's servers.  Davidoglov has even fewer connections to the United States.  Regardless, Datatech has brought this suit in this court despite the clear lack of personal jurisdiction it has over the Defendants.

Accordingly, pursuant to Fed. R. Civ. P. 12(b)(2), Datatech's complaint should be dismissed in its entirety.  In further support of this memorandum, the Defendants state as follows.

## II.     FACTUAL BACKGROUND

Defendant FF Magnat, Ltd. ("Oron") is a legitimate business located in Hong Kong, which owns the domain name, Oron.com.  Until recently, Oron provided file sharing and data storage services throughout the world via its website, Oron.com.  *See* Declaration of Davidoglov

Stanislav, Docket No. 21-1, ¶ 2 ("First Davidoglov Decl."). Like well-known "cloud services" offered by such companies as Apple ("iCloud"), Amazon, Google, Hewlett Packard and DropBox, Oron offered its users the ability to upload and store large amounts of data on remote and secure servers. *Id.* Oron assigned a unique URL web address to the user's data for access purposes. However, the user had complete control over his documents and files and made the decision whether to share those documents and files with others. *Id.* That is the business model Plaintiff is attacking in this action. (Well-known sites such as Dropbox now offer a similar ability to share files through a unique URL web address.)

### A. Oron Has No Contacts with the United States and Has Not Directed Any Activities at the United States.

Oron does not (and has never) itself maintain any servers in the United States, has no employees, officers, directors or owners who reside in (and has never had any in) the United States, does not advertise in (and has never advertised in) the United States, owns no real estate in (and has never owned any real estate in) the United States, and has no bank accounts in (and has never had any bank accounts in) the United States. Third Davidoglov Decl., ¶ 4. Oron leased hosting services from the third-party Dutch company LeaseWeb B.V., which maintains severs throughout the world and determines in its sole discretion the location of the servers from which it serves its clients' websites – including Oron's website. *Id.*, ¶ 6. In any case, LeaseWeb B.V. does not use any servers in the United States for the hosting of Oron.com. *Id.*

Oron does almost no business any American companies. All of its substantial business relations are with non-United States Entities: Oron used a Dutch hosting company, LeaseWeb B.V., for hosting its domain. *Id.*, ¶ 6. Oron used a variety of European payment processing

companies for a substantial amount of its transactions with clients, including Daotec Payment GmbH (an Austrian company), JSC International Financial Solutions (a Russian company), and SIA PaySpace (a Latvian company). *Id.*, ¶ 7. Most notably, and contrary to Datatech's allegation in its Complaint, Oron did not contract with the United States branch of PayPal for its payment processing but instead, and specifically, contracted with PayPal Pte. Ltd., a Singapore company. *Id.*

Oron offered its file storage services to individuals throughout the world. The vast majority of its users were not from the United States. In fact, it can be determined from publicly available information, such as WHOIS domain tools, that less than 14% of Oron's visitors to its website came from the United States. *See* Site Profile on http://whois.domaintools.com/oron.com. The majority of its visitors came from Europe and Asia. *Id.* Moreover, the extent to which Plaintiff's files were stored on Oron's servers as alleged was miniscule. First Davidoglov Decl., ¶ 7. Oron estimates that Plaintiff's files, if as alleged, constituted less than *one-tenth of one percent* of all the data stored on Oron.com.

It should go without saying that, because, as described above, Oron has effectively zero connections to the United States, Oron similarly has effectively zero connections to the State of California, where this action has been brought.

As a result of legal proceedings instituted by another party against Oron in the United States District Court of Nevada, see *Liberty Media Holdings, LLC v. FF Magnat Ltd.*, U.S.D.C., D. Nev., Case No. CV 2:12-cv-01057 GMN, and the injunctions ordered by this Court, Oron was unable to access any of its funds and could no longer pay its service providers. First Davidoglov

3
DEFENDANTS FF MAGNAT LIMITED AND STANISLAV DAVIDOGLOV'S NOTICE OF
MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. C-12-4500 CRB

1  Decl., ¶ 3. The inability to pay its service providers forced Oron to cease the operation of the

2  Oron.com website. Id. ¶ 3.

### B. Mr. Davidoglov Has No Contacts with the United States and Has Not Directed Any Activities at the United States.

Mr. Davidoglov is an individual residing in the Republic of Moldova and is the sole shareholder of Oron. Third Davidoglov Decl., ¶¶ 1-2. Mr. Davidoglov has no connections with the United States at all and, indeed, <u>he has never even visited the United States</u>. *Id.*, ¶ 3.

