Mitchell J. Langberg, Nevada Bar No. 171912
MLangberg@bhfs.com
Laura Bielinski, Nevada Bar No. 10516
LBielinski@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
Telephone:    (702) 382-2101
Facsimile:     (702) 382-8135

Attorneys for Plaintiff
Liberty Media Holdings, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FF MAGNAT LIMITED d/b/a ORON.COM; MAXIM BOCHENKO a/k/a ROMAN ROMANOV; AND JOHN JOES 1-500,<br><br>Defendants. | CASE NO.:  2:12-cv-01057-GMN-RJJ<br><br>**PLAINTIFF'S MOTION TO STAY ENFORCEMENT OF ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT** |

Plaintiff Liberty Media Holdings, LLC ("Liberty"), hereby files this Motion to Stay Enforcement of Order Granting Plaintiff's Motion to Enforce Settlement Agreement ("Motion to Stay").  This Motion to Stay is based on the papers and pleadings on file in this action, the attached Memorandum of Points and Authorities, the attached exhibits and any oral argument the Court entertains.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Immediate relief from this Court is necessary because Defendant FF Magnat Limited d/b/a Oron.com ("Oron") simultaneously seeks to invalidate by way of appeal the parties' settlement agreement enforced by this Court ("Agreement"), and to enforce it by way of arbitration. Since the day that this Court granted Liberty's Motion to Enforce Settlement Agreement ("Motion to Enforce") until Oron recently took action necessitating this Motion, Oron consistently balked at its obligations to perform under the Agreement. When the Court first entered its order granting the Motion to Enforce ("Order"), Liberty communicated with Oron in an attempt to perform the obligations set forth by the Agreement, and Oron failed to cooperate.[1] Then, Oron filed its appeal—contesting nearly every ruling of this Court, including the Order.

Now, although it continues to contest the validity of the Agreement through the appeal, Oron has filed a demand for arbitration, alleging that Liberty breached the Agreement by failing to perform its obligations thereunder, notwithstanding Oron's own failure to comply with the Agreement. Simply put, Oron is now trying to enforce the very agreement it has been trying to invalidate.

Oron has put Liberty in an untenable position. Critically, many of Liberty's obligations under the Agreement cannot be undone once they are performed—for example, Liberty agreed to make a public announcement that it believes Oron's actions giving rise to this case are protected by the Digital Millennium Copyright Act ("DMCA"). Liberty cannot in good faith make such representations while simultaneously defending Oron's appeal on the viability of the Agreement. Additionally, if Liberty performs, it runs the risk that in the (unlikely) event Oron prevails on appeal, it will have given an unreturnable benefit to Oron.

Liberty thus requests that the Court assist it in maintaining the status quo pending the appeal, to prevent Oron from using the Agreement as both a sword and shield. Specifically,

---

[1] Notably, Liberty does not have access to the settlement funds to which it is entitled under the Agreement. As discussed herein, those funds are currently being held in Liberty's former counsel's client trust account, and Liberty cannot access those funds without subjecting its former counsel to a ten-percent penalty under the Agreement. In other words, Liberty has not yet reaped any benefit as a result of the Court's order enforcing the Agreement.

Liberty requests that the Court (1) stay the parties' obligations to perform under the agreement, and (2) stay the parties' ability to enforce the Agreement against one another. A stay pending appeal is appropriate in this instance because Liberty would suffer irreparable harm if it were to comply with the Agreement, only to later have the Agreement invalidated. Oron, on the other hand, would not be burdened if the Court delays performance of the Agreement until the Ninth Circuit Court of Appeals ("Ninth Circuit") rules on *its* appeal.

## II. STATEMENT OF FACTS

### A. This Court Enters Its Order, Finding That The Agreement Is Enforceable[2]

In July 2012, Liberty and Oron entered into the Agreement to settle the dispute giving rise to this action. (Doc 33-1, Settlement Agreement, reproduced for the Court's convenience as Exh. 1 to the attached Declaration of Laura E. Bielinski, Esq. ("Bielinski Decl.") ¶ 2). Under the Agreement, Oron agreed to pay Liberty $550,000.00 to settle their dispute ("Settlement Funds"). (Bielinski Decl., Exh. 1 ¶ 1). To that end, the parties stipulated that the Settlement Funds would be paid out of the funds previously frozen by the Court, into the client trust account of Liberty's now former counsel, Marc J. Randazza, Esq. ("Randazza"). (Bielinski Decl., Exh. 1 ¶ 2). The parties also agreed that the Settlement Funds shall not be disbursed until the "settlement is final," and that Randazza is personally liable for the funds plus a ten percent penalty if the funds are transferred prematurely. (Bielinski Decl., Exh. 1 ¶ 2).

Under the Agreement, both parties have extensive non-monetary obligations, many of which cannot be undone once performed. Some of these are joint obligations. For example, the Agreement requires the parties to draft a joint letter stating the parties are joining together to fight against child pornography and copyright infringement. (Bielinski Decl., Exh. 1 ¶ 13). It requires Liberty to assist Oron in sending letters to online payment processors to convince them to allow Oron to accept payments through their services. (Bielinski Decl., Exh. 1 ¶ 11). It also requires the parties to work together to assist Liberty in identifying and civilly prosecuting parties who have used Oron to distribute Liberty's copyrighted material. (Bielinski Decl., Exh. 1 ¶ 4).

---

[2] Because the Court is already familiar with the facts giving rise to the Order, Liberty presents the Court with a brief summary of those facts with references to the record.

Other obligations are the responsibility of the individual parties. For example, Liberty agreed to announce publicly that that Oron's actions were protected under the safe-harbor provisions of the DMCA. (Bielinski Decl., Exh. 1 ¶ 12).[3] Liberty further agreed to dismiss the Nevada and Hong Hong proceedings. (Bielinski Decl., Exh. 1 ¶ 8). Liberty also agreed to issue a letter requesting that Oron's Hong Kong accounts be unfrozen to allow Oron's to pay its web hosting service provider, LeaseWeb. (Bielinski Decl., Exh. 1 ¶ 14).

The day after the parties signed the Agreement, Liberty began fulfilling its obligations by sending a letter to LeaseWeb confirming that the parties were in the process of settling and requesting that LeaseWeb not terminate its services to Oron for non-payment. (Doc. 33-2). Liberty also notified its Hong Kong Counsel that the parties had reached an agreement to settle. (Doc. 33-3). Conversely, Oron instructed its Hong Kong lawyers to begin litigating the matter in the High Court of Hong Kong, indicating its intent not to be bound by the Agreement. (Doc. 33 at 2:13–16).

On July 6, 2012, Liberty filed its Motion to Enforce, requesting that the Court enter an order enforcing the settlement reached by the parties in the Agreement. (Doc. 33). The Court granted the Motion to Enforce on August 7, 2012. (Doc. 85). As part of the Order, the Court instructed the Clerk of the Court to enter judgment against Oron in the amount of $550,000.00. (Doc. 85 at pgs. 7–8).

**B.  Liberty Attempts To Comply With The Order And Communicate With Oron**

Upon entry of the judgment against Oron, Liberty arranged to have the Settlement Funds transferred from Oron's frozen account to the Randazza trust account pursuant to the Agreement. (Leonard Decl.¶ 6). The Randazza firm still holds the Settlement Funds because the parties' settlement is not yet "final" as contemplated by the Agreement. (Leonard Decl. ¶ 6). In other words, the Settlement Funds are currently inaccessible to either party. (Leonard Decl.¶ 6).

On August 29, 2012, Liberty contacted Oron to discuss their outstanding joint obligations under the Agreement. (Leonard Decl. ¶ 7; Exh. 1, August 29, 2012, correspondence from

---

[3]  Of course, if the parties did not agree to settle, Liberty would have vehemently disputed Oron's ability to claim any defense to copyright infringement under the DMCA. (Declaration of Henry Leonard, PhD, CPA, CMA ("Leonard Decl.") ¶ 4, submitted in support of this Motion).

4

Randazza to Oron's counsel, Steven Lieberman).  Liberty never received a response. (Leonard Decl. ¶ 7).  Since that time, after Liberty retained new counsel, Liberty has made several attempts to communicate with Oron, to no avail.  (Bielinski Decl. ¶ 3).

### C.     Oron Repudiates The Agreement By Filing Its Appeal

In fact, Liberty heard nothing from Oron until September 5, 2012, when it received Oron's Notice of Appeal through the Court's ECF filing system. (Leonard Decl. ¶ 8).  Through its Notice of Appeal, Oron appealed eleven (11) of this Court's rulings to the Ninth Circuit, including the Order. (Doc. 117 at p. 2).

### D.     Oron Attempts To Enforce The Agreement Through JAMS Arbitration

Over two months after appealing the Order, Oron took a sudden change of position and filed a JAMS demand for arbitration, allegedly to obtain relief for Liberty's breach of the Agreement.  (Bielinski Decl. ¶ 4, Exh. 2, Demand for Arbitration).  The demand alleges that Liberty failed to meet the joint performance obligations under the Agreement, and requests (among other things) that the arbitrator effectively find the agreement unenforceable by requiring Liberty to return the Settlement Funds, notwithstanding that Liberty does not possess them. (Bielinski Decl., Exh. 2).  The demand also requests that the arbitrator award damages to Oron of over $20,000,000.00 for Liberty's purported breach.  (Bielinski Decl., Exh. 2).

Therefore, based on Oron's inconsistent positions and its attempt to seek damages against Liberty for breach of the very Agreement that it concurrently seeks to invalidate, Liberty requests that the Court enter an order staying the parties' obligations under and ability to enforce the Agreement.

## III.   ARGUMENT

It has long been recognized that the "district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo." *Natural Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (citing *Newton v. Consolidated Gas Co.,* 258 U.S. 165, 177, 42 S. Ct. 264, 66 L.Ed. 538 (1922)); *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888,* 536 F.2d 1268, 1276 (9th Cir. 1976) (finding that the rule limiting a district court's jurisdiction while a case is on appeal should not be applied where "the district court . . . has a continuing duty

to maintain a status quo, and where, as the days pass, new facts are created by the parties and the maintenance of the status quo requires new action").

One mechanism a district court may employ to preserve the status quo is to enter an order staying the case pending appeal. *See e.g. Azurin v. Von Raab*, 792 F.2d 914, 915 (9th Cir. 1986) (finding that "if a stay is granted, the status quo will be maintained"). The Federal Rules of Appellate Procedure recognize that such authority belongs to the district court, and Federal Rule of Appellate Procedure 8(a)(1) "requires that the moving party requesting to stay an order or judgment to file a motion in district court."

When deciding whether to stay an order pending appeal, the district court must consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill,* 481 U.S. 770, 776 (1987); *Humane Soc. of U.S. v. Gutierrez*, 558 F.3d 896 (9th Cir. 2009). "The standard for evaluating stays pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983).

The facts presented here are somewhat unusual in the context of a request for stay, in that normally the party seeking the stay is the appealing party rather than the prevailing party. Nonetheless, the four factors favor staying enforcement of this Court's Order. First, while Liberty expects to succeed on Oron's appeal of the Order because the Court was correct in determining that the Agreement is valid and enforceable, the possibility that Liberty will not prevail on appeal also warrants a stay. Second, Liberty would face irreparable injury absent a stay because, in the unlikely event that Oron prevails on appeal, Liberty will have performed acts under the Agreement that are detrimental to its position on remand, and cannot be undone once performed. Third, Oron would actually benefit—and certainly will not be substantially injured—if the Court stays enforcement of the Agreement, as a stay will merely delay performance under the

Agreement it seeks invalidate on appeal. Finally, the public interest factor neither weighs for nor against staying the settlement agreement because the public has no interest in the Agreement.

In light of the fact that the three applicable factors weigh in favor of granting the relief it seeks, Liberty therefore respectfully requests that the Court stay the parties' obligations under, and ability to enforce, the Agreement.

### A.     A Stay Is Appropriate No Matter Who Prevails On Appeal.

The first factor weighs in Liberty's favor irrespective of whether it prevails on appeal. Under a plain reading of the first factor, a stay is warranted because Liberty is likely to succeed on the merits of Oron's appeal of the Order. Of course, Liberty believes that the Court correctly found that the Agreement is enforceable and that the Ninth Circuit will find that the Court did not abuse its discretion. *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1136 (9th Cir. 2002) ("We review a district court's enforcement of a settlement agreement for abuse of discretion.").

That said, this factor weighs in Liberty's favor even if Liberty does not prevail. Liberty's request for a stay is somewhat unusual, in that traditionally the losing party seeks to stay enforcement of an adverse ruling pending its appeal. Here, Liberty (the prevailing party) seeks a stay to mitigate against the possibility of irreparable injury it faces in the event that Oron (the losing party) succeeds on appeal. Courts hold that where the Court does not "rigidly apply" the success on the merits factor, a stay is appropriate when "the equities of the case suggest that the status quo should be maintained." *Himebaugh v. Smith*, 476 F. Supp. 502, 510 (C.D. Cal. 1978) (citing *Washington Metropolitan Area, etc. v. Holiday Tours*, 559 F. 2d 841, 844 (D.C. Cir. 1977) (eschewing a "wooden" analysis of the first factor in favor of the trend towards a rule where "the necessary showing on the merits is governed by the balance of equities as revealed through an examination of the other three factors")). As discussed below, the equities favor the Court's entry of a stay pending appeal. Thus, the first factor favors granting Liberty's request for a stay.

### B.     Liberty Would Likely Face Irreparable Harm If The Court Does Not Stay Its Obligations Under The Agreement.

Liberty is likely to suffer irreparable injury without relief from this court. In analyzing whether there is a probability of irreparable injury on a motion for stay, the Ninth Circuit focuses

on "the individualized nature of irreparable harm and not whether it is 'categorically irreparable.'" *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012). Irreparable harm is likely to occur for purposes of a motion for stay where, if a party performs under an agreement, "it would be impossible to undo" the performance. *Semi-Materials Co., Ltd. v. MEMC Elec. Materials, Inc.*, 4:06CV1426 FRB, 2008 WL 922323 (E.D. Mo. Apr. 1, 2008). For example, in *Semi-Materials Co.,* the court ordered the defendant to specifically perform by delivering material to the plaintiff. *Id.* at *1. Defendant appealed the order and sought to stay its performance while the appeal was pending. *Id.* The court agreed specific performance would create irreparable harm because "it would be impossible to undo the shipments themselves and to place defendants in the position occupied prior to shipment . . . ." *Id.* at *2.

Here, Liberty would similarly be irreparably injured if the Court does not stay the parties' ability to enforce, and obligations to perform under, the Agreement. In the event that the Ninth Circuit agrees with Oron and remands the case for further proceedings, it would be impossible to undo Liberty's performance of many of the Agreement's terms. For example, liberty cannot undo any public statements it makes under the Agreement. Liberty cannot undo public statements that it is joining Oron in the fight against copyright infringement—not to mention that Liberty cannot in good faith comply with that obligation, particularly where Oron failed to respond to Liberty's requests to arrange compliance. Likewise, if Liberty complies with the Agreement by publicly stating it believes Oron is entitled to the DMCA safe-harbor provisions, such a statement would directly contravene its claim—in the event the Ninth Circuit reverses and remands—that Oron has no defense to its infringement of Liberty's copyrighted works.

If Liberty publicly states that Oron's actions were justified as required by the Agreement, and then makes contrary assertions on remand (and certainly it would), Liberty would suffer irreparable injury to its reputation and the goodwill it has spent years developing. *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (finding that damage to reputation or goodwill, because it is difficult to calculate, qualifies as irreparable harm).

By staying the parties' obligations under and ability to enforce the Agreement, pending the Ninth Circuit's determinations on appeal, the Court will prevent the irreparable injury that Liberty is likely to suffer if Liberty now performs under the Agreement and Oron later prevails on appeal.

### C. Oron Would Not Suffer Any Injury If The Court Grants Liberty's Request For A Stay.

Oron will not suffer from a stay, and would in fact benefit from it. It is difficult to imagine how Oron could be burdened by a stay of its obligations under the very Agreement it seeks to invalidate on appeal. If Oron prevails on appeal, then neither party will be required to perform. In the event that Liberty prevails on appeal, Liberty is ready and willing to perform its obligations. Thus, the only burden Oron faces is a mere delay of the parties' ability to enforce the agreement, and mere delay is not a sufficient basis to deny a stay. *In re Victory* Const. *Co., Inc.*, 9 B.R. 570, 571 (Bankr. C.D. Cal. 1981) (finding that "[m]ere delay from the passage of time is of little significance to [the party resisting the stay], compared to the irreparable harm which will occur to [requesting party] if a stay is not granted"). Conversely, as discussed above, Liberty would suffer harsh consequences absent a stay. Thus, the third factor favors staying the parties' obligations and their ability to enforce the Agreement pending appeal.

### D. The Public Interest Is Not Implicated By Liberty's Request For A Stay.

Where appropriate, the public interest may be considered in the analysis of whether to grant a stay pending appeal. However, in cases like this, where a court's order is "narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138–39 (9th Cir. 2009) (citation and internal quotation marks omitted) (analyzing the public interest factor in the preliminary injunction context). Since the Agreement is between two private parties and has no impact on the public, the Court should find that this factor is neutral.

## IV. CONCLUSION

To maintain the status quo, and for the reasons set forth herein, Liberty respectfully requests that the Court stay the Order so that the parties are not obligated to perform under the

Agreement, and are prevented from enforcing the Agreement until the Ninth Circuit renders a decision on appeal as to the Agreement's enforceability.

DATED this 3rd day of December, 2012

Brownstein Hyatt Farber Schreck, LLP


By: /s/ Laura Bielinski
   Mitchell J. Langberg, Nevada Bar No. 171912
   Laura Bielinski, Nevada Bar No. 10516
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
Telephone:  (702) 382-2101
Facsimile:   (702) 382-8135

# CERTIFICATE OF SERVICE

Pursuant to Fed.R.Civ.P.5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of Brownstein Hyatt Farber Schreck, LLP, and that a true and correct copy of the **PLAINTIFF'S MOTION TO STAY ENFORCEMENT OF ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT** was served via electronic service, via CM/ECF, on this 3rd day of December, 2012, and to the address(es) shown below:

| | |
|---|---|
| John Scott Burris, Esq.<br>David S. Kahn, Esq.<br>Sheri M. Thome, Esq.<br>Wilson Elser Moskowitz Edelman & Dicker<br>300 S. Fourth Street<br>11th Floor<br>Las Vegas, NV 89101<br>702-727-1400<br>702-727-1401 (fax)<br>j.scott.burris@wilsonelser.com<br>david.kahn@wilsonelser.com<br>sheri.thome@wilsonelser.com<br>*Attorneys FF Magnat Limited* | Anne E. Kearns, Esq.<br>Kenneth K. Keller, Esq.<br>Michael D. Lisi, Esq.<br>Stan G. Roman, Esq.<br>Krieg Keller Sloan Reilley & Roman LLP<br>555 Montgomery Street, 17th Floor<br>San Francisco, CA 94111<br>415-249-8330<br>415-249-8333 (fax)<br>akearns@kksrr.com<br>kkeller@kksrr.com<br>mlisi@kksrr.com<br>sroman@kksrr.com<br>*Attorneys for FF Magnat Limited* |

Steven A. Caloiaro, Esq.
Michael D. Rounds, Esq.
Watson Rounds
5371 Kietzke Lane
Reno, NV 89511
775-324-4100
scaloiaro@watsonrounds.com
mrounds@watsonrounds.com
*Attorneys for Maxim Bochenko*

I further certify that I am familiar with the firm's practice of collection and processing documents for mailing; that in accordance therewith, I caused the above-named document to be deposited with the U.S. Postal Service at Las Vegas, Nevada, in a sealed envelope, with first-class postage prepaid, on the date and to the address(es) shown below:

Stevan Lieberman, Esq.
Greenberg & Lieberman, LLC
2141 Wisconsin Ave., NW Suite C2
Washington, DC 20007
*Attorney for FF Magnat Limited*

/s/ Erin Parcells
Employee of Brownstein Hyatt Farber Schreck, LLP