<u>**DECLARATION OF LAURA BIELINSKI, ESQ.**</u>

I, Laura Bielinski, Esq., hereby declare as follows:

1.    I am over the age of 18 and am a resident of the State of Nevada.  I make this declaration in support of Plaintiff Liberty Media Holdings, LLC's ("Liberty") Motion to Stay Enforcement of Order Granting Plaintiff's Motion to Enforce Settlement Agreement, in Case No. 2:12-cv-01057-GMN-RJJ, now pending before the United States District Court for the District of Nevada.  I am an associate attorney at the law firm of Brownstein Hyatt Farrber Schreck, LLP ("BHFS"), Liberty's counsel of record in the case listed above against Defendant FF Magnat Limited d/b/a Oron.com ("Oron").  I have personal knowledge of the facts herein, and if called as a witness, could testify competently thereto.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the Settlement Agreement produced to the Court in connection with Liberty's Motion to Enforce Settlement Agreement, in the Court's records at Doc. 33-1.

3.    BHFS entered this case in October 2012.  Since that time, I have attempted to communicate several times with opposing counsel both by telephone and email in an effort to resolve the parties' dispute.  I have received no response from Oron's lead counsel, Valentin Gurvits, who I am informed is the person to whom settlement communications should be made.

4.    Rather, the first time I heard from Mr. Gurvits was November 16, 2012, when he sent me a copy of a demand for JAMS arbitration.  A true and correct copy of this correspondence, with the arbitration complaint, is attached hereto as Exhibit 2.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 3rd of December, 2012.

_Laura B_

LAURA BIELINSKI, ESQ.

016194\0001\1760131.1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada
(702) 382-2101

# EXHIBIT 1

# EXHIBIT 1

# GREENBERG & LIEBERMAN LLC

*PATENTS  •  TRADEMARKS  •  COPYRIGHTS  •  DOMAIN NAMES*
*PROSECUTION  •  LITIGATION  •  ARBITRATION  •  LICENSING*

July 1, 2012

Randazza Legal Group
Marc Randazza                                                    By Email:  mjr@randazza.com
6525 W. Warm Springs Rd.
Suite 100
Las Vegas, NV 89118

> Re:   Liberty Media v. FF Magnat
>        Potential Settlement
>        Our Matter #: 5001-3

Dear Marc,

This letter is to memorialize what I believe is the settlement terms we are currently at for Liberty Media Holdings (LMH)

## I. MONETARY TERMS (ALL AMOUNTS IN US DOLLARS)

1        Oron pays Liberty Media $550,000.

2        This will be paid as follows: The parties will stipulate that $550,000 of the frozen funds will be transferred immediately to Randazza trust account, but will not be disbursed until settlement is final, and if Randazza transfer them before settlement is final and Randazza shall be personally liable for the funds plus a 10% penalty.

## II. NON MONETARY TERMS FOR LMH:

3        Oron will take both strong and bold measures to keep Liberty Media content off of its servers.

4        Oron will assist Liberty in identification and civil prosecution of any parties who have been using Oron to distribute Liberty's copyrighted material, including but not be limited to, full disclosure of IP addresses, banking information, emails and any other information that may assist in Liberty in such prosecution. This will not include Oron paying any legal costs for such prosecution however; it may require Oron to sign statements authenticating the information.

5        Liberty will have unfettered access to takedown / delete any of Liberty's material that are being distributed through Oron.com, through Oron.com's online access so long as Liberty reasonably believes the content is infringing content owned by LMH. LMH may delegate this to PSH or other third-party takedown services. Liberty acknowledges that any such takedowns will automatically include an email notice to the

GREENBERG & LIEBERMAN LLC

account holder's email telling them that the material has been taken down through the auspices of a DMCA filed by Liberty and providing Liberty's contact information.

6       Any payment due to anyone who has been distributing Liberty materials will be frozen, and an accounting therof will be provided to Liberty.

7       Oron will permanently ban, by email address, PayPal account, IP address or any other reasonable and robust metric, any user who is the subject of even a single Liberty Media takedown notice. Any user account that has a takedown by Liberty will automatically be banned by these terms. Liberty agrees not to abuse this unfettered access.

## IV. IN EXCHANGE

8.      Once payment is received by both parties, both proceedings in NV and HK will be dismissed with prejudice, and in the event that Oron breaks any part of the deal, the claims may be reinstated via arbitration after a 30 day "notice and cure" period.

9       Liberty will agree to privately arbitrate any future disputes with Oron based on facts that occur after the date of the agreement. If there is arbitration, no in-person hearings for the parties shall be required. Arbitrator shall be stipulated to have injunctive powers equivalent with that of a Federal Judge. Arbitrator shall have the power to grant equitable relief. Any party may attend arbitration telephonically if they wish, and/or arbitration is not required to take place in the United States. For example, WIPO or ICC in Stockholm, or others that the parties shall mutually agree to.

10      Liberty will agree to dissuade others from bringing suit against Oron.

11.     Randazza and Liberty will actively assist Oron in sending letters and doing everything else necessary to convince Paypal and the other payment processors to allow Oron to accept payments through their service. No dishonest statements will be required.

12.     Liberty agree to announce publically that after a careful review of the facts they believe Oron is protected by the DMCA safe harbor and that a review of the actual files shows that there never was any child porn on Oron's site.

13.     The parties will craft a joint letter for publications stating that the parties are joining together in the fight against child porn and copyright infringement.

14.     Liberty will immediately, once the terms of this agreement are agreed to issue a letter asking that the HK bank accounts be unfrozen allowing the payment to Leaseweb as well as send a letter to Leaseweb asking them to allow Oron ten (10) days to pay as the settlement of the matter is imminent.

*— TO The Randazza Trust and Then to —*

## V. GENERAL TERMS

15      All parties mutually release

GREENBERG & LIEBERMAN LLC

16    Terms are confidential, except for some non-monetary terms, such as Oron implementing new anti-piracy measures (to Oron's benefit in order to dissuade other suits).

17    Arbitration of all disputes arising after date of this letter. All arbitrations shall be done telephonically only. Nevada Law applies to future arbitration disputes, but both parties stipulate that this is not a "contact" with the United States.

18    Although Nevada law applies to the agreement, nothing herein shall be deemed to bring Oron into the US for purposes of Jurisdiction or otherwise.

19    If you agree to these terms for your client please sign on the line below and return.


Sincerely,

Stevan Lieberman

Marc Randazza  for Liberty Media Holdings

# EXHIBIT 2

# EXHIBIT 2

# BOSTON LAW GROUP, PC

### ATTORNEYS AT LAW

825 BEACON STREET, SUITE 20
NEWTON CENTRE, MASSACHUSETTS 02459

Main (617) 928-1800                                                                    Fax (617) 928-1802

**VIA FEDERAL EXPRESS**

November 16, 2012

Laura Bielinski, Esq.
Brownstein, Hyatt, Farber, Schreck
100 City Parkway
Las Vegas, NV 89106

      Re:    *Liberty Media Holdings LLC v. FF Magnat Limited et al*
             Case No. 2:12-cv-01057-GMN-RJJ (D. Nev.)

Dear Ms. Bielinski,

      Please recall that this law firm represents FF Magnat Limited ("Oron") in connection with the above referenced suit (the "Suit"). As you are the current attorney of record for Liberty Media Holdings, LLC ("Liberty") in the Suit, please be advised and on notice that Oron has filed today a demand for arbitration with JAMS Arbitration in order to obtain relief for Liberty's breach of the settlement agreement enforced by the court in the Suit.

      I serve upon you the enclosed:

      (1) Demand for Arbitration Before JAMS; and
      (2) Claimant FF Magnat Limited's Notice of Claims and Remedies.

      In order to expedite the commencement of the proceedings, Oron has submitted Liberty's $400 Case Management Fee in Liberty's place, to be recovered by Oron from Liberty following resolution of the proceedings.

                           Very Truly Yours,

                           Valentin Gurvits, Esq.
                           Boston Law Group, PC
                           825 Beacon Street, Suite 20
                           Newton Center, MA 02459
                           617-928-1804
                           vgurvits@bostonlawgroup.com

**JAMS**

### THE RESOLUTION EXPERTS

# Demand for Arbitration Before JAMS

TO RESPONDENT: Liberty Media Holdings, LLC
(Name of the Party on whom Demand for Arbitration is made)

(Address)  302 Washington St #321

| (City)  San Diego | (State)  CA | (Zip)  92103 |
|---|---|---|
| (Telephone) | (Fax) | (E-Mail) |

Representative/Attorney (if known): Laura Bielinski – Brownstein Hyatt Farber Schreck
(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)

(Address)   100 City Parkway

| (City)  Las Vegas | (State)  NV | (Zip)  89106 |
|---|---|---|
| (Telephone) 702-464-7019 | (Fax)  702-382-8135 | (E-Mail)  lbielinski@bhfs.com |

FROM CLAIMANT (Name):   FF Magnat Limited

(Address)      Flat/RM 1502 15/F, Jubilee Centre, 46 Gloucester Road

| (City)  Wan Chai | (State) Hong Kong | (Zip) |
|---|---|---|
| (Telephone) | (Fax) | (E-Mail) |

Representative/Attorney of Claimant (if known):   Valentin Gurvits – Boston Law Group, PC
(Name of the Representative/Attorney for the Party Demanding Arbitration)

(Address)  825 Beacon Street, Suite 20

| (City)  Newton Center | (State)  MA | (Zip)  02459 |
|---|---|---|
| (Telephone) 617-928-1804 | (Fax)  617-928-1802 | (E-Mail)<br>vgurvits@bostonlawgroup.com |

## NATURE OF DISPUTE

Claimant hereby demands that you submit the following dispute to final and binding arbitration (a more detailed statement of the claim(s) may be attached):

Breach of the court-enforced settlement agreement in Liberty Media Holdings LLC v. FF Magnat Limited et al, Case No. 2:12-cv-01057-GMN-RJJ (D. Nev.)

## ARBITRATION AGREEMENT

This demand is made pursuant to the arbitration agreement which the parties made as follows (cite location of arbitration provision & attach two (2) copies of entire agreement).

Paragraphs 9 and 17 of the settlement agreement.



**THE RESOLUTION EXPERTS**

# Demand for Arbitration before JAMS

## CLAIM & RELIEF SOUGHT BY CLAIMANT

Claimant asserts the following claim and seeks the following relief (include amount in controversy, if applicable):

**As detailed in the Notice of Claims and Remedies, Claimant asserts a claim for breach of contract and seeks relief in the amount of $20,981,797.50 plus additional costs and expenses to be determined.**

## RESPONSE

Respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. Send the original response and counter-claim to the claimant at the address stated above with two (2) copies to JAMS.

## REQUEST FOR HEARING

JAMS is requested to set this matter for hearing at:

**Pursuant to Paragraph 17 of the settlement agreement, arbitration should be conducted telephonically only. However, to the extent that a "location" for the hearing is required, Complainant requests Boston, Massachusetts.**

## ELECTION FOR EXPEDITED PROCEDURES (COMPREHENSIVE RULE 16.1)

By checking this box ☐ Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than 7 days from the date this Demand is served whether it agrees to the Expedited Procedure.

Signed (Claimant): _____   Date: 11-16-12
                           (may be signed by an attorney)

Print Name:   Valentin Gurvits, Esq.

**Please include a check payable to JAMS for the required initial, non-refundable $400 per party deposit to be applied toward your Case Management Fee and submit to your local JAMS Resolution Center.**

Effective 10/20/2011
Resolution Centers Nationwide • 1.800.352.5267 • www.jamsadr.com
(c) copyright 2011 JAMS. All rights reserved.

JAMS ARBITRATION

FF MAGNAT LIMITED

     Claimant

v.     ,

LIBERTY MEDIA HOLDINGS, LLC

     Respondent

## CLAIMANT FF MAGNAT LIMITED'S
## NOTICE OF CLAIMS AND REMEDIES

### Introduction

Claimant FF Magnat Limited d/b/a Oron ("Oron") operates an Internet website which allows users to store and share files on the Internet. Liberty Media Holdings, LLC ("Liberty") produces pornography and is a copyright troll that files frivolous lawsuits against foreign defendants in order to force settlement. This dispute arises from the breach of a settlement agreement (the "Agreement") for one such frivolous lawsuit between Oron and Liberty. A copy of the Agreement is attached hereto as <u>Exhibit A</u>. The Agreement sought to settle the frivolous lawsuit filed by Liberty against Oron wherein Liberty alleged acts of copyright infringement by Oron's users and attempted to hold Oron liable for its users' actions. *See Liberty Media Holdings LLC v. FF Magnat Limited et al*, Case No. 2:12-cv-01057-GMN-RJJ (D. Nev.) (hereinafter, "*NV Litigation*").

1

The judge in the NV Litigation ruled on the enforceability of the Agreement and found the Agreement to be an enforceable obligation of both parties.[1]  Under the court's order and pursuant to the Agreement, Oron paid $550,000 to Liberty and fully complied with its obligations under the Agreement.

However, despite misleading the court into enforcing the Agreement and despite Oron's compliance with the Agreement, Liberty has utterly failed to perform nearly every single one of its obligations pursuant to the Agreement.  Liberty's failures constitute a breach of the Agreement.

As a result of the numerous breaches by Liberty, Oron has suffered staggering damages amounting to tens of millions of dollars and it is now bringing this arbitration proceeding in order to obtain relief pursuant to the terms of the Agreement which Liberty itself caused the court to enforce.  Claimant is seeking the return of the $550,000 payment it made pursuant to the Agreement, the payment of further costs and expenses incurred by Oron as a result of Liberty's breach of the Agreement, and remedies for the tens of millions of dollars in business that Oron has lost as a result of Liberty's breach.

### General Background

Oron is a Hong Kong company that operated a "cloud" based storage business.  Liberty is a United States based producer of pornographic video material.  More significant, however, is that Liberty is a blatant copyright troll whose *modus operandi* is to employ excessively

---

[1] It bears noting that in the course of settlement discussions, Oron provided to Liberty a draft document for a potential settlement of the NV Litigation. Liberty rejected this settlement. However, after it became clear to Liberty that Oron will not agree to any further concessions, Liberty presented the draft proposal to the court and misrepresented to the court that the draft was in fact a final and executed settlement agreement between the parties, when in fact Liberty knew that the parties had not arrived at an agreement. As a result of this misrepresentation, the court issued an order enforcing the draft settlement proposal as if it were an actual contract.

2

aggressive legal tactics and initiate dozens of frivolous lawsuits in the United States against foreign and legitimate websites. This business practice serves as an attempt to force the victims to settle so as to avoid an expensive, baseless, and drawn-out long-distance litigation. Unfortunately, Oron is one of the many innocent victims in Liberty's path of destruction.

Before being forced to shut down by Liberty's improper actions, Oron was simply an online service provider which provided a file sharing system to its users. Oron allowed users to upload and store files. Oron strictly maintained the privacy of its users and it therefore did not index the materials which its users uploaded and it maintained no catalogue or search function within the website. For the storage services that it offered, Oron charged its customers a monthly fee if they chose to use its premium services of faster uploading, faster downloading, more storage space, and longer storage. Visitors to Oron's website, whether free or as paying premium customers, did not have access to other users' materials. The user who initially uploaded and stored his material on Oron's service had the sole control over the material which they uploaded and the sole discretion of whether to share anything with anyone else. Notably, Oron was not a "peer to peer" system like Grokster and Napster, which have been held to run afoul of the copyright laws. *See MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) and *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001).

Liberty's NV Litigation suit lacked merit on a number of grounds, particularly because Oron is not subject to the laws of the United States and, if it was, it complied with the safe harbor provisions of the Digital Millennium Copyright Act, 17 U.S.C. § 512 (the "DMCA").

The Nevada court lacked personal jurisdiction over Oron because Oron is a Hong Kong company with no offices or agents in the United States. Although Oron's services were available to individuals throughout the entire world (as almost every website on the Internet is available to

3

individuals throughout the entire world), the vast majority of Oron's users were not from the

United States. In fact, it can be determined from publicly available information, such as WHOIS

domain.tools (*see* Site Profile on http://whois.domaintools.com/oron.com, last accessed on

November 6, 2012, with copy attached hereto as <u>Exhibit A</u>), that only 10.6% of visitor's to

Oron's website came from the United States. The majority of Oron's visitors and income came

from Europe, Asia and Russia.

Moreover, even assuming *arguendo* that Oron was subject to suit in the United States,

according to the DMCA, a service provider like Oron is not liable for infringement of copyright

"by reason of the storage at the direction of a user" if it complies with a number of listed

requirements. Oron has at all relevant times complied with each and every requirement to

qualify for the DMCA safe-harbors.[2]

### NV Litigation Procedural Background

In the NV Litigation, Liberty claimed that some of its copyrighted materials were

uploaded by third parties to Oron's computer servers and that Oron is therefore subject to

liability for these actions in the United States – despite the fact that very little of Oron's business

comes from the United States and Plaintiff's videos, if as alleged, comprised an infinitesimal

portion of the data that was stored by users on Oron's servers. Moreover, Oron is not subject to

the laws of the United States and, if it was, it would be entitled to the safe harbor defenses of the

Digital Millennium Copyright Act (the "DMCA"). However, on the basis of its unjustified

allegations, Liberty filed a frivolous lawsuit against Oron on June 20, 2012 in the United States

---

[2] Oron always acted expeditiously to remove any material on its service which it knew was infringing. Oron did not receive any financial benefit directly attributed to any allegedly infringing material that its users stored on its service. Oron had a designated agent registered with the United States Copyright Office to receive notifications of claimed infringement. Oron had a repeat infringer policy which it regularly applied. Oron even implemented technical measures beyond industry standards to identify and protected copyrighted works.

District Court for the District of Nevada claiming copyright infringement. *NV Litigation*, Docket No. 1.

Along with Liberty's complaint, Liberty filed an *ex parte* emergency motion for a temporary restraining order to freeze Oron's assets in all of Oron's banks and payment processing companies, including PayPal. *NV Litigation*, Docket No. 2. The Court granted Liberty's motion for a temporary restraining order on June 21, 2012. *NV Litigation*, Docket No. 11. Shockingly, Liberty went so far as to break into the e-mail account of Oron's affiliate, steal passwords from the account, and use them to access Oron's accounts at financial institutions. Oron then presented this illegally obtained information as evidence to the court.

Contemporaneous to the filing in Nevada, Liberty instituted legal proceedings against Oron in Hong Kong. Liberty obtained an order from the Hong Kong court freezing Oron's assets in Hong Kong as well – the Hong Kong court specifically relied on the existence of the Nevada order in making its own identical order.

As a result of the court orders, millions of dollars of Oron's funds were frozen and Oron was unable access its funds to pay any of its service providers. As the result of having no access to its funds, Oron was eventually forced to shut down its website in July of 2012 (although at that time it was still possible to "resurrect" its business).

Even though the NV Litigation suit was frivolous, for the very reason that Oron is a foreign company (and it did not wish to be embroiled in a drawn-out lawsuit in the United States) and because Oron wished to have the freeze on its assets lifted as soon as possible so that it could pay its service providers without going offline, Oron initiated settlement discussions with Liberty.

On July 1, 2012 Oron and Liberty began settlement discussions and Oron circulated proposed terms for the settlement. Liberty rejected the terms. However, on July 6, 2012, when Liberty understood that Oron would not agree to any further concessions, Liberty pretended that an actual agreement was reached and filed a Motion to Enforce Settlement with the Nevada Court, *NV Litigation*, Docket No. 33. In that filing, Liberty misrepresented to the court that the parties had come to a binding agreement and that Oron was breaching it. Specifically, Liberty alleged that Oron refused to disburse the $550,000 as required pursuant to the settlement terms. Liberty was correct on this point – Oron did not disperse the $550,000 – but this is only because Oron and Liberty did not have a binding agreement.

Having been misled by Liberty, the Nevada court mistakenly granted Liberty's Motion to Enforce Settlement on August 7, 2012. *NV Litigation*, Docket No. 85. Oron filed a notice of appeal in order to preserve its right to appeal certain actions of the court. *See Liberty Media Holdings, LLC v. FF Magnat Limited*, Docket No. 12-16976 (9th Cir.). Most specifically, Oron is preserving its right to appeal the court's order for legal fees, which the court had no right to do in light of the release and arbitration clauses in the Agreement (discussed in further detail below).

## The Settlement Agreement

Given the Nevada court's order to enforce the Agreement, the Agreement is now a binding contract between Oron and Liberty. The Agreement calls for Oron to pay $550,000 to Liberty, which Oron did on or about August 24, 2012. In consideration for that payment, the Agreement specifically called on Liberty to, amongst other things:

(1)     Dismiss with prejudice the proceedings in both Nevada and Hong Kong (Paragraph 8).

6

(2)     Dissuade others from bringing suit against Oron (Paragraph 10).

(3)     Actively assist Oron in sending letters and taking all necessary steps to convince PayPal and other payment processors to continue accepting payments through their services (Paragraph 11).

(4)     Publicly announce that, after a careful review of facts, that Liberty believes that Oron is protected by the DMCA safe harbor and that a review of Oron's files shows that there was never any child pornography on Oron's website (Paragraph 12).

(5)     Craft a joint letter for publication with Oron stating that the parties were joining together to fight child pornography and copyright infringement (Paragraph 13).

(6)     Issue a letter asking that Oron's Hong Kong bank accounts be unfrozen to allow for Oron's payment to its hosting service, Leaseweb, and issue a letter to Leaseweb asking them to allow Oron additional time to pay its fees to the hosting service (Paragraph 14).

(7)     Keep the terms of the Agreement confidential (Paragraph 16).


## Claims

Despite requesting the Nevada court to enforce the Agreement and despite Oron's performance of all its obligations pursuant to the Agreement, Liberty failed to perform nearly all of its obligations thereunder and actually took additional affirmative steps to further damage Oron. Specifically:

(1)     In contravention of Paragraph 8 of the Agreement, Liberty did not dismiss the Hong Kong action with prejudice. Instead, the Hong Kong action continues to move forward and is costing Oron hundreds of thousands of dollars in legal fees.

7

(2)    In contravention of Paragraph 10 of the Agreement, Liberty has not dissuaded others

from bringing suit against Oron.  Instead, following the weekend after Oron paid Liberty

$550,000, on August 28th Liberty assisted Datatech Enterprises, LLC in filing a copycat

lawsuit against Oron in California.  *See Datatech Enterprises, LLC v. FF Magnat*

*Limited*, Case No. 3:12-cv-04500-CRB (N.D. Cal.).  The complaint in the *Datatech*

lawsuit alleges causes of action that are virtually identical to Liberty's against Oron.

(3)    In contravention of Paragraph 11 of the Agreement, Liberty has done nothing to assist

Oron in convincing its payment processors, including PayPal, to unfreeze Oron's

accounts.  On the contrary, as set forth in more detail below, Liberty has engaged in

activities which have made it even more difficult for Oron to unfreeze its funds.

(4)    In contravention of Paragraph 12, Liberty has not publically announced that Oron is

protected by the DMCA safe harbor and that there was never any child pornography on

Oron's service.

(5)    In contravention of Paragraph 13, Liberty has not crafted a joint letter with Oron.

(6)    In contravention of Paragraph 14, Liberty has not issued a letter to Oron's Hong Kong

bank to unlock Oron's funds or to Oron's hosting service, Leaseweb.

(7)    In contravention of Paragraph 16, Liberty did not keep the Agreement confidential and

instead included it in a publicly available filing with the Nevada court.

As stated above, not only did Liberty fail to adhere to the terms of the Agreement, it took

active steps (in breach of the Agreement) to aid another copyright troll, Datatech, in filing an

identical lawsuit against Oron.  Following Liberty's advice and example, Datatech filed a lawsuit

with virtually identical causes of action in California mere days after the NV Litigation was

dismissed, and obtained an identical order freezing Oron's funds.  Liberty's failure to unlock

8

Oron's funds resulted in Oron's inability to pay its vendors before Datatech's lawsuit caused Oron's funds to be frozen again.

As the result of Liberty's actions, Oron was unable to re-launch its website. Oron's legitimate and multi-million dollar business has been irreparably damaged as a result of the loss of service, the freezing of Oron's funds, Liberty's assistance to Datatech, and Liberty's failure to comply with nearly all other terms of the Agreement.

In other words, Liberty first mislead the Nevada court into enforcing the Agreement in order to obtain a $550,000 payment from Oron, and then took active steps in destroying Oron's business and helping another copyright troll to pursue its own frivolous action against Oron.

Finally, despite the fact that the Agreement is the final agreement between the parties, that the court enforced the Agreement and that, pursuant to Paragraph 15, the parties mutually released each other of all liability, on August 10, 2012 Liberty filed a motion for attorney's fees and costs. *NV Litigation*, Docket No. 89. The Nevada court granted Liberty's motion and ordered Oron to pay Liberty attorneys' fees in contravention of the Agreement in the amount of $131,797.50. These fees were not authorized by the Agreement, which required the parties to release each other, and therefore constitute further damages resulting from Liberty's breach of the Agreement.

## Liberty's Failure to Release the Hong Kong Funds

In a filing it made with the Hong Kong court, Liberty claimed that it was entitled not to comply with the Agreement on the basis that Oron had filed an appeal. This was a blatant misrepresentation of applicable law. A judgment or an injunction stays in effect during an appeal unless the court issues a stay pending the appeal. "Of course. where the power is not

exercised by the court, nor by the judge who allows the appeal, the decree retains its intrinsic

force and effect." Hovey v. McDonald, 109 U.S. 150, 162 (1883) (attached hereto as <u>Exhibit C</u>).

*See, also,* 20-308 Moore's Federal Practice – Civil 308.02 ("The mere filing of an appeal does

not act to suspend execution or enforcement of a judgment or injunction.") (attached hereto as

<u>Exhibit D</u>).

Rule 62(c) of the Federal Rules of Civil Procedure clearly states that the stay of an

injunction is by the discretion of the court: "While an appeal is pending from an interlocutory

order or final judgment that grants, dissolves, or denies an injunction, the court may suspend,

modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing

party's rights." Rules 8(a) of the Federal Rules of Appellate Procedure confirms the court's

discretionary power over staying an injunction: "A party must ordinarily move first in the district

court for the following relief: (a) a stay of the judgment or order of a district court pending

appeal . . . ."

Neither Oron nor Liberty moved to stay the court's order to enforce the Agreement. The

court did not stay its order *sua sponte* either. Therefore, by the clear letter of the law, the

Agreement continued to be in effect following Oron's filing of the Appeal and Liberty's refusal

to comply with the Agreement is a breach of the Agreement.

### Conclusion

As a direct result of Liberty's breach of the terms of the Agreement, Oron is now

embroiled in two lawsuits (in California and Hong Kong), its website is completely inoperable,

its business prospects are nonexistent and it cannot access any of its funds in order to properly

defend itself. Liberty's numerous breaches of the Agreement are irreparable and Oron's sole

remedies are the return of the payment Oron made to Liberty pursuant to the Agreement and indemnification by Liberty for the legal fees Oron has paid (and will continue to pay) in its appeal of the NV Litigation, the Hong Kong action and the *Datatech* action. Furthermore, Oron must be indemnified for the loss of business it sustained as a direct result of the shutdown of its business and Liberty's disparaging statements about it made to the public.

## Remedies

For the reasons outlined herein, Claimant Oron respectfully requests that the arbitrator:

(1)    Find that Liberty has breached the terms of the Agreement;

(2)    Order that Liberty return to Oron the $550,000 that Oron paid to Liberty pursuant to the Agreement;

(3)    Order that Liberty return to Oron the $131,797.50 that Oron was ordered to pay to Liberty in contravention of the Agreement for Liberty's legal fees;

(4)    Order that Liberty indemnify Oron for all legal fees paid, and all legal fees to be paid, by Oron in connection with the appeal of the judgment for legal fees in the NV Litigation;

(5)    Order that Liberty indemnify Oron for all legal fees paid, and all legal fees to be paid, by Oron in connection with the Hong Kong action, currently amounting to over $150,000;

(6)    Order that Liberty indemnify Oron for all legal fees paid, and all legal fees to be paid, by Oron in connection with the *Datatech* litigation, currently amounting to over $150,000;[3]

(7)    Order that Liberty pay Oron for lost revenues arising out of or relating to Liberty's breaches of the agreement, which have resulted in Oron's inability to resume business operations, estimated to be over $20,000,000;

---

[3] The *Datatech* court issued an order for partial relief from its injunction freezing Oron's assets and allowed Oron to pay its legal fees of up to $125,000. The funds released by the court were completely consumed and Oron has continued to accrue significant legal expenses since that time.

11

(8)   Order Liberty to pay Oron the legal costs and expenses incurred by Oron in prosecuting

the present arbitration; and

(9)   Order Liberty to indemnify Oron for all other costs and expenses related to Liberty's

breach of the Agreement and any and all other losses and damages as may be determined

by the arbitrator.

Oron reserves the right to supplement this notice in accordance with the JAMS

Comprehensive Arbitration Rules and Procedures.

Dated: November 16, 2012

Respectfully submitted,
FF Magnat Limited ("Oron")
By its attorneys,

Valentin Gurvits, Esq.
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Center, MA 02459
Tel: 617-928-1804 / Fax: 617-928-1802
vgurvits@bostonlawgroup.com
Massachusetts BBO# 643572