D. GILL SPERLEIN (SBN 172887)
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, California 94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

Attorney for Plaintiff DataTech Enterprises, LLC,

**UNITED STATES DISTRICT COURT**
**NORTHER DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DATATECH ENTERPRISES, LLC, a Nevada Limited Liability Company,<br><br>　　Plaintiff,<br><br>　　　vs.<br><br>FF MAGNAT LIMITED d/b/a ORON.COM, STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a ROMAN ROMANOV (an alias); and<br><br>　　Defendants. | Case No.: C-12-4500 CRB<br><br>**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF DATATECH ENTERPRISES, LLC'S** MOTION TO EXTEND RELIEF GRANTED IN ORDER OF PRELIMINARY INJUNCTION<br><br>DATE: 1/25/2012<br>TIME: 10:00 a.m.<br>CtRm: 6 -17th Fl |

## INTRODUCTION

Previously the Court issued a Preliminary Injunction freezing the assets of Defendant FF Magnat d/b/a Oron ("Oron") in order to ensure the Court's ability to disgorge illicit profits earned from the Oron's massive infringement operation. Memorandum and Order, ECF 34 and Order, ECF 35. The Court's Order specifically covered Oron's accounts with financial institutions, banks,

PayPal, Inc., CCBill, LLC, and AlertPay. Order, ECF No. 35 at §§1-4. The Order also enjoined Defendants from disgorging or dissipating any funds, property, domain names, or other assets until further notice. *Id*. at §5. Because Plaintiff discovered that Oron is seeking to obtain control of assets currently in an attorney's trust account, Plaintiff brought a motion to explicitly extend the Order to cover any such funds that might otherwise come under Oron's control.

Defendant initially opposes Plaintiff's Motion to Extend the Relief granted in the Court's Preliminary Injunction, by arguing that Plaintiff is not entitled to the relief the Court granted in its Preliminary Injunction in the first instance. However, the Court considered and rejected Defendants' arguments in this regard twice before - once on the initial motion for preliminary injunction and once on Defendant's motion for reconsideration. Memorandum and Order, ECF 34, and Order Denying Motion for Leave to File Motion for Reconsideration, ECF 43. The question of the appropriateness of the ordered relief is now on interlocutory appeal to the Ninth Circuit. Thus, the issue has been decided, at least for the time being, and should stand unless the Ninth Circuit overturns the Court's Order on appeal.

Defendant sets forth a second argument the Court also already considered and rejected. Defendant argues that the Preliminary Injunction should be limited because the amount of assets frozen already exceeds any "damages" that may be available to Plaintiff under 17 U.S.C. §504(b). As the Court has previously written, once Plaintiff has provided proof of gross receipts it is the infringing defendants burden to show that a portion of the profits derived from sources other than the infringement of the Plaintiff's copyrights. Memorandum and Order, ECF 34 at p. 8:4-11.

Defendant also argues that "DataTech cannot rely on purely statutory damages of section 504(c) to establish its damages for the purpose of a preliminary injunction freeze of funds." Oron's continued reference to the frozen assets in terms of "damages" provides an explanation for Oron's failure to comprehend or accept the equitable nature of the relief that DataTech requested and the

-2-

Court granted. The funds have not been frozen to ensure the recovery of *any* damages, whether actual damages under 504(b) or statutory damages under 504(c) - although DataTech ultimately will be eligible to recover damages under either section. Rather, the Court ordered the assets frozen to ensure that funds are available for the Court to transfer to Plaintiff illicit *profits* under section 504(b). Illicit profits are not simply another name for damages. They are not a form of damages at all. Disgorgement of profits is entirely an equitable form of relief. If Oron does not understand this, it is not surprising that it continues to misguidedly and irrelevantly argue that "damages" are not equitable in nature.

**A. DataTech Does Not Seek "Additional Damages or Lost Profits".**

Oron argues that "DataTech is not entitled to any additional damages for lost profits because it cannot show any causal link between the alleged infringements and Oron's profits" and that the "alleged infringement are *de minimis*." DataTech, however, has made no argument that it is entitled to *any* additional damages.

Oron's premise that one form of calculating damages is to evaluate DataTech's lost profits is valid.[1] If a defendant's infringing activity causes a copyright holder to lose sales, the profits the copyright holder would have made from those sales is a measure of damages and can be recovered by

---

[1] There are also other ways to calculate damages such as imposing a retroactive licensing fee. *See Sid & Marty Krofft Television Prods, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977); *Polar Bear Productions*, 384 F.3d at 708 (confirming "the value of the use of the copyrighted work to the infringer" as among the actual damages available, and upholding jury award of license where plaintiff provided credible evidence in support of awarded amount); *Jarvis v. K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007) ("In situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work.") (citations omitted); *see also On Davis v. The Gap, Inc.*, 246 F.3d 152, 162-164 (2d Cir. 2001) (acknowledging that the Second Circuit and other courts hold that a reasonable royalty fee is an appropriate measure of actual damages under the Copyright Act, "and the Supreme Court has suggested, albeit obliquely, that such a measure of damages is appropriate") (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562, 105 S. Ct. 2218 (1985)).

-3-

the injured party. *See Hamil Am. Inc. v. GFI*, 193 F.3d 92, 107 (2d Cir. 1999). However, in the absence of any discovery, it is premature to evaluate DataTech's damages using any measure.

More importantly, the calculation of DataTech's damages is irrelevant to the current discussion. If it were relevant, DataTech would argue that damages could exceed sixty-five million dollars ($65,000,000) based on the availability of a statutory damage award of up to $150,000 for each of 436 already identified previously registered works infringed by Defendant. 17 U.S.C. §504 (c). However, as Oron points out, damages are legal in nature. Here, DataTech seeks clarification of the Court's Preliminary Injunction which freeze Oron's (apparently limited) assets in order to ensure that funds are available for the Court to disgorge illicit profits that equitably belong to Plaintiff. Therefore, the relevant measure for the purposes of evaluating equitable relief is the amount of profits Oron earned from its infringing activity and thus are subject to equitable disgorgement under 17 U.S.C. §504(b). Damages, simply are not yet in play.

**B. Oron Misapplies *Polar Bear Productions* and Related Cases.**

In a clear misstatement of the law, Oron argues that "[t]he correct starting point is not Oron's profits in general, but rather those profits attributable to the alleged infringement of DataTech's copyrights." While this may be the correct end point, it is not the correct starting point. After a plaintiff presents evidence of gross revenues, it is the infringer's burden to establish the amount of any warranted offset. 17 U.S.C. § 504. "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id*.

Although we do not yet know the total of Oron's gross revenues, we do know that all of the funds in its accounts are a subset of those gross revenues, since Oron has testified that its source of revenue was from the sale of premium subscriptions allowing its customers quick and efficient access

-4-

to files residing on Oron's servers. Declaration of Davidoglov Stanislav in Support of Oron's Response to Order to Show Cause re Plaintiff's Motion for Preliminary Injunction, ECF No. 21-1 at ¶5. This assertion is not based on conjecture as Oron alleges, but rather is established by Oron's own statements.

At trial it will be Oron's burden to bring forth evidence showing how much of its revenue came from sources other than from the exploitation of Plaintiffs' works. Oron's reluctance to provide any such evidence suggests that the portion of profits attributable to the exploitation of Plaintiff's works may exceed any amounts currently frozen. In any event, until Oron comes forth with evidence, Plaintiff will be entitled to the disgorgement of the full amount of the illicit profits. See *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 107 (2d Cir. 1999)("[If] the computation of profits and costs is uncertain due to the failure of the [infringer] to keep adequate records of costs, any doubt in the evidence will be resolved in favor of the plaintiff," citing *Nimmer on Copyright,* § 14.03[B], at 14–40).

Oron's reliance on *Polar Bear Productions* is misplaced. In *Polar Bear Productions* and other similar cases, courts have held that it is improper to consider the Defendant's gross receipts when the infringing activity was an indirect source of revenue. Almost all of these cases dealt with infringement that occurred when the defendant used a plaintiff's copyrighted work as part of an advertising campaign. Thus, it was unfair to consider all of an infringer's revenue, when it was speculative as to whether the use of the infringing material in advertisements lead to any profits. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 703 (9th Cir. 2004) *opinion amended on denial of reh'g,* 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004)(use of Plaintiff's film footage to promote watch sales); *Mackie v. Rieser*, 296 F.3d 909, 912 (9th Cir. 2002) (use of photograph of plaintiff's sculpture in a symphony's advertising brochure); *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826 (9th Cir. 1985)(use of plaintiff's song in an advertisement for beer); *On

-5-

*Davis v. The Gap, Inc.,* 246 F.3d 152, 160 (2d Cir. 2001)(use of Plaintiff's eyeware in an advertisement for clothing store).

Here, Oron did not simply use a one of Plaintiff's movies in an advertisement for its website. Rather, Oron earned revenue directly from selling access to thousands of copies of Plaintiff's works residing on its servers. The infringing use was not an advertisement; it was the actual sale of access to the work. This was Oron's business model and its sole *raison d'etre*.

Even where courts have required a plaintiff to narrow the scope of revenue, they have suggested that evidence of revenue from the same type of activity is sufficiently narrow. For example, where a plaintiff brought suit against the Gap for the use of an advertisement containing his copyrighted "nonfunctional jewelry worn in the manner of eyeglasses", the Second Circuit held that it was not sufficient for Plaintiff to present evidence of the Gap's total revenue for the period of time of the infringement. However, the Court stated that it was, "incumbent on [plaintiff] to submit evidence at least limited to the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories." *On Davis v. The Gap, Inc.,* 246 F.3d at 160.

If the general rule of applying the burden of proof to the Defendant to show what, if any, portions of revenue came from the sale of other sources does not apply here, it is difficult to imagine any scenario in which it would apply. Defendant's interpretation would turn the rule on its head.

**C.  Oron's Calculations of Damages Are Fundamentally Flawed.**

Oron argues that only profits unaccounted for in determining actual damages, may be considered when calculating the amount of illicit profits the Court may equitably disgorge. Oron interjects its self-serving, inaccurate, and unsupported calculation of damages and creates a fanciful figure with no basis in reality. It then compares the amount of damages to an equally flawed determination of its maximum profits, predictably concluding that that it could not have made more in profits than DataTech lost in actual damages. There are a number of fatal flaws in Oron's analysis.

-6-

**Oron's Profits -**

First, Oron's calculation of illicit profits is flawed. Oron argues that even DataTech would have to admit that it is preposterous to assume that Oron sold one month-long subscription for each of 18,973[2] infringing files. Plaintiff agrees, such an assumption would be preposterous - preposterously low.

The 42,356 infringements DataTech actually documented is only a portion of the number of infringing files likely to actually reside on Oron's servers. DataTech located these files in spite of Oron's claim that the only way to locate the files is if the uploading individual provides copies of the links. DataTech located the files by dredging through numerous, blogs, chat rooms, use groups, and indexing websites. Prior to discovery, DataTech has no way of knowing how many more infringing files reside on Oron's servers. However, it is clear that the files it was able to locate is just a small sampling of the total number of infringing files likely to reside there. In addition to websites that are freely accessible, there are also numerous use groups which are only accessible by registered members. Thus, DataTech would have no way of locating and documenting links to infringing files that were distributed within those closed environments. Moreover, the Internet is vast. Often individuals distributing infringing works avoid detection by not using the actual title of the work or the name of the producing studio. When such methods are used, it can be difficult or impossible to locate infringements, even where links are freely distributed.

---

[2] Since Data Tech does not provide any record citation, Plaintiff does not know from where Oron obtained the figure of 18,973 infringements. DataTech has testified that it documented and sent take down notices, or removed directly, 42,356 files containing infringing copies of DataTech's works. Declaration of Peter Phinney in Support of Plaintiff DataTech Enterprises, LLC's Ex Parte Application for Temporary Restraining Order, ECF No. 4 at ¶3.

More importantly, DataTech was not the only one who had access to the locations where the links to the infringing files were distributed. Anyone with access to an Internet browser could locate the urls and download the infringing files from Oron's servers. Oron's theory of profits, would suggest that these files were similar to video tapes or DVDs purchased in a brick and mortar store and could only be sold once, rather than electronic files that could be sold to an unlimited number of individuals. It is indeed preposterous to assume that each file would only lead to the sale of one Oron subscription.

**DataTech's Damages -**

Second, Oron's calculation of damages is also fundamentally flawed. Oron argues that the maximum damage DataTech could have suffered is $620,227.37. Again this figure is based on an unexplained base number of 18,973 infringements when the minimum number is at least 42,356. Once more, Oron makes the unsupportable assumption that each of the infringing files located on its servers would only be sold to one Oron customer. Direct url links to each of these infringing files were being freely distributed from unsecured locations on the Internet and were accessible to anyone with an Internet connection. Hundreds of thousands of people accessed Oron's servers *every day*. Declaration of Peter Phinney in Support of Plaintiff DataTech Enterprises, LLC's Motion for Preliminary Injunction, ECF No. 29-7 at ¶6. At this stage of the litigation, we do not know how many of these individuals purchased access to the works through Oron's website instead of purchasing access to the works from DataTech or one of its authorized licensees. However, it is absurd on its face to presume that each infringing files only resulted in a single sale that should have otherwise gone to DataTech.

**The Policy behind Disgorgement of Illicit Profits -**

Third, Oron fails to account for the purpose behind the equitable remedy of disgorgement. Disgorgement of profits is available so that infringers may not retain profits from their infringing

-8-

activity in the event that a copyright holder is unable to meet what can sometimes be a difficult task - proving actual damages. *Manufacturers Technologies, Inc. v. Cams, Inc.,* 728 F. Supp. 75, 83 (D. Conn. 1989)("The recovery of [...] profits in addition to actual damages is designed to ensure that infringers are not able to retain some benefit flowing from their wrongful conduct that is not fully taken into account in the award of actual damages.").

"[T]o prove the loss of sales due to infringement is ... notoriously difficult." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) citing, *Omega Importing Corp. v. Petri–Kine Camera Co.,* 451 F.2d 1190, 1195 (2d Cir.1971).  In spite of undeniable evidence of infringement, Plaintiff may be unable to prove the amount of sales lost due to Defendant's infringement.  Defendant's argument attempts to turn the question on its head, and put Plaintiff in the unenviable position of arguing why it believes it may not be successful in proving the amount of sales it lost as a result of Defendant's infringing operation.  Plaintiff declines to take the bait - because it simply does not matter.  If DataTech cannot prove it lost a single sale due to Oron's infringement of its works, it is entitled to recover the profits Oron made from the infringement of its works.

The law contemplates that the infringer will have access to the accounting that will allow for the determination of how much of its profits derived from the infringement of Plaintiff's works compared to the exploitation of works other than those belonging to DataTech.  Therefore, as discussed in more detail above, the law provides that once a copyright holder provides evidence of an infringer's gross receipts, the infringer must provide evidence of expenses to be deducted or any evidence that a portion of the infringement came from the exploitation of other works or other sources.  The Court invited Oron to provide such evidence, but Oron has failed to do so.  With not one iota of proof, Oron simply repeats its self-serving statement that during its operation, Oron's servers hosted hundreds of millions of files.  It provides no reports, no server logs, no bills from its hosting company, no financial records, and no records of payments to its affiliates.  In short, Oron

-9-

still makes no attempt to provide evidence showing how much of its profits came from the infringement of Plaintiff's works compared to other sources of revenue.

## CONCLUSION

The Court's Order granting Preliminary Injunction in the form of an asset freeze was based on good law and there is no reason to revisit the appropriateness of the Order at this juncture. In spite of the Court's invitation to Oron to present evidence that the amount of the funds subject to the injunction should be limited, Oron has failed to provide any such evidence. Until Oron provides such evidence, the injunction should apply to any and all funds including any additional funds that may otherwise be made accessible to Oron through the litigation or settlement of the *Liberty* case.

Respectfully Submitted,

Dated: *January 9, 12013*      */s/ D. Gill Sperlein*
_____      _____
                                                 D. Gill Sperlein,
                                                 attorney for Plaintiff DataTech Enterprises, LLC

Re:  *DataTech Enterprises, LLC v. FF Magnat Limited, et al.*
     Case No. 12-4500 CRB

## PROOF OF SERVICE

I, undersigned, declare:

I am a citizen of the United States, employed in the City and County of San Francisco, California. My business address is 345 Grove Street, San Francisco, CA 94102. I am over the age of 18 years and not a party to the within action.

On January 19, 2013, I caused to be served on the following parties the documents identified as:

**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF DATATECH ENTERPRISES, LLC'S MOTION TO EXTEND RELIEF GRANTED IN ORDER OF PRELIMINARY INJUNCTION**

addressed to:

| | |
|---|---|
| Laura Bielinski, Nevada Bar No. 10516<br>BROWNSTEIN HYATT FARBER SCHRECK, LLP<br>100 North City Parkway, Suite<br>Las Vegas, Nevada 89106-4614<br><br>By First Class Mail and e-mail to<br>lbielinksi@bhfs.com | |
| Marc J. Randazza<br>Randazza Legal Group<br>6525 W. Warm Springs Rd., Ste. 100<br>Las Vegas, NV 89118<br><br>Via e-mail by agreement<br>mjr@randazza.com | |

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on January 9, 2013, at San Francisco, California.

*/s/ D. Gill Sperlein*
_____
D. Gill Sperlein

-11-

REPLY TO OPPOSITION TO MOTION TO EXTEND RELIEF
C-12-4500 CRB