**KENNETH E. KELLER** (71450) kkeller@kksrr.com
**STAN F. ROMAN** (87652) sroman@kksrr.com
**MICHAEL D. LISI** (196974) mlisi@kksrr.com
**KRIEG, KELLER, SLOAN, ROMAN & HOLLAND LLP**
555 Montgomery Street, 17th Floor
San Francisco, CA 94111
Tel:     (415) 249-8330
Fax:     (415) 249-8333

**EVAN FRAY-WITZER** evan@CFWLegal.com
**CIAMPA FRAY-WITZER, LLP**
20 Park Plaza, Suite 505
Boston, MA 02116
Tel:     (617) 426-0000
Fax:     (617) 507-8043
*Admitted Pro Hac Vice*

**VALENTIN GURVITS** vgurvits@bostonlawgroup.com
**BOSTON LAW GROUP, PC**
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Tel:     (617) 928-1804
Fax:     (617) 928-1802
*Admitted Pro Hac Vice*

Attorneys for Defendant FF MAGNAT LIMITED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATATECH ENTERPRISES, LLC, a Nevada Limited Liability Company,<br><br>Plaintiff<br><br>vs.<br><br>FF MAGNAT LIMITED d/b/a ORON.COM; STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a ROMAN ROMANOV (an alias).<br><br>Defendants. | Case No. C-12-4500 CRB<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT FF MAGNAT LIMITED FOR RELIEF FROM PRELIMINARY INJUNCTION**<br><br>Hearing:       February 15, 2013<br>Judge:          Hon. Charles R. Breyer<br>Courtroom:    Courtroom 6 – 17th Floor |

1

## NOTICE

2   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3       PLEASE TAKE NOTICE that on February 15, 2013 at 10:00 a.m., or as soon thereafter

4   as counsel may be heard in the above-entitled Court, located at 450 Golden Gate Avenue, San

5   Francisco, 94102, defendant FF Magnat Limited d/b/a Oron.com ("Oron") will and hereby does

6   move for an order granting Oron relief from the preliminary injunction issued on September 14,

7   2012 in the above-captioned matter.

8       This motion is made pursuant to Fed.R.Civ.P. 65 and is based upon this Notice of

9   Motion; the accompanying Memorandum of Points and Authorities; the accompanying

10  Declarations of Valentin Gurvits, Kenneth E. Keller and Stanislav Davidoglov; the

11  accompanying exhibits; the pleadings and papers on file herein; and upon such other matters as

12  may be presented to the Court at the time of the hearing.

13  Date:   January 10, 2013          **BOSTON LAW GROUP, PC**

14

15                       By:___/s/ Valentin Gurvits_____
                             VALENTIN GURVITS
16                           Attorneys for Defendant FF MAGNAT LIMITED

17

18

19

20

21

22

23

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

## MEMORANDUM OF POINTS AND AUTHORITIES

Without intending to waive any defenses it may have based on lack of personal jurisdiction, venue or improper service of the summons and complaint, Defendant FF Magnat Limited d/b/a Oron.com ("Oron") brings this Motion for Relief from the Order entered by the Court on September 14, 2012 (the "Injunction") (Docket No. 35).

Specifically, Oron requests that the Court Order one of the following alternatives:

(a)     Dissolve the Injunction and release all of the frozen funds to the trust account of Oron's outside counsel, Boston Law Group, PC of Newton Centre, MA;

(b)     Amend the Injunction to release all but $246,649 of the frozen funds (representing the maximum amount DataTech could allege in profits);

(c)     Amend the Injunction to release all but $620,227.37 of the frozen (representing the maximum amount DataTech could allege in any form of damages); or

(d)     Amend the Injunction to release $200,000 from Oron's PayPal account to the trust account of Boston Law Group, PC to pay for Oron's legal fees and costs incurred and expected to be incurred in this action through the end of jurisdictional discovery and the pending interlocutory appeal from this action.

## I.     INTRODUCTION

Defendant Oron is a Hong Kong company that operated a "cloud" based data storage business.  Plaintiff DataTech is a producer of pornographic video material, some of which, DataTech alleges, was stored on Oron's computer servers by third persons unrelated to Oron.  At all times relevant to the above-captioned action, Oron complied with the Digital Millennium Copyright Act ("DMCA") and qualified for "safe-harbor" from the above-captioned action.  Very little of Oron's business came from the United States and DataTech's videos comprised an

1  infinitesimal portion of the data that was stored by users on Oron's servers.  Oron contends that

2  the DataTech's suit lacks merit on a number of grounds (including jurisdictional grounds as well

3  as substantive defenses), and it is confident that it will establish this as this case proceeds.

4         Nevertheless, DataTech obtained a preliminary injunction (the "Injunction") freezing all

5  of Oron's assets (Docket No. 35).[1]  The Injunction currently freezes more of Oron's assets than

6  is necessary to satisfy any potential equitable recovery (or, indeed, any likely recovery under any

7  theory) by DataTech.  Finally, if unmodified, the Injunction presents serious questions of Due

8  Process, inasmuch as it threatens Oron's ability to pay its legal bills and defend itself.

9         This Court has previously ordered $125,000 of Oron's funds to be released for the

10 payment of accrued and on-going legal fees related to this action.  As detailed below, as of the

11 date hereof, these funds have been depleted.

12        On November 11, 2012, because these funds were depleted, Oron brought a motion

13 before this Court for further relief from the Injunction (Docket No. 52).  The Court denied that

14 motion on the basis that Oron did not establish that, should DataTech prevail, the money

15 potentially subject to an equitable disgorgement was less than the amount currently frozen

16 (Docket No. 58).  In addition, the Court requested documentation or detail regarding the extent

17 of Oron's assets frozen by the Injunction.  Oron now brings this renewed motion with additional

18 legal support and factual details regarding the extent of assets frozen by the Injunction and up-to-

19 date documentation evidencing Oron's legal expenses in this action.

20                          **II.      BACKGROUND**

21 **A.     Factual Background**

22

---

23 [1] As Oron has argued previously (and as is now pending before the Ninth Circuit), DataTech had
no legitimate basis for obtaining the Injunction as its claims were for monetary damages, legal in
nature, and therefore the equitable injunction is inappropriate.

DataTech is a United States company and producer of pornography.  DataTech claims that Oron permitted its users to infringe its copyrighted works by uploading and distributing DataTech's work, without DataTech's permission, using Oron's cloud storage service.  Oron is a cloud storage company located in Hong Kong that, until recently, provided data storage on the Internet to individuals around the world.

As part of its service, Oron allowed users to store and access data for free, but also offered a premium service for a flat fee that allowed faster uploading and downloading speeds and longer storage than was available for free.  This premium service was Oron's sole source of revenue.  A user wishing to store data would upload the desired files using Oron's website.  Once the files were uploaded, Oron created a unique URL through which the uploading party could access and download his or her data.  A user could, if he or she chose, share this URL with others so that they too could access the uploaded material.  However, Oron played no active role in any such sharing of materials on its website.

Since its inception, Oron had a program by which a copyright owner could report infringement to a designated agent.   There was a "report abuse" link on the first page of Oron's website, and offending material was deleted.  In addition, the website's Terms of Service, also linked to from the first page, specifically described how to report infringement and provided an additional link to report abuse.  The website Terms of Service also included a strict "termination of repeat infringer" policy, and Oron has, on many occasions, terminated users believed to be engaged in copyright infringement.  On June 15, 2011, Oron registered its agent with the United States Copyright Office pursuant to the DMCA.

Since its inception, Oron has removed infringing material pursuant to the DMCA whenever it received notice of an abuse.  In addition to its policy of responding to DMCA take

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

1   down notices, Oron granted Porn Guardian (an agent of DataTech) a removal tool that enabled it

2   to directly take down infringing material from Oron's website.   And, even before granting Porn

3   Guardian this tool, Oron had a process by which a copyright holder could provide Oron with an

4   MD5-Hash identifier (a unique identification of copyrighted material, similar to a fingerprint)

5   that Oron would use to search its system for infringing material.  Any infringing material found

6   in this manner was deleted from Oron's servers, and its subsequent uploading was prevented.

7        According to information made publically available by WHOIS domain tools, before

8   being forced out of business, almost 90% of Oron's website visitors were from outside the

9   United States, as were the vast majority of Oron's revenues.  While in operation, Oron stored

10  hundreds of millions of files on more than 70 high-end servers, of which the allegedly infringed

11  materials could have comprised no more than a tiny fraction of one percent.

12       Oron is not incorporated in the United States, has no owners, officers, directors, or

13  employees who reside in the United States, does not advertise or solicit business in the United

14  States, and has not entered into any contracts with vendors who have a presence in California

15  (other than PayPal though through its Singapore branch and Payment Wall which specifically

16  operates, among other places, in South East Asia).

17  **B.     Procedural History**

18       On August 28, 2012, DataTech filed its complaint in this action, alleging that Oron has

19  violated federal copyright laws by reproducing or distributing Plaintiff's copyrighted works via

20  its website, Oron.com.  The complaint in this action was substantially similar to a lawsuit filed

21  on June 20, 2012 by Liberty Media Holdings LLC ("Liberty Media") in the United States

22  District Court for the District of Nevada.  *See Liberty Media v. FF Magnat Ltd.*, Case No. CV

23

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

1   2:12-cv-01057 GMN (D. Nev.).  Also on August 28, DataTech filed its Ex Parte Application for

2   Temporary Restraining Order ("Application"), without notice to the Defendants

3        On August 28, 2012, this Court issued a temporary restraining order (Docket No. 9)

4   freezing all of Defendants' assets pending the hearing on Plaintiff's request for a preliminary

5   injunction.  The temporary restraining order included a freeze of all assets in an U.S. bank or

6   financial institution, and any funds held for Oron by PayPal, Inc., CCBill, LLC, and AlertPay.

7   The Court further enjoined Defendants "from disgorging or dissipating any fund, property,

8   domain names, or other assets until further notice."[2]  *Id.* at 2-3.

9        DataTech also applied to the High Court of Hong Kong for an injunction freezing Oron's

10  assets in Hong Kong based explicitly on the temporary restraining order first issued by this Court

11  in the present action.  *See* Originating Summons, Datatech Enterprises, LLC and FF Magnat

12  Limited, HCMP 1896/2012 (High Court of Hong Kong), attached hereto as <u>Exhibit 1</u>

13  (application by DataTech for "Interim relief – namely a Mareva injunction over the assets of

14  [Oron] in Hong Kong – in aid of proceedings commenced in the United States District Court,

15  Northern District of California").  In deference to this Court's order, the Hong Kong court

16  granted an injunction freezing Oron's Hong Kong assets on September 24, 2012.

17       On August 30, 2012, Oron filed a Motion for Partial Relief From Temporary Restraining

18  Order (Docket No. 12, the "First Motion") in which Oron requested that this Court amend the

19  TRO to allow Oron to transfer $310,000 from its PayPal account to pay for the legal fees

20  associated with its defense in this action and in the *Liberty Media* action (for which Oron had

21  already incurred in excess of $290,000 in attorneys' fees and costs, $160,000 of which remained

22

23  [2] The Court stated that the Order "does nothing more than prohibit Defendants from fraudulent transfers and compels that they unwind those in which they have already engaged."  However, the broad language that Defendants may not dissipate any funds, read literally, goes further and prevents Defendants from spending any money for any legitimate purpose.

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

1   unpaid).  *See* First Motion at 15; Declaration of Stevan Lieberman, ECF 12-1, ¶ 2.  On

2   September 4, 2012, this Court granted partial relief from the TRO and permitted PayPal to

3   transfer $125,000 to Oron's counsel for use only to pay the legal fees and costs associated with

4   Oron's defense of this action (Docket No. 23).

5       On September 14, 2012, after considering the pleadings, evidence and arguments

6   presented at a hearing, this Court granted DataTech's motion for a preliminary injunction (the

7   "Injunction"), freezing all the funds in Oron's banking and financial institutions (Docket No. 35).

8   Pursuant to the Injunction and the following Hong Kong injunction based explicitly on this

9   Court's orders, Oron has been unable to withdraw any funds from its HSBC bank account or its

10  accounts with its payment processors.  Without access to these accounts, Oron has had no access

11  to any its funds to pay for its defense in this action except for the funds that were released

12  pursuant to the partial relief ordered on September 4, which are now depleted.

13  **C.    Oron's Assets and Legal Expenses**

14      Pursuant to the Injunction and the resulting Hong Kong injunction, Oron has

15  approximately $1,700,000 currently frozen in its accounts.  *See* Declaration of Stanislav

16  Davidoglov, attached hereto as <u>Exhibit 2</u>, ¶¶ 2-5.  Oron has no other funds.  *Id.* at ¶ 6.

17      Oron's outstanding fees due to its present legal counsel for services rendered in

18  connection to this action and the appeal from this action currently totals $95,675.23.  See

19  Declaration of Valentin Gurvits regarding Legal Fees, attached hereto as <u>Exhibit 3</u>, ¶¶ 8-9;

20  Declaration of Kenneth Keller, attached hereto as <u>Exhibit 4</u>, ¶ 9.  Amongst other things, Oron's

21  present counsel performed all the following work for Oron in connection with the defense of the

22  present action against DataTech: (1) worked with PayPal to release the funds previously released

23  by this Court, (2) traveled to San Francisco for the hearing on the preliminary injunction, (3)

1 researched and drafted a motion to release funds from the preliminary injunction, including

2 declarations related thereto (4) researched the feasibility of an interlocutory appeal, (5)

3 conducted preliminary discovery, (6) applied to the Ninth Circuit for the interlocutory appeal and

4 filed the interlocutory appeal, (7) conducted extensive research and preparation for the appellate

5 brief, (8) drafted and filed a 40 page appellate brief, reviewing 7 different issues, along with

6 extensive supporting documentation, (9) drafted and filed a Case Management Conference

7 memorandum, (10) researched, drafted and filed a motion to reconsider the Injunction, (11)

8 drafted and filed a motion to dismiss for lack of personal jurisdiction, (12) conducted extensive

9 new legal research for new motion for relief from preliminary injunction, (13) conducted

10 extensive research on possible actual damages for opposition to motion to extend preliminary

11 injunction, (14) drafted and filed opposition to motion to extend preliminary injunction, (15)

12 conducted new research for appellate reply brief, (16) drafted and filed a 32 page reply for the

13 appeal, (17) researched all 4(k)(2) federal appellate cases nationally and prepared for the Ninth

14 Circuit a summary of all such cases, and (18) researched, drafted and filed the present Motion for

15 Relief from Preliminary Injunction.

16     Oron's counsel further projects that Oron will expend approximately $105,000 in the

17 near future in legal fees and expenses in connection with the jurisdictional discovery ordered by

18 this court and Oron's appeal from this action.  Gurvits Decl. regarding Legal Fees, ¶ 10.

19 **III.   ARGUMENT**

20 **A.   The Court Should Modify or Dissolve the Preliminary Injunction Because the Injunction Freezes More Funds Than Are Even Arguably Necessary and More Funds Than DataTech Could Hope To Recover Subject to an Equitable Disgorgement and Because Oron Requires the Funds to Properly Defend Itself**

22     This Court's Injunction prevents Oron from being able to access the funds in its accounts

23 with various banks and payment services, including PayPal and HSBC Hong Kong.  Not only

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

1   does the Injunction require those financial institutions and payment services to "freeze" any

2   assets in Oron's accounts, but it also enjoins Oron from "disgorging or dissipating any funds,

3   property, domain names, or other assets until further notice."  (Order at 2:3-4).  Read literally,

4   the Order prohibits Oron from using its funds – whether subject to this Court's jurisdiction or not

5   -  for any reason, including paying attorneys' fees or legal costs to defend itself in this action or

6   to proceed with its interlocutory appeal, even if it did have access to funds.  This Court's orders

7   freezing Oron's funds in the US were also the explicit basis on which DataTech obtained a freeze

8   on Oron's assets in Hong Kong from the Hong Kong court.

9         As is discussed in detail below, the Court should dissolve the Injunction and permit Oron

10   access to its funds.   In the alternative, Oron requests that the Court modify the Injunction to

11   permit Oron to transfer all but $246,649 of the frozen funds, representing the maximum amount

12   of recovery under a theory of profits or all but $620,227.37 of the frozen funds, which represents

13   the absolute maximum potential recovery to DataTech under any theory of damages, pursuant to

14   Section 504(b) of the Copyright Act.  In the last alternative, Oron requests that the Court modify

15   the Injunction to permit Oron to transfer $200,000 from its PayPal account and to permit Oron to

16   use those funds to pay the legal fees incurred in the defense of this action as well as to pay fees

17   incurred in the pursuit of the interlocutory appeal.

18
19         **1.    DataTech's Counsel Made Blatant Misrepresentations to this Court
               Regarding Oron's Intent In Requesting a Release of Funds**

20         Under the circumstances, it bears noting that DataTech, through its counsel, has made

21   blatant misrepresentations to this Court about Oron's counsel's statements with regards to its

22   intent in requesting partial relief from this Court's Injunction and the previous temporary

23   restraining order entered in this action.  In a prior filing, DataTech's counsel alleged on behalf of

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

DataTech that Oron's counsel "threatened that [Oron] would seek to dissipate [its assets] by expending [them] on lawyers fees rather than making the funds available […] to satisfy a judgment" (Doc. 41, Page 6) and that Oron "intends to deplete the limited funds available to satisfy the inevitable judgment by spending those funds on attorneys" (Doc. 55, page 7 and page 3).  These allegations are simply untrue and are an intentional and unethical attempt to mislead this Court so as to deny Oron the ability to defend itself.

After a hearing, DataTech's counsel Attorney D. Gill Sperlein ("Mr. Sperlein") approached Oron's counsel, Attorney Valentin Gurvits ("Mr. Gurvits"), about a potential settlement of this action.  Mr. Sperlein mentioned to Mr. Gurvits that this case could be settled for well below the legal fees that would be required to defend it (suggesting DataTech's real estimation of the value of its case).  *See* Declaration of Valentin Gurvits regarding Misrepresentations, attached hereto as Exhibit 5, ¶ 9; Keller Decl., ¶ 6.  Mr. Gurvits replied that Oron views DataTech's lawsuit as being frivolous and that it already settled a prior frivolous lawsuit in Nevada.  Mr. Gurvits also told Mr. Sperlein that if Oron settled this action with DataTech, some other copy-cat plaintiff would appear, sue Oron and attempt to extract a settlement as well.  Gurvits Decl. re Misrepresentations, ¶ 12; Keller Decl., ¶ 7.  Mr. Gurvits noted that Oron was no longer willing to play Whack-a-Mole with copyright trolls and that, in the long-term, it made more sense for Oron to spend the funds on defense of meritless claims, than to settle, since settling sets a bad precedent.  *Id.* Oron has already seen this to be true because Oron is already embroiled in two other copycat (and similarly baseless) lawsuits.[3]

At no time did Mr. Gurvits (or any other Oron counsel) state that Oron intends to dissipate funds so as to prevent DataTech from recovering a legitimate judgment.  Once again,

---

[3] See *Liberty Media Holdings, LLC v. FF Magnat Limited*, Case No. 2:12-cv-01057 (D. Nev.) and *Flava Works, Inc. v. FF Magnat Limited*, Case No. 1:12-cv-05844 (N.D. Ill.).

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

1    this was a blatant misrepresentation by DataTech.  Oron seeks the release of its funds only for

2    reasonable and necessary expenditures in the defense to which it is entitled.

3

4    **2.    DataTech is Not Entitled to a Preliminary Injunction Freezing any of Oron's Funds**

5        Preliminarily, and as Oron has argued here and at the Ninth Circuit, Oron's request to

6    dissolve the injunction should be granted because DataTech is not entitled to any equitable relief.

7    Pursuant to the Copyright Act, at trial DataTech may elect to recover either actual damages and

8    profits or statutory damages.  17 U.S.C. § 504(a).  However, at the preliminary injunction stage,

9    DataTech may only obtain an equitable injunction freezing funds that may be subject to equitable

10   disgorgement but not an injunction freezing funds for purely legal damages.  On its face,

11   DataTech is not entitled to an accounting for statutory damages pursuant to Section 504(c) as

12   they are indisputably a legal remedy outside the scope of an equitable preliminary injunction.

13       Therefore, if DataTech is entitled to a preliminary injunction freezing Oron's funds, that

14   injunction must come pursuant to Section 504(b).  However, damages and profits under Section

15   504(b) of the Copyright Act are also legal damages, not equitable ones, and DataTech is not

16   entitled to an equitable injunction for those damages as no such recognizable damages exist.

17       a.    Damages and Profits Under Section 504(b) of the Copyright Act are Legal
             Damages, Not Equitable Ones, Making an Injunction of Any Size
18           Improper

19       Damages and profits under Section 504(b) of the Copyright Act are legal damages, not

20   equitable ones, making them an inappropriate basis on which to issue an asset-freeze injunction

21   of the nature issued by this Court.  *See Grupo Mexicano de Desarrollo, S.A., v. Alliance Bond*

22   *Fund, Inc.*, 527 U.S. 308, 330-33 (1999).  This issue is currently on interlocutory appeal with the

23   Ninth Circuit Court of Appeals and Oron has briefed it extensively in its Opening and Reply

12
DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

Briefs.  *See DataTech Enterprises, LLC v. FF Magnat Limited*, USCA No. 12-17299, Doc. 5 p. 20-30 and Doc. 19 p. 4-7  (9th Cir.).  "[P]rofits due to lost sales generally constitutes the type of harm that is fully compensable through money damages and therefore does not support injunctive relief." *Amylin Pharms., Inv. v. Eli Lilly & Co.*, 456 Fed. Appx. 676, 678 (9th Cir. 2011) (citations omitted).  *See also Dateline Exports, Inc. v. Basic Constr., Inc.*, 306 F.3d 912, 914 (9th Cir. 2002) ("In *Grupo Mexicano*, the Supreme Court held that a district court does not have the authority to issue a preliminary injunction preventing a party from disposing of assets pending adjudication of a claim for money damages.").  The Supreme Court has previously held that damages available under Section 504(b) were legal and *not* equitable.  *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) ("[T]he Copyright Act does not use the term 'court' in the subsection addressing awards of actual damages and profits, see § 504(b), which generally are thought to constitute legal relief." (multiple citations omitted)).  *See also Joes Hand Promotions v. Lukito*, 2010 U.S. Dist. LEXIS 76276 (N.D. Cal. 2010) (citing the *Feltner* decision as one which explains "that the monetary relief is legal . . . and an award of statutory damages may serve purposes traditionally associated with legal relief, such as compensation and punishment.").

       b.    <u>Datatech Cannot Show Any Lost Profits Because It Cannot Show Any Causal Link Between the Alleged Infringements and Oron's Profits and, in Any Event, the Alleged Infringements (and Profits) Are *De Minimis*.</u>

Even assuming that Datatech is entitled to any form of injunctive relief (i.e. that it has suffered damages which are equitable in nature), which it clearly is not, it is strictly limited to injunctive relief which are directly tied to those equitable damages.

As the party seeking a "drastic and extraordinary remedy" it remains DataTech's burden to "demonstrate, among other things, a likelihood of success on the merits." *Munaf v. Green*,

1   553 U.S. 674, 689-90 (2008).  At the preliminary injunction stage, it therefore remains

2   DataTech's burden to prove a likelihood of success that it is entitled to an additional asset freeze

3   for profits attributable to the alleged infringement "that were already not taken into account in

4   computing the actual damages."  17 U.S.C. § 512(b).

5          However, DataTech has not put forth a single fact from which this Court can conclude

6   that Oron has received *any* profits attributable to the alleged infringement of DataTech's

7   copyrights.  DataTech has, at best, put forth an argument based on conjecture that (a) Oron

8   earned large profits from its operations in general, (b) some of Oron's users allegedly uploaded

9   unauthorized copies of DataTech's adult films on Oron.com, and (c) Oron users paid for a

10  subscription on Oron.com so as to have the ability to download DataTech's films at a higher

11  speed, resulting in profits to Oron.  *See, e.g.,* DataTech's Reply to Response to Order to Show

12  Cause, Doc. 29, p. 12.  Such surmise and remote speculation cannot be the basis on which an

13  asset freeze is based.

14         The correct starting point is not Oron's profits in general, but rather those profits

15  attributable to the alleged infringement of DataTech's copyrights.  *Polar Bear Productions, Inc.*

16  *v. Timex Corp.*, 384 F.3d 700, 710-12 (9th Cir. 2004) ("When an infringer's profits are only

17  remotely and speculatively attributable to infringement, courts will deny recovery to the

18  copyright owner. . . . The causation element of the statute serves as a logical parameter to the

19  range of gross profits a copyright plaintiff may seek. This rule of reason 'obviates a good deal of

20  mischief' in claiming profits beyond what might be attributable to the infringement")(numerous

21  citations omitted)).  *See also Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002), *quoting Taylor*

22  *v. Meirick*, 712 F.2d 112, 1122 (7th Cir. 1983) ("[I]f General Motors were to steal your copyright

23

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

1  and put it in a sales brochure, you could not just put a copy of General Motors' corporate income

2  tax return in the record and rest your case for an award of infringer's profits.").

3          More importantly, the infringements at issue were *de minimis* in nature in comparison to

4  the number of files hosted on Oron's servers.  DataTech has alleged infringement of 436 files.

5  During its operation, Oron's servers hosted "hundreds of millions" of files.  Declaration of

6  Davidoglov Stanislav, Doc. 21-1, ¶ 7.  If Oron hosted only one hundred million files, DataTech's

7  files would represent less than .0005 percent (one half of one thousandth of a percent) of the total

8  files stored on Oron's servers.  It is hard to imagine a better definition of *de minimis*.  And, of

9  course, DataTech could only hope to prove an equally *de minimis* portion of profits attributable

10  to the alleged infringement.

11          Additionally, even this miniscule figure is inflated as it represents a percentage of

12  DataTech files allegedly stored on Oron's servers and not how many times (if any) they led to a

13  user purchasing a premium subscription from Oron (which is the only time Oron would have

14  profited from DataTech's materials).  As such, *any* allegedly profits would be both *de minimus*

15  and based on nothing other than impermissible speculation.  *Mackie v. Rieser*, 296 F.3d 909,

16  915 (9th Cir. 2002) (collecting cases and citations for the proposition that a plaintiff is required

17  to demonstrate a nexus between infringement and alleged indirect profits realized by the

18  defendant).

19                    c.      DataTech Cannot Show Any Profits "Not Taken Into Account in
                              Computing the Actual Damages."
20

21          Even if DataTech is entitled to an injunction freezing Oron's assets for profits attributable

22  to the alleged infringement (which it is not) and even if any such profits actually exist (which

23  they do not), DataTech could not prove that such damages exist that "are not taken into account

    in computing the actual damages."  17 U.S.C. § 504(b).  Section 504(b) only accounts for profits

                                                      15

where they are above and beyond the actual damages suffered by the plaintiff.  However, as discussed below, the actual damages suffered by DataTech, if as alleged and in the light most favorable to DataTech, are sufficiently high enough so that DataTech could not show any profits that were not taken into account in computing the actual damages.

As alleged in DataTech's complaint, a premium membership on Oron.com was €9.95 (approximately $13) a month.  Even if Oron sold one month long subscription for each of the 18,973 alleged instances of infringement (a preposterous assumption, as DataTech would have to admit itself), Oron's profits (if it had no expenses) would have been $246,649 from the infringements – far below the theoretical maximum "actual damages" of $620,227.37 as computed below.  Therefore, there could not possibly be any "attributable profits beyond the actual damages."  If DataTech alleges that Oron was selling "a bargain for obtaining access to a nearly unlimited amount of stolen and popular content," it cannot simultaneously claim that Oron was profiting off its videos more than DataTech would have made even in the best of circumstances where it is selling the same volume of product at a far higher price.

Because there are no profits beyond the actual damages, there are no profits available to DataTech pursuant to Section 504(b) and DataTech is not entitled to any injunctive relief freezing Oron's assets.  Accordingly, the Court should dissolve the Injunction freezing Oron's assets and issue an order to transfer Oron's funds to Boston Law Group, PC's trust account.  Alternatively, the Court should order the release of all but $246,649 of the frozen funds, representing the maximum in profits that DataTech is entitled to freeze, even assuming that profits are an equitable remedy under the Copyright Act.

     **3.**     **Even if DataTech is Entitled to a Freeze, DataTech's Actual Damages, Calculated in the Light Most Favorable to DataTech, Amount to $620,227.37 and Are Less Than the Funds Currently Frozen by the this Court's Injunction and the Hong Kong Injunction.**

1      Alternately, Oron's request to modify the Injunction should be granted because the

2  amount currently frozen pursuant to the Injunction is far greater than DataTech's potential

3  equitable recovery even if the Court does find that there is a potential equitable recovery.  This

4  Court has already recognized that it will reduce the scope of freeze when "Magnat makes some

5  showing regarding what, if any, portion of the frozen assets could not ultimately be subject to the

6  equitable relief sought by Datatech."  Assuming the facts in a light most favorable to DataTech,

7  DataTech's total damages pursuant as alleged pursuant to Section 504(b) are between

8  approximately $200,000 and $620,000 – far less than what is currently frozen.  Therefore, a very

9  large portion of the frozen assets could not ultimately be subject to the equitable relief sought by

10  DataTech and should be unfrozen.  Accordingly, all but $620,227.37 of Oron's funds should be

11  unfrozen.

12      Even if profits attributable to infringement are equitable (which they are not), and even if

13  such profits actually exist (which they do not), and even if the Court takes into account profits

14  which make up part of DataTech's actual damages (which the statute explicitly prohibits), as

15  shown above Oron's attributable profits are clearly less than DataTech's actual damages, which,

16  at their maximum, are far less than the funds currently frozen by the Injunction.

17      DataTech has alleged a grand total of 18,973 instances of infringement[4] of the 436 titles

18  that it has listed.  *See* Exhibit A to Declaration of Lance Blundell, Docket No. 11-1.  A

19  substantial portion, if not all, of DataTech's catalogue of titles is available to the public for

20  streaming on the Adult Entertainment Broadcast Network's website aebn.net ("AEBN").  *See*

21  Shayefar Declaration, Doc. 68-1, ¶¶ 4-5.  The public may purchase the right to stream these

22

23  _____

[4] Oron arrives at this number by adding together all the instances of infringement alleged in
Exhibit A to the Declaration of Lance Blundell in Support of TRO, Doc. 11-1.  For instance,
DataTech alleges that the work titled "Bronc Rider" had "4 infringements."

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

1  videos from the internet for life for only $10.95 each.  *Id.* at ¶ 9.  Although it is unlikely that

2  DataTech receives the entirety of the $10.95 that AEBN charges its users (AEBN undoubtedly

3  takes a portion), $10.95 multiplied by 18,973 infringements only totals $226,727.35.

4       AEBN also allows its users to download many of DataTech's videos to own for anywhere

5  from $24.95 to $49.95 each.  *Id.* at ¶ 10.  On average, downloading to own one of DataTech's

6  videos costs $32.69.  *Id.*  Again, although it is unlikely that DataTech receives the total amount

7  AEBN charges, and given that it is unlikely that each act of infringement alleged would have

8  otherwise resulted in the purchase of a video, DataTech would have suffered only $620,227.37 in

9  damages for all 18,973 infringements at an average of $32.69 per infringement.

10       Importantly, the above calculations do not take into account the facts that there is no

11  evidence that each individual who downloaded an infringing file from Oron.com would have

12  otherwise purchased an authorized version of the file.  It is more likely than not that a very small

13  minority would have otherwise paid DataTech for the videos if they had not been uploaded onto

14  Oron.com by Oron's users.  On this basis it is more likely than not that DataTech's actual

15  damages are actually far lower than as calculated and that the above calculations are actually a

16  very liberal maximum.

17       Currently, Oron has well over the necessary amount frozen that would be necessary to

18  satisfy the theoretical maximum potential damages of $620,227.37 pursuant to Section 504(b) of

19  the Copyright Act.  Oron has approximately $1,700,000 frozen in its accounts.  *See* Declaration

20  of Davidoglov Stanislav, attached hereto as Exhibit 2, ¶¶ 2-5.  Accordingly, if the court does not

21  dissolve the Injunction in its entirety or for a lesser amount as discussed above, the Court should

22  unfreeze all but $620,227.37 of Oron's funds.

23

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

1

2

**4.      Even if the Court Does Not Dissolve the Injunction or Unfreeze All But
$620,227.37 of Oron's Funds, the Court Should Release Funds for Legal
Expenses and Fees**

3        Finally, even if the Court does not grant Oron's requests as detailed above, the Court

4   should grant Oron partial relief in the form of modifying the Injunction to release funds

5   necessary for Oron's legal expenses and fees.  Ninth Circuit precedent supports the release of

6   funds for such a purpose, if the release is reasonable and DataTech would not be prejudiced by

7   such a release.  Therefore, even if the Court does not dissolve the injunction or unfreeze all but

8   those funds that are potential damages pursuant to Section 504(b), the Court should release funds

9   to allow Oron to pay its attorneys for legal services already rendered and for legal services

10

11        a.      Ninth Circuit Precedent Supports the Release Of Funds for Expenses and
                Legal Fees

12        The law in the Ninth Circuit and elsewhere addressing asset-freezing injunctions supports

13   Oron's request.  For example, in *Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir.

14   1988), the Ninth Circuit upheld a preliminary injunction enjoining the Marcoses from disposing

15   of their assets.  In balancing the relative hardships to determine the propriety of the injunction,

16   the Court relied upon the fact that the district court had provided that the Marcoses could use

17   their assets "to cover normal living expenses and legal fees."  *Id*. at 1362.

18        The Ninth Circuit followed that holding more recently in *Johnson v. Couturier*, 572 F.3d

19   1067 (9th Cir. 2009).  The *Johnson* court upheld a challenge to a district court's asset freezing

20   injunction because the injunction was limited to the assets in the defendant's possession in which

21   the plaintiffs had an equitable interest, and because the injunction expressly allowed assets to be

22   used for "normal living expenses and legal fees."  *Id*. at 1085-1086; *see also Fidelity National*

23   *Title Insurance Company v. Castle*, 2011 WL 5882878 (N.D. Cal., Nov. 23, 2011) (relying on

1    *Johnson v. Courtier* to fashion asset freezing injunction that allowed defendant to use personal

2    funds to cover living expenses).

3       Similarly, in *Federal Savings & Loan Insurance Corp. v. Dixon*, 835 F.2d 554 (5th Cir.

4    1987), the Fifth Circuit held that an asset-freezing injunction that allowed individual defendants

5    only $3,500 per month for living expenses and legal fees was improper because it did not allow

6    enough money for an adequate defense. As the Fifth Circuit explained:

7        This suit was brought to establish the defendants' wrongdoing; the
    court cannot assume the wrongdoing before judgment in order to

8        remove the defendants' ability to defend themselves. The basis of
    our adversary system is threatened when one party gains control of

9        the other party's defense as appears to have happened here. Thus
    we conclude that some kind of allowance must be made to permit

10       each defendant to pay reasonable attorneys' fees if he is able to
    show that he cannot pay them from new or exempt [i.e., unfrozen]

11       assets . . . ."

12   *Id.* at 565 (citation omitted).[5]  *Dixon*'s explanation has been favorably cited by the Ninth Circuit.

13   *See*, *e.g.*, *Federal Trade Comm'n v. World Wide Factors, Ltd.*, 882 F.2d 334, 348(9th Cir. 1989),

14      Cases in the Ninth Circuit and elsewhere have also held it appropriate to allow a business

15   entity defendant to pay necessary business expenses out of frozen assets.  *See, e.g., Securities*

16   *and Exchange Commission v. Hickey,* 322 F.3d 1123, 1131 (9th Cir. 2003) (injunction upheld

17   where "under the terms of the freeze order, legitimate corporate business expenses may be paid

18   from frozen assets…"); *United States v. Brown,* 988 F. 2d 658 (6th Cir. 1993) (district court

19   allowed defendant to use frozen funds for business expenses; Sixth Circuit accepted that but

20   remanded for district court to ensure only funds that plaintiff might ultimately recover were

21                   

    [5] While there is some authority that, in appropriate cases, a district court has discretion to forbid
or limit payment of attorneys' fees out of frozen assets, *see, e.g., Commodity Futures Trading*

22   *Commission v. Noble Metals International, Inc.*, 67 F.3d 766 (9th Cir. 1995), the cases so
holding have involved public policy considerations not present here (such as the widespread

23   violations of securities laws threatening the investments of large segments of the public) and
other similar circumstances unlike those alleged in this case...

             20

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

1   frozen); *Federal Trade Commission v. QT, Inc.,* 467 F. Supp.2d 863 (N.D. Ill. 2006) (defendants

2   allowed to pay out of frozen assets necessary business expenses and legal fees); *Securities and*

3   *Exchange Commission v. Dodwell,* 2002 WL 236687 (W.D. Va. 2002) (court grants request to

4   modify freeze order to allow for payment of ordinary business expenses).

                  b.     <u>The Request Is Reasonable Because The Complaint Raises Numerous
Complex Issues and The Defendant Has Filed For an Interlocutory Appeal
and Thus Oron's Legal Expenses Will Be Significant</u>

7        Given that Oron's frozen assets currently dwarf DataTech's potential recovery in this

8   case, Oron's request to unfreeze funds for legal expenses should be granted because even if the

9   full amount that Oron has requested is released there will be more than enough funds to satisfy

10  any potential recovery.  Furthermore, Oron's request for funds is reasonable because the funds

11  are necessary to permit Oron to pay its counsel for the defense in this action and the interlocutory

12  appeal arising out of this action.  Moreover, in relation to the defense of this action, Oron seeks

13  enough funds at this time in order to proceed through the jurisdictional discovery that this Court

14  has ordered, to argue before this Court that Oron is not subject to personal jurisdiction in the

15  United States, to respond in case this Court does find that Oron is subject to personal jurisdiction.

16       Jurisdictional discovery and arguments and the appeal will be no small tasks.  Oron's

17  motion to dismiss will involve complex issues including the interplay of F.R.C.P. 4(k)(2) – under

18  which, incidentally, the Ninth Circuit has *never* found jurisdiction proper since the enactment of

19  that rule – and Oron's operation of a website accessible anywhere where the internet can be

20  accessed.  And, Oron's appeal involves, as this Court noted, constitutional issues of first

21  impression.

22       Moreover, as explained below, the complaint in this action raises a host of complex legal

23  issues, many of which are related to the still developing law on personal jurisdiction of internet

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

based businesses, the DMCA and secondary infringement of copyrighted materials on the internet.  Consequently, in order to properly address DataTech's jurisdictional discovery requests and to pursue to the interlocutory appeal, Oron's has been and will be required to conduct extensive factual and legal research into each of the following issues and to expend significant time and resources briefing them and presenting them at oral arguments.[6]  In addition, Oron's counsel may need to respond to the Complaint, file counter-claims and conduct discovery.

### i.     Jurisdiction

Oron is specially appearing and contests whether this Court has personal jurisdiction over Oron or its assets.  The complaint contends that Oron is subject to personal jurisdiction and that Oron has sufficient contacts with the United States for this Court to find personal jurisdiction exists.  Oron, however, is a Hong Kong corporation, which receives the majority of its income from customers in Europe, Asia and Russia.  Contrary to the allegations of the complaint, less than 14% of Oron's online traffic is form the United States.  Moreover, none of Oron's employees or officers is a United States resident.  Nevertheless, the Plaintiff has sought to base its assertion of personal jurisdiction on the federal long-arm statute, Rule 4(k)(2) which, as is noted above, the Ninth Circuit has yet to find applicable in a single case.

Oron has not "purposefully directed" its activities towards the United States in order to satisfy the "minimum contacts" prong of due process in personal jurisdiction.  *See Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  Specifically, DataTech cannot show that Oron has expressly aimed its actions at the United States and

---

[6] Oron has already addressed each of these issues in greater detail in its motion to dismiss and its filings with the Ninth Circuit, so it only reviews them in brief here.  In addition, Oron reserves the right to address additional issues in its later filings.

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

1   therefore satisfy the Ninth Circuit's requirement that there be "something more" than just

2   foreseeable effects in the United States.  *Id.* at 1088.

3           In factual circumstances substantially identical to this action, other federal courts have

4   found that simply operating a website on the Internet which is accessible in the United States

5   cannot satisfy the minimum contacts test.  *See*, *e.g.*, *Liberty Media Holdings v. Letyagin,* Case

6   No. 11-62107, Docket No. 47. (S.D. Fla. 2011) (discussing plaintiff's Rule 4(k)(2) argument:

7   "Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction

8   does not subject a defendant to be sued there; those users must be directly targeted, such that the

9   defendant can foresee having to defend a lawsuit. . . .  Here, Plaintiff has alleged that Defendant's

10  website receives traffic and business from United States customers but has not met its burden of

11  showing that Defendant did anything to target customers from the United States or even that

12  anyone from the United States made a purchase on Defendant's website.") and *Fraserside IP*

13  *L.L.C. v. Hammy Media, LTD*, 2012 U.S. Dist. LEXIS 5359, *24-25 (N.D. Iowa Jan. 17, 2012)

14  ("Although xHamster's website is both commercial and interactive, as an Iowa district court

15  noted in a case presenting similar facts, such a website 'is arguably no more directed at Iowa

16  than at Uzbekistan.'").

17                          ii.      Interlocutory Appeal

18          Oron has filed a notice of interlocutory appeal in this action.  (Docket No. 46).  Oron has

19  appealed to the Ninth Circuit Court of Appeals from the Findings, Rulings and Order of the

20  Court dated September 14, 2012 granting the preliminary injunction (Docket Nos. 34 and 35)

21  and the Findings, Rulings, and Order of the Court  dated October 4, 2012 (Docket No. 43),

22  denying Oron's Motion for reconsideration of the same.  Oron will be required to argue before

23  the Court of Appeals that damages under Section 504(b) of the Copyright Act are not equitable

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

1    in nature, that the Plaintiff's complaint seeking money damages does not give rise to a risk of

2    irreparable harm, that a proper basis was lacking for this Court's finding concerning a possible

3    dissipation of assets, and that there is no likelihood that personal jurisdiction could be found over

4    Oron pursuant to Rule 4(k)(2).  Each of these tasks required extensive research and briefing and

5    will require significant further research and preparation for oral arguments before the Ninth

6    Circuit.

7

8            c.      DataTech Will Not Be Harmed By Releasing Funds for Oron's Defense,
                     However Oron Will Be Harmed If Funds Are Not Released.

9            Given the excessive funds currently frozen, the release of the funds for Oron's legal fees

10   and expenses would not impact DataTech's potential recovery because there would be no asset

11   shortfall.  Oron currently has more than $1 million dollars in excess frozen that could not

12   possibly be subject to equitable disgorgement.  Because DataTech could never receive these

13   funds under any equitable theory, DataTech could not be harmed by its release to Oron's

14   attorneys for use in Oron's defense.

15           On the other hand, Oron is requesting relief from the Injunction to permit it to fully

16   defend itself, a right to which it is entitled as a matter of Due Process.  Without access to funds to

17   pay its legal counsel, Oron will not be able to properly defend itself and it will be materially

18   prejudiced.  Under these circumstances, it would be wholly appropriate for this Court to release

19   funds for Oron's defense.

20           Oron incurred $85,545.59 in legal fees before Oron's present counsel took over

21   representation.  Gurvits Decl. re Legal Fees, ¶ 4.  Oron's present counsel has already accrued

22   $95,675.23 in uncompensated fees and expenses in connection with this action and its appeal.

23   Based on the amount of attorney's fees and costs expended in this action to date, Oron's counsel

24

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

projects that it will expend approximately $105,000 in the near future in connection with the jurisdictional discovery ordered by this Court and Oron's appeal from this action.  *Id.* at ¶ 10. Therefore, in the event that the Court rejects Oron's above requests to unfreeze all or all but either $246,649 or $620,227.37 of Oron's funds, Oron requests that the Court modify the order to transfer $200,000 to the trust account of Oron's outside counsel for use in Oron's defense and appeal.  Even if this entire amount was released by the Court, Oron would still have $1,500,000 frozen, which is almost $880,000 more than the theoretic maximum equitable relief DataTech could expect even in the best of circumstances.

### IV.    CONCLUSION

For the foregoing reasons, Oron requests that the Court dissolve the Injunction and release all of the frozen funds to the trust account of Oron's outside counsel, Boston Law Group, PC of Newton Centre, MA.  Alternatively, Oron requests that the Court amend the Injunction to release all but $246,649 (the maximum amount of profits) or all but $620,227.37 (the maximum of any damages) of the frozen funds to the trust account of Boston Law Group, PC.  In the last alternative, Oron requests that the Court amend the Injunction to release $200,000 from Oron's PayPal account to the trust account of Boston Law Group, PC to pay for Oron's legal fees and costs incurred and expected to be incurred in this action and the interlocutory appeal from this action.  Respective orders for each alternative are attached hereto as Exhibits 6, 7, 8 and 9.

Dated: January 10, 2013                    **BOSTON LAW GROUP, PC**


By:    /s/ Valentin Gurvits
VALENTIN GURVITS
Attorneys for Defendant FF MAGNAT LIMITED

DEFENDANT'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB