D. GILL SPERLEIN (SBN 172887)
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, California  94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

Attorneys for Plaintiff DataTech Enterprises, LLC,

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| DATATECH ENTERPRISES, LLC, a Nevada Limited Liability Company,<br><br>　　　Plaintiff,<br><br>　　　　　　vs.<br><br>FF MAGNAT LIMITED d/b/a ORON.COM, STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a ROMAN ROMANOV (an alias); and<br><br>　　　Defendants. | Case No.: 2-12-4500 CRB<br><br>**OPPOSITION TO FF MAGNAT LIMITED'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION**<br><br>Date:  February 15, 2013*<br>Time:  10:00 a.m.<br>CtRm: 6, 17th Fl.<br><br>* subject to change to March 8, 2013 per stipulation and subject to Court approval. |

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET   SAN FRANCISCO, CA 94102
TEL: 415-404-6615   FAX: 415-404-6616

-i-

1
2
3
4
5
6
7
8
9
10
11
12
13
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET   SAN FRANCISCO, CA 94102   FAX: 415-404-6616
TEL: 415-404-6615

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

SUMMARY OF ARGUMENT .............................................................................................3

I.    Disgorgement of Profits Is An Equitable Form of Relief. ....................................4

II.   Oron Has Failed to Provide Evidence of the Amount of Funds Currently Held. ...............5

III.  Documentary Evidence Suggests that Oron Has Tens of Millions of Dollars Available for Its Defense That It Has Not Disclosed to the Court. ..........................................6

IV.   When Calculating the Amount of Illicit Profits a Plaintiff Is Entitled to Equitably Recover through Disgorgement, "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work".  17 U.S.C.A. § 504. ...................................................................................................................10

V.    Oron's Discussion of Damages Is Confused, Peculiar, and Largely Irrelevant. ...............12

VI.   Oron's Reliance on *Polar Bear Productions* Is Misplaced. ...........................................16

CONCLUSION ...................................................................................................................18

OPPOSITION TO FF MAGNAT LIMITED'S MOTION
FOR RELIEF FROM PRELIMINARY INJUNCTION
C-12-4500 (CRB)

TABLE OF AUTHORITIES

## CASES

*Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332 (D.N.J. 2001) .................................. 4

*Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826 (9th Cir. 1985) ............................... 17

*Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002) ............................................................................................................................................. 4

*Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007) ................................................................................ 16

*Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002) ............................................................................... 17

*Manufacturers Technologies, Inc. v. Cams, Inc.*, 728 F. Supp. 75 (D. Conn. 1989) ......................... 13

*Mitchell v. Robert de Mario Jewelry, Inc.*, 361 U.S. 288 (1960) ........................................................ 4

*On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001) ............................................................. 17, 18

*Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) ................................... 17

*Sereboff v. Mid. Atl. Med. Servs.*, 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006) .................. 4

*Sid & Marty Krofft Television Prods, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977) ....... 16

*United States v. Rx Depot, Inc.* 438 F3d 1052 (10th Cir. 2006) ......................................................... 4

## STATUTES

17 U.S.C. § 504 ........................................................................................................................... 10, 12

17 U.S.C. §512(c)(2) ......................................................................................................................... 2

17 U.S.C.§512(c)(1)(B) ..................................................................................................................... 2

17 U.S.C.§512(i) .............................................................................................................................. 2

## OTHER AUTHORITIES

Caprice L. Roberts, *The Restitution Revival and the Ghosts of Equity*, 68 Wash. & Lee L. Rev. 1027 (2011) ............................................................................................................................................ 4

Robert Mazure, *How to Halt the Terrorist Money Train*, N.Y. Times, Jan. 2, 2013 .......................... 5

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102   FAX: 415-404-6616
TEL: 415-404-6615

-iii-

The United States Senate Homeland Security & Governmental Affairs Permanent Subcommittee on Investigations, *HSBC Exposed U.S. Financial System to Money Laundering, Drug, Terrorist Financing Risks*, July 16, 2012 ........................................................................................................5

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102    FAX: 415-404-6616
TEL: 415-404-6615

-iv-

# INTRODUCTION[1]

Although the Parties have extensively and often repetitiously presented the procedural and factual backgrounds of this action in filings which the Court will consider concurrently with this motion, Oron makes several claims with regard to the status of this action that cannot go unanswered.

Oron claims it is a cloud-based data storage business and the infringing material at issue in this action was placed on Oron's servers by third persons unrelated to Oron.   Motion of Defendant FF Magnat Limited for Relief from Preliminary Injunction (Motion for Relief), ECF No. 70 at p. 3:18-20.  Both assertions are categorically false - and for the same reason. Oron is not like Apple, or Google, or any other legitimate cloud storage company, because Oron encouraged its affiliates to upload popular and infringing content by paying its affiliates cash rewards each time a customer purchased a subscription in order to efficiently access the uploaded content.   Thus, Oron is not a legitimate cloud-based storage system and the infringing content was not placed on its servers by unrelated third persons but rather by its paid affiliates.

Oron claims that at all times relevant to this action it complied with the requirements of the Digital Millennium Copyright Act such that it is entitled to the Act's safe harbor provisions.  *Id*. at p.3:20-23.  Again, Oron's statement is false on its face.  It is undisputed that that for at least a portion of the infringements, Oron did not have an agent registered with the

---

[1] The procedural and factual backgrounds of this action are set forth in the filings in connection with the two motions currently scheduled for concurrent oral argument - Plaintiff's Motion to Extend Order of Preliminary Injunction to Cover Additional Funds (ECF No. 66) and Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.  ECF No. 64.

-1-

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615   FAX: 415-404-6616

The Law Office of D. Gill Sperlein
345 Grove Street
San Francisco, CA 94102
Tel: 415-404-6615   Fax: 415-404-6616

United States Copyright Office which is an absolute bar from eligibility for safe harbor protection for those infringements.[2]   17 U.S.C. §512(c)(2) ("The limitations on liability established in this subsection apply to a service provider only if the service provider has designated an agent to receive notifications of claimed infringement.").

While repeating arguments this Court previously rejected, Oron fails to take this opportunity to address concerns raised by Plaintiff and the Court.  Oron continues to withhold from Plaintiff and the Court critical information concerning the location of *all* of its assets. Specifically, Oron offers no explanation as to why it exchanged large amounts of Hong Kong dollars into foreign currencies and transferred those currencies out of its Hong Kong bank account.  More importantly, Oron fails to explain what happened to those assets and why the assets are not currently available to fund Oron's Defense.  Oron also refuses to provide the information necessary for the Court to consider what amount of Oron's gross receipts will be subject to equitable disgorgement, including documentation of any  expenses that might be subtracted from its gross revenues and documentation as to what portion, if any, of those revenues is attributable to sources other than the infringement of Plaintiff's works.   Until Oron provides complete disclosure of its assets and brings forth evidence of expenses or proportional offsets, the entirety of Oron's gross receipts are subject to equitable

---

[2] For other reasons, Oron also does not qualify for the safe harbor provisions for the remaining acts of infringement.  For example, Oron received a financial benefit directly attributable to the infringing activity and had the right and ability to control such activity in contravention of 17 U.S.C.§512(c)(1)(B) and failed to adopt and reasonably implement a policy providing for the termination of repeat infringers in contravention of 17 U.S.C.§512(i).

disgorgement and thus, the Court should not consider Oron's request for relief from the Preliminary Injunction.[3]

### SUMMARY OF ARGUMENT

Once more, Oron requests relief from the Preliminary Injunction, arguing that the funds currently frozen under the Preliminary Injunction exceed the maximum amount required to fulfill any equitable remedy available to Plaintiff. Oron's argument is based on a misunderstanding of the nature of the equitable relief upon which the Court granted the Preliminary Injunction and Oron's peculiar calculation of damages. The Court previously denied Oron's similar request, because Oron had not made a showing that the funds potentially subject to an equitable disgorgement are less than the amount currently frozen by the Court's Order. Order Denying Motion for Partial Relief from Preliminary Injunction, ECF No. 58 at 2:12-20. The Court further stated that it would "not exercise its discretion to release a particular sum absent knowledge of whether and how depletion of those funds could impact Plaintiff's ultimate potential recovery." *Id.* Because Oron has not provided *any* documentary evidence of the amount of frozen assets, and because Oron continues to withhold evidence necessary for determining how depletion of the funds could impact DataTech's ultimate recovery, the Court should not exercise its discretion to release funds.

---

[3] Further, the Court should grant Plaintiff's motion for an Order clarifying that if Oron obtains access to additional funds, those funds are also subject to the Preliminary Injunction.

-3-

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102   FAX: 415-404-6616
TEL: 415-404-6615

I.   **DISGORGEMENT OF PROFITS IS AN EQUITABLE FORM OF RELIEF.**

In spite of several rulings from the Court on this issue, Oron continues to press its argument that disgorgement of profits under the Copyright Act is not an equitable remedy. Oron's argument is clearly against the weight of the authority.  Oron seems to believe that because the amount of the disgorgement can be expressed in terms of dollars, that it is a legal , not an equitable remedy.  However, in *Sereboff v. Mid. Atl. Med. Servs.*, 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006), and *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002), the Supreme Court made clear that the court's primary consideration should be whether the category of relief requested was historically available in equity.

Restitution and disgorgement are remedies were historically available in equity.  In a 2011 law review article, Professor Caprice L. Roberts wrote "[o]ther examples of an equity clarification include disgorgement as a statutory remedy for infringement of intellectual property rights."  Caprice L. Roberts, *The Restitution Revival and the Ghosts of Equity*, 68 Wash. & Lee L. Rev. 1027 (2011), *citing Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332 (D.N.J. 2001)(granting Castrol disgorgement of profits on its unfair competition and false advertising (Lanham Act) claims against Pennzoil); *see also United States v. Rx Depot, Inc.* 438 F3d 1052, 1058 (10th Cir. 2006) ("Section 332 of the FDCA [granting enforcement powers to federal courts] invokes the equity jurisdiction of courts, using same statutory language the Supreme Court construed in *Mitchell* [*v. Robert de Mario Jewelry, Inc.*, 361 U.S. 288 (1960)], to authorize all traditional equitable remedies.").  The Rx Depot

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615   FAX: 415-404-6616

court then declared that "[d]isgorgement is a traditional equitable remedy." *Id.* (emphasis added.).

The issue is currently before the Ninth Circuit Court of Appeal.

## II.   ORON HAS FAILED TO PROVIDE EVIDENCE OF THE AMOUNT OF FUNDS CURRENTLY HELD.

Oron  failed to offer any documentary evidence to support its assertions regarding the amount of funds currently frozen.   Certainly, each of the financial accounts to which Defendant referred in its moving papers provides regular statements of those accounts to Oron.  Defendant filed with the Court HSBC bank statements[4] from February 2011to August 2011that show a beginning and ending balance, as well as, the amount of deposits and withdrawals each month.  Exhibits A and B to the Supplemental Declaration of Davidoglov Stanislav in Support of Oron's Motion for Reconsideration,  ECF Nos. 39-1 to 39-4.  In spite of the availability of such statements, without explanation, Oron has failed to provide *current* HSBC statements or *any* statements from PayPal, AlertPay, or CCBill.  Plaintiff can only speculate on the reason Oron is withholding  the statements.  Perhaps they reveal that Oron withdrew foreign currency assets in amounts even greater than the previoulsy subitted statements show.  Alternatively, Oron's reluctance may be because the statements a) reveal

---

[4] Even current statements from HSBC might be viewed with some skepticism given that last year the bank was found to have "exposed the U.S. financial system to a wide array of money laundering, drug trafficking, and terrorist financing risks due to poor anti-money laundering controls."  See The United States Senate Homeland Security & Governmental Affairs Permanent Subcommittee on Investigations, *HSBC Exposed U.S. Financial System to Money Laundering, Drug, Terrorist Financing Risks*, July 16, 2012, (Reported on by, Robert Mazure, *How to Halt the Terrorist Money Train*, N.Y. Times, Jan. 2, 2013, http://www.nytimes.com/2013/01/03/opinion/how-bankers-help-drug-traffickers-and-terrorists.html).

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615   FAX: 415-404-6616

information that is inconsistent with the version of facts Oron has presented to the Court, b) provide clues as to the location of additional assets, c) strengthen Plaintiff's argument that the Court holds personal jurisdiction over Defendant, d) reveal the true ownership of oron.com, or e) some other reason. Regardless, the Court should not grant Defendant's relief until it is more forthcoming.

Even if the Court were to take Mr. Davidoglov's statements as true, which it should not given Oron's reluctance to support the statements with documentary evidence, the amount frozen is far less than the amount likely to be subject to equitable disgorgement, and certainly well below the amount of any judgment plaintiff is likely to achieve.

## III. DOCUMENTARY EVIDENCE SUGGESTS THAT ORON HAS TENS OF MILLIONS OF DOLLARS AVAILABLE FOR ITS DEFENSE THAT IT HAS NOT DISCLOSED TO THE COURT.

The Court made it clear that it would not consider arguments concerning the need for the release of additional funds until Defendant presents documentation of financial information, including but not limited to an accounting of what funds are currently held. Order Denying Motion for Partial Relief from Preliminary Injunction, ECF No. 58 at 2:12-20. Oron has not produced any such documentary evidence. Rather than provide statements from financial institutions, Oron simply makes broad, sweeping, and unsubstantiated claims about the amount held by the financial institutions specifically named in the Order of Preliminary Injunction.

Plaintiff only inserted into its Proposed Order of Preliminary Injunction the name of those financial institutions that it believed held funds on behalf of Oron. Declaration of D.

The Law Office of D. Gill Sperlein
345 Grove Street
San Francisco, CA 94102   Fax: 415-404-6616
Tel: 415-404-6615

-6-

The Law Office of D. Gill Sperlein
345 Grove Street
San Francisco, CA 94102
Tel: 415-404-6615   Fax: 415-404-6616

Gill Sperlein in Support of Plaintiff DataTech Enterprises, LLC's Opposition to FF Magnat Limited's Motion for Relief from Preliminary Injunction (Sperlein Decl.) at ¶2.  Plaintiff has no way of knowing what other financial institutions might have also held Oron assets at the time the Court issued the Order of Preliminary Injunction.  *Id.*  It seems unlikely that there are not additional institutions even within the United States that also hold Oron assets.  Moreover, bank statements Oron previously filed, offer strong evidence that Oron has tens of millions of dollars at its disposal which it has not identified to the Court.

The bank statements Oron provided evidence the complexity of Oron's international transfer of funds and highlight how impossible it would be for DataTech to retrieve any illicit profits other than those that are currently frozen under the court's preliminary injunction. Examining the bank statements carefully, one can determine that Oron does not retain the majority of the funds it transfers into its Hong Kong HSBC account.  After transferring funds as Hong Kong dollars into the account, Oron converts the funds into foreign currencies (tracked in a separate account identified on the statements as "HBSC Business Direct Foreign Currency Savings") and transfers the funds out of the account to locations which Oron has not identified.  Each month, these withdrawals are identified  at the bottom right hand side of each HBSC Business Direct Foreign Currency Savings section.

For example, the July 2011 bank statement indicates that Oron transferred $HK 15,684,446.81 into its HSBC Business Direct HKD (Hong Kong Dollars) Savings account. Sperlein Decl., Ex. A at note 1.  It then transferred funds to its Business Direct Foreign Currency Savings converting those funds into various foreign currencies in the process.  Oron

-7-

made 4 transfers of U.S. dollars totaling $143,106.24 and seventeen transfers totaling €1,977,800.63 (Euros).  *Id*. at note 2.  Then Oron transferred funds out of the foreign currency accounts to undisclosed locations.  Those withdraws or transfers consisted of 3 U.S. dollar withdrawals totaling $45,009.91 and 1 withdrawal of € 812,336.47.  *Id*. at note 3.  In August 2011, Oron transferred a total of $306,234.04, €1,828,283.97, F500,000 (Swiss Francs), and ¥250,176.76 (Chinese Yuan) out of its HBSC Business Direct Foreign Currency Savings account.  *Id*., Ex. B. at note 4.  In September 2011, it transferred $137,477.96, €615,835.37 and ¥158,946.37.  *Id*., Ex. C, at note 5.  In total Oron transferred the equivalent of 5,878,593 U.S. dollars out of its Hong Kong account just in the months of July, September, and August of 2011 (or $1.9 million a month).  *Id*. at Ex.  D.  Oron provided these bank statements to show that it regularly transfers money from its PayPal account to its Hong Kong account, but the statements also show that the money does not stay in Hong Kong for long.  Rather it is exchanged into foreign currencies and transferred to other undisclosed locations.

July, August, and September of 2011 were not Oron's most profitable months of operation.  The FBI shut down Oron's largest competitor MegaUpload.com in January 2012, and Oron's popularity and profitability spiked from then until it went off line in August of 2012.  If Oron continued to transfer foreign currencies out of the Hong Kong bank account even at the same rate of $1.9 million a month from August 2011 until it ceased operations in August 2012, there is another twenty-three million dollars of assets, for a total of nearly thirty million dollars in assets that Oron has not accounted for.  Oron has not produced any bank statements after August 2011 and has made no attempt to explain where the foreign

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615   FAX: 415-404-6616

currencies transferred from its bank account went or why those funds are not available to pay for its defense, in spite of the fact that Plaintiff has raised this issue in previous filings.

Oron's failure to produce documentation of the accounts where assets are currently frozen, its failure to provide documentation of expenses or of profits attributable to sources other than the infringement of DataTech's works, and Oron's refusal to provide additional HSBC statements or to explain the current location of the foreign currency assets transferred out of its Hong Kong bank account are all linked. Oron simply does not want to reveal the extent or location of its wealth and assets.

Certainly, nothing in the way Oron has conducted this litigation suggests that it is operating from a compromised financial situation (e.g., engaging eight different attorneys and running up over $220,000 in legal bills). Oron has a war chest of funds that likely exceeds thirty million dollars and simply seeks to transfer the comparatively small amount of frozen funds beyond the reach of Plaintiff and this Court.

Until Oron is more forthcoming about *all* of its assets and until it has produced copies of *all* of its banking records from August 2011 forward, the Court should not consider releasing additional funds from the limited amount available to satisfy what is likely to be a multimillion dollar judgment in Plaintiff's favor, including a judgment of a substantial equitable disgorgement of illicit profits.

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102   FAX: 415-404-6616
TEL: 415-404-6615

-9-

**IV.**  **WHEN CALCULATING THE AMOUNT OF ILLICIT PROFITS A PLAINTIFF IS ENTITLED TO EQUITABLY RECOVER THROUGH DISGORGEMENT, "THE COPYRIGHT OWNER IS REQUIRED TO PRESENT PROOF ONLY OF THE INFRINGER'S GROSS REVENUE, AND THE INFRINGER IS REQUIRED TO PROVE HIS OR HER DEDUCTIBLE EXPENSES AND THE ELEMENTS OF PROFIT ATTRIBUTABLE TO FACTORS OTHER THAN THE COPYRIGHTED WORK".  17 U.S.C.A. § 504.**

As the Court has correctly ruled, the law is clear - once Plaintiff has come forth with evidence of the infringer's gross revenues, the burden shifts to the infringer to come forth with evidence supporting any deductions or elements of profit attributable to factors other than the infringement of the copyrighted works.

Oron is entitled to subtract from its gross revenues expenses associated with earning the revenue.  Because Oron did not license any of the content available to its subscribers, it avoided the most significant expense most content distributors endure.  Presumably, Oron paid other expenses relating to the operation of the infringing website as they were incurred. DataTech does not have access to Oron's accounting records and can only speculate whether there are any outstanding bills.  Of course, it is precisely because Oron - not DataTech - has access to Oron's records that the law requires Oron to produce evidence of expenses.  In spite of the fact that it is standard business  and accounting practice to track expenses, Oron has not presented any evidence of expenses.  Nor has it argued that it will be able to present any such evidence at trial.  On the current record, the Court must assume there are no expenses to be subtracted from the total revenues.

The second category of  deductions to be subtracted from the total amount of revenue, consists of the elements of profit attributable to factors other than DataTech's copyrighted works.  If a portion of Oron's profits came from sources other than the exploitation of

-10-

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615   FAX: 415-404-6616

Plaintiff's infringed works, Oron ultimately bears the burden of providing evidence to prove it. Just as DataTech cannot make assertions about Oron's expenses without speculation, it cannot make assertions about the amount of Oron's profit attributable to other sources without speculation. The reasoning that requires Oron to bring forth evidence of expenses applies equally to the question of proportionment; Oron has access to the records - DataTech does not. Although Oron makes broad statements that revenue came from other sources, it has been either unwilling or unable to provide documentary evidence in support of its broad and generalized statements. Perhaps Oron does not wish to prompt additional lawsuits by presenting evidence of infringement of other copyright holders' works.

DataTech acknowledges that the accounting required to apportion its profits is detailed and tedious. However, the nature of Oron's affiliate structure required this precise type of accounting, and the records should be easy to produce. Declaration of Peter Phinney in Support of Plaintiff's Opposition to Motion for Relief (Phinney Decl.) ¶¶7-8. Each time a user purchased a subscription, Oron paid a portion of the subscription to the individual affiliate who uploaded the file and the website affiliate who distributed the links to the file. *Id*. In order to calculate the amounts due to each affiliate, Oron necessarily would have employed robust affiliate sales tracking software. *Id*. This type of affiliate sales tracking software is standard in online content distribution. *Id*. Unless Oron has purged records, it should be able to compile and present evidence showing the proportionment of sales. Nonetheless, Oron has not presented *any* evidence that the revenue came from other sources. On the record currently before the Court, DataTech is likely to succeed in establishing that it

The Law Office of D. Gill Sperlein
345 Grove Street
San Francisco, CA 94102
Tel: 415-404-6615   Fax: 415-404-6616

-11-

is entitled to recover the total amount of Oron's revenues.  As a practical matter, this amount will be limited to the amount currently frozen.

Without support, Oron argues that because a preliminary injunction is an extraordinary form of relief, the Court should disregard the burden shifting language found in 17 U.S.C. § 504.  Not only is the argument unsupported in law, it is unsupported in logic.  At the early stages of litigation, prior to any discovery, the considerations behind the burden shifting provisions are even more relevant.  Plaintiff has not had any opportunity to review Oron's records relating to deductable expenses or proportionment.

Plaintiff filed this action five months ago.  Oron has had sufficient time and motivation to organize its records and present the necessary documentary evidence.  The fact that it has not done so strongly suggests that it either unable or is unwilling to do so.  Oron is clearly withholding relevant information.  Considering Oron's failure to provide any accounting records to support its broad claims, the Court must find that Oron cannot meet its burden and should therefore deny Oron's motion for relief.

**V.     ORON'S DISCUSSION OF DAMAGES IS CONFUSED, PECULIAR, AND LARGELY IRRELEVANT.**

Because the preliminary injunction is based on the availability of disgorgement of illicit profits, Defendant's discussion regarding damages is largely irrelevant.  Even so,

The Law Office of D. Gill Sperlein
345 Grove Street
San Francisco, CA 94102   Fax: 415-404-6616
Tel: 415-404-6615

-12-

Oron's strange method of calculating maximum damages is so distorted that DataTech is compelled to respond.[5]

Defendant provides two separate calculations, arguing in the alternative that Plaintiff could not possibly win a judgment higher than either of its calculations.  The first amount Oron calculates is $246,649, which it says represents the maximum amount of recovery under a "theory of profits".   Motion for Relief at p. 10:10-14.  It is unclear what the phrase "theory of profits" refers to.

There are two forms of recovery in which the word "profit" typically appears.  The first is recovery through equitable disgorgement of illicit profits as explained in detail *supra*.  If a copyright holder establishes liability but can only prove damages in an amount that is less than the amount the infringer earned from his exploitation of the work(s), the Court may equitably disgorge those illicit profits and return them to the copyright holder.  "The recovery of [...] profits in addition to actual damages is designed to ensure that infringers are not able to retain some benefit flowing from their wrongful conduct that is not fully taken into account in the award of actual damages."  *Manufacturers Technologies, Inc. v. Cams, Inc.,* 728 F. Supp. 75, 83 (D. Conn. 1989).

---

[5] Oron argues that the amount of damages in this case under *any* theory could not exceed $620,227.37.  Motion for Relief at p. 3:11-12.  Plaintiff recognizes that statutory damages may not be relevant to the disgorgement of illicit profits theory that supports the preliminary injunction,  but nonetheless refutes Oron's clearly erroneous statement.  In addition to several ways of calculating actual damages, Plaintiff could alternatively elect to receive enhanced statutory damages, in which case it will be eligible for up to $150,000 for each of *at least* 436 infringed works, making the maximum statutory damage award sixty-five million, four hundred thousand dollars ($65,400,000.00).

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102   FAX: 415-404-6616
TEL: 415-404-6615

A copyright holder is entitled to recovery of these profits, regardless of the amount of damages she can prove.  If after calculating actual damages, there are additional profits not accounted for within those calculations, the copyright holder is entitled to receive those profits through equitable disgorgement.

The other situation in which one uses the term "profits" in relationship to remedies for copyright infringement is when speaking of Defendant's "lost profits".  Lost profits is one method, but not the only method, of calculating actual "damages" suffered by a copyright holder.  Oron's analysis seems to alternate back and forth between the two concepts described above, i.e. "illicit profits" earned by the infringer and "lost profits" suffered by the infringed. The result is a jumbled, confused, and distorted analysis.

Oron appears to argue that the maximum amount of profit it could have earned from the infringement of Plaintiff's works should be determined by multiplying the number of incidents that Plaintiff's works were found on its servers and multiplying it by the amount Oron would charge one of its customers for a monthly subscription.  First, this is contrary to the procedure for determining illicit profits which is explicitly set forth in the Copyright Act and described in detail *supra*.  Second, the calculation has no basis in reality.

Oron does not operate in the brick and mortar market place and was not selling DVDs or some other hard product.  It did not make a single infringing copy of each of Plaintiff's works to sell to a single purchaser.  Rather, it sold access to each infringing file to an *unlimited* number of people.  Thus, any single file may have inspired tens of thousands of subscriptions to Oron.com.  When calculating illicit profits however, Plaintiff needs only to

-14-

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET   SAN FRANCISCO, CA 94102
TEL: 415-404-6615   FAX: 415-404-6616

provide evidence of the total revenue and the burden will be upon Oron to show how many subscriptions resulted from sources other than the exploitation of DataTech files.

Alternatively, Oron argues that the maximum actual damage award DataTech could attain is $620,227.37. The method used to derive this figure suffers the same infirmaries. First, DataTech alleges 42,356 infringements known thus far (i.e., prior to discovery), not 18,973. Phinney Decl. at ¶10. More importantly, Oron again makes the absurd assumption that only one user accessed each infringing file. Each of the 42,356 infringing files was accessible not to one person, but to anyone with a copy of the url. *Id*. Oron's affiliates and co-infringers freely published the urls on websites, blogs, bulletin boards, and user groups. Anyone wishing to download the movie file simply needed to click on the url. Theses individuals did not even need to purchase an Oron subscription unless they wanted the convenience of faster and unlimited downloads (which many viewers did, leading to Oron's substantial profits). Each of the 42,356 infringing files was viewed therefore, not by one person, but by hundreds, thousands, or tens of thousands of people. Each of these views represents a potential DataTech customer and therefore a potential lost sale. Even if only ten[6] Oron users viewed each of the 42,356 files, DataTech lost over 423,560 potential sales - not 18,973 as Oron argues. Multiplying this amount times $32.69 - the average cost of a

---

[6] An assumption of ten views per infringing file is preposterously low given that links to the files were freely distributed throughout the Internet. For example, 13,656 of the 42,356 links to infringing files were distributed by Oron's main affiliate, pornbb.org, which ranks as the 2,568th most popular website and likely receives over five million visits a month. Phinney Decl at ¶19, Exs. A and B. All of its visitors had access to any link posted there and all those visitors could download any of the links to DataTech movies posted there.

-15-

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615   FAX: 415-404-6616

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102   FAX: 415-404-6616
TEL: 415-404-6615

download from DataTech according to Oron's calculations - the potential lost sales caused by Oron's infringing operation would equal thirteen million, eight hundred forty-six thousand, one hundred seventy-six dollars ($13,846,176).   Of course, there is nothing to suggest that each files was limited to ten downloads and the actual number is likely to be exponentially higher.

Oron's calculation of the maximum actual damage award is ludicrous.  However, even if it were accurate, DataTech would still be entitled to recover not only those damages, but also any illicit profits Oron earned that were not taken into account in the calculation of actual damages.  Thus, if DataTech can establish at trial that Oron earned total receipts in excess of the damage award, and Oron cannot meet its burden of producing evidence of expenses or offsets to reduce those total receipts, than DataTech is entitled to the equitable disgorgement of those profits as well, regardless of the amount of damages from lost sales it is able to prove, provided those profits are not already accounted for in the calculation of damages.[7]

## VI.   ORON'S RELIANCE ON *POLAR BEAR PRODUCTIONS* IS MISPLACED.

Oron's reliance on *Polar Bear Productions* is misplaced.  In *Polar Bear Productions* and other similar cases, courts have held that it is improper to consider the Defendant's gross receipts when the infringing activity was an *indirect* source of revenue.  Almost all of these

---

[7] In any event, if DataTech elects to recover actual damages rather than statutory damages, it is more likely to calculate its damages in terms of lost licensing fees rather than lost sales because of the difficulty of proving that any of the many downloaders would have actually purchased the downloads from DataTech in the absence of Oron's infringement.  *See Sid & Marty Krofft Television Prods, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1174 (9th Cir. 1977); *Jarvis v. K2 Inc.,* 486 F.3d 526, 533 (9th Cir. 2007).

cases dealt with infringement that occurred when a defendant used a plaintiff's copyrighted work as part of an advertising campaign.  Thus, it was unfair to consider all of an infringer's revenue, when it was speculative as to whether the use of the infringing material in advertisements lead to any profits at all.  *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 703 (9th Cir. 2004) *opinion amended on denial of reh'g,* 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004)(use of Plaintiff's film footage to promote watch sales); *Mackie v. Rieser*, 296 F.3d 909, 912 (9th Cir. 2002) (use of photograph of plaintiff's sculpture in a symphony's advertising brochure); *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826 (9th Cir. 1985)(use of plaintiff's song in an advertisement for beer); *On Davis v. The Gap, Inc.,* 246 F.3d 152, 160 (2d Cir. 2001)(use of Plaintiff's eyeware in an advertisement for clothing store).

Here, Oron did not simply use a one of Plaintiff's movies in an advertisement for its website.  Rather, Oron earned revenue directly from selling access to thousands of copies of Plaintiff's works residing on its servers.  The infringing use was not an advertisement; it was the actual sale of access to the work.  This was Oron's business model and its sole *raison d'etre*.

Even where courts have required a plaintiff to narrow the scope of revenue, they have suggested that evidence of revenue from the same type of activity is sufficiently narrow.  For example, where a plaintiff brought suit against the Gap for the use of an advertisement containing  his copyrighted "nonfunctional jewelry worn in the manner of eyeglasses", the Second Circuit held that it was not sufficient for Plaintiff to present evidence of the Gap's

-17-

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET   SAN FRANCISCO, CA 94102   FAX: 415-404-6616
TEL: 415-404-6615

total revenue for the period of time of the infringement.  However, the Court stated that it was, "incumbent on [plaintiff] to submit evidence at least limited to the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories."  *On Davis v. The Gap, Inc.,* 246 F.3d  at 160.  Here all Oron's gross receipts came from exactly the same source, the sale of oron.com subscriptions.  This was the only thing Oron sold.  The law now requires Oron to answer a straightforward question, "how many of those subscription sales came from users attempting to access files that did not belong to DataTech?"  In other words, the only thing we must now do is to parse which subscription sales were generated by DataTech content and which, if any, were generated by content belonging to other copyright holders. Oron should have sufficient records to go move forward with this analysis.  Phinney Decl. at ¶8.

If the general rule of applying the burden of proof to the Defendant to show what, if any, portions of revenue came from the sale of other sources does not apply here, it is difficult to imagine any scenario in which it would apply.  Defendant's interpretation would turn the rule on its head. Oron simply does not want to provide the accounting because to do so would reveal information it would rather withhold from Plaintiff and the Court.

## CONCLUSION

Because Oron has not provided any documentary evidence of the current amount of assets held in its name by various financial institutions, because Oron has failed to provide any evidence that elements of its profits are attributable to factors other than Plaintiff's copyrighted works, and because Oron has failed to offer any explanation as to the location of

-18-

tens of millions of dollars in assets, the Court should deny Oron's motion for relief from the Preliminary injunction.

Dated:  *January 28, 2013*                    Respectfully submitted,

                                             */s/ D. Gill Sperlein*


                                             _____

                                             D. GILL SPERLEIN
                                             THE LAW OFFICE OF D. GILL SPERLEIN

                                             Attorney for Plaintiff DataTech Enterprises, LLC,