D. GILL SPERLEIN (SBN 172887)
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, California 94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

Attorneys for Plaintiff DataTech Enterprises, LLC,

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DATATECH ENTERPRISES, LLC, a Nevada Limited Liability Company,<br><br>        Plaintiff,<br><br>        vs.<br><br>FF MAGNAT LIMITED d/b/a ORON.COM, STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a ROMAN ROMANOV (an alias); and<br><br>        Defendants. | Case No.: 2-12-4500 CRB<br><br>**[PROPOSED] ORDER GRANTING DATATECH ENTERPRISES, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON FF MAGANT LIMITED'S ELIGIBILITY FOR DMCA IMMUNITY FOR INFRINGEMENTS OCCURRING PRIOR TO REGISTERING AN AGENT WITH THE COPYRIGHT OFFICE** |

Plaintiff DataTech Enterprises, LLC brought a motion for summary judgment on the limited question of whether Defendant FF Magnat Limited d/b/a oron.com (Oron) is eligible for immunity from claims of copyright infringement occurring by and through its website, oron.com, that occurred prior to the date Oron provided to the Copyright Office the name, address, phone number, and electronic mail address of an agent designated to receive notifications of claimed infringement?

-1-

Because there is no dispute that Oron did not provide the required information to the Copyright Office prior to June 15, 2011 as 17 U.S.C. §512 (c) requires, the Court **GRANTS** Plaintiff's Motion.

## I.  FINDINGS OF FACT

Plaintiff alleges that Oron is directly and secondarily liable for copyright infringement of its registered works by and through its website, oron.com. Complaint, ECF No. 1, *passim*. Oron claims that under the provisions of 17 U.S.C. §512, it is immune from liability for infringement that occurred on its website. Motion of Defendant FF Magnat Limited for Partial Relief from Temporary Restraining Order, ECF No. 12 at § III (A)(2)(c). DataTech alleges that of 42,356 alleged known infringements, DataTech it discovered and requested removed 12,417 prior to June 15, 2011. Declaration of Peter Phinney in Support of Plaintiff DataTech Enterprises, LLC's Motion for Preliminary Injunction, ECF No. 29-7 at ¶¶7-11.

Oron admits that it did not provide to the Copyright Office the name, address, phone number, and electronic mail address of an agent designated to receive notifications of claimed infringement until June 15, 2011. Declaration of Davidoglov Stanislav in Support of Oron's Response to Order to Show Cause re Plaintiff's Motion for Preliminary Injunction (Davidoglov Decl.), ECF No. 21-1 at ¶12 and Ex. D.

## II.  LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of

the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See Amaretto Ranch Breedables v. Ozimals Inc.,* C 10-5696 CRB, 2012 WL 5389897 (N.D. Cal. Nov. 5, 2012).

On the question to which DataTech seeks disposition through summary judgment, there is no genuine dispute as to any material fact. Resolving this issue early will dispose of Oron's factually unsupported claim that it is eligible for 17 U.S.C. §512 immunity for infringements that occurred prior to June 15, 2011. Disposition of this unsupported claim will allow the parties to focus on the remaining issues and could promote settlement.

## III. DISCUSSION

### A. The Language of the Statute

"It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms. Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S. Ct. 192, 194, 61 L. Ed. 442 (1917)(citations omitted).

The Ninth Circuit has applied the above rule of statutory interpretation to sections of the Digital Millennium Copyright Act (DMCA). *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 667 F.3d 1022, 1041 (9th Cir. 2011). "Statutory interpretation begins with the language of the statute. When terms are not defined within a statute, they are accorded their plain and ordinary meaning, which can be deduced through reference sources such as general usage dictionaries." *Id*. (internal quotation marks and citations omitted). Likewise, in interpreting another section of the DMCA, the Third Circuit wrote, "[b]ecause it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with an examination of the plain language of the statute.... When the statute's language is plain, the sole function of the courts—at least where the disposition required by the test is not absurd—is to enforce it according to its terms. The exception to this rule is narrowly cast. Generally, where the text of a statute is unambiguous, the statute should be enforced as written and only the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language." *Murphy v. Millennium Radio Group LLC*, 650 F.3d 295, 302 (3d Cir. 2011) (internal quotation marks and citations omitted).

"The plain meaning rule can be viewed as consisting of two propositions. Initially, the rule stands for the notion that if the language of a statute is clear and there is no ambiguity, then there is no need to 'interpret' the language by resorting to the legislative history or other extrinsic aids. *See e.g*. *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 492, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); *Caminetti, v. United States*, 242 U.S. 470, 490, 37 S.Ct. 192, 61 L.Ed. 442 (1917). Secondly, and more importantly, the rule stands for the proposition that in the vast majority of its legislation Congress does mean what it says and thus the statutory language is normally the best evidence of congressional intent. As observed by the Court in *United States v. Missouri Pac. R.R.,* 278 U.S. 269,

-4-

278, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929): '. . . where the language of an enactment is clear and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended.'" *Church of Scientology of California v. U.S. Dept. of Justice,* 612 F.2d 417, 421 (9th Cir. 1979).

The relevant section of 17 U.S.C. §512(c) of which Oron runs afoul reads as follows:

> (2) Designated agent.  The limitations on liability established in this subsection apply to a service provider *only* if the service provider has designated an agent to receive notifications of claimed infringement described in paragraph (3), by making available through its service, including on its website in a location accessible to the public, *and* by providing to the Copyright Office, substantially the following information:
> (A) the name, address, phone number, and electronic mail address of the agent.
> (B) other contact information which the Register of Copyrights may deem appropriate.
> The Register of Copyrights shall maintain a current directory of agents available to the public for inspection, including through the Internet, and may require payment of a fee by service providers to cover the costs of maintaining the directory.

17 U.S.C.A. § 512(c)(emphasis added).

The language is clear – an ISP is only eligible for immunity if it provides the required information to the Copyright Office.  Because the language is clear, there is no need to examine the legislative history or intent.  "And" means "and".  It is a coordinating junction linking independent ideas (or in this case independent requirements). *See Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1078, 179 L. Ed. 2d 1 (2011); *Rodriguez v. Smith,* 541 F.3d 1180, 1186 (9th Cir.2008) ("[U]se of the conjunctive indicates that *all* of the conditions listed must be met.") (citation omitted) (emphasis in the original); *Marin Gen. Hosp. v. Modesto & Empire Traction Co.,* 581 F.3d 941, 947 (9th Cir.2009) (observing that both prongs must be met for a legal test stated in the conjunctive); s*ee also  U. S. v. Vogel Fertilizer Co.,* 455 U.S. 16, 25, 102 S. Ct. 821, 827, 70 L. Ed. 2d 792 (1982).

An ISP must met the requirements on either side of the conjunction. Oron did provide the required information to the Copyright Act prior to June 15, 2011 and thus is ineligible for immunity as to infringements that occurred prior to June 15, 2011.

Moreover, the plain language does not create an absurd result. Requiring both posting the information on the website *and* providing it to a centralized location (i.e., the Copyright Office) is logical. Requiring posting on the website makes it easy for a copyright holder to know where to send a notice - even a copyright holder who is unaware of the requirement that the ISP also provide the information to the Copyright Office. Requiring the ISP to provide the information to the Copyright Office avoids the need to examine a website that may change over time. It provides a centralized location where any copyright holder can go to determine where to send a notification. It ensures that a copyright holder can find the information even if an ISP makes the information available but in an inconspicuous location on its website. The second requirement also makes it easier to determine at a later time if the ISP complied with the requirement to designate an agent, even when evidence of website notification may no longer be available because the website has changed or has been shut down. It also prevents an ISP from seeking immunity by adding the information to its website after infringement occurs.

**B. Legislative Intent**

Even if the Court found it necessary to examine legislative intent the Court would find that DataTech's interpretation of the provision is consistent with Congressional intent. The Digital Millennium Copyright Act was designed to reach a balance between promoting the development of the Internet and related technologies on one hand and protecting the rights of copyright holders on the other. "Debate on this legislation highlighted two important priorities: promoting the continued growth and development of electronic commerce; and *protecting intellectual property rights*." H.R.

Rep. 551, 105th Cong., 2d Sess. §1, (1998) at p.23 (emphasis added).   Both purposes were met by requiring ISPs to report designated agent information to a centralized location in return for receiving immunity from copyright infringement claims.

Both the House and Senate versions of the bills that eventually were passed into law, contained the requirement to provide registered agent information to the Copyright Office.  The Senate Report on the bill stated that, "Title II of the Act will provide certainty for copyright owners and Internet service providers with respect to liability online."  S.R.. No. 190, 105th Cong., 2d Sess. §1 (1998) at p. 2.  In a separate statement, Senator Leahy echoed this view.  "[S]ignificant provisions were added to the bill in Title II to *clarify* the liability..."  Id. at §VII, p. 67 (emphasis added). Interpreting the Act in a way that is contrary to the plain meaning of its language, would be inconsistent with the Congressional purpose of creating certainty.

In the last sentence of the signing statement for the Act, President Clinton wrote, "[t]hrough the enactment of the Digital Millennium Copyright Act, we have done our best to protect from digital piracy the copyright industries that comprise the leading export of the United States."  Statement on Signing the DMCA, 1998 Pub. Papers of the Pres., vol. 2, Oct. 28, 1998.

Interpreting the Act so that it creates certainty and affords protection to copyright holders is consistent with the legislative intent behind the Act.

**C.  Prior Case Law**

This is a matter of first impression as no other court has directly held that failure to provide designated agent information to the Copyright Office is an absolute bar to safe harbor protection. However, in other cases in which an ISP received 17 U.S.C. §512 immunity, the ISP had delivered designated agent information to the Copyright Office.  *See e.g. UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099, 1106 (C.D. Cal. 2009) *aff'd sub nom. UMG Recordings, Inc. v.*

-7-

*Shelter Capital Partners LLC*, 667 F.3d 1022 (9th Cir. 2011)(court found that defendant had addressed all the eligibility requirements (including registering an agent with the Copyright Office) in its motion for summary judgment and plaintiff did not challenge registration of agent element of eligibility); *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1138 (N.D. Cal. 2008)(court found that defendant had registered an agent); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1108 (9th Cir. 2007)(plaintiff sent take down notices to defendants' registered agent); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1092, n. 13 (C.D. Cal. 2001)(court acknowledged that defendant had a registered agent during the relevant time); *See also Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004)(Ninth Circuit found that providing an incorrect e-mail address was sufficient fact for a jury to conclude that the ISP may not have a reasonably implemented a repeat infringer policy). In other words, if an ISP fails to comply with subsection (c)(2), it may also fail to meet the requirement that it reasonably implement a repeat infringer policy as required by subsection (i).

## IV. **CONCLUSION**

Because Oron did not deliver designated agent information to the Copyright Office prior to June 15, 2011, as required by 17 U.S.C. §512(c)(2), it is not eligible for immunity for any act of infringement that occurred prior to June 15, 2011.

Accordingly the Court **GRANTS** the Motion for summary judgment.

**IT IS SO ORDERED.**

Dated:

_____
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

-8-

[PROPOSED] ORDER RE SUMMARY JUDGMENT
C-12-4500 (CRB)