**KENNETH E. KELLER** (71450) kkeller@kksrr.com
**STAN F. ROMAN** (87652) sroman@kksrr.com
**MICHAEL D. LISI** (196974) mlisi@kksrr.com
**KRIEG, KELLER, SLOAN, ROMAN & HOLLAND LLP**
555 Montgomery Street, 17th Floor
San Francisco, CA 94111
Tel:    (415) 249-8330
Fax:    (415) 249-8333

**EVAN FRAY-WITZER** evan@CFWLegal.com
**CIAMPA FRAY-WITZER, LLP**
20 Park Plaza, Suite 505
Boston, MA 02116
Tel:    (617) 426-0000
Fax:    (617) 507-8043
*Admitted Pro Hac Vice*

**VALENTIN GURVITS** vgurvits@bostonlawgroup.com
**BOSTON LAW GROUP, PC**
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Tel:    (617) 928-1804
Fax:    (617) 928-1802
*Admitted Pro Hac Vice*

Attorneys for Defendant FF MAGNAT LIMITED

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DATATECH ENTERPRISES, LLC, a Nevada Limited Liability Company,<br><br>            Plaintiff<br><br>     vs.<br><br>FF MAGNAT LIMITED d/b/a ORON.COM; STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a ROMAN ROMANOV (an alias).<br><br>            Defendants. | Case No. C-12-4500 CRB<br><br>**REPLY IN SUPPORT OF DEFENDANT FF MAGNAT LIMITED'S MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION**<br><br>Hearing:     March 8, 2013, 10am<br>Judge:        Hon. Charles R. Breyer<br>Courtroom:  Courtroom 6 – 17th Floor |

# INTRODUCTION

Plaintiff DataTech Enterprises, LLC ("DataTech") has once again offered this court baseless speculations, mischaracterizations, diversions and wholly incorrect accusations in order to improperly withhold Defendant FF Magnat Limited's ("Oron") funds for the purpose of harassment and preventing it from properly defending itself in this action. Although Oron will, in this Reply in Support of Oron's Motion for Relief from Preliminary Injunction, respond to each of these speculations, mischaracterizations, diversions and falsities in turn; there is a single and undisputed fact which disproves much of DataTech's argument and which must be discussed before all the rest. After engaging in wholly reckless and incorrect accounting, DataTech alleges that "Oron has a war chest of funds that likely exceeds thirty million dollars." DataTech's Response, Dkt. 74, p. 9. Oron does not have any war chest of funds, and it *never* made anywhere near $30 million dollars over the course of its entire existence. This can be proved even without referencing the bank records which DataTech has (either recklessly or intentionally) misread.

Oron shut down its business operations in August of 2012 because it could not pay its hosting provider, LeaseWeb, after the funds in its PayPal and HSBC bank accounts were frozen following court orders entered into a lawsuit filed by another copyright troll, Liberty Media, in Nevada, and the subsequent temporary restraining order and preliminary injunction ordered by this Court. If Oron really did have such a war chest, which was supposedly accumulated because Oron enjoyed an income of millions of dollars a month, then DataTech would have this Court believe that Oron threw it all away (refusing to pay the costs needed to continue its operations) because it could not access the relatively small amounts left frozen in its account. DataTech argues, presumably with a straight face, that Oron threw away a $2 million a month business

without a fight just because copyright trolls were attempting to extract illegitimate settlements from it.  It is a ridiculous supposition.

The fact of the matter is that Oron was *not* a $2 million a month business.  DataTech has misread Oron's HSBC bank statements in order to incorrectly represent to this Court that Oron withdrew $5,878,593.38 from its bank account in the months of July, August and September of 2011.  A correct reading of the statements shows that only **$552,803.59** was actually withdrawn from the account in those months.  *See* Declaration of Stanislav Davidoglov, attached hereto as Exhibit 1, ¶ 8.

DataTech's response also shows that DataTech and its counsel either did not engage in the reasonable and fundamental inquiry which they have a duty to make or that they made intentional misrepresentations to the court.  DataTech has provided the court the 1000% inflated number as part of its continuing attempt to paint Oron as a criminal enterprise.[1]  This allegation, too, is absurd.  Oron has never engaged in criminal behavior.

Finally, DataTech argues that because it is impossible for Oron to *disprove* that none of Oron's profits came from the alleged infringement of DataTech's copyrights, DataTech is not only entitled to all of Oron's profits, it is entitled to a freeze of those funds in Oron's name right now.  DataTech does this by mischaracterizing Oron, its business and its affiliate model.  Once again, the truth is miles away from DataTech's allegations.  None of Oron's profits are causally related to the alleged infringement of DataTech's copyrights – Oron's profits were solely

---

[1] DataTech goes so far as to compare Oron to drug traffickers and terrorists solely because Oron uses HSBC Bank.  Because this is indicative of a larger modus operandi of the Plaintiff, it is worth a moment's pause and consideration.  HSBC is the world's second largest bank.  *See* Exhibit 2.  It manages assets in excess of $2.7 trillion dollars, with 6,900 offices in over 80 countries.  *See* Exhibit 3.  If DataTech can brand Oron a "terrorist" because it banked with the world's second largest bank, then (with apologies to President Kennedy): Ich bin ein terrorist.

attributable to a service Oron offered that was independent of the actual files hosted on Oron's website. DataTech also attempts to improperly shift an immense burden on to Oron, a party that, it should not be forgotten, this Court has not yet held is subject to personal jurisdiction, to produce evidence that simply does not exist.

## ARGUMENT

### I. Oron Has Provided Evidence of the Amount of Funds Currently Held and Will Continue to Provide it Despite DataTech's Attempts at Diversion

As it has done throughout, DataTech attempts to divert this Court's attention from the actual issues at hand by ignoring the evidence that Oron has previously provided regarding the funds frozen, as if by doing so the evidence ceases to exist. It is apparently not sufficient (for DataTech) that Oron has sworn under the penalty of perjury regarding these amounts. This is particularly surprising considering it is undisputed that Oron's funds at HSBC, PayPal, AlertPay, and CCBill (if any) have been frozen. In any case, to put this matter to rest, Oron attaches documentary evidence regarding its frozen funds. *See* Declaration of Stanislav Davidoglov, attached hereto as Exhibit 1, ¶¶ 2-5.

### II. DataTech Has Misread the Documentary Evidence and Oron Does Not, and Never Has Had, "Tens of Millions of Dollars" Available for Its Defense.

DataTech has inexplicably represented to this Court that Oron's bank statements previously filed, "offer strong evidence that Oron has tens of millions of dollars at its disposal which it has not identified to the Court." DataTech's Response, Dkt. 74, p. 7. DataTech came to this conclusion by apparently "[e]xamining the bank statements carefully." However, DataTech has done no such thing and its calculations are off by a factor of 10. In reality, only **$552,803.59**

was withdrawn from Oron's HSBC Bank account during the time covered by those statements. *See* Declaration of Stanislav Davidoglov, attached hereto as <u>Exhibit 1</u>, ¶ 8.

DataTech begins its "careful examination" by correctly identifying that funds enter into Oron's HSBC Business Direct HKD Savings Account as Hong Kong Dollars and are then converted into different currencies and placed in Oron's HSBC Business Direct Foreign Currency Savings Account. However, this is where DataTech's legitimate accounting both starts and stops. What DataTech does not disclose to the Court is that funds transferred into other currencies, particularly Euros or Swiss Francs, did not stay in those currencies – they were instead converted either back into Hong Kong Dollars or into United States Dollars or Chinese Yuan. However, DataTech characterizes these further conversions as "withdrawals," adding up these conversions that never left Oron's bank account to come up with its $5,878,593.38 figure.

DataTech's faulty accounting is particularly suspect because DataTech correctly recognized that certain conversions were not actually withdrawals. For example, DataTech seems to recognize that the conversions from HKD to Euros, were not actually withdrawals, but instead simple currency exchanges that did not leave Oron's account. However, when it came to converting Euros to HKD, a transaction that looks the same on the statements as the conversions from HKD to Euros, DataTech incorrectly categorized these transactions as "transfers [of] the funds out of the account." DataTech's Response, p. 7. This inconsistency could not be a simple mistake – it is either an intentional misrepresentation or a failure of DataTech and its counsel's obligations to undertake a reasonable examination of the documents already in their possession.

For example, DataTech alleges that the July 2011 bank statement indicates that € 812,336.47 was withdrawn from Oron's Foreign Currency Savings Account. DataTech's Response, p. 8. However, Oron did not withdraw any Euros whatsoever from its accounts in that

period.  A rudimentary examination of the actual transaction shows that this "withdrawal," completed on July 4, 2011, is marked with "Internal Ref: BIB-N70400026987."  Sperlein Decl., Dkt. 74-1, Ex. A, p. 3.  The Internal Reference Number ("IRN") indicates that the "withdrawal" was actually an internal transfer, from one part of Oron's account to another.  This is evidenced in the same statement by a line showing a "deposit" of HK$ 9,179,239.64 into the Oron HKD Savings Account the same day, also marked with IRN N70400026987.  *Id.* at 2.  Actual withdrawals completely out of Oron's bank account are not designated with an IRN and thus can be easily distinguished from conversions.  Therefore, although DataTech unequivocally represented to this Court that Oron withdrew € 812,336.47, Oron did no such thing and the bank statements clearly prove that Oron did not.

DataTech made even more grandiose misrepresentations with regards to the August 16, 2011 bank statement.  DataTech alleged that Oron withdrew € 1,828,283.97 and F500,000 (Swiss Francs) out of its Foreign Currency Savings account.  DataTech's Response, p. 8.  However, each of these "withdrawals" was also an internal transfer to another currency, and the funds did not leave Oron's account.  For example, the "withdrawal" of € 215,273.62 on July 20, 2011, IRN N72000117282 (Sperlein Decl., Ex. B, p. 3), was a conversion into 250,000 Swiss Francs, also IRN N72000117282 (*Id.* at 4).  However, DataTech's false accounting builds upon itself because when the funds were converted from Francs back to Euros DataTech counted it *again* as a withdrawal.  For instance, on August 1, Oron converted 247,124.65 Swiss Francs back into € 215,380.00 (IRN N80100122738).[2]  *Id*. at p. 4 and 3.  Consequently, Oron did not actually

---

[2] Oron was apparently attempting to increase its income by buying and selling currencies.  *See* Declaration of Stanislav Davidoglov, attached hereto as <u>Exhibit 1</u>, ¶¶ 8.  Unfortunately, this particular pair of transactions did not end profitably for Oron.

withdraw out of its HSBC accounts *any* Euros or Swiss Francs in the period covered by the August statement.

The same applies to the supposed € 615,835.37 that DataTech alleges Oron withdrew in September 2011.  DataTech's Response, p. 8.  This "withdrawal" was a single conversion on August 23rd into 6,928,517 Hong Kong Dollars (IRN N82300126047).  Sperlein Decl., Ex. C, pp. 2 & 3.

In his declaration, DataTech's attorney, Mr. Sperlein, added up each of these currency transactions and represented to the court that they were all withdrawals and that Oron withdrew an equivalent of US$ 5,878,593.38.  Sperlein Decl., Ex. D.  However, as shown above, the plain truth is that Oron did not make *any* withdrawals out of its account in Euros or Swiss Francs during that time.  Therefore, each of the figures in the columns for Euros and Swiss Francs in Exhibit D of Mr. Sperlein's declaration should be 0.  Properly read, then, the statements show a grand total of US$ 488,721.91 and 409,123.13 Chinese Yuan actually withdrawn from the account in the months covered by the statements.  That is only **$552,803.59** when totally converted to United States Dollars.

There is a difference, then, of Five Million, Three Hundred Twenty Five Thousand, Seven Hundred and Eighty Nine Dollars and Seventy Nine Cents ($5,325,789.79) between DataTech's calculation and the truth.  The $552,803.59 that was withdrawn is equivalent to less than 10% of what DataTech represented to this Court.  Therefore, Oron could not possibly have the war chest of thirty million dollars that DataTech alleges.  Once again, if Oron really did have such a war chest, a war chest supposedly accumulated because Oron had an income of millions of dollars a month, it would be beyond reason to believe that Oron threw it all away because it could not access the relatively small amount left frozen in its accounts.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

With respect to the $552,803.59 which was withdrawn, it was withdrawn prior to the initiation of this lawsuit and was withdrawn legally and in accordance with applicable laws. Oron had the right to withdraw that money and use it for any purpose, including the repayment of debt, the payment of dividends, or the payment of vendors or staff. This money is no longer in Oron's possession and was not in Oron's possession since before the initiation of the present action. Accordingly, DataTech's continued reference to money that existed but no longer exists, is irrelevant (perhaps that is the reason why DataTech inflated this number by almost 1,000%).

### III. Oron's Profits are Neither Factually Nor Proximately Caused by the Alleged Infringements and Therefore DataTech is Not Entitled to Recovery Through Disgorgement

DataTech continues to argue before this Court that, because Oron's users allegedly made DataTech's copyrighted works available on Oron for free, all of Oron's profits which resulted solely from Oron selling a separate service (i.e. faster download speeds of stored files) are subject to disgorgement. DataTech bases its argument on a mischaracterization of Oron's business model. Oron did not "earn revenue directly from selling access" to data residing on its servers, much less from selling access to DataTech's works. The data on Oron's servers were freely accessible to all, with or without a premium membership. *See* Declaration of Stanislav Davidoglov, Dkt. 21-1, ¶ 5. Oron's profits resulted only from selling premium services that were distinct and separate from access to the works – including permanent storage, faster uploading and faster downloading. *Id.* These "perks" were the sole reason Oron's users purchased premium memberships and they are separate from the free access to the data on Oron's website.

DataTech is not entitled to a disgorgement of profits where either a) the users would have purchased the service even without the allegedly infringing element ("cause-in-fact" or "factual causation") or b) where the profits are not the "natural and probable consequences of the

infringement alone, but are the result of other factors which either add intrinsic value to the product or have independent promotional value" ("proximate cause"). *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1175 (1st Cir. 1994), abrogated on other grounds, 559 U.S. 154 (2010) (citing, *inter alia*, *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 407-08 (1940), *Abend v. MCA, Inc.*, 863 F.2d 1465, 1480 (9th Cir. 1988), and *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828-29 (9th Cir. 1985)). An absence of either cause-in-fact or proximate causation acts as a bar to the recovery of profits. *Id.* However, because there is neither factual nor proximate causation here, DataTech is barred from any potential recovery for Oron's profits.

With regards to factual causation, users would have purchased Oron's premium service regardless of whether DataTech's materials were available on Oron's website. Oron's premium memberships offered users functionality equivalent to popular services like Dropbox,[3] in that Oron afforded the premium user permanent unrestricted storage of uploaded material and unrestricted download speeds. With the proliferation of similar "cloud" hosting services like Oron and Dropbox available online, it only stands to reason that users find an independent value in an unlimited and permanent online storage system like Oron's premium service. Oron's users did not purchase premium memberships because they wanted access to DataTech's works (nor has there been a hint of evidence presented to the contrary) – they purchased it because they wanted additional bandwidth and server space.

---

[3] Dropbox offers users both a free and "pro" service. *See* www.dropbox.com/pricing. The free service gives users 2GB of space, but awards those users with additional space, up to18GB, if they refer more people to Dropbox. *Id.* However, if the user chooses to upgrade to the "pro" service for $9.99 a month, the user is given 100GB of space to use. *Id.*

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION
CASE NO. C-12-4500 CRB

This fact plays into the proximate causation factor as well: Oron's profits are not a natural or probable consequence of the alleged infringement because Oron's premium service had an intrinsic value and independent promotional purpose.  DataTech would have this court believe that it is natural and probable that all of Oron's profits are the direct result of the infinitesimally small percentage of overall files on Oron's website that allegedly infringed DataTech's copyrights.  DataTech has alleged the infringement of 436 works.  *See* Exhibit A to Blundell Decl., Dkt. 11-1.  When in operation, Oron hosted hundreds of millions of files amounting to many terabytes of disk space.  Davidoglov Decl., Dkt 21-1, ¶ 7.  It is highly improbable and frankly absurd that even a minimally significant amount of Oron's profits were proximately caused by the alleged infringements.  The connection simply does not exist.

### IV. Oron's Reliance on *Polar Bear Productions* is On Point Because Any Connection Between Alleged Infringements and Profits Was Indirect and Oron Was Not Selling the Allegedly Infringed Works, But a Separate Service

The Ninth Circuit has confirmed that where an alleged "infringer's profits are only remotely and speculatively attributable to infringement, [as it is here,] courts will deny recovery to the copyright owner."  *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004).  Moreover, in cases where the existence of a causal link is unclear, the burden of proof is on the copyright holder to establish the link.  *Id.* at 720 ("[B]ecause the amount of profits attributable to the infringements in an indirect profits case is not always clear, 'we have held that a copyright holder must establish the existence of a causal link before indirect damages can be recovered.'" (quoting *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002))).

Oron's reliance on *Polar Bear Productions* and *Mackie* is well-placed.  As a preliminary matter, Oron denies that it "used" any of the works because it is undisputed that Oron did not upload any of the works at issue.  Specifically, Oron did not use those works to draw in potential

premium members.  However, assuming *arguendo* that DataTech is correct that the availability of DataTech's works on Oron's website did in fact draw users to Oron's website, drawing those users was the only use and effect of the works.  As explained above, Oron was not "selling access" to those works because those works were available to everyone for free.

If DataTech is correct about its works acting as a draw, then Oron's reliance is entirely on point with the case law regarding copyright infringements in advertisements.  In *Polar Bear Productions*, the defendant used the plaintiff's film footage to promote watch sales.  384 F.3d at 703.  In *Mackie*, the defendant used the plaintiff's sculpture to promote a symphony.  296 F.3d at 912.  In *On Davis v. The Gap, Inc.*, the defendant used the plaintiff's eyewear to promote clothing sales.  In each of these cases, the defendants used the plaintiffs' copyrighted works to sell a wholly separate good or service.  Once again, although Oron denies that it used any of DataTech's copyrighted material for any reason, to the extent that DataTech's allegations that they acted as a draw are taken as correct, the works were not the product being sold by Oron.

The works were, at best, indirectly related to the service that Oron sold.  Accordingly, it is incumbent on DataTech to prove a causal relationship between the alleged infringement and Oron's profits.  This it has not done.  Instead, DataTech has offered only insufficient speculation. *See Mackie*, 296 F.3d at 915-16 ("[A] copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such infringement.").

Furthermore, even if Oron was required to disprove the non-existent connection (which it is not), it would be placed in a precarious position for two reasons.  First, it is generally difficult, if not impossible, to prove that something (in this case, the causal connection) does not exist.  Second, even if it was possible, the documentation that Oron would require to prove the lack of

connection was irretrievably erased when Leaseweb ceased providing its hosting services because Oron could no longer pay Leaseweb after its funds were frozen. *See* Declaration of Stanislav Davidoglov, attached hereto as <u>Exhibit 1</u>, ¶ 6. Oron does not have access to the necessary information, including information about user accounts and user uploads and how they may have related to premium account purchases and affiliate payments.

### V. DataTech's Calculation of Damages is Factually Baseless and Self-Servingly Speculative

Although DataTech claims to have alleged 42,356 infringements, that allegation is belied by its own factual contentions: DataTech has provided documentation that explicitly alleges only 18,973 infringements. *See* Exhibit A to Declaration of Lance Blundell in Support of TRO, Doc. 11-1. DataTech is asking this Court to accept on its face a number of infringements without any supporting allegations or documentation and that is contrary to the very documentation it has produced.

Moreover, DataTech's calculations are self-serving and speculative. DataTech has insisted that it lost a potential sale every time a user viewed accessed one of its works on Oron. DataTech's response, p. 15. It calculates that, as a result, it lost no less than 423,560 potential sales, resulting in at least $13,846,176 in lost sales as a result of infringements over a period of less than 2 years (starting in October of 2010 when it began sending takedown notices, Phinney Decl., Dkt. 29-7, ¶ 11, and the filing of this lawsuit in August 2012).

To reach these figures, DataTech makes several assumptions: 1) that each video was downloaded ten times, when in fact it may not have been downloaded at all, and 2) that DataTech would have actually made a sale for every single one of the downloaded videos. With regards to the latter, DataTech rightfully recognizes that it could not possibly show any lost

1  sales. DataTech's response, p. 16. Therefore, the appropriate way to calculate damages at this

2  juncture and on the present record available to the Court is by assuming that the downloaded

3  videos were never downloaded but only uploaded (because DataTech has provided no admissible

4  proof whatsoever to the contrary) and that if any person actually downloaded it, none of the

5  people who downloaded the videos from Oron would have bought the videos. The burden of

6  proof is on DataTech, and DataTech has failed that burden. *See Data Gen. Corp.*, 36 F.3d at

7  1170 ("The plaintiff bears the burden of proving that the infringement was the cause of its loss of

8  revenue." (citations omitted)).

9  However, for the purposes of Oron's Motion for Relief, if any calculation is required, it

10 should be based on the record currently before the Court. That is, it should be calculated based

11 on the substantiated and alleged number of uploads without any consideration to DataTech's

12 speculative and baseless number of downloads. This would mean, assuming, *arguendo*, that

13 every single uploaded video counted as one infringement, totaling 18,973 infringements, and that

14 each such "infringement" would have otherwise resulted in a sale for $32.69, DataTech's

15 maximum actual damages are limited to $620,227.37, and not $13,846,176 as DataTech

16 calculates, and certainly not the preposterous suggestion that damages are "likely to be

17 exponentially higher." DataTech's Response, p. 16.

**CONCLUSION**

For the foregoing reasons, Oron requests that the Court grant the relief requested in Oron's Motion for Relief from Preliminary Injunction.

Dated: February 4, 2013            **BOSTON LAW GROUP, PC**

By:    /s/ Valentin Gurvits
          VALENTIN GURVITS
          Attorneys for Defendant FF MAGNAT LIMITED