1  **KENNETH E. KELLER** (71450) kkeller@kksrr.com
   **STAN F. ROMAN** (87652) sroman@kksrr.com
2  **MICHAEL D. LISI** (196974) mlisi@kksrr.com
   **KRIEG, KELLER, SLOAN, ROMAN & HOLLAND LLP**
3  555 Montgomery Street, 17th Floor
   San Francisco, CA 94111
4  Tel:   (415) 249-8330
   Fax:   (415) 249-8333
5

6  **EVAN FRAY-WITZER** evan@CFWLegal.com
   **CIAMPA FRAY-WITZER, LLP**
7  20 Park Plaza, Suite 505
   Boston, MA 02116
   Tel:   (617) 426-0000
8  Fax:   (617) 507-8043
   *Admitted Pro Hac Vice*
9

10 **VALENTIN GURVITS** vgurvits@bostonlawgroup.com
   **BOSTON LAW GROUP, PC**
   825 Beacon Street, Suite 20
11 Newton Centre, MA 02459
   Tel:   (617) 928-1804
12 Fax:   (617) 928-1802
   *Admitted Pro Hac Vice*
13

Attorneys for Defendant FF MAGNAT LIMITED and STANISLAV DAVIDOGLOV

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATATECH ENTERPRISES, LLC, a Nevada Limited Liability Company,<br><br>Plaintiff<br><br>vs.<br><br>FF MAGNAT LIMITED d/b/a ORON.COM; STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a ROMAN ROMANOV (an alias).<br><br>Defendants. | Case No. C-12-4500 CRB<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:         March 8, 2013<br>Judge:        Hon. Charles R. Breyer<br>Courtroom:    Courtroom 6 – 17th Floor |

"Repetition does not transform a lie into a truth."

- President Franklin D. Roosevelt

## Introduction

It is an odd sort of strategy that the Plaintiff, Datatech Enterprises, LLC ("DataTech") has chosen to pursue in this litigation. The Plaintiff initiated litigation against FF Magnat, Ltd., ("Oron"), a Hong Kong Corporation with precious few substantive ties to the United States, and Stanislav Davidoglov ("Mr. Davidoglov"), a resident of the Republic of Moldova, who has absolutely *no* ties to the United States. When faced with the predictable Motion to Dismiss, the Plaintiff claimed a need for jurisdictional discovery. When granted *limited jurisdictional discovery*, the Plaintiff instead bombarded the defendants with wide-ranging discovery requests concerning nearly every aspect of its case *except* jurisdiction.[1] Now that DataTech's improper discovery has been met with (again) predictable objections, it has chosen to cry "foul," claiming that the reason that it cannot substantiate its jurisdictional claims is that it hasn't received the discovery it sought (but to which it was not entitled). And, finally, rather than actually follow the rules governing the resolution of discovery disputes it has, instead, insisted that it is entitled to a presumption of wrongdoing on the part of the Defendants.[2] Nothing could be further from the truth.

---

[1] Lest there be any doubt, DataTech's actions are clearly strategic and not simply innocent misunderstandings. In serving third party subpoena duces tecum notices, DataTech properly limited its inquiries to those directed at Oron's connections with the United States. In contrast, DataTech's discovery requests to the Defendants were not limited in any similar respect and – indeed – the majority of the requests were unrelated in their entirety to any jurisdictional issue.

[2] As the Court is likely aware, the Defendants sought to delay the filing of this Reply and take the argument on this motion off calendar so that DataTech's supposed complaints could be addressed. It is telling that DataTech did not *actually* want this Court to resolve the claimed discovery disputes in advance of deciding the Defendants' Motion to Dismiss. DataTech knows that its discovery requests were improper and so it doesn't want the resolution – it only wants the opportunity to complain that it has been denied something. Oron has filed this Reply in an abundance of caution and so as not to miss the Court's existing deadline for such a filing. If, however, the Court decides that the discovery disputes should be resolved before deciding the present Motion, the Defendants would request the opportunity to further reply at that time.

Datatech's failure to adduce facts to support its claim that personal jurisdiction is proper over the Defendants is the result of only one thing: the fact that jurisdiction over the Defendants is not, in fact, proper.[3]

## Argument

### I. DataTech Continues To Rely On "Factual" Assertions For Which It Has It Has Not a Scintilla of Evidence.

In its Opposition, DataTech has presented nothing to support its assertion that personal jurisdiction is proper over than the Defendants that it had not already included in its (unverified) Complaint. Instead, DataTech appears to believe that it can simply repeat unfounded allegations from its complaint and these will, on their own, be sufficient. The argument makes no sense. Had DataTech met its burden simply on the basis of its Complaint, there would have been no need for the Court to order jurisdictional discovery prior to considering the Defendants' Motion. If jurisdictional discovery is intended for any purpose, it is intended to give a Plaintiff who has not met its burden of proof the opportunity to marshal the evidence it believes will allow it to do so. *See, e.g.*, *j2 Global Communs., Inc. v. Vitelity Communs.,* LLC, 2012 U.S. Dist. LEXIS 51793, 7-8 (C.D. Cal. 2012)(holding that plaintiff "can also obtain discovery on jurisdictional facts, by making at least a 'colorable' showing of personal jurisdiction," which "should be understood as something less than a prima facie showing...") If jurisdictional discovery is to have any meaning, then, it must be understood as the process that allows a Plaintiff to progress

---

[3] DataTech, in its Opposition, repeatedly claims that this Court has already resolved the question of jurisdiction in its favor. DataTech bases this assertion on comments contained in this Court's decision on DataTech's Motion for a Preliminary Injunction. Preliminary Injunction decisions are, by their very nature, "preliminary." They are decided on an expedited timeframe and with an abbreviated record. The Defendants do not imagine that this Court would have set a briefing and argument schedule for Defendants' Motion to Dismiss if the Court had considered the issue to be already decided.

3
DEFENDANTS FF MAGNAT LIMITED AND STANISLAV DAVIDOGLAV'S REPLY TO
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION
CASE NO. C-12-4500 CRB

from a "colorable showing" of jurisdiction to a "prima facie" showing.

Even after jurisdictional discovery, however, the Plaintiff does nothing more than offer suppositions and unsupported conclusions. Following jurisdictional discovery, such surmise and conjecture cannot defeat a Motion to Dismiss. *See, e.g.*, *Tuttle v. Sky Bell Asset Mgmt., LLC*, 2011 U.S. Dist. LEXIS 116627 (N.D. Cal. 2011)("For example, plaintiffs state: 'It is inconceivable that E&Y performed its professional obligations without contacting the California general partner, either directly or by using another arm of E&Y, the worldwide accounting and consulting firm, to assist in performing audit services.' ...Plaintiffs cite nothing in support, and defendant's discovery responses, reviewed above, directly counter such speculation"); *Valentine v. NebuAd, Inc.,* 2009 U.S. Dist. LEXIS 93454 (N.D. Cal. 2009)("Speculating that some Californians must have had their data intercepted while communicating with Plaintiffs is an inadequate basis for asserting personal jurisdiction.")

In addition, while it is true that the Court accepts as true *uncontroverted* factual assertions in the Complaint, "for personal jurisdiction purposes, a court 'may not assume the truth of allegations in a pleading which are contradicted by affidavit.'" *Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*, 802 F. Supp. 2d 1078, 1091 (N.D. Cal. 2011), *quoting Alexander v. Circus Circus Enters., Inc.,* 972 F.2d 261, 262 (9th Cir. 1992).

In its Opposition, DataTech asserts, as it has previously, that Oron made money by selling access to allegedly infringing files. This contention is simply untrue (and unsupported). Oron made money by selling premium subscriptions. *See* Docket No. 21-1 (Declaration of Stanislav Davidoglov). These subscriptions had a number of benefits including faster downloads and the ability to store files indefinitely, regardless of whether the files were accessed or not. Id.

1  There is no support for any other conclusion nor does Datatech actually suggest that it has any
2  such evidence.  Instead, Datatech simply asserts – without any support whatsoever – that Oron's
3  users must have purchased premium subscriptions to have faster access to infringing materials
4  because (for unexplained reasons) downloaders of infringing materials are less willing to endure
5  slower download times than downloaders of non-infringing content.  The conclusion is
6  unwarranted, unsupported, and, frankly, silly.

7  Similarly, Datatech's assertions that Oron paid users to upload infringing materials is
8  unsupported and untrue.  This is, again, a variation on Datatech's assertion that users purchased
9  premium subscriptions to gain access to infringing content (but even one step further removed
10 from reality).  Presumably, Datatech's theory is that, since users could receive a commission on
11 sales of premium membership, and since Datatech assumes that more users will purchase a
12 premium membership to have faster access to infringing content, Oron was, in effect, paying
13 users to upload infringing content.  It is just one step further down the chain of unsupported (and
14 unsupportable) surmise and conjecture that permeates Datatech's Brief.

15 Datatech also claim that Oron had a business relationship with PayPal in California.  This
16 statement is, at best, misleading.  Oron did not have a relationship with PayPal in California, but
17 rather with PayPal in Singapore.  *See* Stanislav Declaration.  Although it may be true that
18 PayPal's international headquarters is located in California, Oron's contacts with PayPal were
19 through its Singarore offices, not its California offices.  Id.  In disputing this sworn statement,
20 Datatech offers no factual support.  Instead, it claims that the Defendants bear the burden of
21 proving the truth of its statements.  Here, DataTech is mistaken on two fronts: first, it is
22 DataTech's burden to prove that jurisdiction is proper, not the Defendant's burden to prove it

improper, and second, the Defendants provided the sworn affidavit of Stanislav Davidoglov. In the face of that affidavit, Datatech offers nothing but a strenuous "no sir." This is not evidence and it cannot defeat a properly supported Motion to Dismiss.

Datatech's assertion that jurisdiction is proper because Oron interacted with Porn Guardian (a U.S. company) is more than a little perverse. *Datatech* had a business relationship with Porn Guardian, which served as *Datatech's* agent, assisting *Datatech* in its efforts to locate and remove infringing copies of its works from the internet. *Davidoglov Declaration*. At DataTech's request, Oron interacted with PornGuardian to allow it to directly remove allegedly infringing works. DataTech now attempts to point to such interactions (which all took place outside of the United States) as a basis for jurisdiction over Oron. Personal jurisdiction is not a game of "gotcha." If DataTech is successful in its arguments, website owners will be actively encouraged to *not* work with rights holders to remove allegedly infringing content, lest they subject themselves to jurisdiction in the United States.[4]

Finally, although Datatech spins an elaborate *theory* of how many people *might have* bought premium subscriptions in the United States (s*ee,* Opposition, p. 9), it does so without even a hint of factual support. Indeed, the only actual evidence provided by Datatech is the Declaration of Robert Hare, who states that he received approximately $800 in commissions from Oron as a result of other people joining the site because of materials which he posted to Oron.com. There is no suggestion in his Decalaration, however, that the individuals who

---

[4] Similarly horrifying is DataTech's suggestion that Oron has subjected itself to jurisdiction in the United States by virtue of its position that it would report suspected child pornography to the proper law enforcement authorities and to the Center for Missing and Exploited Children (a U.S. based nonprofit). That Datatech believes a website operator should refrain from making such reports – or risk subjecting itself to jurisdiction in the United States – is beyond words.

joined were from the United States.  Even more crucially, Datatech never closes the loop.  Although it may well be true that approximately 12 percent of Oron's overall traffic originated from the United States, there is no evidence at all as to what percent of those visitors – if any – actually viewed or downloaded any of *Datatech's* content.  Of the hundreds of millions of files stored on Oron's servers, Datatech's content (uploaded, if at all, by third parties) represented an infinitesimally small percentage estimated to be well below one-tenth of one percent of the files stored on Oron's servers.  Because only those files representing *Datatech's* content can be counted as relevant for a specific jurisdiction analysis (and because this is a case of secondary copyright infringement – where others uploaded the allegedly infringing content), the alleged contacts with the United States are simply too *de minimus* to support a finding of personal jurisdiction over Oron.

## II. DataTech's Complaints Concerning Jurisdictional Discovery Are Of Its Own Making.

It is important to first remember that, "where a defendant challenges the sufficiency of personal jurisdiction, the plaintiff must bear the burden of establishing that the court does have jurisdiction."  *Cubbage v. Merchant*, 744 F.2d 665, 667 (9th Cir. 1984), *citing Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).  After Oron filed its motion to dismiss, this Court allowed Datatech the opportunity to conduct limited jurisdictional discovery so that Datatech might – if such a thing were possible – meet its burden of proof.  Instead, DataTech served on Oron wide-ranging discovery requests which were in no way limited to jurisdictional issues, in direct contravention of this Court's order.  As just a few examples, despite this Court having limited discovery to jurisdictional issues,

DataTech sought:

    a.    the names of each person Oron intended to call at trial as a witness;

    b.    information concerning every bank, financial institution, and payment processing company used by Oron (regardless of where in the world such institution was located);

    c.    the name and address of every person ever to hold an ownership interest in FF Magnat (without regard to where such individuals are located);

    d.    every document evidencing any asset owned by FF Magnat (regardless of where in the world such assets may be found);

    e.    every document "relating to the corporate governance of FF Magnat Limited including any incorporating documents, bylaws, statements of officers, or similar documents;"

    f.    every document which discusses or relates to marketing campaigns to promote oron.com (without regard to whether such campaigns were in any way related to or directed at the United States);

    g.    all documents concerning Mr. Davidoglov's purchase of FF Magnat;

    h.    every press release issued by FF Magnat;

    i.    every document concerning the monetization of the Oron.com website;

    j.    copies of every page of Mr. Davidoglov's passport; and

    k.    an admission that Mr. Davidoglov is fluent in English.

And, although the Defendants responded to discovery requests – to the extent that they were limited to the United States and jurisdictional matters – Datatech claimed to be unsatisfied. Datatech's purported complaints, however, point up its misuse of the Court ordered jurisdictional discovery. For example, Oron does not dispute that Datatech had a right to inquire into every bank account that Oron has within the United States. If Oron maintained bank accounts in the

United States, that information might be relevant to Datatech's jurisdictional argument. And so, Oron has responded repeatedly and under oath that it had no such accounts. Now, however, Datatech insists that it is entitled to ask about every non-U.S. bank account that Oron held anywhere in the world. *See, e.g,* Plaintiff's Opposition, p. 17 ("Oron claims it holds no bank accounts in the United States, but refuses to provide documentary evidence showing where it does hold bank accounts.") The argument is an absurdity. Whether Oron has a single account in Hong Kong or tens of accounts scattered across Europe, Asia, and Africa is irrelevant to the only question for which discovery has been permitted: what are Oron's ties to the United States. Indeed, the argument is so absurd that there is only one logical conclusion: Datatech has sought the information not because it believes it to be relevant to jurisdictional discovery, but because it wants the information for other purposes. Whatever that purpose might be, it is not the one for which this Court permitted limited *jurisdictional* discovery.

Moreover, by short-circuiting the process to resolve discovery disputes, first by refusing to engage in a meet and confer, then by insisting that it wanted to proceed with its opposition to the Defendants' Motion to Dismiss without first seeking to compel the documents that it claims it was entitled to (thereby hoping to rob the Defendants of their ability to oppose such a motion to compel), Datatech has forfeited its right to complain that such discovery would have aided it in its attempt to meet its burden of proof. In short, the Plaintiff's opposition must stand or fall based on the evidence which it has presented to this Court. That evidence was insufficient before jurisdictional discovery was ordered and – given that Datatech has adduced nothing new – that evidence is insufficient now in the face of the Defendants' sworn statements.

## Conclusion

For the reasons stated herein and in the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, the Defendants respectfully request that the present action be dismissed in its entirety pursuant to Mass. R. Civ. P. 12(b)(2).

Respectfully Submitted,

FF MAGNAT LIMITED,
BY ITS ATTORNEYS,

/s/  Evan Fray-Witzer
**EVAN FRAY-WITZER** Evan@CFWLegal.com
**CIAMPA FRAY-WITZER, LLP**
20 Park Plaza, Suite 505
Boston, MA 02116
Tel:   (617) 426-0000
Fax:   (617) 507-8043


/s/ Valentin Gurvits
**VALENTIN GURVITS** vgurvits@bostonlawgroup.com
**BOSTON LAW GROUP, PC**
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Tel:   (617) 928-1804
Fax:   (617) 928-1802


/s/ Kenneth E. Keller
**KENNETH E. KELLER** (71450) kkeller@kksrr.com
**STAN F. ROMAN** (87652) sroman@kksrr.com
**MICHAEL D. LISI** (196974) mlisi@kksrr.com
**KRIEG, KELLER, SLOAN, ROMAN & HOLLAND LLP**
555 Montgomery Street, 17th Floor
San Francisco, CA 94111
Tel:   (415) 249-8330
Fax:   (415) 249-8333

## CERTIFICATE OF SERVICE

I, Evan Fray-Witzer, hereby certify that on March 1, 2013, a copy of the above document was served on all counsel of record via the Court's ECF system

/s/  Evan Fray-Witzer
Evan Fray-Witzer
