IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATATECH ENTERPRISES LLC,<br><br>    Plaintiff,<br><br>v.<br><br>FF MAGNAT LIMITED ET AL.,<br><br>    Defendants. | No. C 12-04500 CRB<br><br>**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION** |

## I.   BACKGROUND

Factual Background

Plaintiff Datatech Enterprises LLC ("Datatech") is a United States company and owner of the copyrights to numerous pornographic movies. Defendant FF Magnat Ltd. ("Oron") is a Hong Kong company that operated[1] a file-sharing website Oron.com. Dkt 1. Oron describes itself as a legitimate "cloud-based" file storage site that sold premium (i.e., faster) versions of its uploading and downloading services to paying members. Oron also says that it made good faith efforts to combat the alleged illegal activities of a few of its users. See Davidoglov[2] Decl. (dkt. 21-1).

---

[1] Oron lost access to the funds necessary to continue its operations due to this (and other similar) litigation, and shut down in August 2012. See Davidoglov Decl. (dkt. 21-1) ¶ 3.

[2] Oron's own papers are inconsistent regarding the name of FF Magnat's Owner; at times they refer to him as "Davidoglov Stanislav" and at other times as "Stanislav Davidoglov." Compare id., with dkt. 85. The Court will refer to him as Davidoglov.

In Datatech's view, Oron's business model revolved around copyright infringement. As Datatech describes it, the website worked as follows: users uploaded files of their choosing, and Oron provided a unique link to each uploaded file. Phinney Decl. (dkt. 4) ¶ 6. The user could then distribute that link as broadly as he wished, and anyone with a copy of the link could, without paying any money or providing a user name and password, download the file. Id.

But, Oron designed free downloading to be cumbersome and frustrating. Non-paying users downloaded at reduced speeds, had limited ability to conduct multiple downloads, were subject to a 100 megabyte limit, and could not resume interrupted downloads. Id. ¶ 7. Those constraints were all lifted, of course, once a user purchased a membership, priced at €9.95 per month and up to €74.95 per year. Id.

Using three different "affiliate rewards" programs, Oron paid people to upload popular files, and paid other websites to maintain popular links to those files. The first program offered users money on a "Pay Per Download" basis, where the individual uploading the file received a set sum based on the number of times other users downloaded that file (e.g., "up to $25 per 1,000 downloads"). Id. ¶ 8.

Second, Oron offered a "Pay Per Sale" program that tracked which file attracted a new member to Oron, and gave the user who uploaded that file a cut of the new user's subscription fee, as well as a percentage of renewal fees the new member paid in future months. Id. ¶ 9. Users could also opt for a rewards program offering a mix of per-download and per-sale payments. Id. ¶ 10.

Third, Oron offered a "website owners" program that paid third-party websites up to 15% of all sales referred through that website, even if a different user uploaded the file that attracted the new member. In doing so, Oron essentially paid other websites to maintain indexes of the files available at Oron.com. Id. ¶ 11.

Procedural Background

In conjunction with the filing of this suit, Datatech applied for ex parte, and the Court granted, a temporary restraining order freezing Oron's assets. See dkt. 9. Oron soon after

moved for limited relief from the TRO to access funds to pay legal fees in connection with this suit, and this Court released $125,000 to a trust account to be used only in connection with defending this lawsuit. See dkt. 24. Following further briefing and a hearing, this Court granted Datatech's motion to enter a preliminary injunction freezing assets that Datatech could ultimately seek to disgorge as illicit profits under section 504(b) of the Copyright Act. See dkts. 34-35.

Oron sought leave to file a motion for reconsideration of the preliminary injunction, arguing in relevant part that disgorgement of profits under 17 U.S.C. § 504(b) is a legal remedy not subject to an asset freeze injunction to preserve equitable remedies, and that newly submitted bank records showed that Oron never attempted to dissipate assets. See dkt. 38. This Court denied the motion, and Oron pursued an interlocutory appeal to the Ninth Circuit, see Notice of Appeal, dkt. 46, which has been briefed but is still pending in the circuit court.

Oron then moved for further relief from the preliminary injunction, requesting an additional $300,000 to pay for its mounting legal fees in this case. Dkt. 52. The Court denied that motion, noting that Oron had not provided the Court with the information it needed to make an informed exercise of its discretion whether to release the money–in particular, how much money was frozen, and how much money Datatech might ultimately be entitled to recover in illicit profits. See Order Denying Mot. for Partial Relief, dkt. 58, at 2.

Datatech now moves for partial summary judgment regarding Oron's lack of a "safe harbor" defense under the Digital Millenium Copyright Act, dkt. 77, and Oron moves for partial relief from the preliminary injunction. See dkt. 70.

**II.     LEGAL STANDARDS**

Motion for Partial Summary Judgment

Summary judgment is properly entered on "each claim or defense–or the part of each claim or defense–on which summary judgment is sought" where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty

3

Lobby, Inc., 477 U.S. 242, 256 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson, 477 U.S. at 248-49.

A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The movant bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Motion to Modify the Preliminary Injunction

A district court "may, within its discretion, forbid or limit payment of attorney fees out of frozen assets." Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc., 67 F.3d 766, 775 (citing FTC v. World Wide Factors, Ltd., 882 F.2d 344, 347 (9th Cir. 1989)). That "[d]iscretion must be exercised by the district court in light of the fact that wrongdoing is not yet proved when the application for attorney fees is made." Id.

### III. DISCUSSION

#### A. Motion for Partial Summary Judgment

Datatech requests partial summary judgment "on the issue of [Oron]'s eligibility for immunity under 17 U.S.C. § 512 for any infringement alleged to have occurred prior to the date Oron provided to the Copyright Office the name, address, phone number, and electronic mail address of an agent designated to receive notifications of claimed infringement." MPSJ, dkt. 77, at 1-2.

The key facts are disputed along several relevant dimensions. Datatech interpreted one of Davidoglov's declarations and Copyright Office registration forms submitted in connection with the initial preliminary injunction briefing to say that Oron first registered an

4

agent with the Copyright Office on June 15, 2011. See Davidoglov Decl., dkt. 21-1 ¶ 12, Ex. 5. Oron, however, has come forward with a copy of an earlier registration form dated February 14, 2011 and a new declaration from Davidoglov explaining that the previous declaration was not speaking to this issue and that Datatech was reading it out of context. See Davidoglov Decl., dkt. 81-1 ¶ 7, Ex. 2. Moreover, Oron says that it submitted the first form in February 2011 because it "first took ownership of Oron.com on February 17, 2011." Id. ¶ 10.

Datatech's fallback position is that "over 1,000 cases of infringement occurred prior to February 14, 2011," but that ignores Oron's proffered evidence that it had no responsibility for Oron.com prior to February 17, 2011. Thus, Datatech has failed to identify any time frame in which it is undisputed that Oron was in control of Oron.com and did not have an agent registered with the Copyright Office.

The parties further debate the facts and law concerning whether Oron not only provided the relevant information to the Copyright Office but also made it available on its website. That was not the stated basis of Datatech's motion, see dkt. 77, and even if it had been, those issues involve more factual disputes about the dates that certain information was or was not posted, and turn on an otherwise undeveloped record concerning exactly what the website said when, making the issue inappropriate for summary judgment at this time. Accordingly, the Court DENIES Datatech's Motion for Partial Summary Judgment.

**B.     Motion to Modify the Preliminary Injunction**

Profits Not Attributable to Infringement

Oron now renews its request that this Court unfreeze assets that exceed the amount that Datatech could ultimately recover in illicit profits. See dkt. 70. In support of this request, Oron for the first time provides some detail about the extent of its frozen assets, representing that they total about $1.7 million. See Davidoglov Decl., dkt. 70-2, ¶¶ 2-5; Davidoglov Decl., dkt. 78-1, Exs. A, B (account statements from HSBC and PayPal). It further represents that "Oron has no other funds." Id. ¶ 6.

5

Next, Oron calculates that Datatech could only be entitled to, at the most, $246,649 in illicit profits–a figure it arrives at by assuming that one user purchased a one-month membership for each of 18,973 alleged instances of infringement. See Mot. for Limited Relief at 16. As Datatech points out, however, those assumptions make no sense.

Each file was not a single product that only one user could purchase; rather, anywhere between zero and an unlimited number of people could pay to access each of the thousands of files. Neither party has suggested to the Court a reasonable basis for estimating whether each file generated zero, one, or hundreds of subscriptions.

The records of Oron's business revenues would provide the hard data needed to answer this question, but Oron now says those records–along with all of the backup copies–were "irretrievably erased" by the company providing Oron's web hosting services, Leaseweb, after Oron stopped paying Leaseweb. Reply re Limited Relief at 12; Davidoglov Decl., dkt. 78-1 ¶¶ 6-7.

The question then becomes which party has the burden of producing the information which is, apparently, not available. Oron suggests that because this relates to a preliminary injunction, which is an "extraordinary and drastic remedy," Munaf v. Green, 553 U.S. 674, 676 (2008), the burden should be on Datatech to prove everything related to its requested injunction.

That oversimplifies the issue, and makes little sense as a practical matter. A party seeking a preliminary injunction bears the burden of showing its entitlement to that relief, and that burden consists of a familiar four-pronged inquiry (likelihood of success, irreparable harm, balance of equities, and public interest) that this Court has already found that Datatech satisfied. See dkt. 34 at 2-8. Nothing in that four-part test or any other governing law requires a plaintiff that has shown its entitlement to relief to also–prior to any discovery–divine information within the sole possession of the defendant that would aid the defendant in adjusting the contours of the relief.

6

1 On the contrary, in the analogous context of proving damages after liability has been
2 established, the Copyright Act instructs that the <u>infringer</u> should bear the burden of showing
3 which part of its revenues were legitimate:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. <u>In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.</u>

17 U.S.C. § 504(b) (emphasis added).

Oron cites a line of cases discussing a plaintiff's burden of showing that recoverable profits were "attributable to the infringement" under § 504(b). <u>E.g.</u>, <u>Polar Bear Prods., Inc. v. Timex Corp.</u>, 384 F.3d 700, 708 (9th Cir. 2004). Those cases distinguish between "'direct profits'–those that are generated by selling an infringing product–and 'indirect profits'–revenue that has a more attenuated nexus to the infringement." <u>Id.</u> at 710.

The Court need not dwell on the plaintiff's burden in "indirect profits" cases of "proffer[ing] some evidence that the infringement at least partially caused the profits that the infringer generated," <u>id.</u> at 711, because as a threshold matter, the profits here were direct. Users paid Oron money to download Datatech's work. There was nothing indirect about it. Oron responds that users paid money not for infringing works, but for storage space and faster uploading and downloading speeds, and would have paid for such access regardless of whether they intended to separately download infringing work.

Oron's business model, however, suggests that Oron itself understood that its users were paying to access particular files. As described above, Oron tracked which file attracted a new paying member to the site and then rewarded with cash the user who uploaded that file. To the extent some users may have come for files and others for storage, Datatech has shown that the files "at least partially caused" Oron's subscription profits.

It is possible that no one ever came to Oron's site to purchase a Datatech work. It is also possible that Datatech's work led subscription revenues and generated millions of dollars. The Court does not know because Oron now says it ceded control over all of the

7

records of its multimillion dollar business to a different company that permanently erased all of Oron's information shortly after Oron did not pay its bill.

At this preliminary stage before any merits discovery has commenced, Datatech cannot be blamed for lacking the information necessary to establish the percentage of Oron's revenues stemming from Datatech's work, and so the Court follows § 504(b)'s framework in requiring Oron to make the relevant showing. Cf. Hamil Am. Inc. v. GFI, 193 F.3d 92, 107 (2d Cir. 1999) (noting, in context of willful infringement, that "[i]f the computation of profits and costs is uncertain due to the failure of the infringer to keep adequate records of costs, any doubt in the evidence will be resolved in favor of the plaintiff"); 4 Nimmer on Copyright § 14.03[C][4] (Rev. ed.).

Oron's other arguments require little discussion. It discusses at some length Datatech's potential legal damages and whether the maximum legal damages may ultimately exceed its maximum illicit profits–issues that are irrelevant to the scope of assets properly subject to a preliminary injunction designed to preserve Datatech's equitable disgorgement remedy. Oron also says that Datatech's files represented a de minimis portion of the files on Oron's servers, which has no bearing on whether selling access to full copies of Datatech's work was actionable infringement leading to recoverable damages and illicit profits.

Dissolving the Preliminary Injunction

At the hearing on these motions, Oron offered an argument not found in its briefs that the preliminary injunction should be dissolved because new facts cast doubt on Datatech's likelihood of success on the merits. Referring to its recent revelation regarding timely registration with the Copyright Office, Oron suggests that this Court relied on the absence that registration in finding that Datatech had a likelihood of success on the merits. See Mem. & Order, dkt. 34, at 6. In fact, however, the Court offered alternative grounds for concluding that Datatech was likely to overcome a safe harbor defense–the other ground being Oron's inadequate enforcement of a repeat infringer policy. See id.

To qualify for the DMCA safe harbor, a service provider must "reasonably implement[] . . . a policy that provides for the termination in appropriate circumstances of

subscribers and account holders of the service provider's system or network who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). Davidoglov stated in a declaration that Oron had a repeat infringer policy, see Davidoglov Decl., dkt. 21-1 ¶ 17, but Datatech has offered evidence that enforcement of that policy was woefully inadequate.

Datatech's evidence shows that when Oron learned that particular users were engaged in extensive repeat infringement of U.S. copyrights–for example, a single user who uploaded 1,600 separate copies of infringing work–Oron regularly declined to ban them despite requests from copyright holders. Phinney Decl., dkt. 4 ¶ 13; see also Phinney Decl., dkt. 29-7 ¶¶ 13-25 (stating that Oron "often ignored" requests to remove specifically identified repeat infringers); id. Ex. H. At the hearing, Oron's counsel represented that Oron attempted to ban the particular user who had uploaded 1,600 files, but nothing in the record reflects any such attempts. The Court accordingly reaffirms its conclusion that Datatech has shown a likelihood of overcoming any safe harbor defense, making unnecessary discussion of Datatech's promising alternative argument–the DMCA's requirement that the service provider not "receive a financial benefit directly attributable to the infringing activity." 17 U.S.C. § 512(c)(1)(B).

Oron's other basis for requesting that the Court dissolve the preliminary injunction is its familiar contention, which this Court has already twice rejected and which is currently before the Ninth Circuit, that illicit profits under § 504(b) are legal in nature and so an asset freeze injunction is inappropriate. The Court declines to revisit its previous conclusion.

Release of Attorneys' Fees

Oron argues in the alternative that the Court should at least release additional funds to pay for attorneys' fees in this litigation, which it says currently amount to $95,675.23 in outstanding bills. See Gurvits Decl., dkt. 70-3 ¶¶ 8-9; Keller Decl., dkt. 70-4 ¶ 9. Oron's counsel also "projects that Oron will spend approximately $105,000 in the near future" on legal fees related to discovery and the interlocutory appeal, Gurvits Decl., dkt. 70-3 ¶ 10, and asks that this court release an additional $200,000 total in attorneys' fees.

9

Oron cites to cases where the Ninth Circuit has noted with approval where lower courts froze assets but provided additional funds for living expenses, business expenses and attorneys' fees. E.g., Johnson v. Couturier, 572 F.3d 1067, 1085-86 (9th Cir. 2009). Here, however, Datatech has shown a likelihood of establishing that Oron has no legitimate interest in continuing its business operations, and no individual's basic necessities are at issue. The Ninth Circuit has also unequivocally stated that a "district court may, within its discretion, forbid or limit payment of attorney fees out of frozen assets," so long as that discretion is "exercised by the district court in light of the fact that wrongdoing is not yet proved when the application for attorney fees is made." Noble Metals, 67 F.3d at 775.

The record before the Court reflects that Oron has $1.7 million frozen and that "Oron has access to no other funds." It is unclear how much money Davidoglov–a named Defendant, self-described 100% owner of Oron, and alleged alter ego of Oron–has in his own name. The Court still does not know if releasing additional funds would prejudice Datatech because, as discussed above, Oron's recordkeeping practices have apparently made impossible the most straightforward way of determining Datatech's potential equitable recovery. Though wrongdoing has not yet been proved, the Court continues to conclude that Datatech has made a strong preliminary showing on the merits.

Accordingly, the Court DENIES Oron's request to release frozen assets to pay for attorneys' fees, without prejudice to Oron's ability to renew its request once it can meet its burden of showing what portion of the frozen funds could not properly be subject to equitable disgorgement.

**IV. CONCLUSION**

For the foregoing reasons the Court DENIES Datatech's motion for partial summary judgment and DENIES Oron's Motion for Relief from the Preliminary Injunction.

**IT IS SO ORDERED.**

Dated: March 13, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE