D. GILL SPERLEIN (SBN 172887)
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, California  94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

Attorney for Plaintiff DataTech Enterprises, LLC,

**UNITED STATES DISTRICT COURT**
**NORTHER DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DATATECH ENTERPRISES, LLC, a Nevada Limited Liability Company,<br><br>    Plaintiff,<br><br>    vs.<br><br>FF MAGNAT LIMITED d/b/a ORON.COM, STANISLAV DAVIDOGLOV, and JOHN DOE a/k/a ROMAN ROMANOV (an alias); and<br><br>    Defendants. | **Case No.: Case No.: 2-12-4500 CRB**<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF DATATECH ENTERPRISES, LLC'S OPPOSITION TO FF MAGNAT LIMITED AND STANISLAV DAVIDOGLAV'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>The Court heard oral argument on<br><br>Date:   March 8, 2013<br>Time:   10:00 a.m.<br>CtRm:   6, 17th Floor |

**PROCEDURAL BACKGROUND**

Defendants FF Magnat, Limited d/b/a <oron.com> (Oron) and Stanislav Davidoglov moved to dismiss this action based on lack of personal jurisdiction. Dkt. No. 64. At the initial Case Management Conference, the Court ordered that the parties could take discovery related to jurisdictional issues. Minute Order, Dkt. No. 65. Plaintiff propounded jurisdictional discovery on Oron in the form of requests for admissions, interrogatories, and request for production. Declaration of D. Gill Sperlein in Support of Plaintiff's Opposition to Defendants' Motion for Lack of Personal

-1-

Jurisdiction (Sperlein Decl.) at ¶¶ 2-7.  Defendants objected to the majority of Plaintiff's discovery requests and to a large degree refused to respond.  *Id*.

In order to overcome the limited factual record caused by Defendants' failure to properly respond to discovery, DataTech sought to supplement the factual record through third party discovery.  Supplemental Declaration of D. Gill Sperlein in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Supp. Sperlein Decl.), Dkt. No. 90-1 at ¶3.  However, the third party responses only arrived after briefing on the motion was complete.  *Id*. at ¶¶ 5 and 7.  DataTech requested leave to file a supplemental declaration containing facts from the discovery responses, which the Court granted.  Order, Dkt. No. 91.  The Court directed the Parties to submit supplemental briefs concerning the relevance of the new evidence to Defendants' pending Motion to Dismiss.  Order re Supplemental Briefing, Dkt. No. 93.

## ARGUEMENT

### I. In the Absence of an Evidentiary Hearing, DataTech Only Needs to Make a *Prima Facie* Showing of Jurisdictional Facts.

Preliminarily, Plaintiff reiterates the relevant legal standard for reviewing Defendants' Motion to Dismiss.[1]  The Court did not order or hold an evidentiary hearing.  Nor, did Defendants request such a hearing.  "[I]n the absence of an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts."  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)(citing *Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  Conflicts between the facts contained in the Parties' affidavits must be resolved in DataTech's favor, and DataTech need

---

[1] In the interest of brevity, Plaintiff does not repeat the standards for establishing personal jurisdiction as both parties have previously briefed those issues and to a large degree are in agreement on the standards to be applied.

-2-

only demonstrate facts that if true would support jurisdiction over the Defendants. *Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2002).

Here, DataTech not only alleges facts sufficient to establish personal jurisdiction, but also submits evidence that strongly supports those factual contentions.

**II. The Additional Facts Revealed through Third Party Discovery Further Support a Finding of Personal Jurisdiction.**

**Sales to United States Residents –**

An infringer's use of a copyright holder's works for its own commercial gain, as part of its exploitation of the market found in the copyright holder's home jurisdiction supports a finding of purposeful availment. *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 1101, 181 L. Ed. 2d 979 (U.S. 2012).

Defendants engaged, Menlo Park based PayPal, Inc. to process a portion of the subscription sales to its website. DataTech subpoenaed from PayPal "[a]ny documents [showing] FF Magnat Limited d/b/a Oron collected payments from individuals within the United States including, but not limited to, transactions logs and FIT pages." PayPal produced records of most transactions that occurred between March 12, 2011 and September 11, 2012[2]. Supp. Sperlein Decl at ¶11.

As set forth in the Supplmental Declaration of D. Gill Sperlein, DataTech parsed the data produced and summarized what it beleives the records show. *Id*. at ¶12, Ex. C. During the 19 months covered by the activity logs, FF Magnat engaged in a total of 145,622 transactions with account holders within the United States. *Id*. at ¶14. Other financial institutions may have processed additional U.S. transactions.

---

[2] There are still several transaction logs outstanding.

-3-

SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF OPPOSITION TO MOTION TO DISMISS
C-12-4500 CRB

DataTech calculates that during this time frame Oron earned over two million dollars in gross revenue from U.S. account holders. *Id*. at ¶15. This amount includes reductions for charge-backs and credits but is not reduced by PayPal's processing fees. Again, PayPal has not yet produced three additional activity logs, so these numbers will increase when discovery is complete. *Id*.

DataTech calculates that during the approximately 19 months covered by the logs, Oron used this PayPal account to process gross revenues of approximately 9 million dollars. *Id*. at ¶16. This amount includes transactions in Euros and U.S. Dollars. DataTech assigned the transactions that appeared in Euros a value of $1 per .748 Euros for transactions in 2011 and .809 Euros for transactions in 2012, which is consistent with the average exchange rates for those years. *Id*.

During the 19 months covered by the activity logs, the percentage of the dollar value of U.S. transactions equals approximately 24% of Oron's worldwide transactions. That is to say based on the PayPal production, 24% percent of FF Magnat's revenue comes from the United States. *Id*. at ¶17.

In its Opposition to Plaintiff's Motion for Leave to File the Supplemental Declaration of D. Gill Sperlein, Oron called into question the accuracy of DataTech's calculations.[3] Opposition to Administrative Motion for Order Granting Leave to File Supplemental Declaration in Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. No. 92 at p. 2:19 to 3:12. PayPal produced a large amount of data and DataTech has not had an opportunity to review it as completely or as carefully as it eventually will. However, Oron's criticisms do not withstand scrutiny.

---

[3] Oron also protests that it did not have sufficient opportunity to review the data PayPal produced to DataTech, failing to acknowledge that this data was in Oron's control. Had Oron gathered the evidence when DataTech requested it, as it was required to do, it would have had more than sufficient opportunity to review the data.

-4-

First, Oron argues that Oron could not have possibly processed $9 million through the PayPal account because the FIT record shows that Oron received $5,114,882.80 in total. *Id*. at p. 2:19-21. DataTech did not prepare the FIT record and cannot say what period the record covers when referring to the "total amount received." However, the amount listed in the account balance shows $1,110,635.28 Eur. We know from Oron's previous filings that the current balance is $657,511.69 USD. Declaration of Stanislav Davidoglov in Support of Defendant FF Magnat Limited's Reply in Support of Motion for Relief from Preliminary Injunction, Dkt. No. 78-1, at ¶3, Ex. B. Apparently, the FIT Record does not contain *current* totals and cannot be used to dispute the total amount of revenue collected as determined by review of the transaction reports, which cover the entire period of the account. DataTech acknowledges that the Parties must and should verify the total amount collected as they have an opportunity to review the records with expert witnesses and perhaps request further clarification from PayPal. However, regardless of whether Oron collected $5 million or $9 million from this account during the 19 months it was active, the amounts in question are significant - especially in light of the fact that subscribers only paid €9.99 a month each.

Next Oron argues that the amounts in the "Total Value of Worldwide Revenue" column of DataTech's summary, if properly summed should equal $9,727,396.01 instead of $9,053,058.12. Oron argues that the under accounting of worldwide revenue has the effect of "falsely inflating the percentage of U.S. revenue." However, the difference caused by DataTech's failure to refresh the column totals after it added additional rows of data, applied equally to the "US only" sales column. That column should have reflected a total of $2,327,909.94 instead of $2,172,579.93. When one refreshes both columns, the ratio remains the same - 24%. Once again, even if the swiftly performed accounting is not 100% accurate, there can be no doubt that Oron lied when it denied requests for

-5-

admissions that it made any sales to U.S. customers. Sperlein Decl., Dkt. No. 84-1 at ¶5 and Ex. B, Dkt. No. 84-3 at Req. for Admission Nos. 3 and 4 and responses thereto.

Finally, Oron criticizes DataTech for including temporary holds, reversals, and recurring payments in its calculations of the total number of transactions with U.S. account holders. However, DataTech in no way suggested that the 145,622 transactions represented 145,622 individual subscribers. Oron can argue that each of these entries do not represent an individual account holder, but it cannot argue that each of these items was not a transaction.

Moreover, the fact that some subscribers are billed on an ongoing monthly basis, a fact that Oron now apparently admits, provides even stronger support for a finding of personal jurisdiction. After the initial sales to each of these recurrent billing customers, Oron confirmed its "apparent intent to serve United States customers" by continuing to bill them month after month. See, *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 598 (E.D. Va. 2003).

There can simply be no doubt that Oron had substantial and continuous ties to the U.S. marketplace. This overwhelming evidence directly refutes Oron's denial of Requests for Admissions that it sold *any* subscriptions or *any* recurring subscriptions to United States residents.

Although Oron suggests that the number of transactions processed through its U.S. PayPal account was a relatively small number, since "[a]lmost all of its payment processing transactions with its users were processed by companies located outside of the United States," it does not dispute, nor could it, that Oron uses PayPal, Inc. to process a *portion* of its subscription sales. Declaration of Stanislav Davidoglov in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. No. 64-1 at ¶7.

**Telephone Number of Oron's Registered Agent -**

Defendants previously filed two designation-of-registered-agent forms Oron submitted to the United States Copyright Office. Declaration of Stanislav Davidoglov in Support of FF Magnat Limited's Opposition to DataTech's Motion for Partial Summary Judgment on FF Magnat's Eligibility for DMCA Immunity, Dkt. No. 81-1, Exs. 1 and 2. Oron claims it submitted the first form on February 14, 2011 and the second on June 15, 2011. *Id*. On both of the forms, the telephone number of the registered agent was 303-256-0360. 303 is a Denver Colorado area code. Plaintiff subpoenaed records to determine the account holder for the telephone number. Supp. Sperlein Decl. at ¶5.

J2 Global, the provider controlling the telephone number, reported that the subscriber identified on the account for 303-256-0360 is Roman Romanov. *Id*., Ex. A. The record shows an incomplete address for Mr. Romanov, although it admittedly contains the country code RU. *Id*. Nonetheless, it is significant that the account is in the name of Mr. Romanov. Roman Romanov is a named defendant in this action, although Plaintiff has been unable to serve him. Plaintiff suspects that Roman Romanov may be a pseudonym, perhaps even for Defendant Stanislav Davidoglov.

Significant evidence shows that Roman Romanov at least at one time lived in Denver, Colorado. Domain name registrations in Mr. Romanov's name show a Denver address. Declaration of Peter Phinney in Support of Plaintiff's Motion for Preliminary Injunction, Exs. D and E, Dkt. Nos. 29-11, and 29-12. A declaration filed by Maxim Vladimirovich Bochenk in the Liberty litigation in Nevada also indicates that Roman Romanov once lived in Colorado. Dkt. No. 19-3 at ¶7.

Significantly, the telephone number in question, 303-256-0360, is also the telephone number that identified as Oron's customer service record on its PayPal customer information record (FIT Record). Supp. Sperlein Decl., Dkt. No. 90-1 at ¶8, Ex. B, Dkt. No. 90-3.

-7-

DataTech recognizes that the increasing use of mobile telephones and voice over IP (VoIP) has resulted in telephone numbers becoming increasingly portable. Nonetheless, when individuals first activate a telephone number they generally obtain a number within the area code of their physical location. DataTech can only speculate as to the reasons Oron continued to use the Denver-based telephone number. Regardless of the reasons, individuals calling the telephone number are likely to believe someone within the United States is receiving their calls. Even if calls are answered in Russia, Hong Kong, or somewhere else, the telephone number is a U.S. telephone number, maintained with a U.S. carrier.

Oron's use of a telephone number originally established from within the United States, and which it continues to maintain through a U.S. VoIP company indicates that Oron's ties to the United States run deeper than it has been willing to admit.

**III. Plaintiff Has Also Alleged Facts which if Established Will Confer Personal Jurisdiction over Defendant Stanislav Davidoglov.**

Admittedly, the question of personal jurisdiction over Defendant Stanislav Davidoglov is more difficult than the question of personal jurisdiction over Oron. However, when a business subject to personal jurisdiction acts as the alter ego of an individual, than the individual is also subject to personal jurisdiction. *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989)("Because the corporate form serves as a shield for the individuals involved for purposes of liability as well as jurisdiction, many courts search for reasons to 'pierce the corporate veil' in jurisdictional contexts parallel to those used in liability contexts. Thus, the corporate form may be ignored in cases in which the corporation is the agent or alter ego of the individual defendant"); See also, *Vance's Foods, Inc. v. Special Diets Europe Ltd.* ("Courts usually find personal jurisdiction over a corporate officer where a plaintiff demonstrates that a corporate officer is personally liable for wrongdoing in the forum or if the corporation is the alter ago of the individual officer.")

Plaintiff has alleged that Davidoglov is the alter ego of FF Magnat, Limited.  Complaint, Dkt. No. 1 at ¶¶64-68.  While, a Plaintiff cannot ordinarily simply rest on the bare allegations in its complaint, here Oron has refused to respond to discovery requests that directly address whether personal jurisdiction is proper over Davidoglov - whether independently or as Oron's alter ego.   For example, Oron refused to provide copies of the pages from Davidoglov's passport, which DataTech requested in order to determine the extent of Davidaglov's travels to the United States.  Sperlein Decl., Dkt. No. 84-1 at ¶6, Ex. C, Dkt. No. 84-4 at Req. for Prod. No. 24 and response thereto.  Similarly, Oron refused to respond to discovery requests aimed at determining whether Roman Romanov, an individual known to have lived and worked in the United States, is a pseudonym used by Davidoglov.  *Id*. at Req. for Prod. No. 15 and response thereto.  Oron refused to produce documents relating to Davidoglov's purchase of FF Magnat - documents relevant to whether Oron is the alter ego of Davidoglov.  *Id*. at Req. for Prod. No. 17 and response thereto.  Oron refused to produce records showing company employees (*Id*. at Req. for Prod. No. 17 and response thereto), or to produce incorporating documents, bylaws, statements of officers, or similar documents (*Id*. at Req. for Prod. No. 12 and response thereto ), all of which also are directly relevant to the issue of whether Davidoglov is Oron's alter ego.

Oron argues that it should have the opportunity to meet and confer over discovery disputes before calling its refusal to produce into doubt.  Defendants' Emergency Motion for Continuance and to Stay Time to File Reply Brief on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. No. 85 at ¶13.  However, these are not legitimate differences of opinion on discovery issues.  If Defendants believe that it is proper to object to virtually all discovery requests first, and then meet and confer to determine what it must produce, than they have a perverse view of the discovery process.  It is worth noting again that Defendants have not even submitted their initial disclosures -

something that is required in all cases by the Federal Rules of Civil Procedure and which the Court directly instructed the parties to do.  Minute Order at Dkt. No. 65.

The Court should not permit Defendant Davidoglov to advance the argument that he has "no ties to the United States" or that he is not Oron's alter ego when Defendants refuse to respond to discovery requests designed to evaluate the veracity of those claims - especially in light of Defendants' well-established aversion to disclosure and proven dishonesty.

## CONCLUSION

For all the reasons set forth above and in Plaintiff's Opposition Memorandum, the Court should deny Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

Respectfully Submitted,

Dated: *3/14/2013*  /s/ D. Gill Sperlein
D. GILL SPERLEIN
THE LAW OFFICE OF D. GILL SPERLEIN
Attorneys for Plaintiff DataTech Enterprises, LLC

-10-