IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DATATECH ENTERPRISES LLC,

       Plaintiff,

v.

FF MAGNAT LIMITED ET AL.,

       Defendants.

_____/

No. C 12-4500 CRB

**ORDER DENYING MOTION TO DISMISS**

## I.  BACKGROUND

### Factual Background

Plaintiff Datatech Enterprises LLC ("Datatech") is a United States company and owner of the copyrights to numerous pornographic movies.  Defendant FF Magnat Ltd. ("Oron") is a Hong Kong company that operated[1] a file-sharing website Oron.com.  Dkt 1.  Oron describes itself as a legitimate "cloud-based" file storage site that sold premium (i.e., faster) versions of its uploading and downloading services to paying members.  Oron also says that it made good faith efforts to combat the alleged illegal activities of a few of its users. See Davidoglov[2] Decl. (dkt. 21-1).

---

[1]Oron lost access to the funds necessary to continue its operations due to this (and other similar) litigation, and shut down in August 2012.  See Davidoglov Decl. (dkt. 21-1) ¶ 3.

[2]Oron's own papers are inconsistent regarding the name of FF Magnat's Owner; at times they refer to him as "Davidoglov Stanislav" and at other times as "Stanislav Davidoglov."  Compare id., with dkt. 85.  The Court will refer to him as Davidoglov.

In Datatech's view, Oron's business model revolved around copyright infringement. As Datatech describes it, the website worked as follows: users uploaded files of their choosing, and Oron provided a unique link to each uploaded file. Phinney Decl. (dkt. 4) ¶ 6. The user could then distribute that link as broadly as he wished, and anyone with a copy of the link could, without paying any money or providing a user name and password, download the file. Id.

But, Oron designed free downloading to be cumbersome and frustrating. Non-paying users downloaded at reduced speeds, had limited ability to conduct multiple downloads, were subject to a 100 megabyte limit, and could not resume interrupted downloads. Id. ¶ 7. Those constraints were all lifted once a user purchased a membership, priced at €9.95 per month and up to €74.95 per year. Id.

Using three different "affiliate rewards" programs, Oron paid people to upload popular files, and paid other websites to maintain popular links to those files. The first program offered users money on a "Pay Per Download" basis, where the individual uploading the file received a set sum based on the number of times other users downloaded that file (e.g., "up to $25 per 1,000 downloads"). Id. ¶ 8.

Second, Oron offered a "Pay Per Sale" program that tracked which file attracted a new member to Oron, and gave the user who uploaded that file a cut of the new user's subscription fee, as well as a percentage of renewal fees the new member paid in future months. Id. ¶ 9. Users could also opt for a rewards program offering a mix of per-download and per-sale payments. Id. ¶ 10.

Third, Oron offered a "website owners" program that paid third-party websites up to 15% of all sales referred through that website, even if a different user uploaded the file that attracted the new member. In doing so, Oron essentially paid other websites to maintain indexes of the files available at Oron.com. Id. ¶ 11.

Procedural Background

In conjunction with the filing of this suit, Datatech applied for ex parte, and the Court granted, a temporary restraining order freezing Oron's assets. See dkt. 9. In opposing entry

United States District Court
For the Northern District of California

1   of a preliminary injunction, Oron argued, among other things, that Datatech could not make

2   the necessary threshold showing of this Court's personal jurisdiction over Oron.  After a

3   hearing, this Court found that Datatech had "at least a reasonable probability of success on

4   the question of personal jurisdiction," Mem. & Order, dkt. 34, at 3-5, and entered the

5   preliminary injunction.

6       Oron sought leave to file a motion for reconsideration of the preliminary injunction,

7   arguing in relevant part that this Court flubbed the personal jurisdiction issue.  This Court

8   denied the motion, and Oron pursued an interlocutory appeal to the Ninth Circuit, see Notice

9   of Appeal, dkt. 46, which has been briefed but is still pending in the circuit court.  Oron now

10  moves to dismiss the suit on personal jurisdiction grounds.

11  **II.     LEGAL STANDARDS**

12      "In opposing a . . . motion to dismiss, the plaintiff bears the burden of establishing that

13  jurisdiction is proper."  Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008).

14  However, the plaintiff need only make a prima facie showing of jurisdictional facts to avoid

15  the granting of a motion to dismiss.  See Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126,

16  128 (9th Cir. 1995).  "Uncontroverted allegations in [plaintiff's] complaint must be taken as

17  true, and conflicts between the facts contained in the parties' affidavits must be resolved in

18  [plaintiff's] favor."  Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th

19  Cir. 2010).

20  **III.    DISCUSSION**

21      Datatech argues that jurisdiction is proper under Federal Rule of Civil Procedure

22  4(k)(2), which provides jurisdiction where (1) the claim against the defendant arises under

23  federal law, (2) the defendant is not subject to the personal jurisdiction of any state court of

24  general jurisdiction, and (3) the federal court's exercise of jurisdiction comports with due

25  process.  Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 461 (9th Cir. 2007).

26      Copyright infringement cases arise under federal law, and where, as here, the

27  defendant does not identify a different state where suit would be proper, the second

28  requirement is also met.  Id.  Under Rule 4(k)(2), the third element asks whether Oron's

1   contacts with the United States as a whole would satisfy due process.  <u>Holland Am. Line Inc.</u>,

2   485 F.3d at 462.

3        Due process requires that the defendant have minimum contacts with the forum such

4   that exercise of personal jurisdiction would not offend traditional notions of fair play and

5   substantial justice.  <u>E.g.</u>, <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 801 (9th

6   Cir. 2004).  Whether a party has minimum contacts with a forum sufficient to warrant the

7   exercise of specific[3] personal jurisdiction turns on a three-prong test:

8        (1) the non-resident defendant must purposefully direct his activities or
         consummate some transaction with the forum or resident thereof; or perform
9        some act by which he purposefully avails himself of the privilege of
         conducting activities in the forum, thereby invoking the benefits and
10       protections of its laws;

11       (2) the claim must be one which arises out of or relates to the defendant's
         forum-related activities; and
12
         (3) the exercise of jurisdiction must be reasonable.
13
<u>Brayton Purcell</u>, 606 F.3d at 1128.  Oron challenges all three prongs.

14       <u>Purposeful Availment</u>

15       Copyright infringement suits are "often characterized as a tort" best suited to analysis

16   under the "purposeful direction" prong of the first element.  <u>Brayton Purcell</u>, 606 F.3d at

17   1128.  Purposeful direction, in turn, involves a separate three-pronged test: the defendant

18   must have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3)

19   caused harm that the defendant knows is likely to be suffered in the forum state.  <u>Id.</u> (citing

20   <u>Calder v. Jones</u>, 465 U.S. 783 (1984)).

21       The intentional act element is broadly construed, and can be met by the deliberate

22   operation of a website, <u>id.</u>, which Oron has done here.   The third element is also met here, as

23   Oron was notified at least 42,356 times by a U.S. company that users were uploading and

24   distributing materials protected by U.S. copyrights.  Phinney Decl., dkt. 4 ¶ 3.

25       The conceptually cloudier "express aiming" element is meant to require "something

26   more than mere foreseeability" of contact with the forum.  <u>See</u> <u>Brayton Purcell</u>, 606 F.3d at

27

28       [3]Datatech does not argue that Oron is subject to general personal jurisdiction in the United
         States, and so the Court will confine its analysis to specific personal jurisdiction.

United States District Court
For the Northern District of California

1129.  For example, the Ninth Circuit found express aiming where a website actually or constructively knew that it received "a substantial number of hits" from a forum; the website's revenue was tied to the frequency of hits; and the content of the website had a relationship with the forum.   See Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1230 (9th Cir. 2011).

The Ninth Circuit recently issued an opinion addressing personal jurisdiction in the context of copyright infringement.  In Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668 (9th Cir. 2012), the plaintiff Washington Shoe alleged that an Arkansas retail store, A-Z, bought boots manufactured in China that turned out to be "illegal knock-offs" infringing on Washington Shoe's copyrights.  Washington Shoe notified A-Z that it was selling infringing boots, and A-Z removed the boots from display but sold its remaining inventory to a thrift store. 704 F.3d at 670-71.

Washington Shoe sued A-Z for copyright infringement in federal court in Washington, and A-Z moved to dismiss on personal jurisdiction grounds, arguing that it had insufficient contacts with Washington because it had never sold any goods of any kind to anyone there.  The Ninth Circuit explained that "whether A-Z's conduct was expressly aimed at the state of Washington . . . depends to a great degree on the allegations of a willful copyright violation." Id. at 674.  Willfulness in the copyright context can be based on a showing that either the defendant was actually aware of the infringing activity, or that the defendant's actions were the result of "reckless disregard for, or willful blindness to, the copyright holder's rights," and "evidence that notice had been accorded to the alleged infringer is perhaps the most persuasive evidence of willfulness."  Id. (internal punctuation omitted).

The court further explained that "the respective directions of the intentional act and the known impact need not coincide for the "express aiming" requirement to be satisfied." Id. at 675. "[P]articularly in the case of willful copyright infringement, the intentional act constituting the violation may occur solely within one [forum] while the known impact of that copyright infringement is directed at another [forum]."

United States District Court
For the Northern District of California

Most relevant here, the court held that "because the harm caused by an infringement of the copyright laws must be felt at least at the place where the copyright is held, we think that the impact of a <u>willful</u> infringement is necessarily directed there as well." Id. at 678. And, the court continued, "We think that A-Z's alleged willful infringement of Washington Shoe's copyright, and its knowledge of both the existence of the copyright and the forum of the copyright holder, is sufficient 'individualized targeting' to establish the 'something more' necessary to satisfy the express aiming requirement." Id. at 678-79.

Datatech's allegations and evidence here show express aiming under <u>Washington Shoe</u>. To be sure, Datatech has not alleged that after copyright holders identified particular files as infringing, Oron continued to process payments related to those files. Datatech has, however, alleged and offered evidence that after Oron learned that particular users were engaged in extensive repeat infringement of U.S. copyrights–for example, a single user who uploaded 1,600 separate copies of infringing work–Oron continued to encourage the activity by continuing to reward that repeat infringer with cash payments for subscriptions and downloads by other users.[4] The Court is satisfied that such a practice represents "reckless disregard for, or willful blindness to" U.S. copyright holders' rights, and thus constitutes "express aiming" at the United States under the reasoning in <u>Washington Shoe</u>.

Moreover, Datatech has made a <u>prima facie</u> showing that Oron "anticipated, desired, and achieved a substantial [United States] viewer base," which was an "integral component of [its] business model and its profitability." <u>Mavrix</u>, 647 F.3d at 1230. This Court's previous order set out many of Oron's contacts with the United States, which Oron has not refuted:

- The United States was the country with the largest share of Oron's web traffic, with over tens of thousands of hits per day, Phinney Decl., dkt. 29-7 ¶ 6;

- Oron registered an agent with the Copyright Office in the United States, Davidoglov Decl., dkt. 21-1 ¶ 12, Ex. 5;

---

[4] Phinney Decl., dkt. 4 ¶ 13; <u>see also id.</u> ¶ 3 (Oron notified of 42,356 instances of files infringing Datatech's work, and 650,000 infringing files generally); Phinney Decl. dkt. 29-7 ¶¶ 13-32; Sperlein Decl., Ex. B, dkt. 84-3, at RFA 14 (admitting knowledge that company notifying Oron of infringements represented U.S. copyright holders).

United States District Court
For the Northern District of California

1

- Oron's Terms of Service referred to U.S. Law, Davidoglov Decl., dkt. 21-1 ¶ 11, Ex. C;

2

3

- Oron permitted a company representing U.S. copyright holders to access and remove certain files from its servers, Phinney Decl. dkt. 29-7 ¶ 7;

4

- Oron used a U.S. domain name registrar for some period of time, Davidoglov Decl., dkt. 81-1 ¶ 13.

5

6

<u>See</u> Mem. & Order, dkt. 34, at 4-5.  In addition, records produced by PayPal during

7

jurisdictional discovery show that between March 12, 2011 and September 11, 2012 alone:

8

- Oron engaged in 145,622 transactions with account holders within the United States, many of which were transactions with repeat customers reflecting ongoing business relationships with U.S. customers

9

10

- Oron earned over $2 million in gross revenue from U.S. account holders,

11

- About 24% of Oron's revenue reflected in the Paypal statements came from the United States

12

Sperlein Decl., dkt. 90-1 ¶¶ 7-17.[5]

13

     Datatech has met its burden of establishing a <u>prima facie</u> case that Oron's significant

14

business presence in the United States reflects its "express aiming" at the country.  Though

15

the Ninth Circuit has acknowledged "the burden that . . . conclusion may impose on some

16

popular commercial websites," <u>Mavrix</u>, 647 F.3d at 1231, it also recognized that holding

17

otherwise would permit companies like Oron whose websites exploit an international market

18

to defeat jurisdiction in countries where those websites "generate substantial profits from

19

local consumers."  <u>See</u> <u>id.</u>

20

     <u>Arising Out of or Related to Forum Activities</u>

21

     The Ninth Circuit had adopted the "'but for' test to determine whether a particular

22

claim arises out of forum-related activities and therefore satisfies the second requirement for

23

specific jurisdiction." <u>Ballard v. Savage</u>, 65 F.3d 1495, 1500 (9th Cir. 1995); <u>but see</u> <u>Doe v.</u>

24

<u>Am. Nat'l Red Cross</u>, 112 F.3d 1048, 1051 (9th Cir. 1997) (applying "but for" test but

25

26

27

28

     [5]Datatech also has some evidence in the form of overlapping telephone numbers in registration records suggesting Oron may have employed someone who once lived in Colorado.  <u>See</u> Sperlein Decl., dkt. 90-1 ¶¶ 4-10.  But key details are missing, such as what that person did for Oron, and whether the time period he was living in Colorado overlapped with the period he worked for Oron. Even if no one was actually in Colorado working for Oron, however, maintaining a Colorado-based telephone number is some evidence of an intent to give customers the impression for a U.S. presence.

United States District Court
For the Northern District of California

1  concluding that conduct was "far too attenuated" to satisfy it).  The "question, therefore, is

2  this: but for [Defendant's] contacts with the [forum], would [Plaintiff's] claims against

3  [Defendant] have arisen?"  Ballard, 65 F.3d at 1500.

4          Oron argues that even though Datatech has made a showing that (1) Oron earned

5  about a quarter of its revenue from the United States during a certain period, and that (2)

6  users infringed Datatech's work at least 18,000 times, Datatech has not shown that Oron's

7  U.S.-based users were the ones infringing Datatech's copyrights.  That criticism would have

8  more bite if Datatech could be blamed for failing to bridge the data gap; in fact, however,

9  Datatech has dutifully sought the relevant information but come up short because, according

10 to Oron, all of it was "irretrievably erased"shortly after Oron failed to pay its web hosting

11 service provider.  See Order Denying Mot., dkt. 97, at 6-8.  It is unclear whether an

12 alternative source of data might be identified as the litigation progresses.  For now, Datatech

13 need only establish a prima facie case to overcome a motion to dismiss, and, on this record,

14 its showing of Oron's substantial U.S. presence and infringement by its general user base

15 suffices.[6]

16 Reasonableness of Exercising Jurisdiction

17         Oron next argues that exercising personal jurisdiction over it would be "unreasonable"

18 under the seven factors set out in Burger King Corp. v. Rudzewicz:

19         (1) the extent of a defendant's purposeful interjection;

20         (2) the burden on the defendant in defending in the forum;

21         (3) the extent of conflict with the sovereignty of the defendant's state;

22         (4) the forum state's interest in adjudicating the dispute;

23         (5) the most efficient judicial resolution of the controversy;

24         (6) the importance of the forum to the plaintiff's interest in convenient and
           effective relief; and

25

26         (7) the existence of an alternative forum.

27         [6]Oron's personal jurisdiction challenge turns on questions relevant to the merits and alleged
   damages, such as how often Datatech's files were accessed, by whom, and for what purpose.  Oron
28 remains free to press its personal jurisdiction challenge as the case progresses and the factual record on
   those issues develops.  E.g., Metro. Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990).

1  471 U.S. 462, 476-77 (1985).

2      Oron concedes that the fourth factor favors Datatech, and the Court has already

3  concluded that Oron's purposeful interjection was significant under the first factor.  Oron

4  refers vaguely to general difficulties of litigating far from home, and suggests that Oron's

5  home country of Hong Kong would be more convenient, equally suitable for Datatech, and

6  more appropriate because litigating here threatens Hong Kong's sovereignty.

7      Oron identifies no relevant witnesses, documents, or other people in or near Hong

8  Kong that would make it a more convenient or efficient forum, and provides no analysis of

9  any relevant conflicts between the law in the United States and the law in Hong Kong

10  implicating sovereignty interests.  Though the burden of a foreign company litigating in the

11  United States is real, it is less today than it was in the past, and here that factor along with the

12  possibility that this case might also be adjudicated in Hong Kong does not make exercise of

13  personal jurisdiction over Oron unreasonable.

14      Because Datatech met its burden of establishing the Court's personal jurisdiction over

15  Oron based on the record as it is currently developed, the Court need not and does not

16  descend into the merits of the parties' vitriolic cross-charges of abuses related to

17  jurisdictional discovery.

18      Accordingly, the Court DENIES Oron's Motion to Dismiss for lack of personal

19  jurisdiction.

20      Davidoglov

21      Davidoglov argues that regardless of whether Oron has sufficient contacts with the

22  United States, Davidoglov personally has never set foot on United States soil, and this Court

23  cannot exercise jurisdiction over him.  Datatech alleges that Oron is the alter ego of

24  Davidoglov and so Oron's contacts should count as Davidoglov's contacts.

25      In order to disregard the corporate identity for jurisdictional purposes, a plaintiff must

26  make out a prima facie case of alter ego liability under the relevant substantive law.  See

27  Am. Te. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996)

28  (requiring a prima facie showing (1) that there is such a unity of interest and ownership that

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  the separate personalities no longer exist and (2) that failure to disregard their separate

2  identifies would result in fraud or injustice); see also Flynt Distrib. Co. v. Harvey, 734 F.2d

3  1389, 1393-94 (9th Cir. 1984).

4        Datatech has alleged–but offered no evidence at all of–a prima facie case of alter ego

5  liability.  See Compl. ¶¶ 64-68 (alleging, inter alia, commingling and diversion of assets, and

6  failure to observe corporate formalities).  Oron points out the lack of evidence in the record,

7  and Datatech responds that it lacks evidence because Oron refused to produce anything in

8  response to its relevant discovery requests.  The Court need not pass on the discovery

9  disputes, because"[u]ncontroverted allegations in [Plaintiff's] complaint must be taken as

10  true" for purposes of jurisdictional analysis on a motion to dismiss, and Oron has offered

11  nothing to contradict Datatech's allegations.  The Court accordingly DENIES Davidoglov's

12  motion to dismiss for lack of personal jurisdiction.

13  **IV.    CONCLUSION**

14        For the foregoing reasons, the Court finds this matter suitable disposition without oral

15  argument under Civil Local Rule 7-1(b), and the Court DENIES Oron's Motion to Dismiss

16  for lack of personal jurisdiction.[7]

17        **IT IS SO ORDERED.**

18

19  Dated: March 26, 2013                    _____

20                                           CHARLES  R. BREYER
                                            UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27  [7]The Court DENIES Oron's request for certification of this issue for interlocutory appeal under
    28 U.S.C. § 1292(b).  The Ninth Circuit is already set to rule on the question of personal jurisdiction in

28  this case, albeit from an earlier stage in the proceedings, and the Court concludes that a second appeal
    would be largely redundant and would therefore not materially advance the ultimate termination of the
    litigation.