IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATATECH ENTERPRISES LLC, | No. C 12-4500 CRB |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS** |
| FF MAGNAT LIMITED ET AL., | |
| Defendants. | |

## I. BACKGROUND

Factual Background

Plaintiff Datatech Enterprises LLC ("Datatech") is a United States company and owner of the copyrights to numerous pornographic movies. Defendant FF Magnat Ltd. ("Oron") is a Hong Kong company that operated[1] a file-sharing website Oron.com. Dkt 1. Oron describes itself as a legitimate "cloud-based" file storage site that sold premium (i.e., faster) versions of its uploading and downloading services to paying members. Oron also says that it made good faith efforts to combat the alleged illegal activities of a few of its users. See Davidoglov[2] Decl. (dkt. 21-1).

---

[1] Oron lost access to the funds necessary to continue its operations due to this (and other similar) litigation, and shut down in August 2012. See Davidoglov Decl. (dkt. 21-1) ¶ 3.

[2] Oron's own papers are inconsistent regarding the name of FF Magnat's Owner; at times they refer to him as "Davidoglov Stanislav" and at other times as "Stanislav Davidoglov." Compare id., with dkt. 85. The Court will refer to him as Davidoglov.

1    In Datatech's view, Oron's business model revolved around copyright infringement.
2 As Datatech describes it, the website worked as follows: users uploaded files of their
3 choosing, and Oron provided a unique link to each uploaded file. Phinney Decl. (dkt. 4) ¶ 6.
4 The user could then distribute that link as broadly as he wished, and anyone with a copy of
5 the link could, without paying any money or providing a user name and password, download
6 the file. Id.

7    But, Oron designed free downloading to be cumbersome and frustrating. Non-paying
8 users downloaded at reduced speeds, had limited ability to conduct multiple downloads, were
9 subject to a 100 megabyte limit, and could not resume interrupted downloads. Id. ¶ 7. Those
10 constraints were all lifted once a user purchased a membership, priced at €9.95 per month
11 and up to €74.95 per year. Id.

12    Using three different "affiliate rewards" programs, Oron paid people to upload
13 popular files, and paid other websites to maintain popular links to those files. The first
14 program offered users money on a "Pay Per Download" basis, where the individual
15 uploading the file received a set sum based on the number of times other users downloaded
16 that file (e.g., "up to $25 per 1,000 downloads"). Id. ¶ 8.

17    Second, Oron offered a "Pay Per Sale" program that tracked which file attracted a new
18 member to Oron, and gave the user who uploaded that file a cut of the new user's
19 subscription fee, as well as a percentage of renewal fees the new member paid in future
20 months. Id. ¶ 9. Users could also opt for a rewards program offering a mix of per-download
21 and per-sale payments. Id. ¶ 10.

22    Third, Oron offered a "website owners" program that paid third-party websites up to
23 15% of all sales referred through that website, even if a different user uploaded the file that
24 attracted the new member. In doing so, Oron essentially paid other websites to maintain
25 indexes of the files available at Oron.com. Id. ¶ 11.

26    Procedural Background

27    In conjunction with the filing of this suit, Datatech applied for ex parte, and the Court
28 granted, a temporary restraining order freezing Oron's assets. See dkt. 9. In opposing entry

2

of a preliminary injunction, Oron argued, among other things, that Datatech could not make the necessary threshold showing of this Court's personal jurisdiction over Oron. After a hearing, this Court found that Datatech had "at least a reasonable probability of success on the question of personal jurisdiction," Mem. & Order, dkt. 34, at 3-5, and entered the preliminary injunction.

Oron sought leave to file a motion for reconsideration of the preliminary injunction, arguing in relevant part that this Court flubbed the personal jurisdiction issue. This Court denied the motion, and Oron pursued an interlocutory appeal to the Ninth Circuit, see Notice of Appeal, dkt. 46, which has been briefed but is still pending in the circuit court. Oron now moves to dismiss the suit on personal jurisdiction grounds.

## II.   LEGAL STANDARDS

"In opposing a . . . motion to dismiss, the plaintiff bears the burden of establishing that jurisdiction is proper." Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). However, the plaintiff need only make a prima facie showing of jurisdictional facts to avoid the granting of a motion to dismiss. See Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995). "Uncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010).

## III.   DISCUSSION

Datatech argues that jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2), which provides jurisdiction where (1) the claim against the defendant arises under federal law, (2) the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction, and (3) the federal court's exercise of jurisdiction comports with due process. Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 461 (9th Cir. 2007).

Copyright infringement cases arise under federal law, and where, as here, the defendant does not identify a different state where suit would be proper, the second requirement is also met. Id. Under Rule 4(k)(2), the third element asks whether Oron's

contacts with the United Sates as a whole would satisfy due process. Holland Am. Line Inc., 485 F.3d at 462.

Due process requires that the defendant have minimum contacts with the forum such that exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. E.g., Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). Whether a party has minimum contacts with a forum sufficient to warrant the exercise of specific[3] personal jurisdiction turns on a three-prong test:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must be reasonable.

Brayton Purcell, 606 F.3d at 1128. Oron challenges all three prongs.

Purposeful Availment

Copyright infringement suits are "often characterized as a tort" best suited to analysis under the "purposeful direction" prong of the first element. Brayton Purcell, 606 F.3d at 1128. Purposeful direction, in turn, involves a separate three-pronged test: the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knows is likely to be suffered in the forum state. Id. (citing Calder v. Jones, 465 U.S. 783 (1984)).

The intentional act element is broadly construed, and can be met by the deliberate operation of a website, id., which Oron has done here. The third element is also met here, as Oron was notified at least 42,356 times by a U.S. company that users were uploading and distributing materials protected by U.S. copyrights. Phinney Decl., dkt. 4 ¶ 3.

The conceptually cloudier "express aiming" element is meant to require "something more than mere foreseeability" of contact with the forum. See Brayton Purcell, 606 F.3d at

---

[3] Datatech does not argue that Oron is subject to general personal jurisdiction in the United States, and so the Court will confine its analysis to specific personal jurisdiction.

4

1129. For example, the Ninth Circuit found express aiming where a website actually or constructively knew that it received "a substantial number of hits" from a forum; the website's revenue was tied to the frequency of hits; and the content of the website had a relationship with the forum. See Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1230 (9th Cir. 2011).

The Ninth Circuit recently issued an opinion addressing personal jurisdiction in the context of copyright infringement. In Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668 (9th Cir. 2012), the plaintiff Washington Shoe alleged that an Arkansas retail store, A-Z, bought boots manufactured in China that turned out to be "illegal knock-offs" infringing on Washington Shoe's copyrights. Washington Shoe notified A-Z that it was selling infringing boots, and A-Z removed the boots from display but sold its remaining inventory to a thrift store. 704 F.3d at 670-71.

Washington Shoe sued A-Z for copyright infringement in federal court in Washington, and A-Z moved to dismiss on personal jurisdiction grounds, arguing that it had insufficient contacts with Washington because it had never sold any goods of any kind to anyone there. The Ninth Circuit explained that "whether A-Z's conduct was expressly aimed at the state of Washington . . . depends to a great degree on the allegations of a willful copyright violation." Id. at 674. Willfulness in the copyright context can be based on a showing that either the defendant was actually aware of the infringing activity, or that the defendant's actions were the result of "reckless disregard for, or willful blindness to, the copyright holder's rights," and "evidence that notice had been accorded to the alleged infringer is perhaps the most persuasive evidence of willfulness." Id. (internal punctuation omitted).

The court further explained that "the respective directions of the intentional act and the known impact need not coincide for the "express aiming" requirement to be satisfied." Id. at 675. "[P]articularly in the case of willful copyright infringement, the intentional act constituting the violation may occur solely within one [forum] while the known impact of that copyright infringement is directed at another [forum]."

Most relevant here, the court held that "because the harm caused by an infringement of the copyright laws must be felt at least at the place where the copyright is held, we think that the impact of a <u>willful</u> infringement is necessarily directed there as well." <u>Id.</u> at 678. And, the court continued, "We think that A-Z's alleged willful infringement of Washington Shoe's copyright, and its knowledge of both the existence of the copyright and the forum of the copyright holder, is sufficient 'individualized targeting' to establish the 'something more' necessary to satisfy the express aiming requirement." <u>Id.</u> at 678-79.

Datatech's allegations and evidence here show express aiming under <u>Washington Shoe</u>. To be sure, Datatech has not alleged that after copyright holders identified particular files as infringing, Oron continued to process payments related to those files. Datatech has, however, alleged and offered evidence that after Oron learned that particular users were engaged in extensive repeat infringement of U.S. copyrights–for example, a single user who uploaded 1,600 separate copies of infringing work–Oron continued to encourage the activity by continuing to reward that repeat infringer with cash payments for subscriptions and downloads by other users.[4] The Court is satisfied that such a practice represents "reckless disregard for, or willful blindness to" U.S. copyright holders' rights, and thus constitutes "express aiming" at the United States under the reasoning in <u>Washington Shoe</u>.

Moreover, Datatech has made a <u>prima facie</u> showing that Oron "anticipated, desired, and achieved a substantial [United States] viewer base," which was an "integral component of [its] business model and its profitability." <u>Mavrix</u>, 647 F.3d at 1230. This Court's previous order set out many of Oron's contacts with the United States, which Oron has not refuted:

- The United States was the country with the largest share of Oron's web traffic, with over tens of thousands of hits per day, Phinney Decl., dkt. 29-7 ¶ 6;

- Oron registered an agent with the Copyright Office in the United States, Davidoglov Decl., dkt. 21-1 ¶ 12, Ex. 5;

---

[4] Phinney Decl., dkt. 4 ¶ 13; <u>see also id.</u> ¶ 3 (Oron notified of 42,356 instances of files infringing Datatech's work, and 650,000 infringing files generally); Phinney Decl. dkt. 29-7 ¶¶ 13-32; Sperlein Decl., Ex. B, dkt. 84-3, at RFA 14 (admitting knowledge that company notifying Oron of infringements represented U.S. copyright holders).

6

- Oron's Terms of Service referred to U.S. Law, Davidoglov Decl., dkt. 21-1 ¶ 11, Ex. C;

- Oron permitted a company representing U.S. copyright holders to access and remove certain files from its servers, Phinney Decl. dkt. 29-7 ¶ 7;

- Oron used a U.S. domain name registrar for some period of time, Davidoglov Decl., dkt. 81-1 ¶ 13.

See Mem. & Order, dkt. 34, at 4-5. In addition, records produced by PayPal during jurisdictional discovery show that between March 12, 2011 and September 11, 2012 alone:

- Oron engaged in 145,622 transactions with account holders within the United States, many of which were transactions with repeat customers reflecting ongoing business relationships with U.S. customers

- Oron earned over $2 million in gross revenue from U.S. account holders,

- About 24% of Oron's revenue reflected in the Paypal statements came from the United States

Sperlein Decl., dkt. 90-1 ¶¶ 7-17.[5]

Datatech has met its burden of establishing a prima facie case that Oron's significant business presence in the United States reflects its "express aiming" at the country. Though the Ninth Circuit has acknowledged "the burden that . . . conclusion may impose on some popular commercial websites," Mavrix, 647 F.3d at 1231, it also recognized that holding otherwise would permit companies like Oron whose websites exploit an international market to defeat jurisdiction in countries where those websites "generate substantial profits from local consumers." See id.

Arising Out of or Related to Forum Activities

The Ninth Circuit had adopted the "'but for' test to determine whether a particular claim arises out of forum-related activities and therefore satisfies the second requirement for specific jurisdiction." Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995); but see Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997) (applying "but for" test but

---

[5] Datatech also has some evidence in the form of overlapping telephone numbers in registration records suggesting that Oron may have employed someone who once lived in Colorado. See Sperlein Decl., dkt. 90-1 ¶¶ 4-10. But key details are missing, such as what that person did for Oron, and whether the time period he was living in Colorado overlapped with the period he worked for Oron. Even if no one was actually in Colorado working for Oron, however, maintaining a Colorado-based telephone number is some evidence of an intent to give customers the impression of a U.S. presence.

7

concluding that conduct was "far too attenuated" to satisfy it). The "question, therefore, is this: but for [Defendant's] contacts with the [forum], would [Plaintiff's] claims against [Defendant] have arisen?" Ballard, 65 F.3d at 1500.

Oron argues that even though Datatech has made a showing that (1) Oron earned about a quarter of its revenue from the United States during a certain period, and that (2) users infringed Datatech's work at least 18,000 times, Datatech has not shown that Oron's U.S.-based users were the ones infringing Datatech's copyrights. That criticism would have more bite if Datatech could be blamed for failing to bridge the data gap; in fact, however, Datatech has dutifully sought the relevant information but come up short because, according to Oron, all of it was "irretrievably erased" shortly after Oron failed to pay its web hosting service provider. See Order Denying Mot., dkt. 97, at 6-8. It is unclear whether an alternative source of data might be identified as the litigation progresses. For now, Datatech need only establish a prima facie case to overcome a motion to dismiss, and, on this record, its showing of Oron's substantial U.S. presence and infringement by its general user base suffices.[6]

Reasonableness of Exercising Jurisdiction

Oron next argues that exercising personal jurisdiction over it would be "unreasonable" under the seven factors set out in Burger King Corp. v. Rudzewicz:

(1) the extent of a defendant's purposeful interjection;

(2) the burden on the defendant in defending in the forum;

(3) the extent of conflict with the sovereignty of the defendant's state;

(4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum.

---

[6] Oron's personal jurisdiction challenge turns on questions relevant to the merits and alleged damages, such as how often Datatech's files were accessed, by whom, and for what purpose. Oron remains free to press its personal jurisdiction challenge as the case progresses and the factual record on those issues develops. E.g., Metro. Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990).

8

471 U.S. 462, 476-77 (1985).

Oron concedes that the fourth factor favors Datatech, and the Court has already concluded that Oron's purposeful interjection was significant under the first factor. Oron refers vaguely to general difficulties of litigating far from home, and suggests that Oron's home country of Hong Kong would be more convenient, equally suitable for Datatech, and more appropriate because litigating here threatens Hong Kong's sovereignty.

Oron identifies no relevant witnesses, documents, or other people in or near Hong Kong that would make it a more convenient or efficient forum, and provides no analysis of any relevant conflicts between the law in the United States and the law in Hong Kong implicating sovereignty interests. Though the burden of a foreign company litigating in the United States is real, it is less today than it was in the past, and here that factor along with the possibility that this case might also be adjudicated in Hong Kong does not make exercise of personal jurisdiction over Oron unreasonable.

Because Datatech met its burden of establishing the Court's personal jurisdiction over Oron based on the record as it is currently developed, the Court need not and does not descend into the merits of the parties' vitriolic cross-charges of abuses related to jurisdictional discovery.

Accordingly, the Court DENIES Oron's Motion to Dismiss for lack of personal jurisdiction.

Davidoglov

Davidoglov argues that regardless of whether Oron has sufficient contacts with the United States, Davidoglov personally has never set foot on United States soil, and this Court cannot exercise jurisdiction over him. Datatech alleges that Oron is the alter ego of Davidoglov and so Oron's contacts should count as Davidoglov's contacts.

In order to disregard the corporate identity for jurisdictional purposes, a plaintiff must make out a prima facie case of alter ego liability under the relevant substantive law. See Am. Te. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996) (requiring a prima facie showing (1) that there is such a unity of interest and ownership that
9

the separate personalities no longer exist and (2) that failure to disregard their separate identifies would result in fraud or injustice); see also Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1393-94 (9th Cir. 1984).

Datatech has alleged–but offered no evidence at all of–a prima facie case of alter ego liability.  See Compl. ¶¶ 64-68 (alleging, inter alia, commingling and diversion of assets, and failure to observe corporate formalities).  Oron points out the lack of evidence in the record, and Datatech responds that it lacks evidence because Oron refused to produce anything in response to its relevant discovery requests.  The Court need not pass on the discovery disputes, because"[u]ncontroverted allegations in [Plaintiff's] complaint must be taken as true" for purposes of jurisdictional analysis on a motion to dismiss, and Oron has offered nothing to contradict Datatech's allegations.  The Court accordingly DENIES Davidoglov's motion to dismiss for lack of personal jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds this matter suitable disposition without oral argument under Civil Local Rule 7-1(b), and the Court DENIES Oron's Motion to Dismiss for lack of personal jurisdiction.[7]

**IT IS SO ORDERED.**

Dated: March 26, 2013

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

---

[7] The Court DENIES Oron's request for certification of this issue for interlocutory appeal under 28 U.S.C. § 1292(b).  The Ninth Circuit is already set to rule on the question of personal jurisdiction in this case, albeit from an earlier stage in the proceedings, and the Court concludes that a second appeal would be largely redundant and would therefore not materially advance the ultimate termination of the litigation.

G:\CRBALL\2012\4500\order denying mtd.wpd                    10