### III. ARGUMENT

In its Complaint, Datatech asserts that personal jurisdiction over the Defendants is proper under FRCP 4(k)(2), sometimes referred to as the "Federal Long Arm Statute." Rule 4(k)(2) provides for personal jurisdiction where: (1) the claim against the defendant arises under federal law; (2) the defendant is not subject to the jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution. *Holland America Line, Inc. v. Wartsila North America, Inc.,* 485 F.3d 450, 461 (9th Cir. 2007). In the present case, it is only the third element which is dispute.

In order to satisfy the due process requirement of the third factor, the foreign defendant "must have 'minimum contacts' with the forum state[1] such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).  The Ninth Circuit employs a three part test to determine whether sufficient "minimum contacts" exist to exercise personal jurisdiction, requiring that (1) the defendant has "purposefully availed himself of the privileges of conducting activities in the forum," (2) the claim results from this purposeful availment, and (3) "the exercise of jurisdiction is reasonable." *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  As explained below, exercise of personal jurisdiction over the Defendants would fail the first and third requirements of the minimum contacts test, and therefore personal jurisdiction should not be exercised over the Defendants.

**A.  Purposeful Direction**

  1.  Standard

The Ninth Circuit has refined the first prong of the "minimum contacts" test to whether the defendant has "either (1) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed' his activities toward the forum." *Pebble Beach Co.*, 453 F.3d at 1155 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Because the Defendants have not taken any action actually in the United States, and Datatech has not alleged otherwise, the first possibility of "availment" is completely

---

[1] When personal jurisdiction is being determined pursuant to Rule 4(k)(2), the analysis is "nearly identical" to the traditional personal jurisdiction analysis with the difference that instead of considering contacts with a specific forum state the court considers contacts with a nation as a whole. *See Holland America Line*, 485 F.3d at 462.

DEFENDANTS FF MAGNAT LIMITED AND STANISLAV DAVIDOGLOV'S NOTICE OF
MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. C-12-4500 CRB

inapplicable to the current analysis regarding the Defendants. *Id.* ("Evidence of availment is typically action *taking place in the forum* . . . ." (emphasis added)). Therefore, based on the allegations in Datatech's Complaint, the test must proceed, if at all, under the purposeful direction analysis. *Id.* ("Evidence of direction generally consists of action taking place outside the forum that is directed at the forum.").

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court held that a foreign act, in order to satisfy the purposeful direction requirement must be both aimed at and have an effect in the forum state. *See Bancroft*, 223 F.3d at 1087. However, in the Ninth Circuit, it is not enough for the plaintiff to show that the defendant committed an act and that the plaintiff felt an effect in the United States. The plaintiff must show even more than whether the defendant's acts had a foreseeable effect in the forum. *Pebble Beach Co.*, 453 F.3d at 1160.

The Ninth Circuit has been exceedingly cautious to require that the plaintiff show "something more" – specifically that the defendant expressly aimed its actions at United States. *See, e.g.*, *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) ("[*Calder*] cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction. We have said that there must be 'something more' . . . . We now conclude that 'something more' is what the Supreme Court described as 'express aiming' at the forum state."). "The 'something more' additional requirement is important simply because the effects cited may not have been caused by the defendant's actions of which the plaintiff complains." *Pebble Beach Co.*, 453 F.3d at 1160. Considering these stringent requirements, Datatech's allegations are far from sufficient to demonstrate sufficient "purposeful direction."

1    Datatech's giant hurdle is not a new one for plaintiffs.  The Ninth Circuit has recognized
2 that it is a rare occurrence indeed for a foreign defendant to be subject to jurisdiction under Rule
3 4(k)(2).  In *Holland America Line, Inc.,* the Ninth Circuit specifically noted that "in the fourteen
4 years since Rule 4(k)(2) was enacted, none of our cases has countenanced jurisdiction under the
5 rule."  485 F.3d at 462.  Five years later (for a total of 19 years), the Ninth Circuit is still waiting
6 for a case in which it finds jurisdiction to be proper under Rule 4(k)(2).

7    In *Pebble Beach Co.*, the Ninth Circuit found that the plaintiff could not satisfy the
8 purposeful direction requirement despite having alleged that: (a) the defendant used a ".com"
9 domain name, which allegedly showed that the United States was its primary market and that it
10 was directly advertising its services to the United States, (b) the defendant used the name
11 "Pebble Beach" to target the United States because it is a famous trademark in the United States,
12 (c) the defendant intended to advertise to the United States by locating itself in a resort town that
13 catered to Americans, and (d) "a majority of [the defendant]'s business in the past has been with
14 Americans."  453 F.3d at 1159.

15    Similarly, in *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain, Co.*, the Ninth
16 Circuit found insufficient the fact that the defendant, a rice exporter located in India had sent a
17 total of 22 shipments of rice from India to ports on the West and East Coasts of the United States
18 as part of its commercial contracts.  284 F.3d 1114, 1127 (9th Cir. 2002).  Finally, in *Doe v.*
19 *Unocal Corp.*, the Ninth Circuit found insufficient the fact that the defendant corporation's stock
20 was listed on U.S. Stock exchanges and the fact that it had promoted the sale of its stock in the
21 United States.  248 F.3d 915, 922 (9th Cir. 2001).
22

Even more directly, at least two federal courts outside the Ninth Circuit to have considered identical factual circumstances as those presented in this case have concluded that they lacked personal jurisdiction over foreign website operators accused of copyright infringement. *See, e.g., Liberty Media Holdings v. Letyagin,* Case No. 11-62107, Docket No. 47. (S.D. Fla. 2011) (discussing plaintiff's Rule 4(k)(2) argument: "Plaintiff has not shown that Defendant's conduct can, in line with the Constitution, subject it to jurisdiction in this forum. Plaintiff contends that Defendant has 'considerable' web traffic originating from the United States and has presented an exhibit showing that fifteen percent of the visitors to its website are from the United States. . . . Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there; those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit. . . . Here, Plaintiff has alleged that Defendant's website receives traffic and business from United States customers but has not met its burden of showing that Defendant did anything to target customers from the United States or even that anyone from the United States made a purchase on Defendant's website.") and *Fraserside IP L.L.C. v. Hammy Media, LTD*, 2012 U.S. Dist. LEXIS 5359, *24-25 (N.D. Iowa Jan. 17, 2012) ("Although I accept as true Fraserside's allegations that xHamster intentionally infringed Fraserside's registered copyrights and trademarks, these allegations, alone, fail to demonstrate that xHamster 'uniquely or expressly aimed' its tortious acts at Iowa. . . . Although xHamster's website is both commercial and interactive, as an Iowa district court noted in a case presenting similar facts, such a website 'is arguably no more directed at Iowa than at Uzbekistan.'").[2]

---

[2] *See also be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) ("If the defendant merely operates a website, even a

2. <u>Defendants Do Not Purposefully Direct Their Activities Towards the United States</u>.

The Defendants do not "expressly aim" their conduct towards the United States. With regard to Mr. Davidoglov, other than a vague general allegation that Mr. Davidoglov is Oron's alter ego (an allegation which, apparently, arises out of the fact that Mr. Davidoglov is a shareholder of Oron) Datatech has provided no evidence that Mr. Davidoglov personally conducts any business or activities of any kind in the United States or California, directs any activities at the United States or California, or avails himself of the privilege of conducting activities in the United States or California. It bears repeating, that Mr. Davidoglov has never visited the United States or California. And in its filings, Datatech admits that it is Oron that conducts the business of operating Oron.com.

With regard to Oron, like most every other website operating on the Internet, Oron.com was available to anyone with access to the Internet. In previous filings and opinions, Datatech alleged three primary factors which would evidence Oron's express aim of conduct at the United States: (1) that "[Oron] received a 'substantial number of hits' from the United States, (2) that "[Oron] directly profited from those hits in the form of subscription fees from U.S. users," and

---

'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."); *Toys "R" Us, Inc. V. Step Two, S.A.,* 318 F.3d 446, 452-54 (3d Cir. 2003) ("[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction ... Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the [jurisdiction]."); *Instabook Corp. v. Instapublisher.com*, 469 F. Supp. 2d 1120, 1127 (S.D. Fla. 2006) (finding insufficient contacts in a patent infringement case since, among other reasons, "Defendant could not reasonably anticipate being haled into court in Florida based on its operation of interactive websites accessible in Florida and its sales to two Florida residents" in the absence of "targeting or solicitation of Florida residents."); *ESAB Group, Inc. v. Centricut, L.L.C.*, 34 F. Supp. 2d 323, 331 (D.S.C. 1999) ("While it is true that anyone, anywhere could access Centricut's home page, including someone in South Carolina, it cannot be inferred from this fact alone that Centricut deliberately directed its efforts toward South Carolina residents."); *Johnson v. Arden*, 614 F.3d 785, 797-98 (8th Cir. 2010) ("[T]he Johnsons have failed to prove that www.BoutiqueKittens.com is uniquely or expressly aimed at Missouri; thus *Calder* provides no support for their Lanham Act claim.").

1  (3) that "several features of the [oron.com] website's operation and Terms of Service

2  demonstrate an awareness that the website exploited (and threatened) U.S. Copyright interests . .

3  . ." *See* Memorandum and Order (Docket No. 34) at p. 5.  However, each of these alleged facts

4  is, at best, inconsequential and does not arise to the level required to exercise personal

5  jurisdiction, whether alone or in conjunction with each other.

6  With regard to the argument that a substantial number of hits come from the United

7  States, it is undisputed that a vast majority – approximately 88 percent – of all of Oron's web

8  traffic originated from outside the United States.  *Id.* at p. 4.  As such, the suggestion that Oron

9  received a substantial number of hits from the United States, while true, is irrelevant in the

10 context of its overall use and certainly does not demonstrate activities purposefully directed at

11 the United States.

12 Even accepting as true, as this Court has previously accepted, that 12% of Oron's web

13 traffic originated from within the United States, the number of "hits," by itself, fails to reach the

14 relevant questions for jurisdictional purposes, namely the level of commercial activity (if any) in

15 the United States and the steps undertaken by Oron (if any) to specifically target consumers in

16 the United States.  As the Ninth Circuit explained in *Pebble Beach*, the number of visitors from

17 the United States "go[es] to effects rather than express aiming."  453 F.3d at 1160 ("Here,

18 although Caddy may serve vacationing Americans, there is not a scintilla of evidence indicating

19 that this patronage is related to either Caddy's choice of a domain name or the posting of a

20 passive website."); *see also Liberty Media Holdings, supra* ("Here, Plaintiff has alleged that

21 Defendant's website receives traffic and business from United States customers but has not met

22 its burden of showing that Defendant did anything to target customers from the United States or

even that anyone from the United States made a purchase on Defendant's website."). Indeed, Datatech has not provided *any* evidence suggesting that Oron conducted a level of commercial activity in the United States, or any activity specifically targeted at the United States, sufficient to subject Oron to personal jurisdiction within the U.S., consistent with due process.

Any evidence presented by Datatech that Oron received a substantial number of hits from the United States and that it directly profited from those hits in the form of subscription fees from U.S. users," comes solely from the Declaration of Robert Hare (Docket No. 29-1). Mr. Hare's Declaration cannot bear the weight placed upon it. According to his Declaration, Mr. Hare, a resident of Florida, uploaded a number of adult films to the Oron website. Hare Decl. ¶¶ 2-6. Mr. Hare does not claim anywhere in his affidavit that the movies he uploaded were the intellectual property of Datatech. According to Mr. Hare, he would post links to the movies that he uploaded to various Yahoo! chat groups wholly unconnected to Oron. If people clicked on the links he uploaded, they would be able to download the films for free. If the individual decided that he wanted faster download times (for all content available on the Oron website), he could pay for a membership which allowed for such faster download speeds. When individuals did so, Mr. Hare would earn a commission. According to his affidavit, he earned a grand total of approximately $838 in commissions this way. Hare Decl., ¶ 7. Mr. Hare's affidavit is silent as to whether the individuals who purchased faster download time were located within the United States and, indeed, there is no way Mr. Hare could know where in the world these individuals were located.

This information cannot support a conclusion that Oron derived substantial revenues from the United States. Surely, a finding of personal jurisdiction under 4(k)(2) – to be consistent

11
DEFENDANTS FF MAGNAT LIMITED AND STANISLAV DAVIDOGLOV'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. C-12-4500 CRB

1    with due process – requires more of a showing of purposeful availment than the affidavit of a
2    single individual who claims to have made $838 in commissions from Oron.
3         Finally, a reliance on Oron's terms of service as a basis of jurisdiction would be
4    misguided and more than a little ironic.  The specific section of the terms relating to the United
5    States is the section instructing rights holders how to send Oron a takedown notice under the
6    Digital Millennium Copyright Act ("DMCA"), so that infringing materials could be removed
7    from the website.  In other words, by simply complying with the DMCA's notice guidelines
8    (necessary for a website to claim safe harbor under the DMCA), Datatech would argue that Oron
9    actually subjected itself to personal jurisdiction anywhere (and everywhere) within the United
10   States.  Surely such a perverse result could not have been intended by Congress in enacting the
11   DMCA, nor should this court reach a legal conclusion which would only have the effect of
12   encouraging websites *not* to comply with the provisions of the DMCA.
13        Because Datatech has not shown (and cannot show) sufficient facts to support a finding
14   of expressly aimed conduct of minimum contacts between the Defendants and the United States
15   as would be required by the Due Process Clause of the Constitution, the Court cannot properly
16   assert personal jurisdiction over the Defendants and the case against them must be dismissed.
17   **B.     Exercise of Jurisdiction is Unreasonable**
18        1.     Standard
19        Even though Datatech has failed to satisfy the first requirement of the minimum contacts
20   test and therefore personal jurisdiction cannot attach to the Defendants, the third factor, whether
21   exercise of personal jurisdiction would be reasonable, also fails.  "For jurisdiction to be
22   reasonable, it must comport with 'fair play and substantial justice.'" *Panavision Int'l, L.P. v.*

*Toeppan*, 141 F.3d 1316, 1322 (9th Cir. 1998).  Exercise of jurisdiction over the Defendants here would be unreasonable and against fair play and substantial justice.

The Supreme Court has set out seven factors for a court to consider when evaluating reasonableness of personal jurisdiction: "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."  *Id.* at 1323 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77(1985)).  The court must balance all seven factors as none of the factors are dispositive in themselves.  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).

2. <u>Exercise of Personal Jurisdiction Over the Defendants Would Be Unreasonable</u>.

Almost all of these factors weigh in favor of the Defendants.  Therefore, the balance of these seven factors necessarily weighs on the side of the Defendants.  Evaluating each factor in turn:

**Factor 1: <u>the Defendants have not purposefully interjected themselves into the United States</u>**.  Oron was a website operated from outside the United States, but like any other website it was available from anywhere in the world, including the United States.

**Factor 2: <u>the Defendants have minimal connections to the United States and they have experienced and will continue to experience a great burden by continuing to defend in the United States</u>**.  The shutting down of the Oron.com website has already put a great financial

burden on the Defendants (see Oron's motions for partial relief from the temporary restraining order and the preliminary injunction, Docket Nos. 12 and 52) and any additional strain would be disastrous to them. The difficulties of litigating on the other side of the world where the Defendants have no home or connection are very great.

**Factor 3: the court's exercise of jurisdiction in the United States would conflict with the sovereignty of Hong Kong, the home of Oron**. The legal analysis in the United States and Hong Kong would be sufficiently divergent as to implicate the sovereignty concerns of Hong Kong.

**Factor 4: the Defendants concede that the United States may have an interest in providing Datatech a forum for its allegation.** However, this single factor cannot override all the other factors.

**Factor 5: no single substantive witness in this action is located in the United States**. All of Oron's witnesses are located outside of the United States. The only witness in the United States that Datatech has put forth is Robert Hare who is nothing more than one of the thousands of people who had accessed Oron's website in the time that it was active. In order to conduct any depositions or view any physical evidence, Datatech will be required to travel outside the United States. Therefore, the United States is not an efficient location for the resolution of this dispute.

**Factor 6: as explained in factor 5, litigation in the United States would be inconvenient for Datatech because there are no substantial witnesses or physical evidence in the United States**. Furthermore, Datatech, if its allegations are true, can receive effective relief in the home country of Oron, Hong Kong (which is a signatory to all the major

international copyright treaties, including the Berne Convention, the Geneva Act, the Paris Act and the Agreement on Trade-Related Aspects of Intellectual Property Rights (TRIPS)).

**Factor 7: <u>as explained above, Oron's home country of Hong Kong is an adequate and alternative forum for this suit</u>.**

Based on the above factors, it would be unreasonable to exercise personal jurisdiction over the Defendants and therefore the exercise of personal jurisdiction would be in violation of the Due Process Clause of the Constitution.

## IV.   CONCLUSION

For the foregoing reasons, the Defendants respectfully move for the dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

Dated: December 7, 2012          **BOSTON LAW GROUP, PC**

By:   /s/ Valentin Gurvits
      VALENTIN GURVITS
      Attorneys for Defendants FF MAGNAT LIMITED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATATECH ENTERPRISES, LLC, a Nevada Limited Liability Company,<br><br>Plaintiff<br><br>vs.<br><br>FF MAGNAT LIMITED d/b/a ORON.COM; STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a ROMAN ROMANOV (an alias).<br><br>Defendants. | Case No. C-12-4500 CRB<br><br>**[PROPOSED] MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Judge:  Hon. Charles R. Breyer<br>Courtroom:  Courtroom 6 – 17th Floor |

After considering the pleadings of record, the evidence submitted and the arguments of counsel, and for the reasons stated and the findings made in open court during the hearing, the Court finds that it does not have personal jurisdiction over the Defendants FF Magnat Limited and Stanislav Davidoglov (the Defendants).  Therefore, this Court GRANTS the Defendants' Motion to Dismiss and dismisses the complaint against the Defendants with prejudice. Furthermore, IT IS HEREBY ORDERED THAT the Court's Order of September 14, 2012 (dkt. 35) and the injunction instituted thereby is hereby dissolved.

**IT IS SO ORDERED.**

Dated: